# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Peabody Energy Corporation, <u>et al.</u>,<br><br>        Debtors.¹ | Case No. 16-42529<br>CHAPTER 11<br><br>(Joint Administration Requested)<br><br>Hearing Date and Time:<br>TBD<br><br>Hearing Location:<br>TBD |

**MOTION OF THE DEBTORS, PURSUANT TO SECTIONS 105(a), 362 AND 541 OF THE BANKRUPTCY CODE, FOR ENTRY OF INTERIM AND FINAL ORDERS:  (I) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR TRANSFERS OF EQUITY SECURITIES; (II) ESTABLISHING A RECORD DATE FOR NOTICE AND SELL-DOWN PROCEDURES FOR TRADING IN CLAIMS <u>AGAINST THE DEBTORS' ESTATES; AND (III) GRANTING RELATED RELIEF</u>**

Peabody Energy Corporation ("<u>PEC</u>") and certain of its direct and indirect

subsidiaries, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), hereby move this

Court, pursuant to sections 105(a), 362 and 541 of title 11 of the United States Code

(the "<u>Bankruptcy Code</u>"), for the entry of interim and final orders (respectively, the "<u>Interim</u>

<u>Order</u>" and "<u>Final Order</u>"):  (a) establishing notice and objection procedures that must be

satisfied before certain transfers of beneficial interests in equity securities in PEC ("<u>Equity</u>

<u>Securities</u>") are deemed effective; (b) establishing a record date (the "<u>Record Date</u>") for notice

---

¹      The Debtors are their employer identification numbers are listed on Schedule 1 attached hereto.  The addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

and potential sell-down procedures for trading in claims against the Debtors ("Claims"); and

(c) granting related relief, and in support thereof, respectfully represent as follows:[2]

## Jurisdiction and Venue

1.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.      On April 13, 2016 (the "Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      Debtor PEC is a Delaware corporation headquartered in St. Louis, Missouri.  PEC was incorporated in 1998 and became a public company in 2001.  Each of the other Debtors is a wholly-owned direct or indirect subsidiary of PEC.

4.      PEC is the world's largest private-sector coal company (by volume), with 26 active coal mining operations located in the United States and Australia.  The Debtors' domestic mines produce and sell thermal coal, which is primarily purchased by electricity generators.  PEC's Australian operations mine both thermal and metallurgical coal, a majority of which is exported to international customers.  As of December 31, 2015, Debtor PEC and its

---

[2]      Copies of the proposed orders will be made available on the Debtors' case website at http://www.kccllc.net/peabody.

subsidiaries' property holdings include 6.3 billion tons of proven and probable coal reserves and approximately 500,000 acres of surface property through ownership and lease agreements.  In the United States alone, as of December 31, 2015, the Debtors held an estimated 5.5 billion tons of proven and probable coal reserves, and the Debtors generated sales of approximately 180 million tons of coal.  In addition to its mining operations, the Debtors market and broker coal from other coal producers across the United States, Australia, Europe and Asia.

   5. The Debtors operate in a competitive and highly regulated industry that has experienced strong headwinds and precipitously declining demand and pricing in recent years due to the rise of low priced alternative energy sources – including an abundance of natural gas.  Combined with these factors, slowing global economic growth drove a wide range of goods prices lower in 2015 and resulted in the largest broad market decline since 1991.  Indeed, demand from electric utilities in the United States alone declined approximately 110 million tons in 2015.  These market conditions, in connection with lower realized pricing in the United States and Australia, resulted in a 21.0 million ton decline in the Debtors' and their non-debtor subsidiaries' coal sales during 2015.  As a result of these challenges, several large United States coal companies have filed for chapter 11 protection in recent years.

   6. A comprehensive description of the Debtors' businesses and operations, capital structure and the events leading to the commencement of these chapter 11 cases can be found in the Declaration of Amy Schwetz, Executive Vice President and Chief Financial Officer of Debtor PEC, in Support of First Day Motions of Debtors and Debtors in Possession (the "<u>First Day Declaration</u>"), which was filed contemporaneously herewith and is incorporated herein by reference.

**<u>Argument</u>**

***The Debtors' Net Operating Losses, Tax Credits and Other Losses***

       7.      The common stock of PEC is publicly traded.  As of April 4, 2016, there were approximately 18,530,028 shares of PEC common stock outstanding, with a total market capitalization of approximately $43 million.  As of the Petition Date, PEC also has outstanding $732.5 million in principal amount of convertible junior subordinated debentures that are generally convertible into shares of PEC perpetual preferred stock upon the occurrence of certain events but may be converted into shares PEC common stock in limited circumstances. As described more fully in the First Day Declaration, PEC has approximately $4.3 billion in outstanding secured debt obligations and $4.5 billion in outstanding unsecured debt obligations.

       8.      The Debtors have incurred losses and other creditable expenses for federal income tax purposes during the course of operating their business.  As of December 31, 2015, the Debtors currently estimate they have net federal tax credits of approximately $635 million and federal tax capital losses of approximately $180 million, and the Debtors expect to incur additional tax losses and credits through the Petition Date and through the time that they emerge from their chapter 11 cases.  These items are referred to herein, for the sake of simplicity, collectively as "NOLs."  NOLs are valuable tax attributes, which could translate into future reductions of the Debtors' income tax liabilities.

       9.      As described more fully below, the Debtors may lose the ability to use their NOLs if they experience an "ownership change" for federal income tax purposes. To prevent this potential loss of property of the Debtors' estates, the Debtors request Court approval of the procedures detailed herein to govern the transfers of Equity Securities during the pendency of these chapter 11 cases.  In addition, the Debtors may ultimately need to seek an order (a "<u>Sell-Down Order</u>") in connection with a plan of reorganization or a qualifying asset

sale with respect to trading in Claims to protect and preserve the value of their NOLs, and this Motion is designed to give advance notice of such possibility.

***Potential Limitations on the Use of the Debtors' NOLs***

10.     Section 172 of the Internal Revenue Code of 1986, as amended (the "IRC"), permits a corporate taxpayer to carry forward net operating losses for up to 20 subsequent tax years to offset future income in years following the years in which they were incurred, thereby reducing its federal income tax liability on such future income and significantly improving its cash position.  However, section 382 of the IRC limits the income against which net operating losses may be deducted after an ownership change.  Section 383 of the IRC (by reference to section 382) similarly limits on the income against which tax credits and other losses may be applied after an ownership change.

### A.     Ownership Change Outside the Context of a Chapter 11 Plan

11.     Sections 382 and 383 of the IRC limit the ability of a corporation to use its NOLs after an "ownership change" occurs.  Generally, an "ownership change" occurs if the percentage (by value) of the stock of the corporation owned by one or more 5% shareholders has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during the relevant testing period, which is usually the three-year period ending on the date of the ownership change.[3]  For example, an ownership change would occur in the following situation:

---

[3]     In general, under section 382(g)(4)(A) of the IRC, all shareholders who individually hold less than 5% of the stock of a company are deemed to be a single 5% shareholder throughout the three-year testing period, and transfers between such shareholders are disregarded for purposes of determining whether an ownership change has occurred (sometimes referred to as the "public group rule").  Accordingly, the Debtors do not seek to impose the requested notice and objection procedures on Transfers (as such term is defined below) among shareholders holding less than 4.5% of PEC's stock, provided that such shareholders do not have an intent to accumulate a 5% or greater block of stock or add or sell shares to or from such block.  To allow

Three individuals ("A," "B" and "C") each own 20% of the stock of corporation X ("X"). Each sells 15% to another individual ("D"), who has recently acquired 7%. Under section 382 of the IRC, an ownership change has occurred because D both became a 5% shareholder and increased his ownership in X by more than 50 percentage points (from 0% to 52%) during the testing period.

12.      When an ownership change occurs, the normally applicable rules of sections 382 and 383 of the IRC limit a corporation's use of its "pre-change" NOLs against future taxable income in any taxable year (or a portion thereof) to an annual amount equal to (a) the value of its stock prior to the ownership change, multiplied by (b) the long-term, tax-exempt interest rate. See I.R.C. § 382(b). For a distressed company especially, this limitation could severely restrict the use of NOLs because the value of its stock may be quite low. For example, if a hypothetical corporation were to become distressed, such that its equity value was $10 million, and undergo an ownership change when its equity value was at this depressed level, the annual limitation on the corporation's use of its NOLs resulting from that ownership change would be $253,000 (based on a 2.53% long-term, tax-exempt rate that would apply under section 382 of the IRC for an ownership change occurring in April 2016). In other words, the corporation would be able to utilize only $253,000 of its NOLs in each post-change tax year. Taxable income in excess of this amount would be taxable to the company at the federal rate of 35%.

13.      Thus, if left unrestricted, transfers of Equity Securities during the pendency of these chapter 11 cases could severely limit the Debtors' ability to use their NOLs,

─────────────────────────

(Continued…)

for a prudent margin of error and in a good faith effort to avoid underestimating the threshold, the Debtors have calculated the threshold using 4.5% instead of 5%.

and could have significant negative consequences for the Debtors, their estates and their efforts

to maximize value for creditors.  Specifically, transfers of Equity Securities could adversely

affect the Debtors' NOLs if:  (a) too many 5% or greater blocks of Equity Securities are created;

or (b) too many Equity Securities are added to or sold from such blocks, such that, together with

previous transfers by or to 5% shareholders during the preceding three-year period (or shorter

period where there has been a more recent ownership change), an ownership change within the

meaning of section 382 of the IRC has occurred prior to consummation, and outside the context,

of a confirmed chapter 11 plan.

14.     Thus, to preserve to the fullest extent possible the flexibility to craft a plan

of reorganization that maximizes the use of their NOLs or to shelter taxable income or gain, if

any, from any sale of their assets through a court-supervised auction process, the Debtors seek

limited relief that will enable them to closely monitor certain Transfers (as defined below) of

Equity Securities, and thereby put the Debtors in a position to act expeditiously to prevent or to

limit such Transfers if necessary to preserve their NOLs.

**B.     Ownership Change in the Context of a Qualifying Bankruptcy Event**

15.     The limitations imposed by sections 382 and 383 of the IRC are

significantly relaxed if an ownership change occurs pursuant to a confirmed chapter 11 plan

(a "Plan") or a qualifying asset sale.  Under section 382(l)(5) of the IRC, a debtor corporation is

not subject to the limitations imposed by section 382 of the IRC if:  (a) the ownership change

resulted from consummation of a Plan or a qualifying asset sale, and (b) pursuant to the Plan or a

qualifying asset sale, the debtor's pre-change-in-ownership equity holders (i.e., persons or

entities who owned the debtor's equity immediately before the relevant ownership change)

and/or "Qualified Creditors" emerge from the reorganization owning at least 50% of the total

value and voting power of the debtor's stock immediately after the ownership change (the "Section 382(l)(5) Safe Harbor").

16.     Under section 382(l)(5)(E) of the IRC and the regulations promulgated thereunder, a creditor whose claim is exchanged for stock of a debtor corporation under a Plan or pursuant to a qualifying asset sale is a "Qualified Creditor" for section 382 purposes if such claim either (a) has been owned by such creditor for 18 or more months prior to the date of filing of the bankruptcy petition or (b) arose in the ordinary course of the debtor's business and was at all times beneficially owned by such creditor.  Creditors may also be "qualified," despite not satisfying the continuous ownership requirements under either (a) or (b) of the preceding sentence, if they meet the criteria set forth in the De Minimis Rule described below.

17.     For purposes of the Section 382(l)(5) Safe Harbor, under Treasury Regulation § 1.382-9(d)(3) (the "De Minimis Rule"), a debtor generally may "treat indebtedness as always having been owned by the beneficial owner of the indebtedness immediately before the ownership change if the beneficial owner is not, immediately after the ownership change, either a 5% shareholder or an entity through which a 5% shareholder owns an indirect ownership interest" in the debtor.  Such a claimholder will generally be a Qualified Creditor under the Section 382(l)(5) Safe Harbor unless the particular claim(s) that it holds both (a) did not arise in the ordinary course of the issuing debtor's business and (b) was not in existence 18 months prior to the filing of the bankruptcy petition.

