## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

In re:

Peabody Energy Corporation, et al.,

          Debtors.[1]

Case No. 16-42529
CHAPTER 11

(Joint Administration Requested)

Hearing Date and Time:
TBD

Hearing Location:
TBD

## MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE, FOR AN ORDER AUTHORIZING THEM TO HONOR CUSTOMER OBLIGATIONS AND FOR RELATED RELIEF

Peabody Energy Corporation ("PEC") and certain of its direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order:  (a) authorizing, but not directing, the Debtors, in their discretion and without further approval of the Court, to continue to perform in accordance with the terms of prepetition coal supply agreements (collectively, the "Customer Obligations"); and (b) granting certain related relief, and in support thereof, respectfully represent as follows:[2]

### Jurisdiction and Venue

1.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States

---

[1]    The Debtors and their employer identification numbers are listed on Schedule 1 attached hereto.  The addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

[2]    Copies of the proposed orders will be made available on the Debtors' case website at http://www.kccllc.net/peabody

District Court for the Eastern District of Missouri.  This is a core proceeding pursuant to

28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.        On April 13, 2016 (the "Petition Date"), the Debtors commenced their

reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy

Code.  The Debtors are authorized to continue to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

3.        Debtor PEC is a Delaware corporation headquartered in St. Louis,

Missouri.  PEC was incorporated in 1998 and became a public company in 2001.  Each of the

other Debtors is a wholly-owned direct or indirect subsidiary of PEC.

4.        PEC is the world's largest private-sector coal company (by volume), with

26 active coal mining operations located in the United States and Australia.  The Debtors'

domestic mines produce and sell thermal coal, which is primarily purchased by electricity

generators.  PEC's Australian operations mine both thermal and metallurgical coal, a majority of

which is exported to international customers.  As of December 31, 2015, Debtor PEC and its

subsidiaries' property holdings include 6.3 billion tons of proven and probable coal reserves and

approximately 500,000 acres of surface property through ownership and lease agreements.  In

the United States alone, as of December 31, 2015, the Debtors held an estimated 5.5 billion tons

of proven and probable coal reserves, and the Debtors generated sales of approximately 180

million tons of coal.  In addition to its mining operations, the Debtors market and broker coal

from other coal producers across the United States, Australia, Europe and Asia.

5.        The Debtors operate in a competitive and highly regulated industry that

has experienced strong headwinds and precipitously declining demand and pricing in recent

years due to the rise of low priced alternative energy sources – including an abundance of natural gas. Combined with these factors, slowing global economic growth drove a wide range of goods prices lower in 2015 and resulted in the largest broad market decline since 1991. Indeed, demand from electric utilities in the United States alone declined approximately 110 million tons in 2015. These market conditions, in connection with lower realized pricing in the United States and Australia, resulted in a 21.0 million ton decline in the Debtors' and their non-debtor subsidiaries' coal sales during 2015. As a result of these challenges, several large United States coal companies have filed for chapter 11 protection in recent years.

6.      A comprehensive description of the Debtors' businesses and operations, capital structure and the events leading to the commencement of these chapter 11 cases can be found in the Declaration of Amy Schwetz, Executive Vice President and Chief Financial Officer of Debtor PEC, in Support of First Day Motions of Debtors and Debtors in Possession (the "First Day Declaration"). In further support of this Motion and certain other requests for first day relief, the Debtors have filed the Declaration of Carlin Adrianopoli In Support of Certain First Day Motions (the "Adrianopoli Declaration"). Both the First Day Declaration and the Adrianopoli Declaration were filed contemporaneously herewith and are incorporated herein by reference.

**The Customer Obligations**

7.      Prior to the Petition Date, the Debtors, in the ordinary course of their businesses, entered into various coal supply agreements ("Agreements") with coal buyers. The Agreements typically require the Debtors to deliver a specified quantity of coal and include a base price for each ton of coal of delivered. The base price makes certain assumptions about the quality of coal that will be delivered (e.g., BTU, ash, sulfur and moisture content of the coal). Because delivered coal rarely has the same quality specifications assumed in the base price, the

Agreements contain formulas for adjusting the base price due to variances between the delivered coal's quality specifications and the assumed quality specifications in the base price. Other adjustments need to be made from time to time such as volume adjustments if the Debtors were to discover a scale was miscalibrated.