18.     Alternatively, where an ownership change results from the consummation of a Plan or qualifying asset sale but the requirements for the Section 382(l)(5) Safe Harbor are *not* met, section 382(b) of the IRC would limit the amount of taxable income that the debtor could offset with NOLs.

19.    Under the scenario where the requirements for the Section 382(l)(5) Safe Harbor are not met (or the debtor elects out of that provision), the annual section 382 limitation is calculated using the special rule of section 382(l)(6) of the IRC.  That rule provides that the value of the debtor, for purposes of calculating the section 382 limitation, generally must reflect any increase in value resulting from any surrender or cancellation of creditors' claims, as well as any new investments, pursuant to the Plan.  As a result, assuming the debtor's value increases as a result of its Plan or qualifying asset sale, the amount of taxable income that can be offset will still be limited – although not by as much as if the ownership change occurred outside the context of a confirmed Plan or qualifying asset sale (as described in paragraph 12 above).

20.    Therefore, to protect the Debtors' ability to maximize the use of their NOLs, pursuant to a Plan or an approved asset sale, the Debtors may need to seek entry of a Sell-Down Order with respect to Claims allowing them to (a) determine whether the reorganized Debtors will qualify for and benefit from the Section 382(l)(5) Safe Harbor and (b) require certain persons or entities that have acquired Claims during these chapter 11 cases in an amount that would entitle such claimholders to receive more than 4.5% of the equity of the reorganized Debtors (collectively, the "Substantial Claimholders") to sell down their Claims to the extent necessary to allow the reorganized Debtors to qualify for the Section 382(l)(5) Safe Harbor (the "Sell-Down Procedures").[4]  This is in addition to the procedures governing transfers of Equity Securities.

***The Proposed Equity Transfer Procedures***

21.    By establishing procedures for monitoring the transfer of Equity Securities, the Debtors can preserve their ability to seek the necessary relief at the appropriate time, if it

---

[4]    A summary of the potential Sell-Down Procedures is provided in paragraphs 26 through 32 below.

9

appears that transfers of Equity Securities may jeopardize the Debtors' use of their NOLs.

Therefore, the Debtors propose the following notice and objection procedures for holding and transferring Equity Securities (the "Equity Transfer Procedures"):

a.   Certain Defined Terms. For purposes of this Motion, the Interim Order and the Final Order sought hereunder: (i) a "Substantial Equityholder" is any person or entity that Beneficially Owns (as defined below) at least 833,852 shares (representing approximately 4.5% of the 18,530,028 issued and outstanding shares of common stock)[5] of PEC; (ii) "Beneficial Ownership" of Equity Securities shall be determined in accordance with applicable rules under section 382 of the IRC and the regulations promulgated thereunder and shall include (a) direct and indirect ownership (e.g., a holding company would be considered to Beneficially Own all shares owned or acquired by its subsidiaries), (b) ownership by such holder's family members and persons or entities acting in concert with such holder to make a coordinated acquisition of stock and (c) ownership of Options (as defined below) to acquire stock; (iii) an "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, exchangeable shares, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable; and (iv) a "Transfer" means any transfer of Equity Securities to the extent described in paragraph 21(c) below and/or paragraph 21(d) below.

b.   Notice of Substantial Equityholder Status. Any person or entity who currently is or becomes a Substantial Equityholder shall (i) file with the Court and (ii) serve upon: (a) the Debtors, c/o Peabody Energy Corporation, 701 Market Street, St. Louis, MO 63101 (Attn: Scott T. Jarboe, Esq., Vice President and Deputy General Counsel Corporate and Capital Markets); (b) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, OH 44114 (Attn: Heather Lennox, Esq.); (c) Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C. 20001 (Attn: Amy Edgy, Esq. and Daniel T. Moss, Esq.); and (d) Armstrong Teasdale LLP, 7700 Forsyth Boulevard, Suite 1800, St. Louis, MO 63105 (Attn: Steven N. Cousins, Esq. and Susan K. Ehlers), a notice of such status (a "Notice of Substantial Equityholder Status"), in the form attached as Annex 1 to the Equity Transfer Procedures Notice (as defined below), on or before the later of (i) 14 days after entry of the Interim Order or (ii) 14 days after becoming a Substantial Equityholder.

---

[5]   To allow for a prudent margin of error and in a good faith effort to avoid underestimating the threshold, the Debtors have calculated the threshold using 4.5% instead of 5%.

c.       <u>Stock Acquisition Notice</u>.  At least 28 days prior to any transfer of Equity Securities (including any transfer of Options to acquire stock or any exercise thereof) that would result in an <u>increase</u> in the amount of Equity Securities Beneficially Owned by a Substantial Equityholder or would result in a person or entity <u>becoming</u> a Substantial Equityholder, such Substantial Equityholder or potential Substantial Equityholder shall (i) file with the Court and (ii) serve on the Debtors and counsel to the Debtors (at the addresses set forth in paragraph 21(b) above) advance written notice of the intended transfer of Equity Securities (a "<u>Stock Acquisition Notice</u>"), in the form attached as <u>Annex 2</u> to the Equity Transfer Procedures Notice.

d.       <u>Stock Disposition Notice</u>.  At least 28 days prior to any transfer of Equity Securities (including Options to acquire stock) that would result in a <u>decrease</u> in the amount of Equity Securities Beneficially Owned by a Substantial Equityholder or would result in a person or entity <u>ceasing</u> to be a Substantial Equityholder, such Substantial Equityholder shall (i) file with the Court and (ii) serve on the Debtors and counsel to the Debtors (at the addresses set forth in paragraph 21(b) above) advance written notice of the intended transfer of Equity Securities (a "<u>Stock Disposition Notice</u>"), in the form attached as <u>Annex 3</u> to the Equity Transfer Procedures Notice.

e.       <u>Objection Procedures</u>.  The Debtors shall have 21 days after receipt of a Stock Acquisition Notice or a Stock Disposition Notice (each, a "<u>Transfer Notice</u>") to file with the Court and serve on the party filing the Transfer Notice an objection to the proposed Transfer on the grounds that such Transfer may adversely affect the Debtors' ability to utilize their NOLs. If the Debtors file an objection, the proposed Transfer will not be effective unless and until approved by a final and nonappealable order of this Court. If the Debtors do not object within such 21-day period, the Transfer may proceed solely as set forth in the Transfer Notice.  Further Transfers within the scope of this paragraph must comply with the Equity Transfer Procedures set forth in this paragraph 21(e).

f.       <u>Unauthorized Transfers of Equity Securities</u>.  Effective as of the Petition Date and until further order of this Court to the contrary, any acquisition or disposition of Equity Securities (including Options to acquire stock) in violation of the Equity Transfer Procedures shall be null and void <u>ab</u> <u>initio</u> as an act in violation of the automatic stay under section 362 of the Bankruptcy Code.

g.      Special Rules.  A person acquiring or disposing of Equity Securities in the capacity of agent of another person shall not be treated as a Substantial Equityholder solely to the extent that person is acting in the capacity of an agent, and shall not have an affirmative duty to inquire whether the account, customer, investment fund, principal, trust or beneficiary is subject to any restrictions or requirements under the Interim Order or the Final Order; provided, however, that the account, customer, fund, principal, trust or beneficiary shall not be excluded from the Interim Order or the Final Order by reason of this subsection.  For the avoidance of doubt, any agent that is a Nominee (as defined below) shall be subject to the requirements and obligations set forth in paragraph 24 below.

22.     With respect to the Equity Transfer Procedures, the Debtors may waive, in writing, in their sole and absolute discretion, any and all restrictions, stays and notification procedures contained in this Motion or in any order entered with respect hereto.

23.     Following entry of the Interim Order, the Debtors propose to provide a notice in substantially the form attached as Exhibit A hereto (the "Equity Transfer Procedures Notice") to (a) the Office of the United States Trustee for the Eastern District of Missouri (the "United States Trustee"), (b) the Securities and Exchange Commission, (c) the Internal Revenue Service and (d) any registered holders of the outstanding Equity Securities (including Options to acquire stock such as PEC's debt obligations that are convertible into its common stock), describing the authorized transfer restrictions and notification requirements with respect to Equity Securities and notifying parties of the Record Date (which shall be the date the Interim Order is entered).  The Debtors will publish notice of the entry of the Interim Order, substantially in the form attached hereto as Exhibit C, in the national edition of the Wall Street Journal and the St. Louis Post-Dispatch.

24.     Upon receipt of such Equity Transfer Procedures Notice, any broker, bank, dealer or other agent or nominee of a beneficial holder (each a "Nominee") of Equity Securities (including Options to acquire stock) will be required, within five days of receipt of such notice and on at least a quarterly basis thereafter, to send the Equity Transfer Procedures Notice to all

12

beneficial holders of Equity Securities on whose behalf such Nominee holds Equity Securities. To the extent such beneficial holder is also a Nominee, such Nominee must, in turn, promptly provide the Equity Transfer Procedures Notice to any holder for whose account such holder holds Equity Securities, and so on down the chain of ownership.  Additionally, any person, entity, broker or agent acting on behalf of any holder who sells at least 833,852 shares (representing approximately 4.5% of the 18,530,028 issued and outstanding shares of common stock) of PEC to another person or entity must provide a copy of the Equity Transfer Procedures Notice to such purchaser or any broker or agent acting on such purchaser's behalf.

25.     The Equity Transfer Procedures Notice will provide the date and time (the "Objection Deadline") by which parties must file an objection to the Motion ("Objection"). If an Objection is timely filed and served, a final hearing will be held at the date and time set forth in the Interim Order (the "Final Hearing").  If a Final Hearing is necessary, the Debtors shall submit the Final Order to the Court substantially in the form submitted to the Court in connection with this Motion.

***Record Date Notice and Summary of Potential Sell-Down Procedures***

26.     At this stage, it is too early to determine whether it will be necessary for the Debtors to obtain a Sell-Down Order.  The Debtors' determination of whether to seek entry of a Sell-Down Order will most likely occur once they have formulated a plan of reorganization and have determined whether they may qualify for and benefit from the Section 382(l)(5) Safe Harbor such that it is necessary to require Substantial Claimholders to comply with the Sell-Down Procedures summarized below.  Accordingly, this Motion does not seek entry of a Sell-Down Order, but seeks to establish the Record Date through entry of the Interim and Final Orders.  The Debtors propose to set the Record Date as the date of entry of the Interim Order.

27.     Following entry of the Interim Order, the Debtors propose to provide a notice of the Record Date in substantially the form attached as Exhibit B hereto (the "Record Date Notice") to:  (a) Davis Polk & Wardwell LLP, as counsel to Citibank, N.A. as Administrative Agent for the First Lien Secured Credit Facility and the Debtors' proposed debtor in possession secured credit facility; (b) Brown Rudnick LLP, as counsel to Wilmington Savings Fund Society, FSB as prospective trustee and collateral agent for the Secured Second Lien Notes; (c) Foley & Lardner LLP, as counsel to Wilmington Trust Company as prospective Indenture Trustee for the Unsecured Notes;[6] (d) Robinson & Cole LLP, as counsel to U.S. Bank as resigning trustee and collateral agent for the Second Lien Notes, the Unsecured Notes and the Convertible Notes;[7] (e) counsel to any ad hoc committees; (f) the Debtors' 50 largest unsecured creditors; (g) Mayer Brown LLP, as counsel to PNC Bank, N.A., as Administrator under the Debtors' prepetition accounts receivable securitization facility; (h) the United States Trustee; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; and (k) any registered holders of the Debtors' secured and unsecured notes.  Additionally, the Debtors propose to serve the Record Date Notice with the Commencement Notice (as such term is defined in any order granting the Creditor Matrix Motion[8]) on any entities that (a) are listed on

---

[6]     These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due September 2020; (iii) 6.25% Senior Notes due September 2021; (iv) 7.875% Senior Notes due November 2026.

[7]     These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due September 2020; (iii) 6.25% Senior Notes due September 2021; (iv) 7.875% Senior Notes due November 2026; and the (v) Convertible Junior Subordinated Debentures due December 2066.