8.    In the ordinary course of the Debtors' business, the Debtors issue separate invoices to their customers for the base price ("Base Invoices") and quality adjustments ("Quality Invoices"). Base Invoices generally are sent more frequently than Quality Invoices. Depending on the Agreement, the majority of Base Invoices are sent weekly or semi-monthly. Quality Invoices generally are sent monthly. Base Invoices are always positive. In most instances, Quality Invoices are too; the Debtors delivered coal typically is of a higher quality than the base price assumes. However, in certain instances, Quality Invoices can be negative. In those cases, the Quality Invoices are netted against a Base Invoice, and the customer pays the Debtors the difference.

9.    These quality adjustments are a common practice in this industry given that producers rarely, if ever, can deliver coal with the precise specifications contained in a contract. These adjustments typically result in additional revenues for the Debtors since the Debtors usually deliver higher quality coal than the base specifications. Given where the Debtors currently are in their invoicing cycle, the Debtors intend to issue postpetition Quality Invoices respecting prepetition deliveries of coal. In the aggregate, the Quality Invoices, if paid, will result in substantial additional revenue to the estates. However, a few of the Quality Invoices may be negative. While it is difficult to estimate the prepetition amount of these quality adjustments, the Debtors estimate that they likely will issue postpetition invoices that include

-4-

negative quality adjustments respecting coal delivered prepetition in the approximate amount of $500,000.

10.     In addition, the Debtors' Agreement with Duke Energy Indiana, Inc. ("Duke") requires the Debtors to rebate a certain amount on each ton delivered under that Agreement.  The rebates relate to an agreed-to base price change for previously delivered coal. In accordance with the Agreement, the Debtors include the rebates on Duke's Base Invoices where those rebates are netted against the base price, with the resulting Base Invoices always requiring payment to the Debtors.  On average, the Debtors rebate approximately $2.1 million each month.  The Debtors' obligation to provide the rebate is backed by a letter of credit.

11.     While the Debtors believe they have authority under the Bankruptcy Code to continue with their coal supply invoicing practices, out of an abundance of caution, they are requesting an order authorizing the Debtors to do so.  The value of the Debtors' business – and, thus, the ability of the Debtors to maximize stakeholder recoveries through a plan of reorganization – is dependent upon the continued loyalty and confidence of their customers. Such loyalty is essential and in the best interest of the Debtors, their estates and their creditors. As evidenced by recent coal-industry chapter 11 cases, the Debtors operate in a highly competitive sector of the global economy that is under severe stress.  Accordingly, delays in honoring, or possible cancellation of, Customer Obligations could severely damage the Debtors' relations with existing customers and impair their ability to generate new customers.  The Customer Obligations are an indispensible component of the Debtors' coal sale contracts.

### Argument

12.     The Debtors submit that the entry of an order authorizing, but not directing, the Debtors, in their discretion and without further approval of the Court, to continue to honor their Customer Obligations, is necessary, in the best interests of the Debtors' estates and

creditor constituencies.  Without this relief the Debtors risk losing current and prospective

customers and business.

### *Section 363(b) Authorizes the Debtors to Honor Customer Obligations Respecting Coal Delivered Prepetition*

13.     Section 363(b) of the Bankruptcy Code allows a debtor, after notice and

hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the

estate."  11 U.S.C. § 363(b)(1).  A debtor's decisions to use, sell or lease assets outside the

ordinary course of business must be based upon a sound business purpose.  See In re Channel

One Commc'ns, Inc., 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (citing Comm. of Equity Sec.

Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983)); TLP Servs.,

LLC v. Stoebner (In re Polaroid Corp.), 460 B.R. 740, 741-42 (B.A.P. 8th Cir. 2011) (allowing a

trustee, pursuant in part to section 363(b)(1), to use cash collateral to fund efforts to recover

funds from third parties); accord Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel

Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983) (requiring a "good business reason" to approve a

sale pursuant to section 363(b)); In re W.A. Mallory Co. Inc., 214 B.R. 834, 836 (Bankr. E.D. Va.

1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales.")