[8]     See Motion of the Debtors and Debtors in Possession, Pursuant to Sections 105(a), 107(c), 342 and 521 of the Bankruptcy Code, Bankruptcy Rules 1007(a), 2002(a), 2002(f) and 9037 and Local Bankruptcy Rules 1002(C), 1007-7, 1009, 2002-1 and 2002-2, For an Order (I) Authorizing the Debtors  and Debtors in Possession to File a Reformatted and Redacted Creditor Mailing Matrix; (II) Deeming that Certain Procedures Satisfy the Requirements of Local Bankruptcy Rules 1007-7 and 1009; (III) Approving the Form and Manner of Notice of the Commencement of the Debtors' Chapter 11 Cases; and (IV) Authorizing the Filing of a Consolidated List of Top 50 Unsecured Creditors (the "Creditor Matrix Motion"), filed substantially contemporaneously herewith.

14

the Creditor Matrix (as such term is defined in the Creditor Matrix Motion) at the time of service

of the Commencement Notice and (b) are not listed as parties to receive the Record Date Notice

under the first sentence of this paragraph 27.  Finally, as noted above, the Debtors will publish

notice of the entry of the Interim Order, substantially in the form attached hereto as Exhibit C, in

the national edition of the Wall Street Journal and the St. Louis Post-Dispatch.

        28.     Upon receipt of such Record Date Notice, any Nominee of Claims will be

required, within five days of receipt of such notice and on at least a quarterly basis thereafter, to

send the Record Date Notice to all beneficial holders of Claims on whose behalf such Nominee

holds Claims.  To the extent such beneficial holder is also a Nominee, such Nominee must, in

turn, promptly provide the Record Date Notice to any holder for whose account such holder

holds Claims, and so on down the chain of ownership.

        29.     Like the Equity Transfer Procedures Notice, the Record Date Notice will

also provide the Objection Deadline for parties to file an Objection to the Motion.  If an

Objection is timely filed and served, a Final Hearing will be held, and the Debtors shall submit

the Final Order to the Court substantially in the form submitted to the Court in connection with

this Motion.

        30.     In the event the Debtors seek entry of a Sell-Down Order, the Debtors

anticipate that the Sell-Down Procedures would require a person or entity that has acquired an

amount of Claims after the Record Date entitling that claimholder to receive more than 4.5% of

the equity of the reorganized Debtors (the "Threshold Amount") to provide the Debtors with

limited information such as the size of its Claim and the date(s) such Claim was acquired.

The amount of Claims held by a claimholder as of the Record Date would constitute

the "Protected Amount."  Substantial Claimholders would never be required to sell down their

Claims below the Threshold Amount or the Protected Amount, whichever is greater.  In other words, the Sell-Down Order would apply only to persons or entities that acquire Claims in excess of the Threshold Amount after the Record Date and with full notice of the possibility that the Claims they acquire could be subject to sell-down if the Debtors later determine that the Sell-Down Procedures are necessary.

31.    If the Sell-Down Procedures prove to be necessary, the Debtors would seek to require Substantial Claimholders to provide updated holdings information shortly after the date on which the Court approves a disclosure statement for a plan of reorganization or approves a qualifying asset sale that proposes to utilize the Section 382(l)(5) Safe Harbor.  Based on the updated holdings information, the Debtors would then determine whether it would be necessary to require Substantial Claimholders to sell down a portion of their holdings so that the Debtors may qualify for the Section 382(l)(5) Safe Harbor and to preserve the value of the Debtors' NOLs.

32.    In the event that the Debtors seek entry of a Sell-Down Order, the Debtors would provide adequate notice and opportunity for claimholders to sell down their Claims without triggering an unreasonably adverse impact on the value of such Claims. Specifically, if a claimholder were required to sell down its holdings, the claimholder would have until shortly before the Debtors consummate a plan of reorganization or a qualifying asset sale to effectuate the necessary sell-down.  Moreover, establishment of the Record Date at this early stage of these chapter 11 cases will provide claimholders with sufficient notice in advance of any trading opportunity that any Claims purchased after the Record Date may ultimately be subject to the Sell-Down Procedures as set forth in a Sell-Down Order.

**Basis for Relief**

***The NOLs Are Property of the Debtors' Estates and Are Entitled to Protection***

33.    The Debtors seek the entry of interim and final orders, pursuant to section 105(a) of the Bankruptcy Code,[9] preserving the potential value of the Debtors' NOLs, which are property of the Debtors' estates and protected by the automatic stay.

34.    Courts have uniformly held that a debtor's NOLs constitute property of the estate under section 541 of the Bankruptcy Code and, therefore, that courts have the authority to impose measures intended to protect and preserve such NOLs.  The seminal case articulating this rule is Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines, Inc.), 107 B.R. 832 (Bankr. S.D.N.Y. 1989), aff'd, 119 B.R. 430 (S.D.N.Y. 1990), aff'd, 928 F.2d 565 (2d Cir. 1991).

35.    In Prudential Lines, the court enjoined a parent corporation from taking a worthless stock deduction with respect to its wholly owned subsidiary, which was in bankruptcy, on the grounds that allowing the parent to take such a deduction would destroy its debtor subsidiary's NOLs.  In issuing the injunction, the court held that the debtor subsidiary's potential ability to utilize NOLs was property of its estate.  In re Prudential Lines, 107 B.R. at 838. Further, the court held that, because of the effect that it would have on the debtor subsidiary's ability to use its NOLs, the taking of a worthless stock deduction by the parent was an exercise of control over the debtor subsidiary's NOLs and thus over property of the debtor subsidiary's estate.  Id. at 842.  Therefore, such action was properly subject to the automatic stay under section 362 of the Bankruptcy Code.  Id.  See also Gibson v. United States (In re Russell), 927

---

9       Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

F.2d 413, 417 (8th Cir. 1991) (recognizing that NOL carryforwards are property of the estate);

Hanrahan v. Walterman (In re Walterman Implement Inc.), 05-07284, 2006 Bankr. LEXIS 921,

at *11-12 (Bankr. N.D. Iowa May 22, 2006) (holding that "Debtor's subchapter S status is

property of the estate" and that revoking the subchapter S election was a violation of the

automatic stay); Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.),

222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and

carryovers are property of the estate of the loss corporation that generated them."); In re Se.

Banking Corp., No. 91-14561, 1994 Bankr. LEXIS 2389, at *5 (Bankr. S.D. Fla. Jul. 21, 1994)

(debtor's interest in its NOLs "constitutes property of the estate within the scope of 11 U.S.C. §

541(a)(1) and is entitled to the protection of the automatic stay imposed pursuant to 11 U.S.C. §

362(a)(3)"); In re Cumberland Farms, Inc., 162 B.R. 62, 67 (Bankr. D. Mass. 1993) (finding that

the Second Circuit's Prudential Lines ruling on NOLs was analogous and persuasive in holding

that pass-through losses were property of the estate and were protected by the automatic stay); In

re Phar-Mor, Inc., 152 B.R. 924, 927 (Bankr. N.D. Ohio 1993) (carryforward NOLs held to be

property of the estate and protected by both the automatic stay and an injunction against the sale

of stock causing a reduction of the NOLs).

        36.    Because the Debtors' NOLs are property of their estates, this Court has the

authority under section 362 of the Bankruptcy Code to enforce the automatic stay by restricting

any Transfer of Equity Securities that could adversely impact the Debtors' ability to use this

valuable asset.  Courts ordering such relief generally have done so by imposing notice and

objection requirements regarding any proposed transfer of shares of a person whose holdings of

such shares exceed (or would exceed as a result of the proposed transfer), a certain threshold

amount.  See, e.g., In re Noranda Aluminum, No. 16-10083 (Bankr. E.D. Mo. Mar. 15, 2016)

(Docket No. 416) ("Noranda Order"); In re Arch Coal, Inc., No. 16-40120 (Bankr. E.D. Mo. Jan. 14, 2016) (Docket No. 92) ("Arch Coal Order"); accord In re Patriot Coal Corp., No. 15-32450 (Bankr. E.D. Va. June 4, 2015) (Docket No. 244) ("Patriot Coal Order"); In re James River Coal Co., No. 14-31848 (Bankr. E.D. Va. May 9, 2014) (Docket No. 244) ("James River Coal Order"); In re AMF Bowling Worldwide, Inc., No. 12-36495 (Bankr. E.D. Va. Nov. 14, 2012) (Docket No. 71) ("AMF Bowling Order"); In re Circuit City Stores, Inc., No. 08-35653 (Bankr. E.D. Va. Nov. 13, 2008) ("Circuit City Interim Order") (Docket No. 135); In re US Airways, Inc., No. 04-13819 (Bankr. E.D. Va. Apr. 1, 2005) (Docket No. 2034) ("US Airways Order"); In re Molycorp, Inc., No. 15-11357 (Bankr. D. Del. July 17, 2015) (Docket No. 226) ("Molycorp Order"); In re RadioShack Corp., No. 15-10197 (Bankr. D. Del. Feb. 9, 2015) (Docket No. 160) ("RadioShack Interim Order"); In re Overseas Shipholding Grp., Inc., No. 12-20000 (Bankr. D. Del. Dec. 7, 2012) (Docket No. 149) ("Overseas Shipholding Order"); In re VeraSun Energy Corp., No. 08-12606 (Bankr. D. Del. Dec. 3, 2008) (Docket No. 279) ("VeraSun Order"); In re NII Holdings, Inc., No 14-12611 (Bankr. S.D.N.Y. Oct. 22, 2014) (Docket No. 138) ("NII Holdings Order"); In re Legend Parent, Inc., No. 14-10701 (Bankr. S.D.N.Y. May 9, 2014) (Docket No. 194) ("Legend Parent Order"); In re Hawker Beechcraft, Inc., No. 12-11873 (Bankr. S.D.N.Y. June 27, 2012) (Docket No. 292) ("Hawker Beechcraft Order"); In re Eastman Kodak Co., No. 12-10202 (Bankr. S.D.N.Y. Feb. 15, 2012) (Docket No. 369) ("Eastman Kodak Order"); In re AMR Corp., No. 11-15463 (Bankr. S.D.N.Y. Jan. 27, 2012) (Docket No. 890) ("AMR Order"); In re Hostess Brands, Inc., No. 12-22052 (Bankr. S.D.N.Y. Jan. 27, 2012) (Docket No. 213) ("Hostess Brands Order").[10]

[10]    Unreported orders cited herein are not attached to this Motion.  Copies of these orders will be made available to the Court or other parties upon request made to the Debtors' counsel.

19

37.     Courts in this District and elsewhere have granted relief similar to that requested herein with respect to equity security transfers in other chapter 11 cases.  See, e.g., Noranda Order; Arch Coal Order; accord In re Alpha Natural Res., Inc., No. 15-33896 (Bankr. E.D. Va. Aug. 5, 2015 and Sept. 17, 2015) (Docket Nos. 97 and 475) ("Alpha Orders"); In re Am. Apparel, Inc., No. 15-12055 (Bankr. D. Del. Oct. 30, 2015) (Docket No. 226) ("American Apparel Order"); Patriot Coal Order; James River Coal Order; AMF Bowling Order; US Airways Order; Molycorp Order; RadioShack Interim Order; Overseas Shipholding Order; In re Nortel Networks Inc., No. 09-10138 (Bankr. D. Del. Feb. 5, 2009) (Docket No. 235) ("Nortel Order"); VeraSun Order; NII Holdings Order; Legend Parent Order; Hawker Beechcraft Order; AMR Order; Hostess Brands Order.

38.     Additionally, bankruptcy courts in other districts have granted relief similar to that requested herein with respect to the establishment of a record date for notice and sell-down procedures for trading in claims.  See, e.g., Alpha Orders; American Apparel Order; Circuit City Interim Order; Molycorp Order; RadioShack Interim Order; Overseas Shipping Order; NII Holdings Order; Nortel Order; Eastman Kodak Order; AMR Order; In re Borders Grp., Inc., No. 11-10614 (Bankr. S.D.N.Y. Mar. 16, 2011) (Docket No, 398); In re Dana Corp., No. 06-10354 (Bankr. S.D.N.Y. Aug. 9, 2006) (Docket No. 2772).

***The Significance of the Debtors' NOLs***

39.     The Debtors' NOLs are a valuable asset of their estates, and their availability will facilitate the Debtors' successful reorganization.  The Debtors' ability to use their NOLs, however, could be severely limited under sections 382 and 383 of the IRC as a result of Transfers of Equity Securities (including Options to acquire stock) of the Debtors prior to consummation of a Plan or qualifying asset sale.