(citing WBQ P'ship v. Va. Dep't of Med. Assistance Servs. (In re WBQ P'ship), 189 B.R. 97, 102

(Bankr. E.D. Va. 1995)); Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co.

v. LTV Corp. (In re Chateaugay Corp.), 937 F.2d 141, 143 (2d Cir. 1992) (holding that the sale

of property of the estate is justified if it is supported by a good business reason); In re Ionosphere

Clubs, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining

a motion pursuant to section 363(b) of the Bankruptcy Code is "a good business reason").

14.     Courts have consistently been reluctant to interfere with corporate

decisions unless "it is made clear that those decisions are, inter alia, clearly erroneous, made

arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made

on the basis of inadequate information or study, are made in bad faith, or are in violation of the

Bankruptcy Code." In re Farmland Indus., Inc., 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003)

(citing In re United Artists Theatre Co., 315 F.3d 217, 233 (3d Cir. 2003), Richmond Leasing Co.

v. Capital Bank, N.A., 762 F.2d 1303, 1309  (5th Cir. 1985) and In re Defender Drug Stores, Inc.,

145 B.R. 312, 317 (B.A.P. 9th Cir. 1992)); see also Crystalin, LLC v. Selma Props. Inc. (In re

Crystalin, LLC), 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (holding that the business

judgment rule may be satisfied "as long as the proposed action appears to enhance the debtor's

estate.") (quoting Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.),

107 F.3d 558, 566 n.16 (8th Cir. 1997) (emphasis in original, internal quotations and alteration

omitted)); Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558,

567 n.16 (8th Cir. 1997) (holding that "[w]here the [debtor's] request is not manifestly

unreasonable or made in bad faith, the court should normally grant approval 'as long as the

proposed action appears to enhance the debtor's estate'") (quoting Richmond Leasing Co. v.

Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985)) (internal alterations and quotations

omitted); Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated

Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (finding that "[c]ourts are loath to interfere with

corporate decisions absent a showing of bad faith, self-interest, or gross negligence").

        15.    As noted above and in the Adrianopoli Declaration, if the Debtors are not

permitted to honor their Customer Obligations, customers may lose confidence in the Debtors,

their products and their reliability.  If customers do not believe that the Debtors will honor their

obligations to them, it may be difficult for the Debtors to solicit new business (or additional

business from existing clients, upon which coal companies such as Debtors particularly depend).

Much of the loyalty and customer goodwill that the Debtors have garnered over the years will could be lost if the Debtors fail to honor their Customer Obligations. Accordingly, the Debtors believe that honoring Customer Obligations respecting coal delivered prepetition is a sound and prudent exercise of their business judgment.

***Section 363(c) Allows the Debtors to Continue to Honor Customer Obligations Respecting Coal Delivered Postpetition in the Ordinary Course of Business***

16.     Additionally, pursuant to section 363(c) of the Bankruptcy Code, a debtor, as debtor in possession, is authorized to "enter into transactions . . . in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(c) "strik[es] the optimal balance between the interests of the debtor and the creditors" to "serve the 'overriding goal of maximizing the value of the estate.'" Habinger, Inc. v. Metro. Cosmetic & Reconstructive Surgical Clinic, P.A., 124 B.R. 784, 786 (D. Minn. 1990) (quoting United States ex rel. Harrison v. Estate of Deutscher (In re H&S Transp. Co.), 115 B.R. 592, 599 (M.D Tenn. 1990)). "The 'ordinary course of business' standard is intended to allow a debtor 'the flexibility it needs to run its business and respond quickly to changes in the business climate.'" Habinger, 124 B.R. at 786 (internal quotation marks omitted).

17.     The Bankruptcy Code does not define "ordinary course of business." However, bankruptcy courts within the Eighth Circuit have held that a transaction qualifies as "ordinary course" if it: (a) "is of a type that is commonly undertaken within the debtor's industry," Peltz v. Gulfcoast Workstation Grp. (In re Bridge Info. Sys., Inc.), 293 B.R. 479, 486 (Bankr. E.D. Mo. 2003), and (b) is ordinary and consistent with the reasonable expectations of creditors. Johnston v. First St. Cos. (In re Waterfront Cos.), 56 B.R. 31, 35 (Bankr. D. Minn. 1985); see also In re Bridge Info. Sys., Inc., 293 B.R. at 486

(courts look to "whether interested parties would reasonably expect the particular debtor in possession to seek court approval before entering into the questioned transaction").  A "fundamental characteristic of an 'ordinary' post-petition business transaction is its similarity to a pre-petition business practice."  In re Commercial Mortg. & Fin., Co., 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (quoting Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.), 186 B.R. 414, 425 (N.D Ill. 1995); see also Comm. of Asbestos Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 617 (Bankr. S.D.N.Y. 1986) (finding that "the nature of the debtor's business prior to its Chapter 11 filing is compared to its course of conduct postpetition").  In determining whether a transaction is ordinary, two relevant factors are the type of business a debtor is engaged in as well as the size and nature of the business and transaction in question.  U.S. ex rel. Harrison v. Estate of Deutscher (In re H&S Transp. Co.), 115 B.R. 592, 598 (M.D. Tenn. 1990).