40.     The Equity Transfer Procedures are designed to protect the Debtors from losing the benefit of all or any portion of their NOLs in connection with Transfers of Equity Securities (including Options to acquire stock) that may (a) trigger an ownership change not within the scope of sections 382(l)(5) or 382(l)(6) of the IRC; (b) preclude the Debtors from taking advantage of the more favorable NOL utilization rules under sections 382(l)(5) or 382(l)(6) of the IRC; or (c) severely limit the Debtors' ability to use their NOLs to shelter any taxable income or gain resulting from any sale of assets in the course of these chapter 11 cases. The Debtors require a mechanism to monitor and possibly object to ownership changes resulting from Transfers of Equity Securities (including Options to acquire stock) and/or loss of eligibility for the Section 382(l)(5) Safe Harbor resulting from trading in Claims in order to be able to craft a Plan that permits the Debtors to use their NOLs to the fullest extent possible to reduce federal income taxes on their post-reorganization income or to shelter any taxable income or gain resulting from any sale of assets, thereby maximizing value for all stakeholders.

41.     Moreover, it is in the best interests of the Debtors, their estates and their stakeholders to restrict Transfers of Equity Securities (including Options to acquire stock) that could result in an ownership change and to establish the Record Date with respect to trading in Claims.  Transfers of Equity Securities are limited only for parties who are or might become 4.5% shareholders.  Because Transfers of Equity Securities by or into the hands of 5% shareholders could trigger an ownership change that would impose a severe limitation on the Debtors' use of their NOLs on an annual basis, such Transfers also pose a threat to the value of their NOLs even if the Debtors later satisfied the requirements of sections 382(l)(5) or 382(l)(6) of the IRC in connection with a second ownership change resulting from a Plan or qualifying asset sale.  An ownership change must occur pursuant to consummation of a Plan or qualifying

21

asset sale in order for the Debtors to qualify for the Section 382(l)(5) Safe Harbor and/or for the favorable valuation rules of section 382(l)(6) of the IRC.

42.    Thus, in all circumstances, it is in the best interests of the Debtors, their estates and their creditors to grant the requested relief so as to prevent an unintended ownership change.

***Interim Relief Is Necessary to Avoid Irreparable Harm to the Debtors***

43.    Once an NOL is limited under section 382 or 383 of the IRC, its use is limited forever, and once an equity interest is transferred, it cannot be undone.  The relief sought herein is necessary to avoid an irrevocable loss of the Debtors' NOLs and the irreparable harm that could be caused by unfettered Transfers of Equity Securities, which, unmonitored, could jeopardize the Debtors' ability to offset taxable income with their NOLs, thereby risking the Debtors' ability to increase liquidity.

44.    Unless the Record Date is established immediately, it is unlikely that the Debtors would be able to implement the Sell-Down Procedures in any effective fashion to enable them to maximize the value of their NOLs.  Whether or not the Debtors seek, and the Court ultimately enters, a Sell-Down Order, setting the Record Date now is essential to adequately protect the Debtors' option to choose to preserve the value of their NOLs without affecting any parties in interest.

45.    Accordingly, the Debtors submit that, absent the interim relief granted in the Interim Order, the Debtors and their estates could suffer immediate and irreparable harm. If the Court does not grant the relief sought in this Motion on an interim basis, holders of Equity Securities could transfer such securities before the protective restrictions herein are implemented by the Court, and the Record Date would not be established for purposes of trading in Claims,

risking the Debtors' ability to use their NOLs to maximize value and benefit their estates.
Therefore, the Debtors request that the procedures described herein be approved immediately on
an interim basis.

### The Equity Transfer Procedures and Record Date Notice Are Narrowly Tailored

46.    The establishment of the Equity Transfer Procedures will not bar all
Transfers of Equity Securities, only those types of Transfers that pose a serious risk to the
Debtors' NOLs under the section 382 ownership change test.  Further, the procedures will be in
effect only during the pendency of these chapter 11 cases.  As such, the requested relief is
narrowly tailored to allow the Debtors to preserve their ability to seek substantive relief if it
appears that a proposed Transfer will jeopardize the use of their NOLs.  The Equity Transfer
Procedures would otherwise permit Transfers of Equity Securities to continue unaffected, subject
to applicable law.[11]

47.    As discussed above, the Equity Transfer Procedures are necessary to
preserve the value of the Debtors' NOLs.  But those procedures may not be sufficient if, pursuant
to a confirmed Plan or a qualifying asset sale, (a) creditors receive sufficient equity to trigger an
"ownership change" under section 382 of the IRC and (b) the Debtors are unable to utilize the
Section 382(l)(5) Safe Harbor.  To avoid that scenario, the Debtors may need to seek the entry of
a Sell-Down Order.  In the meantime, the Debtors need to be able to set and provide notice of the
Record Date to give all creditors who may be subject to Sell-Down Procedures advance notice
and ensure that the value of the Debtors' NOLs will be preserved.

---

[11]    Nothing herein is intended to excuse compliance with the Rule 3001(e) of the Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules") regarding the transfer of claims or any other applicable law.

48.     Approval of the proposed Record Date does not constitute approval of the Sell-Down Procedures and does not restrict trading in Claims.  Importantly, the Interim Order will not impose a burden on any person or entity because it is designed to provide notice to claimholders and claims traders (a) of the Record Date; (b) that the Threshold Amounts will be measured as of the Record Date; and (c) that their Claims may ultimately be subject to sell-down if the Debtors determine that a Sell-Down Order is necessary to preserve the value of their NOLs. If the Debtors do later determine that a Sell-Down Order is necessary, the Debtors will file a separate motion requesting the entry of a Sell-Down Order applicable to certain Claims traded on or after the Record Date.

### Request for Immediate Relief and Waiver of Stay

49.     Pursuant to Bankruptcy Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek entry of orders granting the relief requested by this Motion on an interim and final basis and, to the extent it applies, a waiver of any stay of the effectiveness of such orders.

50.     Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting … a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate including a motion to pay all or part of a claim that arose before the filing of the petition." Fed. R. Bankr. P. 6003(b).  In other words, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may authorize the relief prior to the twenty second day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the

expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

51.    As set forth above and in the First Day Declaration, it is vital that court grant the relief requested herein and the Debtors submit that ample cause exists to justify: (a) the immediate entry of an Interim Order granting the interim relief sought herein pursuant to Bankruptcy Rule 6003(b), to the extent that it applies; and (b) a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies, with respect to the order.

**Notice**

52.    Notice of this Motion has been given to: (a) Davis Polk & Wardwell LLP, as counsel to Citibank, N.A. as Administrative Agent for the First Lien Secured Credit Facility and the Debtors' proposed debtor in possession secured credit facility; (b) Brown Rudnick LLP, as counsel to Wilmington Savings Fund Society, FSB as prospective trustee and collateral agent for the Secured Second Lien Notes; (c) Foley & Lardner LLP, as counsel to Wilmington Trust Company as prospective Indenture Trustee for the Unsecured Notes;[12] (d) Robinson & Cole LLP, as counsel to U.S. Bank as resigning trustee and collateral agent for the Second Lien Notes, the Unsecured Notes and the Convertible Notes;[13] (f) the Debtors' 50 largest unsecured creditors; (g) Mayer Brown LLP, as counsel to PNC Bank, N.A., as Administrator under the Debtors' prepetition accounts receivable securitization facility; (h) the United Mine Workers of America; (i) the Internal Revenue Service; (j) the Internal Revenue Service; (k) the Securities and Exchange Commission; (l) the United States Department of the Interior; (m) the United States

---

[12]    These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due September 2020; (iii) 6.25% Senior Notes due September 2021; and the (iv) 7.875% Senior Notes due November 2026.

[13]    These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due September 2020; (iii) 6.25% Senior Notes due September 2021; (iv) 7.875% Senior Notes due November 2026; and the (v) Convertible Junior Subordinated Debentures due December 2066.

Department of Labor; (n) the United States Attorney's Office for the Eastern District of Missouri; and (o) Pension Benefit Guaranty Corporation (collectively, the "<u>Notice Parties</u>").  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## <u>No Prior Request</u>

53.    No prior request for the relief sought in this Motion has been made to this or any other Court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that the Court:  (i) enter an interim order, substantially in the form Interim Order submitted to the Court, granting the relief requested herein on an interim basis; (ii) to the extent necessary, enter a final order, substantially in the form Final Order submitted to the Court, granting the relief requested herein; and (iii) grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated: April 13, 2016                              Respectfully submitted,
       St. Louis, Missouri


                                                    /s/ Steven N. Cousins
                                                   Steven N. Cousins, MO 30788
                                                   Susan K. Ehlers, MO 49855
                                                   Armstrong Teasdale LLP
                                                   7700 Forsyth Boulevard, Suite 1800
                                                   St. Louis, MO  63105
                                                   Telephone:  (314) 621-5070
                                                   Facsimile:  (314) 621-2239
                                                   Email  scousins@armstrongteasdale.com
                                                   Email:  sehlers@armstrongteasdale.com

                                                   Heather Lennox (*pro hac vice* pending)
                                                   Jones Day
                                                   North Point
                                                   901 Lakeside Avenue
                                                   Cleveland, OH  44114
                                                   Telephone:  (216) 586-3939
                                                   Facsimile:  (216) 579-0212
                                                   Email:  hlennox@jonesday.com

                                                   Amy Edgy (*pro hac vice* pending)
                                                   Daniel T. Moss (*pro hac vice* pending)
                                                   Jones Day
                                                   51 Louisiana Avenue, N.W.
                                                   Washington, D.C.  20001-2113
                                                   Telephone:  (202) 879-3939
                                                   Facsimile:  (202) 626-1700
                                                   Email:  aedgy@jonesday.com
                                                   Email:  dtmoss@jonesday.com

                                                   *Proposed Attorneys for Debtors*
                                                   *and Debtors in Possession*

## SCHEDULE 1

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 1. | Peabody Energy Corporation | 13-4004153 |
| 2. | American Land Development, LLC | 20-3405570 |
| 3. | American Land Holdings of Colorado, LLC | 26-3730572 |
| 4. | American Land Holdings of Illinois, LLC | 30-0440127 |
| 5. | American Land Holdings of Indiana, LLC | 20-2514299 |
| 6. | American Land Holdings of Kentucky, LLC | 20-0766113 |
| 7. | American Land Holdings of New Mexico, LLC | 32-0478983 |
| 8. | American Land Holdings of West Virginia, LLC | 20-5744666 |
| 9. | Arid Operations, Inc. | 84-1199578 |
| 10. | Big Ridge, Inc. | 37-1126950 |
| 11. | Big Sky Coal Company | 81-0476071 |
| 12. | Black Hills Mining Company, LLC | 32-0049741 |
| 13. | BTU Western Resources, Inc. | 20-1019486 |
| 14. | Caballo Grande, LLC | 27-1773243 |
| 15. | Caseyville Dock Company, LLC | 20-8080107 |
| 16. | Central States Coal Reserves of Illinois, LLC | 43-1869432 |
| 17. | Central States Coal Reserves of Indiana, LLC | 20-3960696 |
| 18. | Century Mineral Resources, Inc. | 36-3925555 |
| 19. | Coal Reserve Holding Limited Liability Company No. 1 | 43-1922737 |
| 20. | COALSALES II, LLC | 43-1610419 |
| 21. | Colorado Yampa Coal Company, LLC | 95-3761211 |
| 22. | Conservancy Resources, LLC | 20-5744701 |
| 23. | Cottonwood Land Company | 43-1721982 |
| 24. | Cyprus Creek Land Company | 73-1625890 |
| 25. | Cyprus Creek Land Resources LLC | 75-3058264 |
| 26. | Dyson Creek Coal Company, LLC | 43-1898526 |
| 27. | Dyson Creek Mining Company, LLC | 20-8080062 |
| 28. | El Segundo Coal Company, LLC | 20-8162824 |
| 29. | Empire Land Holdings, LLC | 61-1742786 |
| 30. | Falcon Coal Company, LLC | 35-2006760 |
| 31. | Four Star Holdings, LLC | 30-0885825 |
| 32. | Francisco Equipment Company, LLC | 37-1805119 |
| 33. | Francisco Land Holdings Company, LLC | 36-4831111 |
| 34. | Francisco Mining, LLC | 30-0922117 |
| 35. | Gallo Finance Company, LLC | 43-1823616 |
| 36. | Gold Fields Chile, LLC | 13-3004607 |
| 37. | Gold Fields Mining, LLC | 36-2079582 |
| 38. | Gold Fields Ortiz, LLC | 22-2204381 |
| 39. | Hayden Gulch Terminal, LLC | 86-0719481 |
| 40. | Highwall Mining Services Company | 20-0010659 |
| 41. | Hillside Recreational Lands, LLC | 32-0214135 |
| 42. | HMC Mining, LLC | 43-1875853 |
| 43. | Illinois Land Holdings, LLC | 26-1865197 |
| 44. | Independence Material Handling, LLC | 43-1750064 |
| 45. | James River Coal Terminal, LLC | 55-0643770 |
| 46. | Juniper Coal Company, LLC | 43-1744675 |
| 47. | Kayenta Mobile Home Park, Inc. | 86-0773596 |
| 48. | Kentucky Syngas, LLC | 26-1156957 |
| 49. | Kentucky United Coal, LLC | 35-2088769 |
| 50. | Lively Grove Energy, LLC | 20-5752800 |
| 51. | Lively Grove Energy Partners, LLC | 26-0180403 |
| 52. | Marigold Electricity, LLC | 26-0180352 |
| 53. | Midco Supply and Equipment Corporation | 43-6042249 |
| 54. | Midwest Coal Acquisition Corp. | 20-0217640 |
| 55. | Midwest Coal Reserves of Illinois, LLC | 20-3960648 |