        18.     The Debtors should be allowed to continue to honor their Customer Obligations under section 363(c) of the Bankruptcy Code.  Continuing to perform the Customer Obligations in the ordinary course of business will allow the Debtors to maximize the value of their estates by retaining customer loyalty and goodwill.  As described in the Adrianopoli Declaration, the Debtors cannot afford any disruptions to their relationships with coal buyers and therefore must continue "business as usual" with these customers.  This is especially true here given the competitive nature of the coal industry and the availability of coal from other producers at competitive prices.  Customers expect the Debtors to continue to honor their Customer Obligations when selling coal under the Agreements with those customers.  The relief requested by this Motion will ensure the Debtors are able to meet those expectations.  In short, the benefits resulting from the Debtors' performing the Customer Obligations will outweigh any

costs associated with the Debtors doing so in the ordinary course of their businesses during these chapter 11 cases.

***The Requested Relief is Authorized Under Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity***

19.    Further, the Court may authorize the Debtors to honor Customer Obligations pursuant to section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105(a).  Section 105 of the Bankruptcy Code gives the court has the power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction."  2 Collier on Bankruptcy ¶ 105.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2015).  "Under [section 105 of the Bankruptcy Code,] the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing In re Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)).

20.    In addition, under the "doctrine of necessity," courts allow the immediate payment of prepetition claims where such payment is essential to the debtor's continued operations.  See In re Wehrenberg, Inc., 260 B.R. 468 (Bankr. E.D. Mo. 2001) ("Pursuant to 11 U.S.C. § 105(a) the Court may authorize the payment of pre-petition claims when such payments are necessary to the continued operation of the Debtor."); In re United Am., Inc., 327 B.R. 776, 782 (Bankr. E.D. Va. 2005) (acknowledging the existence of the doctrine of necessity "because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim"); accord In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize

trustees to pay claims for goods and services that are indispensably necessary to the debtors'
continued operation).

21.    The Debtors submit that the requested relief has a sound business purpose
and is necessary to avoid immediate and irreparable harm and is justified under sections 105(a),
363(b) and 363(c) of the Bankruptcy Code and the doctrine of necessity.  Honoring Customer
Obligations for both prepetition and postpetition deliveries of coal is essential to the Debtors'
continued operations during these chapter 11 cases.  Without the requested relief, the Debtors
would find it more difficult to maintain business as usual, resulting in an increased risk the
Debtors would lose existing and potential customers to rival coal producers.  Thus, as set forth
herein and in the Adrianopoli Declaration, it is critical for the Debtors' reorganization efforts that
the Debtors be authorized to honor their Customer Obligations.

22.    Because the Customer Obligations are contractual, they will have to be
honored in any event to the extent the Debtors elect to assume (or assume and assign) any of the
Agreements in which the Customer Obligations are contained.  The fact that many Customer
Obligations may have to be honored in the future further supports the relief requested by this
Motion.  Moreover, with respect to those Agreements that (a) are critical to the Debtors'
operations and (b) may expire in the near term, the Debtors' failure to honor Customer
Obligations will impact those customers' willingness to continue to buy coal from the Debtors.