-1-

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 56. | Midwest Coal Reserves of Indiana, LLC | 20-3405958 |
| 57. | Midwest Coal Reserves of Kentucky, LLC | 20-3405872 |
| 58. | Moffat County Mining, LLC | 74-1869420 |
| 59. | Mustang Energy Company, LLC | 43-1898532 |
| 60. | New Mexico Coal Resources, LLC | 20-3405643 |
| 61. | NM Equipment Company, LLC | 36-4821991 |
| 62. | Pacific Export Resources, LLC | 27-5135144 |
| 63. | Peabody America, LLC | 93-1116066 |
| 64. | Peabody Archveyor, L.L.C. | 43-1898535 |
| 65. | Peabody Arclar Mining, LLC | 31-1566354 |
| 66. | Peabody Asset Holdings, LLC | 20-3367333 |
| 67. | Peabody Bear Run Mining, LLC | 26-3582291 |
| 68. | Peabody Bear Run Services, LLC | 26-3725923 |
| 69. | Peabody Caballo Mining, LLC | 83-0309633 |
| 70. | Peabody Cardinal Gasification, LLC | 20-5047955 |
| 71. | Peabody China, LLC | 43-1898525 |
| 72. | Peabody Coalsales, LLC | 20-1759740 |
| 73. | Peabody COALTRADE International (CTI), LLC | 20-1435716 |
| 74. | Peabody COALTRADE, LLC | 43-1666743 |
| 75. | Peabody Colorado Operations, LLC | 20-2561644 |
| 76. | Peabody Colorado Services, LLC | 26-3723774 |
| 77. | Peabody Coulterville Mining, LLC | 20-0217834 |
| 78. | Peabody Development Company, LLC | 43-1265557 |
| 79. | Peabody Electricity, LLC | 20-3405744 |
| 80. | Peabody Employment Services, LLC | 26-3730348 |
| 81. | Peabody Energy Generation Holding Company | 73-1625891 |
| 82. | Peabody Energy Investments, Inc. | 68-0541702 |
| 83. | Peabody Energy Solutions, Inc. | 43-1753832 |
| 84. | Peabody Gateway North Mining, LLC | 27-2294407 |
| 85. | Peabody Gateway Services, LLC | 26-3724075 |
| 86. | Peabody Holding Company, LLC | 74-2666822 |
| 87. | Peabody Holdings (Gibraltar) Limited | 20-5543587 |
| 88. | Peabody IC Funding Corporation | 46-2326991 |
| 89. | Peabody IC Holdings, LLC | 30-0829603 |
| 90. | Peabody Illinois Services, LLC | 26-3722638 |
| 91. | Peabody Indiana Services, LLC | 26-3724339 |
| 92. | Peabody International Investments, Inc. | 26-1361182 |
| 93. | Peabody International Services, Inc. | 20-8340434 |
| 94. | Peabody Investments Corp. | 20-0480084 |
| 95. | Peabody Magnolia Grove Holdings, LLC | 61-1683376 |
| 96. | Peabody Midwest Management Services, LLC | 26-3726045 |
| 97. | Peabody Midwest Mining, LLC | 35-1799736 |
| 98. | Peabody Midwest Operations, LLC | 20-3405619 |
| 99. | Peabody Midwest Services, LLC | 26-3722194 |
| 100. | Peabody Mongolia, LLC | 20-8714315 |
| 101. | Peabody Natural Gas, LLC | 43-1890836 |
| 102. | Peabody Natural Resources Company | 51-0332232 |
| 103. | Peabody New Mexico Services, LLC | 20-8162939 |
| 104. | Peabody Operations Holding, LLC | 26-3723890 |
| 105. | Peabody Powder River Mining, LLC | 43-0996010 |
| 106. | Peabody Powder River Operations, LLC | 20-3405797 |
| 107. | Peabody Powder River Services, LLC | 26-3725850 |
| 108. | Peabody PowerTree Investments, LLC | 20-0116980 |
| 109. | Peabody Recreational Lands, L.L.C. | 43-1898382 |
| 110. | Peabody Rocky Mountain Management Services, LLC | 26-3725390 |
| 111. | Peabody Rocky Mountain Services, LLC | 20-8162706 |
| 112. | Peabody Sage Creek Mining, LLC | 26-3730653 |
| 113. | Peabody School Creek Mining, LLC | 20-3585831 |

|  | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 114. | Peabody Services Holdings, LLC | 26-3726126 |
| 115. | Peabody Southwest, LLC | 20-5744732 |
| 116. | Peabody Southwestern Coal Company, LLC | 43-1898372 |
| 117. | Peabody Terminal Holding Company, LLC | 26-1087861 |
| 118. | Peabody Terminals, LLC | 31-1035824 |
| 119. | Peabody Trout Creek Reservoir LLC | 30-0746873 |
| 120. | Peabody Twentymile Mining, LLC | 26-3725223 |
| 121. | Peabody Venezuela Coal Corp. | 43-1609813 |
| 122. | Peabody Venture Fund, LLC | 20-3405779 |
| 123. | Peabody-Waterside Development, L.L.C. | 75-3098342 |
| 124. | Peabody Western Coal Company | 86-0766626 |
| 125. | Peabody Wild Boar Mining, LLC | 26-3730759 |
| 126. | Peabody Wild Boar Services, LLC | 26-3725591 |
| 127. | Peabody Williams Fork Mining, LLC | 20-8162742 |
| 128. | Peabody Wyoming Gas, LLC | 20-5744610 |
| 129. | Peabody Wyoming Services, LLC | 26-3723011 |
| 130. | PEC Equipment Company, LLC | 20-0217950 |
| 131. | PG INVESTMENTS SIX, L.L.C. | 43-1898530 |
| 132. | Point Pleasant Dock Company, LLC | 20-0117005 |
| 133. | Pond River Land Company | 73-1625893 |
| 134. | Porcupine Production, LLC | 43-1898379 |
| 135. | Porcupine Transportation, LLC | 43-1898380 |
| 136. | Riverview Terminal Company | 13-2899722 |
| 137. | Sage Creek Holdings, LLC | 26-3286872 |
| 138. | Sage Creek Land & Reserves, LLC | 38-3936826 |
| 139. | School Creek Coal Resources, LLC | 20-2902073 |
| 140. | Seneca Coal Company, LLC | 84-1273892 |
| 141. | Seneca Property, LLC | 36-4820253 |
| 142. | Shoshone Coal Corporation | 25-1336898 |
| 143. | Southwest Coal Holdings, LLC | 37-1794829 |
| 144. | Star Lake Energy Company, L.L.C. | 43-1898533 |
| 145. | Sugar Camp Properties, LLC | 35-2130006 |
| 146. | Thoroughbred Generating Company, L.L.C. | 43-1898534 |
| 147. | Thoroughbred Mining Company LLC. | 73-1625889 |
| 148. | Twentymile Coal, LLC | 95-3811846 |
| 149. | Twentymile Equipment Company, LLC | 38-3982017 |
| 150. | Twentymile Holdings, LLC | 38-3937156 |
| 151. | United Minerals Company, LLC | 35-1922432 |
| 152. | West Roundup Resources, LLC | 20-2561489 |
| 153. | Wild Boar Equipment Company, LLC | 32-0488114 |
| 154. | Wild Boar Land Holdings Company, LLC | 36-4831131 |

## **Exhibit A**

**Equity Transfer Procedures Notice**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>Peabody Energy Corporation, <u>et al.</u>,<br><br>           Debtors. | Case No. 16-42529<br>CHAPTER 11<br><br>(Jointly Administered)<br><br>Related to Docket No. ___ |

**NOTICE OF (A) ENTRY OF AN INTERIM ORDER**
**ESTABLISHING EQUITY TRANSFER PROCEDURES**
**AND (B) HEARING TO CONSIDER ENTRY OF**
**<u>FINAL ORDER ON EQUITY TRANSFER PROCEDURES</u>**

**TO ALL PERSONS OR ENTITIES WITH**
**EQUITY INTERESTS IN PEABODY ENERGY CORPORATION ("<u>PEC</u>"):**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On ___ __, 2016 (the "<u>Petition Date</u>"), PEC and its debtor affiliates commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

2.      On ___ __, 2016, the above-captioned debtors (collectively, the "<u>Debtors</u>") filed their Motion of Debtors and Debtors in Possession, Pursuant to Sections 105(a), 362 and 541 of the Bankruptcy Code, for Entry of Interim and Final Orders:  (I) Establishing Notice and Objection Procedures for Transfers of Equity Securities; (II) Establishing a Record Date for Notice and Sell-Down Procedures for Trading in Claims Against the Debtors' Estates; and (III) Granting Related Relief (the "<u>Motion</u>").

3.      On _____, 2016, the United States Bankruptcy Court for the Eastern District of Missouri (the "<u>Court</u>") entered an interim order (the "<u>Interim Order</u>") approving the procedures set forth below (the "<u>Equity Transfer Procedures</u>") with respect to

transfers of equity securities in PEC (such securities, "Equity Securities") and setting a record

date (the "Record Date") with respect to trading in claims against the Debtors, to assist the

Debtors in preserving certain tax benefits, including expected net operating losses (collectively,

"NOLs").  **Any purchase, sale, trade or other transfer of Equity Securities (including**

**Options (as such term is defined below) to acquire stock) in PEC in violation of the Equity**

**Transfer Procedures set forth below shall be null and void <u>ab initio</u> as an act in violation of**

**the automatic stay under section 362 of the Bankruptcy Code, and shall confer no rights on**

**the transferee.**

4.      A final hearing to consider the relief requested in the Motion and the entry

of an order (the "Final Order") implementing the Equity Transfer Procedures on a final and

permanent basis will be held on _____, 2016 at _____ _.m. Central Time before

the Honorable _____ in the United States Bankruptcy Court for the Eastern District of

Missouri, Courtroom ____, 111 S. 10th Street, 4th Floor, St. Louis, MO  63102.

5.      Any objection to the granting of the relief requested by the Motion on a

final basis shall be filed with the Court by_____, 2016 (the "Objection Deadline"),

and served, so as to be received by the Objection Deadline, upon:  (a) the Office of the United

States Trustee for the Eastern District of Missouri, 111 South 10th Street, Suite 6.353, St. Louis,

MO  63102 (Attn: Paul Randolph, Esq.); (b) (i) the Debtors, c/o Peabody Energy Corporate

Headquarters, Peabody Plaza, 701 Market St., St. Louis, MO  63101-1826 (Attn: Scott T. Jarboe,

Esq., Vice President and Deputy General Counsel Corporate and Capital Markets); (ii) Jones

Day, North Point, 901 Lakeside Avenue, Cleveland, OH  44114 (Attn:  Heather Lennox, Esq.);

(iii) Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C.  20001 (Attn: Amy Edgy, Esq.

and Daniel T. Moss, Esq.); (iv) Armstrong Teasdale LLP, 7700 Forsyth Boulevard, Suite 1800,

-2-

St. Louis, MO, 63105 (Attn: Steven N. Cousins, Esq. and Susan K. Ehlers, Esq.); (c) (i) Davis

Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Damian S.