23.    Bankruptcy courts in this District have entered orders authorizing chapter
11 debtors to honor prepetition Customer Obligations in numerous other cases.  See, e.g., In re
Noranda Aluminum, No. 16-10083 (Bankr. E.D. Mo. Feb. 10, 2016) (Docket No. 84) (order
authorizing debtors to honor customer obligations and continue prepetition customer programs
and practices in the ordinary course of business); In re Arch Coal, Inc., No. 16-40120

(Bankr. E.D. Mo. Jan. 14, 2016) (Docket No. 88) (order authorizing (a) the debtors to honor

prepetition customer obligations and continue or terminate customer practices and (b) financial

institutions to honor and process related checks and transfers); In re Bakers Footwear Grp., Inc.,

No. 12-49658 (Bankr. E.D. Mo. Oct. 9, 2012) (Docket No. 75) (ordering authorizing debtor to

honor certain obligations to customers and to maintain customer loyalty programs); In re HISJ

Holdings, L.L.C., No. 12-41985 (Bankr. E.D. Mo. Mar. 9, 2012) (Docket No. 20) (order granting

debtors' motion to honor prepetition contracts and customer deposits); In re Sleep Center

Mattress Co., LLC, No. 10-44892 (Bankr. E.D. Mo. May 19, 2010) (Docket No. 40) (order

granting motion to honor prepetition customer obligations); accord In re Alpha Natural Res., Inc.,

No 15-33896 (Bankr. E.D. Va. Sept. 3, 2015) (Docket No. 349) (same); In re Walter Energy, Inc.,

No. 15-02741 (Bankr. N.D. Ala. July 15, 2015) (Docket No. 63) (same ); In re Patriot Coal Corp.,

No 15-32450 (Bankr. E.D. Va. June 4, 2015) (Docket No. 241) (order authorizing the debtors to

honor prepetition customer obligations in a manner consistent with past practices and continue,

renew or terminate customer practices); In re James River Coal Co., No. 14-31848

(Bankr. E.D. Va. Apr. 10, 2014) (Docket No. 80) (same);  In re Patriot Coal Corp., No 12-12900

(Bankr. S.D.N.Y. Aug. 2, 2012) (Docket No. 254) (same).[3]

## **Requests for Immediate Relief and Waiver of Stay**

24.    Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), the Debtors seek the entry of an order granting the relief

requested by this Motion and, to the extent it applies, a waiver of any stay of the effectiveness of

such order .

---

[3]      Unreported orders cited herein are not attached to this Motion.  Copies of these orders will be made
available to the Court or other parties upon request made to the Debtors' counsel.

Pg 13 of 19

25.     Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate including a motion to pay all or part of a claim that arose before the filing of the petition."  Fed. R. Bankr. P. 6003(b).  In other words, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may authorize the relief prior to the 22nd day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).

26.     As set forth above, in the First Day Declaration and in the Adrianopoli Declaration, it is vital that court grant the relief requested herein and the Debtors submit that ample cause exists to justify:  (a) the immediate entry of an order granting the relief sought herein pursuant to Bankruptcy Rule 6003(b), to the extent it applies; and (b) a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies, with respect to the order.

## **Reservation of Rights**

27.     Nothing contained herein or in the proposed order is intended or should be construed as:  (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute a Customer Obligation; or (e) a request to assume or reject any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.  Likewise, if the relief

requested herein is granted, any payment made by the Debtors on account of this Motion is not intended and should not be construed as an admission by the Debtors as to the validity of any claim or waiver of the Debtors' rights to subsequently dispute such a claim.

### Notice

28.    Notice of this Motion has been given to: (a) Davis Polk & Wardwell LLP and Bryan Cave LLP as counsel to Citibank, N.A. as Administrative Agent for the First Lien Secured Credit Facility and the Debtors' proposed debtor in possession secured credit facility; (b) Brown Rudnick LLP, as counsel to Wilmington Savings Fund Society, FSB as prospective trustee and collateral agent for the Secured Second Lien Notes; (c) Foley & Lardner LLP, as counsel to Wilmington Trust Company as prospective Indenture Trustee for the Unsecured Notes;[4] (d) Robinson & Cole LLP, as counsel to U.S. Bank as resigning trustee and collateral agent for the Second Lien Notes, the Unsecured Notes and the Convertible Notes;[5] (e) counsel to any ad hoc committees; (f) the Debtors' 50 largest unsecured creditors; (g) Mayer Brown LLP, as counsel to PNC Bank, N.A., as Administrator under the Debtors' prepetition accounts receivable securitization facility; (h) the United Mine Workers of America; (i) the Office of the United States Trustee for the Eastern District of Missouri; (j) the Internal Revenue Service; (k) the Securities and Exchange Commission; (l) the United States Department of the Interior; (m) the United States Department of Labor; (n) the United States Attorney's Office for the Eastern District of Missouri; and (o) Pension Benefit Guaranty Corporation (collectively, the "Notice

---

[4]    These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due September 2020; (iii) 6.25% Senior Notes due September 2021; and the (iv) 7.875% Senior Notes due November 2026.