Schaible, Esq. and Angela M. Libby, Esq.) and (ii) Bryan Cave LLP, 211 N. Broadway, Suite

3600, St. Louis, Missouri 63102 (Attn: Laura Uberti Hughes, Esq.), as counsel to Citibank, N.A.

as Administrative Agent for the First Lien Secured Credit Facility and the Debtors' proposed

debtor in possession secured credit facility; (d) Brown Rudnick LLP, as counsel to Wilmington

Savings Fund Society, FSB as prospective trustee and collateral agent for the Secured Second

Lien Notes; (e) Foley & Lardner LLP, as counsel to Wilmington Trust Company as prospective

Indenture Trustee for the Unsecured Notes;[1] (f) Robinson & Cole LLP, as counsel to U.S. Bank

as resigning trustee and collateral agent for the Second Lien Notes, the Unsecured Notes and the

Convertible Notes;[2] (g) counsel to PNC Bank, N.A., as Administrator under the Debtors'

prepetition accounts receivable securitization facility; (h) counsel to any ad hoc committees; and

(i) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.

      6.      Pursuant to the Interim Order, the following Equity Transfer Procedures

shall apply to holding and transferring beneficial interests in Equity Securities in PEC:

      a.      <u>Certain Defined Terms</u>.  For purposes of the Interim Order and this Notice:
(i) a "<u>Substantial Equityholder</u>" is any person or entity that Beneficially
Owns (as defined below) at least 833,852 shares (representing
approximately 4.5% of the 18,530,028 issued and outstanding shares) of
PEC; (ii) "<u>Beneficial Ownership</u>" of Equity Securities shall be determined
in accordance with applicable rules under section 382 of the Internal
Revenue Code of 1986, as amended and the regulations promulgated
thereunder and shall include (a) direct and indirect ownership (<u>e.g.</u>, a

---

[1]     These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due
September 2020; (iii) 6.25% Senior Notes due September 2021; and the (iv) 7.875% Senior Notes due
November 2026.

[2]     These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due
September 2020; (iii) 6.25% Senior Notes due September 2021; (iv) 7.875% Senior Notes due
November 2026; and the (v) Convertible Junior Subordinated Debentures due December 2066.

holding company would be considered to Beneficially Own all shares owned or acquired by its subsidiaries), (b) ownership by such holder's family members and persons or entities acting in concert with such holder to make a coordinated acquisition of stock and (c) ownership of Options (as defined below) to acquire stock; (iii) an "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, exchangeable shares, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable; and (iv) a "Transfer" means any transfer of Equity Securities to the extent described in paragraph 7(c) below and/or paragraph 7(d) below.

b.    Notice of Substantial Equityholder Status.  Any person or entity who currently is or becomes a Substantial Equityholder shall (i) file with the Court and (ii) serve upon:  (a) the Debtors, c/o Peabody Energy Corporation, 701 Market Street, St. Louis, MO  63101) (Attn:  Scott T. Jarboe, Esq., Vice President and Deputy General Counsel Corporate and Capital Markets); (b) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, OH 44114 (Attn:  Heather Lennox, Esq.); (c) Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C.  20001 (Attn:  Amy Edgy, Esq and Daniel T. Moss, Esq.); and (d) Armstrong Teasdale LLP, 7700 Forsyth Boulevard, Suite 1800, St. Louis, MO  63105 (Attn:  Steven N. Cousins, Esq. and Susan K. Ehlers, Esq.), a notice of such status (a "Notice of Substantial Equityholder Status"), in the form attached hereto as Annex 1, on or before the later of (i) 14 days after entry of the Interim Order or (ii) 14 days after becoming a Substantial Equityholder.

c.    Stock Acquisition Notice.  At least 28 days prior to any transfer of Equity Securities (including any transfer of Options to acquire stock or any exercise thereof) that would result in an increase in the amount of Equity Securities Beneficially Owned by a Substantial Equityholder or would result in a person or entity becoming a Substantial Equityholder, such Substantial Equityholder or potential Substantial Equityholder shall (i) file with the Court and (ii) serve on the Debtors and counsel to the Debtors (at the addresses set forth in paragraph 7(b) above) advance written notice of the intended transfer of Equity Securities (a "Stock Acquisition Notice"), in the form attached hereto as Annex 2.

d.    Stock Disposition Notice.  At least 28 days prior to any transfer of Equity Securities (including Options to acquire stock) that would result in a decrease in the amount of Equity Securities Beneficially Owned by a Substantial Equityholder or would result in a person or entity ceasing to be a Substantial Equityholder, such Substantial Equityholder shall (i) file with the Court and (ii) serve on the Debtors and counsel to the Debtors (at the addresses set forth in paragraph 7(b) above) advance written notice of the intended transfer of Equity Securities (a "Stock Disposition Notice"), in the form attached hereto as Annex 3.

    e.    <u>Objection Procedures</u>.  The Debtors shall have 21 days after receipt of a Stock Acquisition Notice or a Stock Disposition Notice (each, a "<u>Transfer Notice</u>") to file with the Court and serve on the party filing the Transfer Notice an objection to the proposed Transfer on the grounds that such Transfer may adversely affect the Debtors' ability to utilize their NOLs.  If the Debtors file an objection, the proposed Transfer will not be effective unless and until approved by a final and nonappealable order of this Court.  If the Debtors do not object within such 21-day period, the Transfer may proceed solely as set forth in the Transfer Notice.  Further Transfers within the scope of this paragraph must comply with the Equity Transfer Procedures set forth in this paragraph 7(e).

    f.    <u>Unauthorized Transfers of Equity Securities</u>.  Effective as of the Petition Date and until further order of this Court to the contrary, any acquisition or disposition of Equity Securities (including Options to acquire stock) in violation of the Equity Transfer Procedures shall be null and void <u>ab</u> <u>initio</u> as an act in violation of the automatic stay under section 362 of the Bankruptcy Code.

    g.    <u>Special Rules</u>.  A person acquiring or disposing of Equity Securities in the capacity of agent of another person shall not be treated as a Substantial Equityholder solely to the extent that person is acting in the capacity of an agent, and shall not have an affirmative duty to inquire whether the account, customer, investment fund, principal, trust or beneficiary is subject to any restrictions or requirements under the Interim Order or the Final Order; <u>provided</u>, <u>however</u>, that the account, customer, fund, principal, trust or beneficiary shall not be excluded from the Interim Order or the Final Order by reason of this subsection.

**FAILURE TO FOLLOW THE PROCEDURES SET FORTH IN THIS NOTICE AND IN THE INTERIM ORDER SHALL CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE.  ANY PROHIBITED PURCHASE, SALE, TRADE OR OTHER TRANSFER OF EQUITY SECURITIES (INCLUDING OPTIONS TO ACQUIRE STOCK) OF PEC IN VIOLATION OF THE INTERIM ORDER WILL BE NULL AND VOID <u>AB</u> <u>INITIO</u> AND MAY RESULT IN THE IMPOSITION OF SANCTIONS BY THE BANKRUPTCY COURT.**

    7.    Any of the Debtors may waive in writing, and in their sole and absolute discretion, any and all restrictions, stays and notice procedures contained in the Interim Order.

    8.    Complete copies of the Motion and the Interim Order are available via PACER via the Court's website at https://ecf.moeb.uscourts.gov for a fee, or through the Debtors' Notice, Claims and Solicitation Agent, Kurtzman Carson Consultants, LLC ("<u>KCC</u>"), by

accessing their website at http:www.kcclc.net/Peabody, or by calling (a) a U.S.-based call center at (i) 866-967-1783 (toll free) or (ii) 310-751-2683 if calling from outside the U.S. or Canada; or (b) an Australia-based call center at (i) 1300-386-742 or (ii) +61-3-9415-4613 if calling from outside of Australia.  If a hearing is held and a Final Order is entered, such Final Order will also be available as described in the preceding sentence.

9.     The requirements set forth in this Notice are in addition to the requirements of Rule 3001(e) of the Federal Rules of Bankruptcy Procedure and applicable law, and do not excuse compliance therewith.

Dated: _____
          St. Louis, Missouri

                                        _____
                                        Steven N. Cousins, MO 30788
                                        Susan K. Ehlers, MO 49855
                                        Armstrong Teasdale LLP
                                        7700 Forsyth Boulevard, Suite 1800
                                        St. Louis, MO  63105
                                        Telephone:  (314) 621-5070
                                        Facsimile:  (314) 621-2239
                                        Email  scousins@armstrongteasdale.com
                                        Email:  sehlers@armstrongteasdale.com

                                        Heather Lennox (*pro hac vice* pending)
                                        Jones Day
                                        North Point
                                        901 Lakeside Avenue
                                        Cleveland, OH  44114
                                        Telephone:  (216) 586-3939
                                        Facsimile:  (216) 579-0212
                                        Email:  hlennox@jonesday.com

                                        Amy Edgy (*pro hac vice* pending)
                                        Daniel T. Moss (*pro hac vice* pending)
                                        Jones Day
                                        51 Louisiana Avenue, N.W.
                                        Washington, D.C.  20001-2113
                                        Telephone:  (202) 879-3939
                                        Facsimile:  (202) 626-1700
                                        Email:  aedgy@jonesday.com
                                        Email:  dtmoss@jonesday.com

                                        *Proposed Attorneys for Debtors*
                                        *and Debtors in Possession*

## ANNEX 1 TO EQUITY TRANSFER PROCEDURES NOTICE

### Notice of Substantial Equityholder Status

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>Peabody Energy Corporation, <u>et al.</u>,<br><br>                    Debtors. | Case No. 16-42529<br>CHAPTER 11<br><br>(Jointly Administered)<br><br>Related to Docket No. ____ |

<u>**NOTICE OF SUBSTANTIAL EQUITYHOLDER STATUS**</u>

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.        **[Name of Equityholder]** is/has become a Substantial Equityholder[1] with

respect to the common stock (the "<u>Common Stock</u>") in Peabody Energy Corporation ("<u>PEC</u>"),

a debtor in Case No. 16-**[_____]**, pending in the United States Bankruptcy Court for the Eastern

District of Missouri (the "<u>Court</u>").

2.        As of _____ __, 20__, **[Name of Equityholder]** Beneficially Owns

_____ shares of the Common Stock of PEC.  The following table sets forth the date(s)

on which **[Name of Equityholder]** acquired or otherwise became the Beneficial Owner of such

Common Stock:

---

[1]        For purposes of this Notice:  (A) a "<u>Substantial Equityholder</u>" is any person or entity that Beneficially Owns (as defined below) at least 833,852 shares (representing approximately 4.5% of the 18,530,028 issued and outstanding shares of common stock) of PEC (as defined below); (B) "<u>Beneficial Ownership</u>" of equity securities shall be determined in accordance with applicable rules under section 382 of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder and shall include (i) direct and indirect ownership (<u>e.g.</u>, a holding company would be considered to Beneficially Own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons or entities acting in concert with such holder to make a coordinated acquisition of stock and (iii) ownership of Options (as defined below) to acquire stock; and (C) an "<u>Option</u>" to acquire stock includes any contingent purchase, warrant, convertible debt, exchangeable shares, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

| NUMBER OF SHARES OF COMMON STOCK | DATE ACQUIRED |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

(Attach additional page if necessary)

3.　　　　The last four digits of the taxpayer identification number of **[Name of Equityholder]** are _____.

4.　　　　Under penalty of perjury, **[Name of Equityholder]** hereby declares that it has examined this Notice and accompanying attachments (if any) and, to the best of its knowledge and belief, this Notice and any attachments that purport to be part of this Notice are true, correct and complete.