[5]    These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due September 2020; (iii) 6.25% Senior Notes due September 2021; (iv) 7.875% Senior Notes due November 2026; and the (v) Convertible Junior Subordinated Debentures due December 2066.

<u>Parties</u>").  In light of the nature of the relief requested, the Debtors submit that no further notice

is necessary.

## **<u>No Prior Request</u>**

29.    No prior request for the relief sought in this Motion has been made to this

or any other Court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an order substantially in the form submitted to the Court, granting the relief requested herein; and (ii) grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated: April 13, 2016
      St. Louis, Missouri

Respectfully submitted,

/s/ Steven N. Cousins
Steven N. Cousins, MO 30788
Susan K. Ehlers, MO 49855
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO  63105
Telephone:  (314) 621-5070
Facsimile:  (314) 612-2239
Email:  scousins@armstrongteasdale.com
Email:  sehlers@armstrongteasdale.com

Heather Lennox (*pro hac vice* pending)
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Email:  hlennox@jonesday.com

Amy Edgy (*pro hac vice* pending)
Daniel T. Moss (*pro hac vice* pending)
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
Email:  aedgy@jonesday.com
Email:  dtmoss@jonesday.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

-16-

## SCHEDULE 1

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 1. | Peabody Energy Corporation | 13-4004153 |
| 2. | American Land Development, LLC | 20-3405570 |
| 3. | American Land Holdings of Colorado, LLC | 26-3730572 |
| 4. | American Land Holdings of Illinois, LLC | 30-0440127 |
| 5. | American Land Holdings of Indiana, LLC | 20-2514299 |
| 6. | American Land Holdings of Kentucky, LLC | 20-0766113 |
| 7. | American Land Holdings of New Mexico, LLC | 32-0478983 |
| 8. | American Land Holdings of West Virginia, LLC | 20-5744666 |
| 9. | Arid Operations, Inc. | 84-1199578 |
| 10. | Big Ridge, Inc. | 37-1126950 |
| 11. | Big Sky Coal Company | 81-0476071 |
| 12. | Black Hills Mining Company, LLC | 32-0049741 |
| 13. | BTU Western Resources, Inc. | 20-1019486 |
| 14. | Caballo Grande, LLC | 27-1773243 |
| 15. | Caseyville Dock Company, LLC | 20-8080107 |
| 16. | Central States Coal Reserves of Illinois, LLC | 43-1869432 |
| 17. | Central States Coal Reserves of Indiana, LLC | 20-3960696 |
| 18. | Century Mineral Resources, Inc. | 36-3925555 |
| 19. | Coal Reserve Holding Limited Liability Company No. 1 | 43-1922737 |
| 20. | COALSALES II, LLC | 43-1610419 |
| 21. | Colorado Yampa Coal Company, LLC | 95-3761211 |
| 22. | Conservancy Resources, LLC | 20-5744701 |
| 23. | Cottonwood Land Company | 43-1721982 |
| 24. | Cyprus Creek Land Company | 73-1625890 |
| 25. | Cyprus Creek Land Resources LLC | 75-3058264 |
| 26. | Dyson Creek Coal Company, LLC | 43-1898526 |
| 27. | Dyson Creek Mining Company, LLC | 20-8080062 |
| 28. | El Segundo Coal Company, LLC | 20-8162824 |
| 29. | Empire Land Holdings, LLC | 61-1742786 |
| 30. | Falcon Coal Company, LLC | 35-2006760 |
| 31. | Four Star Holdings, LLC | 30-0885825 |
| 32. | Francisco Equipment Company, LLC | 37-1805119 |
| 33. | Francisco Land Holdings Company, LLC | 36-4831111 |
| 34. | Francisco Mining, LLC | 30-0922117 |
| 35. | Gallo Finance Company, LLC | 43-1823616 |
| 36. | Gold Fields Chile, LLC | 13-3004607 |
| 37. | Gold Fields Mining, LLC | 36-2079582 |
| 38. | Gold Fields Ortiz, LLC | 22-2204381 |
| 39. | Hayden Gulch Terminal, LLC | 86-0719481 |
| 40. | Highwall Mining Services Company | 20-0010659 |
| 41. | Hillside Recreational Lands, LLC | 32-0214135 |
| 42. | HMC Mining, LLC | 43-1875853 |
| 43. | Illinois Land Holdings, LLC | 26-1865197 |
| 44. | Independence Material Handling, LLC | 43-1750064 |
| 45. | James River Coal Terminal, LLC | 55-0643770 |
| 46. | Juniper Coal Company, LLC | 43-1744675 |
| 47. | Kayenta Mobile Home Park, Inc. | 86-0773596 |
| 48. | Kentucky Syngas, LLC | 26-1156957 |
| 49. | Kentucky United Coal, LLC | 35-2088769 |
| 50. | Lively Grove Energy, LLC | 20-5752800 |
| 51. | Lively Grove Energy Partners, LLC | 26-0180403 |
| 52. | Marigold Electricity, LLC | 26-0180352 |
| 53. | Midco Supply and Equipment Corporation | 43-6042249 |
| 54. | Midwest Coal Acquisition Corp. | 20-0217640 |
| 55. | Midwest Coal Reserves of Illinois, LLC | 20-3960648 |