5.　　　　Pursuant to the **[Interim/Final]** Order establishing the Equity Transfer Procedures (as defined in the **[Interim/Final]** Order), this Notice is being (a) filed with the Court and (b) served upon: (i) the Debtors, c/o Peabody Energy Corporation, 701 Market Street, St. Louis, MO 63101 (Attn: Scott T. Jarboe, Esq., Vice President and Deputy General Counsel Corporate and Capital Markets); (ii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, OH 44114 (Attn: Heather Lennox, Esq.); (iii) Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C. 20001 (Attn: Amy Edgy, Esq. and Daniel T. Moss, Esq.); and (iv) Armstrong Teasdale LLP, 7700 Forsyth Boulevard, Suite 1800, St. Louis, MO 63105 (Attn: Steven. N. Cousins, Esq. and Susan K. Ehlers, Esq.).

-2-

Dated: _____          Respectfully submitted,
St. Louis, Missouri

_____
(Name of Equityholder)


By:      _____
Name:    _____
Title:   _____
Address: _____
         _____
         _____
Telephone: _____
Facsimile: _____

## ANNEX 2 TO EQUITY TRANSFER PROCEDURES NOTICE

**Stock Acquisition Notice**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>Peabody Energy Corporation, <u>et al.</u>,<br><br>          Debtors. | Case No. 16-42529<br>CHAPTER 11<br><br>(Jointly Administered)<br><br>Related to Docket No. ____ |

## <u>STOCK ACQUISITION NOTICE</u>

PLEASE TAKE NOTICE OF THE FOLLOWING:

      1.     **[Name of Prospective Acquirer]** hereby provides notice of its intention

to purchase, acquire or otherwise accumulate one or more shares of, or an Option with respect to

(or to exercise such an Option) (any such action, a "<u>Proposed Transfer</u>"), the common stock

(the "<u>Common Stock</u>") of Peabody Energy Corporation ("<u>PEC</u>"), a debtor in Case

No. 16-**[_____]** pending in the United States Bankruptcy Court for the Eastern District of

Missouri (the "<u>Court</u>").

      2.     If applicable, on **[Prior Date(s)]**, **[Name of Prospective Acquirer]** filed a

Notice of Substantial Equityholder Status[1] with the Court and served copies thereof on the

---

[1]    For purposes of this Notice:  (A) a "<u>Substantial Equityholder</u>" is any person or entity that Beneficially Owns (as defined below) at least 833,852 shares (representing approximately 4.5% of the 18,530,028 issued and outstanding shares of common stock) of PEC; (B) "<u>Beneficial Ownership</u>" of equity securities shall be determined in accordance with applicable rules under section 382 of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder and shall include (i) direct and indirect ownership (<u>e.g.</u>, a holding company would be considered to Beneficially Own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons or entities acting in concert with such holder to make a coordinated acquisition of stock and (iii) ownership of Options (as defined below) to acquire stock; and (C) an "<u>Option</u>" to acquire stock includes any contingent purchase, warrant, convertible debt, exchangeable shares, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Debtors'

counsel.

3.        **[Name of Prospective Acquirer]** currently Beneficially Owns

_____ shares of Common Stock of PEC.

4.        Pursuant to the Proposed Transfer, **[Name of Prospective Acquirer]**

proposes, as applicable, to purchase, acquire or otherwise accumulate _____ shares of

Common Stock or an Option (or to exercise such an Option) with respect to _____ shares

of Common Stock.  If the Proposed Transfer is permitted to occur, **[Name of Prospective**

**Acquirer]** will Beneficially Own _____ shares of Common Stock after the transfer

becomes effective.

5.        The last four digits of the taxpayer identification number of **[Name of**

**Prospective Acquirer]** are _____.

6.        Under penalty of perjury, **[Name of Prospective Acquirer]** hereby

declares that it has examined this Notice and accompanying attachments (if any) and, to the best

of its knowledge and belief, this Notice and any attachments which purport to be part of this

Notice are true, correct and complete.

7.        Pursuant to that certain **[Interim/Final]** Order establishing the Equity

Transfer Procedures (as defined in the **[Interim/Final]** Order), this Notice is being (a) filed with

the Court and (b) served upon:  (i) the Debtors, c/o Peabody Energy Corporation, 701 Market

Street, St. Louis, MO  63101 (Attn:  Scott T. Jarboe, Esq., Vice President and Deputy General

Counsel Corporate and Capital Markets); (ii) Jones Day, North Point, 901 Lakeside Avenue,

Cleveland, OH 44114 (Attn:  Heather Lennox, Esq.); (iii) Jones Day, 51 Louisiana Avenue,

N.W., Washington, D.C.  20001 (Attn:  Amy Edgy, Esq. and Daniel T. Moss, Esq.); and

(iv) Armstrong Teasdale LLP, 7700 Forsyth Boulevard, Suite 1800, St. Louis, MO  63105

(Attn:  Steven. N. Cousins, Esq. and Susan K. Ehlers, Esq.).

8.     The Debtors have 21 days after receipt of this Notice to object to the Proposed Transfer described herein.  If the Debtors file an objection, such Proposed Transfer will not be effective unless approved by a final and nonappealable order of the Court.  If the Debtors do not object within such 21-day period, then after expiration of such period the Proposed Transfer may proceed solely as set forth in this Notice.

9.     The undersigned Prospective Acquirer understands that any further transactions that may result in **[Name of Prospective Acquirer]** purchasing, acquiring, or otherwise accumulating additional shares of Common Stock or an Option (or exercising such an Option) will each require an additional notice to be filed with the Court and served in the same manner as this Notice.

Date: _____          Respectfully submitted,
      St. Louis, Missouri

                                _____
                                (Name of Prospective Acquirer)

                                By:  _____
                                     Name:_____
                                     Title:_____
                                Address:  _____
                                          _____
                                          _____
                                Telephone:  _____
                                Facsimile:  _____

## <u>ANNEX 3 TO EQUITY TRADING PROCEDURES NOTICE</u>

**Stock Disposition Notice**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>Peabody Energy Corporation, <u>et al.</u>,<br><br>Debtors. | Case No. 16-42529<br>CHAPTER 11<br><br>(Jointly Administered)<br><br>Related to Docket No. ____ |

**<u>STOCK DISPOSITION NOTICE</u>**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      **[Name of Prospective Seller]**, a Substantial Equityholder,[1] hereby

provides notice of its intention to sell, trade or otherwise transfer one or more shares of the

common stock (the "<u>Common Stock</u>"), or an Option with respect thereto  (any such action,

a "<u>Proposed Transfer</u>"), of Peabody Energy Corporation ("<u>PEC</u>"), a debtor in Case

No. 16-**[_____]** pending in the United States Bankruptcy Court for the Eastern District of

Missouri (the "<u>Court</u>").

2.      If applicable, on **[Prior Date(s)]**, **[Name of Prospective Seller]** filed a

Notice of Substantial Equityholder Status with the Court and served copies thereof on the

---

[1]      For purposes of this Notice:  (A) a "<u>Substantial Equityholder</u>" is any person or entity that Beneficially Owns (as defined below) at least 833,852 shares (representing approximately 4.5% of the 18,530,028 issued and outstanding shares of common stock) of PEC (as defined below); (B) "<u>Beneficial Ownership</u>" of equity securities shall be determined in accordance with applicable rules under section 382 of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder and shall include (i) direct and indirect ownership (<u>e.g.</u>, a holding company would be considered to Beneficially Own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons or entities acting in concert with such holder to make a coordinated acquisition of stock and (iii) ownership of Options (as defined below) to acquire stock; and (C) an "<u>Option</u>" to acquire stock includes any contingent purchase, warrant, convertible debt, exchangeable shares, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Debtors'

counsel.

3.     **[Name of Prospective Seller]** currently Beneficially Owns

_____ shares of Common Stock of PEC and/or Options with respect to

_____ shares of Common Stock of PEC.

4.     Pursuant to the Proposed Transfer, **[Name of Prospective Seller]**

proposes to sell, trade or otherwise transfer _____ shares of Common Stock or an Option

with respect to _____ shares of Common Stock.  If the Proposed Transfer is permitted

to occur, **[Name of Prospective Seller]** will Beneficially Own _____ shares of

Common Stock after the transfer becomes effective.

5.     The last four digits of the taxpayer identification number of **[Name of
Prospective Seller]** are _____.

6.     Under penalty of perjury, **[Name of Prospective Seller]** hereby declares

that it has examined this Notice and accompanying attachments (if any) and, to the best of its

knowledge and belief, this Notice and any attachments that purport to be part of this Notice are

true, correct and complete.

7.     Pursuant to that certain **[Interim/Final]** Order establishing the Equity

Transfer Procedures (as defined in the **[Interim/Final]** Order), this Notice is being (a) filed with

the Court and (b) served upon:  (i) the Debtors, c/o Peabody Energy Corporation, 701 Market

Street, St. Louis, MO  63101 (Attn:  Scott T. Jarboe, Esq., Vice President and Deputy General

Counsel Corporate and Capital Markets); (ii) Jones Day, North Point, 901 Lakeside Avenue,

Cleveland, OH  44114 (Attn:  Heather Lennox, Esq.); (iii) Jones Day, 51 Louisiana Avenue,

N.W., Washington, D.C.  2000 (Attn:  Amy Edgy, Esq. and Daniel T. Moss, Esq.); and

(iv) Armstrong Teasdale LLP, 7700 Forsyth Boulevard, Suite 1800, St. Louis, MO  63105

(Attn:  Steven. N. Cousins, Esq. and Susan K. Ehlers, Esq.).

        8.    The Debtors have 21 days after receipt of this Notice to object to the

Proposed Transfer described herein.  If the Debtors file an objection, such Proposed Transfer will

not be effective unless approved by a final and nonappealable order of the Court.  If the Debtors

do not object within such 21-day period, then after expiration of such period the Proposed

Transfer may proceed solely as set forth in this Notice.

        9.    The undersigned Prospective Seller understands that any further

transactions that may result in **[Name of Prospective Seller]** selling, trading, or otherwise

transferring shares of Common Stock (or an Option with respect thereto) will each require an

additional notice to be filed with the Court and served in the same manner as this Notice.

Date:    _____       Respectfully submitted,
           St. Louis, Missouri


                                    _____
                                    (Name of Prospective Seller)


                                  By:   _____
                                    Name:_____
                                    Title:_____
                                Address:   _____
                                            _____
                                            _____
                                Telephone:   _____
                                Facsimile:   _____

## **Exhibit B**

**Record Date Notice**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Case No. 16-42529 |
| | CHAPTER 11 |
| Peabody Energy Corporation, <u>et al.</u>, | |
| | (Jointly Administered) |
| Debtors. | |
| | Related to Docket No. ____ |

**NOTICE OF (I) RECORD DATE FOR**
**NOTICE AND SELL-DOWN PROCEDURES FOR TRADING IN**
<u>**CLAIMS AGAINST THE DEBTORS' ESTATES AND (II) A FINAL HEARING**</u>

**TO ALL PERSONS OR ENTITIES WITH CLAIMS AGAINST ANY OF THE DEBTORS:**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.       On April 13, 2016 (the "<u>Petition Date</u>"), PEC and its debtor affiliates

commenced voluntary cases under chapter 11 of title 11 of the United States Code

(the "<u>Bankruptcy Code</u>").

2.       On April 13, 2016, the above-captioned debtors (collectively, the

"<u>Debtors</u>") filed their Motion of Debtors and Debtors in Possession, Pursuant to Sections 105(a),

362 and 541 of the Bankruptcy Code for Entry of Interim and Final Orders:  (I) Establishing

Notice and Objection Procedures for Transfers of Equity Securities; (II) Establishing a Record

Date for Notice and Sell-Down Procedures for Trading in Claims Against the Debtors' Estates;

and (III) Granting Related Relief (the "<u>Motion</u>").

3.       On _____, 2016, the United States Bankruptcy Court for the

Eastern District of Missouri (the "<u>Court</u>") entered an interim order (the "<u>Interim Order</u>") setting

the Record Date with respect to trading in claims against the Debtors, in order to assist the

Debtors in preserving certain tax benefits, including expected net operating losses (collectively, "NOLs").