-1-

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 56. | Midwest Coal Reserves of Indiana, LLC | 20-3405958 |
| 57. | Midwest Coal Reserves of Kentucky, LLC | 20-3405872 |
| 58. | Moffat County Mining, LLC | 74-1869420 |
| 59. | Mustang Energy Company, LLC | 43-1898532 |
| 60. | New Mexico Coal Resources, LLC | 20-3405643 |
| 61. | NM Equipment Company, LLC | 36-4821991 |
| 62. | Pacific Export Resources, LLC | 27-5135144 |
| 63. | Peabody America, LLC | 93-1116066 |
| 64. | Peabody Archveyor, L.L.C. | 43-1898535 |
| 65. | Peabody Arclar Mining, LLC | 31-1566354 |
| 66. | Peabody Asset Holdings, LLC | 20-3367333 |
| 67. | Peabody Bear Run Mining, LLC | 26-3582291 |
| 68. | Peabody Bear Run Services, LLC | 26-3725923 |
| 69. | Peabody Caballo Mining, LLC | 83-0309633 |
| 70. | Peabody Cardinal Gasification, LLC | 20-5047955 |
| 71. | Peabody China, LLC | 43-1898525 |
| 72. | Peabody Coalsales, LLC | 20-1759740 |
| 73. | Peabody COALTRADE International (CTI), LLC | 20-1435716 |
| 74. | Peabody COALTRADE, LLC | 43-1666743 |
| 75. | Peabody Colorado Operations, LLC | 20-2561644 |
| 76. | Peabody Colorado Services, LLC | 26-3723774 |
| 77. | Peabody Coulterville Mining, LLC | 20-0217834 |
| 78. | Peabody Development Company, LLC | 43-1265557 |
| 79. | Peabody Electricity, LLC | 20-3405744 |
| 80. | Peabody Employment Services, LLC | 26-3730348 |
| 81. | Peabody Energy Generation Holding Company | 73-1625891 |
| 82. | Peabody Energy Investments, Inc. | 68-0541702 |
| 83. | Peabody Energy Solutions, Inc. | 43-1753832 |
| 84. | Peabody Gateway North Mining, LLC | 27-2294407 |
| 85. | Peabody Gateway Services, LLC | 26-3724075 |
| 86. | Peabody Holding Company, LLC | 74-2666822 |
| 87. | Peabody Holdings (Gibraltar) Limited | 20-5543587 |
| 88. | Peabody IC Funding Corporation | 46-2326991 |
| 89. | Peabody IC Holdings, LLC | 30-0829603 |
| 90. | Peabody Illinois Services, LLC | 26-3722638 |
| 91. | Peabody Indiana Services, LLC | 26-3724339 |
| 92. | Peabody International Investments, Inc. | 26-1361182 |
| 93. | Peabody International Services, Inc. | 20-8340434 |
| 94. | Peabody Investments Corp. | 20-0480084 |
| 95. | Peabody Magnolia Grove Holdings, LLC | 61-1683376 |
| 96. | Peabody Midwest Management Services, LLC | 26-3726045 |
| 97. | Peabody Midwest Mining, LLC | 35-1799736 |
| 98. | Peabody Midwest Operations, LLC | 20-3405619 |
| 99. | Peabody Midwest Services, LLC | 26-3722194 |
| 100. | Peabody Mongolia, LLC | 20-8714315 |
| 101. | Peabody Natural Gas, LLC | 43-1890836 |
| 102. | Peabody Natural Resources Company | 51-0332232 |
| 103. | Peabody New Mexico Services, LLC | 20-8162939 |
| 104. | Peabody Operations Holding, LLC | 26-3723890 |
| 105. | Peabody Powder River Mining, LLC | 43-0996010 |
| 106. | Peabody Powder River Operations, LLC | 20-3405797 |
| 107. | Peabody Powder River Services, LLC | 26-3725850 |
| 108. | Peabody PowerTree Investments, LLC | 20-0116980 |
| 109. | Peabody Recreational Lands, L.L.C. | 43-1898382 |
| 110. | Peabody Rocky Mountain Management Services, LLC | 26-3725390 |
| 111. | Peabody Rocky Mountain Services, LLC | 20-8162706 |
| 112. | Peabody Sage Creek Mining, LLC | 26-3730653 |
| 113. | Peabody School Creek Mining, LLC | 20-3585831 |