4.        Pursuant to the Interim Order, the Record Date is established as _____, 2016.

5.        Pursuant to the Interim Order, claimholders and potential purchasers of claims against the Debtors ("Claims") are hereby notified that, if the Court ultimately approves a Sell-Down Order, claimholders that acquire Claims after the Record Date in an amount that would entitle them to receive more than 4.5% of the stock of the reorganized Debtors under a plan of reorganization may be subject to a required sell-down of any Claims purchased after the Record Date in accordance with the Sell-Down Procedures.

6.        All persons or entities that acquired and hold Claims after the Record Date in an amount entitling such person or entity to receive more than 4.5% of the equity of the reorganized Debtors may be required to identify themselves to the Debtors and the official committee of unsecured creditors appointed in the Debtors' cases after the Court's approval of the disclosure statement which identifies potential recoveries for creditors.

7.        A final hearing to consider the relief requested in the Motion and the entry of an order (the "Final Order") confirming the establishment of the Record Date on a final and permanent basis will be held on _____, 2016 at _____ _.m. Central Time before the Honorable _____ in the United States Bankruptcy Court for the Eastern District of Missouri, Courtroom ____, 111 S. 10th Street, 4th Floor, St. Louis, MO  63102.

8.        Any objection to the granting of the relief requested by the Motion on a final basis shall be filed with the Court by_____, 2016 (the "Objection Deadline"), and served, so as to be received by the Objection Deadline, upon:  (a) the Office of the United

States Trustee for the Eastern District of Missouri, 111 South 10th Street, Suite 6.353, St. Louis, MO  63102 (Attn: Paul Randolph, Esq.); (b) (i) the Debtors, c/o Peabody Energy Corporate Headquarters, Peabody Plaza, 701 Market St., St. Louis, MO  63101-1826 (Attn: Scott T. Jarboe, Esq., Vice President and Deputy General Counsel Corporate and Capital Markets); (ii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, OH  44114 (Attn:  Heather Lennox, Esq.); (iii) Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C.  20001 (Attn: Amy Edgy, Esq. and Daniel T. Moss, Esq.); (iv) Armstrong Teasdale LLP, 7700 Forsyth Boulevard, Suite 1800, St. Louis, MO,  63105 (Attn:  Steven N. Cousins, Esq. and Susan K. Ehlers, Esq.); (c) (i) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York  10017 (Attn:  Damian S. Schaible, Esq. and Angela M. Libby, Esq.) and (ii) Bryan Cave LLP, 211 N. Broadway, Suite 3600, St. Louis, Missouri  63102 (Attn:  Laura Uberti Hughes, Esq.), as counsel to Citibank, N.A. as Administrative Agent for the First Lien Secured Credit Facility and the Debtors' proposed debtor in possession secured credit facility; (d) Brown Rudnick LLP, as counsel to Wilmington Savings Fund Society, FSB as prospective trustee and collateral agent for the Secured Second Lien Notes; (e) Foley & Lardner LLP, as counsel to Wilmington Trust Company as prospective Indenture Trustee for the Unsecured Notes;[1] (f) Robinson & Cole LLP, as counsel to U.S. Bank as resigning trustee and collateral agent for the Second Lien Notes, the Unsecured Notes and the Convertible Notes;[2] (g) counsel to PNC Bank, N.A., as Administrator under the Debtors'

---

[1]     These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due September 2020; (iii) 6.25% Senior Notes due September 2021; and the (iv) 7.875% Senior Notes due November 2026.

[2]     These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due September 2020; (iii) 6.25% Senior Notes due September 2021; (iv) 7.875% Senior Notes due November 2026; and the (v) Convertible Junior Subordinated Debentures due December 2066.

prepetition accounts receivable securitization facility; (h) counsel to any ad hoc committees; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.

9.      Complete copies of the Motion and the Interim Order, with additional information about the Record Date and possible Sell-Down Order, are available via PACER via the Court's website at http://ecf.moeb.uscourts.gov for a fee, or through the Debtors' Notice, Claims and Solicitation Agent, Kurtzman Carson Consultants, LLC ("KCC"), by accessing their website at http:www.kcclc.net/Peabody, or by calling (a) a U.S.-based call center at (i) 866-967-1783 (toll free) or (ii) 310-751-2683 if calling from outside the U.S. or Canada; or (b) an Australia-based call center at (i) 1300-386-742 or (ii) +61-3-9415-4613 if calling from outside of Australia.  If a hearing is held and a Final Order is entered, such Final Order will also be available as described in the preceding sentence.

10.      The entry of the Interim and Final Orders shall in no way prejudice the rights of any party to oppose the entry of a Sell-Down Order, on any grounds, and all parties' rights are expressly preserved by the Interim and Final Orders.

11.      The requirements set forth in this Notice are in addition to the requirements of Rule 3001(e) of the Federal Rules of Bankruptcy Procedure and applicable law, and do not excuse compliance therewith.

Dated: _____
         St. Louis, Missouri

                              _____
                              Steven N. Cousins, MO 30788
                              Susan K. Ehlers, MO 49855
                              Armstrong Teasdale LLP
                              7700 Forsyth Boulevard, Suite 1800
                              St. Louis, MO 63105
                              Telephone:  (314) 621-5070
                              Facsimile:  (314) 621-2239
                              Email  scousins@armstrongteasdale.com
                              Email:  sehlers@armstrongteasdale.com

                              Heather Lennox (*pro hac vice* pending)
                              Jones Day
                              North Point
                              901 Lakeside Avenue
                              Cleveland, OH  44114
                              Telephone:  (216) 586-3939
                              Facsimile:  (216) 579-0212
                              Email:  hlennox@jonesday.com

                              Amy Edgy (*pro hac vice* pending)
                              Daniel T. Moss (*pro hac vice* pending)
                              Jones Day
                              51 Louisiana Avenue, N.W.
                              Washington, D.C.  20001-2113
                              Telephone:  (202) 879-3939
                              Facsimile:  (202) 626-1700
                              Email:  aedgy@jonesday.com
                              Email:  dtmoss@jonesday.com

                              *Proposed Attorneys for Debtors*
                              *and Debtors in Possession*

## **Exhibit C**

Publication Notice

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Peabody Energy Corporation, et al.,<br>　　　　　　　　　　　　　Debtors. | Case No. 16-42529<br>CHAPTER 11<br><br>(Jointly Administered)<br><br>Related to Docket No.___ |

### NOTICE OF RESTRICTION OF TRADING IN EQUITY OF PEABODY ENERGY CORPORATION, AND RECORD DATE FOR NOTICE AND SELL-DOWN PROCEDURES FOR TRADING IN CLAIMS AGAINST THE DEBTORS' ESTATES

**TO ALL PERSONS OR ENTITIES WITH EQUITY INTERESTS IN PEABODY ENERGY CORPORATION, OR CLAIMS AGAINST ANY OF THE DEBTORS:**

PLEASE TAKE NOTICE OF THE FOLLOWING:

On April 13, 2016 (the "Petition Date"), the above-captioned debtors (collectively, the "Debtors") commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

On the Petition Date, the Debtors filed the Motion of the Debtors, Pursuant to Sections 105(a), 362 and 541 of the Bankruptcy Code, for Entry of Interim and Final Orders: (I) Establishing Notice and Objection Procedures for Transfers of Equity Securities; (II) Establishing a Record Date for Notice and Sell Down Procedures for Trading in Claims Against the Debtors' Estates; and (III) Granting Related Relief (the "Motion").

On _____, 2016, the United States Bankruptcy Court for the Eastern District of Missouri (the "Court") entered an interim order (the "Interim Order") (a) approving procedures with respect to transfers of equity securities in Peabody Energy Corporation (the "Equity Transfer Procedures") and (ii) setting the record date with respect to trading in claims against the Debtors, in order to assist the Debtors in preserving their net operating losses and certain other tax benefits (collectively, "NOLs").

**FAILURE TO FOLLOW THE EQUITY TRANSFER PROCEDURES SET FORTH IN THE INTERIM ORDER SHALL CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE.  ANY PROHIBITED PURCHASE, SALE, TRADE OR OTHER TRANSFER OF EQUITY SECURITIES (INCLUDING OPTIONS TO ACQUIRE STOCK) IN PEABODY ENERGY CORPORATION, IN VIOLATION OF THE INTERIM ORDER WILL BE NULL AND VOID AB INITIO, SHALL CONFER NO RIGHTS ON THE TRANSFEREE AND MAY RESULT IN THE IMPOSITION OF SANCTIONS BY THE BANKRUPTCY COURT.**

Pursuant to the Interim Order, the Record Date is established as _____, 2016.

Claimholders and potential purchasers of claims against the Debtors ("Claims") are hereby notified that, if the Court ultimately approves a Sell-Down Order, claimholders that acquire Claims after the record date in an amount that would entitle them to receive more than 4.5% of the stock of the reorganized Debtors under a plan of reorganization or pursuant to a qualifying asset sale may be subject to a required sell-down of any Claims purchased after the record date in accordance with the Sell-Down Procedures.

All persons or entities that acquired and hold Claims after the record date in an amount entitling such person or entity to receive more than 4.5% of the equity of the reorganized Debtors may be required to identify themselves to the Debtors and the official committee of unsecured creditors after the Court's approval of a qualifying sale.

A final hearing to consider the relief requested in the Motion and the entry of an order (the "Final Order") implementing the Equity Transfer Procedures on a final and permanent basis shall be held on _____, 2016 at__:__ _.m Central Time, before the Honorable _____ at _____.

Objections to the Motion must be filed with the Court and served so as to be received on [_____], 2016 on (a) the Office of the United States Trustee for the Eastern District of Missouri, 111 South 10th Street, Suite 6.353, St. Louis, MO 63102 (Attn: Paul Randolph, Esq.); (b) (i) the Debtors, c/o Peabody Energy Corporate Headquarters, Peabody Plaza, 701 Market St., St. Louis, MO 63101-1826 (Attn: Scott T. Jarboe, Esq., Vice President and Deputy General Counsel Corporate and Capital Markets); (ii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, OH 44114 (Attn: Heather Lennox, Esq.); (iii) Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C. 20001 (Attn: Amy Edgy, Esq. and Daniel T. Moss, Esq.); (iv) Armstrong Teasdale LLP, 7700 Forsyth Boulevard, Suite 1800, St. Louis, MO, 63105 (Attn: Steven N. Cousins, Esq. and Susan K. Ehlers, Esq.); (c) (i) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Damian S. Schaible, Esq. and Angela M. Libby, Esq.) and (ii) Bryan Cave LLP, 211 N. Broadway, Suite 3600, St. Louis, Missouri 63102 (Attn: Laura Uberti Hughes, Esq.), as counsel to Citibank, N.A. as Administrative Agent for the First Lien Secured Credit Facility and the Debtors' proposed debtor in possession secured credit facility; (d) Brown Rudnick LLP, as counsel to Wilmington Savings Fund Society, FSB as prospective trustee and collateral agent for the Secured Second Lien Notes; (e) Foley & Lardner LLP, as counsel to Wilmington Trust Company as prospective Indenture Trustee for the Unsecured Notes; (f) Robinson & Cole LLP, as counsel to U.S. Bank as resigning trustee and collateral agent for the Second Lien Notes, the Unsecured Notes and the Convertible Notes; (g) counsel to PNC Bank, N.A., as Administrator under the Debtors' prepetition accounts receivable securitization facility; (h) counsel to any ad hoc committees; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.

The entry of the Interim and Final Orders shall in no way prejudice the rights of any party to oppose the entry of a Sell-Down Order, on any grounds, and all parties' rights are expressly preserved by the Interim and Final Orders.

Any of the Debtors may waive in writing, and in their sole and absolute discretion, any and all restrictions, stays and notice procedures contained in the Interim Order.

Complete copies of the Motion and the Interim Order are, and any Final Order will be, available via PACER via the Court's website at https://ecf.moeb.uscourts.gov for a fee, or through the Debtors' Notice, Claims and Solicitation Agent, Kurtzman Carson Consultants, LLC ("KCC"), by accessing their website at http:www.kcclc.net/Peabody, or by calling (a) a U.S.-based call center at (i) 866-967-1783 (toll free) or (ii) 310-751-2683 if calling from outside the U.S. or Canada; or (b) an Australia-based call center at (i) 1300-386-742 or (ii) +61-3-9415-4613 if calling from outside of Australia.