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 114. | Peabody Services Holdings, LLC | 26-3726126 |
| 115. | Peabody Southwest, LLC | 20-5744732 |
| 116. | Peabody Southwestern Coal Company, LLC | 43-1898372 |
| 117. | Peabody Terminal Holding Company, LLC | 26-1087861 |
| 118. | Peabody Terminals, LLC | 31-1035824 |
| 119. | Peabody Trout Creek Reservoir LLC | 30-0746873 |
| 120. | Peabody Twentymile Mining, LLC | 26-3725223 |
| 121. | Peabody Venezuela Coal Corp. | 43-1609813 |
| 122. | Peabody Venture Fund, LLC | 20-3405779 |
| 123. | Peabody-Waterside Development, L.L.C. | 75-3098342 |
| 124. | Peabody Western Coal Company | 86-0766626 |
| 125. | Peabody Wild Boar Mining, LLC | 26-3730759 |
| 126. | Peabody Wild Boar Services, LLC | 26-3725591 |
| 127. | Peabody Williams Fork Mining, LLC | 20-8162742 |
| 128. | Peabody Wyoming Gas, LLC | 20-5744610 |
| 129. | Peabody Wyoming Services, LLC | 26-3723011 |
| 130. | PEC Equipment Company, LLC | 20-0217950 |
| 131. | PG INVESTMENTS SIX, L.L.C. | 43-1898530 |
| 132. | Point Pleasant Dock Company, LLC | 20-0117005 |
| 133. | Pond River Land Company | 73-1625893 |
| 134. | Porcupine Production, LLC | 43-1898379 |
| 135. | Porcupine Transportation, LLC | 43-1898380 |
| 136. | Riverview Terminal Company | 13-2899722 |
| 137. | Sage Creek Holdings, LLC | 26-3286872 |
| 138. | Sage Creek Land & Reserves, LLC | 38-3936826 |
| 139. | School Creek Coal Resources, LLC | 20-2902073 |
| 140. | Seneca Coal Company, LLC | 84-1273892 |
| 141. | Seneca Property, LLC | 36-4820253 |
| 142. | Shoshone Coal Corporation | 25-1336898 |
| 143. | Southwest Coal Holdings, LLC | 37-1794829 |
| 144. | Star Lake Energy Company, L.L.C. | 43-1898533 |
| 145. | Sugar Camp Properties, LLC | 35-2130006 |
| 146. | Thoroughbred Generating Company, L.L.C. | 43-1898534 |
| 147. | Thoroughbred Mining Company LLC. | 73-1625889 |
| 148. | Twentymile Coal, LLC | 95-3811846 |
| 149. | Twentymile Equipment Company, LLC | 38-3982017 |
| 150. | Twentymile Holdings, LLC | 38-3937156 |
| 151. | United Minerals Company, LLC | 35-1922432 |
| 152. | West Roundup Resources, LLC | 20-2561489 |
| 153. | Wild Boar Equipment Company, LLC | 32-0488114 |
| 154. | Wild Boar Land Holdings Company, LLC | 36-4831131 |