## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Peabody Energy Corporation, et al.,<br><br>Debtors.[1] | Case No. 16-42529<br>CHAPTER 11<br><br>(Joint Administration Requested)<br><br>Hearing Date and Time:<br>TBD<br><br>Hearing Location:<br>TBD |

### MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER:  (I) AUTHORIZING THEM TO PAY PREPETITION CLAIMS OF CERTAIN LIEN CLAIMANTS AND (II) GRANTING RELATED RELIEF

Peabody Energy Corporation ("PEC") and certain of its direct and indirect

subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this

Court, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code

(the "Bankruptcy Code") for the entry of an order:  (a) authorizing, but not directing the Debtors,

in their discretion and subject to the terms and conditions set forth herein, to (i) pay prepetition

claims (the "Lien Claims") in the aggregate amount of up to approximately $6.5 million and

(ii) authorizing financial institutions to honor and process related checks and transfers; and (b)

granting related relief, and in support thereof, respectfully represent as follows:[2]

---

[1]    The Debtors and their employer identification numbers are listed on Schedule 1 attached hereto.  The addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

[2]    Copies of the proposed orders will be made available on the Debtors' case website at http://www.kccllc.net/peabody.

## Jurisdiction and Venue

1.       This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.       On April 13, 2016 (the "Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions for relief under the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.       Debtor PEC is a Delaware corporation headquartered in St. Louis, Missouri.  PEC was incorporated in 1998 and became a public company in 2001.  Each of the other Debtors is a wholly-owned direct or indirect subsidiary of PEC.

4.       PEC is the world's largest private-sector coal company (by volume), with 26 active coal mining operations located in the United States and Australia.  The Debtors' domestic mines produce and sell thermal coal, which is primarily purchased by electricity generators.  PEC's Australian operations mine both thermal and metallurgical coal, a majority of which is exported to international customers.  As of December 31, 2015, Debtor PEC and its subsidiaries' property holdings include 6.3 billion tons of proven and probable coal reserves and approximately 500,000 acres of surface property through ownership and lease agreements.  In the United States alone, as of December 31, 2015, the Debtors held an estimated 5.5 billion tons of proven and probable coal reserves, and the Debtors generated sales of approximately 180 million tons of coal.  In addition to its mining operations, the Debtors market and broker coal from other coal producers across the United States, Australia, Europe and Asia.

5.     The Debtors operate in a competitive and highly regulated industry that has experienced strong headwinds and precipitously declining demand and pricing in recent years due to the rise of low priced alternative energy sources – including an abundance of natural gas.  Combined with these factors, slowing global economic growth drove a wide range of goods prices lower in 2015 and resulted in the largest broad market decline since 1991.  Indeed, demand from electric utilities in the United States alone declined approximately 110 million tons in 2015.  These market conditions, in connection with lower realized pricing in the United States and Australia, resulted in a 21.0 million ton decline in the Debtors' and their non-debtor subsidiaries' coal sales during 2015.  As a result of these challenges, several large United States coal companies have filed for chapter 11 protection in recent years.

6.     A comprehensive description of the Debtors' businesses and operations, capital structure and the events leading to the commencement of these chapter 11 cases can be found in the Declaration of Amy Schwetz, Executive Vice President and Chief Financial Officer of Debtor PEC, in Support of First Day Motions of Debtors and Debtors in Possession (the "First Day Declaration").  In further support of this Motion and certain other requests for first day relief, the Debtors have filed the Declaration of Paul M. Wagner in Support of Certain Request for First Day Relief Related to Suppliers (the "Supporting Declaration").  Both the First Day Declaration and the Supporting Declaration were filed contemporaneously herewith and are incorporated herein by reference.

**The Lien Claimants**

7.     The Debtors purchase services from certain vendors that may assert liens on the Debtors' property in those vendors' possession.  Those vendors include (a) common carriers, shippers, barges, tugboats, trucking and rail transport companies, freight and port terminal operators and other third-party service providers that transport, ship and otherwise

facilitate the movement of (i) the Debtors' coal from their mines to, among other places, other facilities of the Debtors and customer facilities and (ii) other goods purchased from the vendors' locations to the appropriate Debtors' locations (collectively, the "Shippers"); (b) bailees, coal yard storage, warehouse facilities and other storage providers that store the Debtors' coal at various stages of the coal process (collectively, the "Warehousemen"); (c) mechanics, contractors and other related service providers that repair, maintain and service essential machinery and equipment used in the operations of the Debtors' businesses (collectively, the "Service Providers" and, together with the Shippers, Warehousemen and Service Providers, the "Lien Claimants"). The Debtors believe that the failure to pay the claims of certain Lien Claimants could have a significant adverse impact on their business operations at a time when the Debtors can ill afford such impact.

8.    Maintaining customer relationships are among management's primary goals as the Debtors transition into chapter 11.  Providing seamless delivery of their coal to these customers is key to meeting this goal.  The Debtors' ability to continually deliver coal, in turn, depends on the Lien Claimants (a) providing, without interruption, their services to the Debtors and (b) honoring the Debtors' instruction with respect to the Debtors' property in Lien Claimants' possession.  Because certain Lien Claimants may refuse to provide services to the Debtor or may maintain possession of Debtors' property in contravention of Debtors' instructions, the Debtors are requesting authority, but not direction, to pay Lien Claimants in their discretion for prepetition claims.[3]

---

[3]    Notwithstanding the relief requested in this Motion and subject to the Debtors' reservation of rights herein, if such Lien Claimants are not paid pursuant to the relief sought herein, for the avoidance of any doubt, the Debtors reserve all their rights to challenge the validity and priority of any purported lien or the amount, nature and classification of such claims.

-4-

9.    <u>Shippers and Warehousemen</u>.  Coal producers negotiate a variety of delivery terms with their customers.  The majority of the Debtors' coal sales contracts require the Debtors to deliver coal to their customers at the mine site.  Nonetheless, the Debtors have some contracts that require them to deliver coal to their customer at other locations, including the customer's facility.  The Debtors sometimes move coal between their own facilities.  In addition, the Debtors utilize third parties to transport goods purchased from the vendor's location to the appropriate Debtors' locations.  In these situations, the Debtors rely on certain Shippers and Warehousemen to ship, transport, store and deliver coal and other goods through established distribution networks (<u>e.g.</u>, trucking, rail, and river).  These service providers are necessary to continue the ordinary, day-to-day operations of the Debtors' businesses.  While the coal and other goods are in transit or storage, these Shippers and Warehouseman have possession of the Debtors' property.

10.    As of the Petition Date, these Shippers and Warehousemen have claims for certain storage, transportation and related services provided to the Debtors prepetition.  If the Debtors fail to pay the Shippers and Warehousemen for these prepetition claims, the Shippers and Warehouseman may stop providing their services to the Debtors on a go forward basis and may also assert their prepetition claims are secured by state law liens.[4]  Because both the

---

[4]    <u>See</u> U.C.C. § 7-307(a) ("A carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law."); U.C.C. § 7-209(a) ("A warehouse has a lien against the bailor on the goods covered by a warehouse receipt or storage agreement or on the proceeds thereof in its possession for charges for storage or transportation, including demurrage and terminal charges, insurance, labor, or other charges, present or future, in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law.").  Substantially similar versions of these provisions of the Uniform Commercial Code have been enacted in each of the major domestic jurisdictions in which the Debtors do business.  <u>See</u>, <u>e.g.</u>, Wyo. Stat. Ann. § 34.1.-7-307(a) (adopting U.C.C. § 7-307(a) in its entirety) and § 34.1-7-209(a) (adopting U.C.C. § 7-209(a) in its entirety).

-5-

existence and perfection of such liens depends, in part, on physical possession of Debtors' coal and other goods, certain Shippers and Warehousemen may refuse to comply with the Debtors' delivery instructions and instead maintain dominion and control over the Debtors' coal and other goods until their claims are paid.

11.     If the Shippers and Warehouseman were to take these actions, it would delay and disrupt the Debtors' delivery of coal to their customers or the delivery of goods to the Debtors.  Disruption of these deliveries could have a negative impact on the Debtors' businesses by, among other things:  (a) requiring the Debtors to incur the unnecessary costs to obtain replacement shipping and warehousing services; (b) preventing the Debtors from making timely deliveries of coal to their customers (and thus impair the Debtors' ability to generate operating revenue); and (c) damaging the Debtors' business reputation.  Based on these possible negative impacts on the value of the Debtors' estates and on their ability to reorganize, the Debtors need the discretion to pay Shippers and Warehousemen's prepetition claims to avoid costly delays and disruptions to the delivery of coal.

12.     The Debtors will evaluate requests for payment by Shippers and Warehousemen and only intend to pay such claimants whose continued service is critical to the Debtors' ongoing operations.  Although it is difficult to estimate with precision the amounts due and owing at any given moment, the Debtors estimate that the prepetition outstanding for Shipper and Warehousemen services that are critical to Debtors' ongoing operations is approximately $1.5 million as of the Petition Date.

13.     Service Providers.  Additionally, in the ordinary course of business, the Debtors employ Service Providers to perform repair, maintain and refurbish Debtors equipment. Like Shippers and Warehousemen, Service Providers may stop providing their services and

assert that they have liens on the Debtors' property (such as mechanics' liens, artisans' liens, contractors' liens, construction liens, mining-related liens, or materialmen's liens)[5] if the Debtors do not pay the Service Providers' prepetition claims.[6]

14.     Service Providers include, among others, original equipment manufacturers and other contractors that maintain, repair and refurbish the Debtors' specialized mining machinery, equipment and vehicles.  These Service Providers typically perform these services at the Service Providers' facilities and thus take possession of the Debtors' property (e.g., underground mining equipment that is critical to the Debtors' mining operations.)  To the extent that these Service Providers' prepetition claims are not paid, they may assert that those claims are secured by possessory liens on the Debtors' property.  Because both the existence and perfection of such liens depends, in part, on maintaining possession of the Debtors' property, certain Service Providers may refuse to return the Debtors' property until their claims are paid.  In many such cases, the value of the Debtors' property in a Service Provider's possession far exceeds the value of the Service Provider's prepetition claim.

---

[5]     Service Providers may attempt to perfect such liens notwithstanding the automatic stay under section 362 of the Bankruptcy Code.  See 11 U.S.C. § 362(b)(3) (the act of perfecting such a lien, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay); 11 U.S.C. § 546(b) (a debtor's lien avoidance powers "are subject to any generally applicable law that … permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection."); Kaler v. Cmty. First Nat'l Bank (In re Heitkamp), 137 F.3d 1087, 1089 (8th Cir. 1998) ("[t]he subcontractors had a statutory lien against the house . . . and could have perfected a security interest in the house even after the Heitkamps filed for bankruptcy") (internal citations omitted).

[6]     See, e.g., Ariz. Rev. Stat. Ann. § 33-989 (providing for lien for labor or material furnished mines and mining claims); Colo. Rev. Stat. § 38-22-104 (providing for lien on mining property), § 38-22-101 (providing for a general mechanics', contractors', and materialimen's lien); 770 Ill. Comp. Stat. Ann. 65 / 1 (providing for a mining lien); Ind. Code Ann. § 32-28-3-1 (providing for a contractors' and mechanics' lien); Nev. Rev. Stat. Ann. § 108.222 (providing for a construction and mechanics' lien); N.M. Stat. Ann. § 48-2-2 (providing for a mechanics' and materialimen's lien); Wyo. Stat. Ann. § 29-2-101 (providing for contractors' and materialimen's liens), § 29-3-103 (providing for mining-related liens), § 29-7-101 (providing for mechanics' liens).

15.     If the Service Providers were to take such actions, it would delay and disrupt the Debtors' mining activities.  Disruption of Debtors' mining activities would negatively impact the Debtors' business by, among other things, (a) interfering with the production of coal to fulfill their customers' orders (and thus impair the Debtors' ability to generate operating revenue); (b) requiring the Debtors to incur the unnecessary costs of replacing their equipment; and (c) damaging the Debtors' business reputation.  Based on these possible negative impacts on the value of the Debtors' estates and in their ability to reorganize, the Debtors need the discretion to pay Service Providers prepetition claims.

16.     The Debtors will evaluate requests for payment by Service Providers and only intend to pay such claimants who possess property of the Debtors, or whose continued service is critical to the Debtors' ongoing operations.  The Debtors estimate that the prepetition amount owed to the Service Providers that the Debtors believe are critical to the Debtors' operations was approximately $5.0 million as of the Petition Date.[7]

17.     In light of the foregoing, it is imperative that the Debtors be authorized to pay the Lien Claimants to:  (a) ensure that the essential services provided by the such entities, both individually and collectively, and the significant and valuable product, equipment, parts and/or goods they control, are available to the Debtors without interruption; and (b) preserve the value of the Debtors' businesses to the fullest extent possible for the benefit of all stakeholders.

18.     The Debtors' management has carefully reviewed the facts and circumstances related to the Lien Claimants and have identified entities that could cause material

---

[7]     This amount is in addition to approximately $3.8 million in uninvoiced services relating to Service Providers that, as of the Petition Date, are in possession of and in the midst of repairing certain of the Debtors' machinery, equipment and other vehicles.  The Debtors believe they have the authority under the Bankruptcy Code and applicable precedent to pay this amount in the ordinary course postpetition without an express grant of authority from the Court, but seek such approval out of an abundance of caution to ensure that the Debtors' property is returned to them in the ordinary course and not retained by such Service Providers on account of non-payment of prepetition amounts due and owing.

business disruptions of the kinds described above if the Debtors do not obtain the relief sought

herein.  The Debtors therefore seek authority, in their discretion, to pay the prepetition claims of

the Lien Claimants, but only to the extent necessary and on such terms and conditions described

herein, so as to avoid potential disruption to their businesses and irreparable loss of value to the

detriment of the Debtors' estates and stakeholders.  Given the size of their businesses, the

magnitude of the costs of any disruption in their operations and the demonstrated benefits to be

obtained in exchange for any payments to the Lien Claimants, the Debtors submit that this is a

reasonable and appropriate cap on the expenditure of estate funds.

### Conditions on Payment of Lien Claims

19.      In an effort to ensure that the prompt payment of each Lien Claim

provides the Debtors with a benefit to their estates, the Debtors propose that each recipient of a

payment on account of a Lien Claim (a "Lienholder Payment") be required to:  (a) continue,

without interruption, its existing business relationship with the Debtors, including, but not

limited to, the acceptance and fulfillment of current and future purchase orders; (b) continue to

provide other business terms on a postpetition basis (consistent with past practices), including

with respect to any applicable credit limits, the pricing of goods and services and the provision of

equivalent levels of service; (c) not file or record in any jurisdiction (whether federal, state, or in

any subdivision of a state), or otherwise assert against the Debtors, their chapter 11 estates, or

against any of their property, a lien (whether statutory or otherwise) or security interest relating

in any manner to the Lien Claims satisfied through the Lienholder Payment; and (d) release to

the Debtors as requested goods or other assets of the Debtors in the Lien Claimant's possession,

all on terms at least as favorable as those extended prepetition or on such other terms that are

acceptable to the Debtors in their business judgment, throughout the pendency of the Debtors' bankruptcy cases (collectively, the "Customary Trade Terms").

20.     If a Lien Claimant accepts a Lienholder Payment and fails to provide the Debtors with the requisite Customary Trade Terms, then:  (a) any Lienholder Payment received by the Lien Claimant will be deemed an unauthorized postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may either:  (i) recover from the Lien Claimant in cash or goods; (ii) at the Debtors' option, apply against any outstanding claim (including any outstanding administrative claim) held by such Lien Claimant; (b) upon recovery of any Lienholder Payment, the corresponding prepetition claim of the Lien Claimant will be reinstated in the amount recovered by the Debtors; (c) the Debtors and any other party in interest with appropriate standing shall have all rights to challenge the validity, priority or extent of the Lien Claimant's lien or interest and the validity and amount of the related claim; and (d) the Debtors and any other party in interest with appropriate standing shall have all rights to seek to avoid as fraudulent or preferential or otherwise any lien or interest held by the Lien Claimant.

21.     The Debtors shall implement and provide notice of the conditions set forth herein as follows:

(a)     The Debtors may require a Lien Claimant to execute an agreement (a "Trade Agreement") prior to its receipt of a Lienholder Payment that (i) confirms that the Lien Claimant agrees to be bound by the terms set forth above, (ii) confirms that the Lien Claimant has received and agrees to be bound by the order granting this Motion, and (iii) contains such other terms and conditions as the Debtors believe proper, including confidentiality provisions.

(b)     If no Trade Agreement is executed, any payment pursuant to which a Lienholder Payment is made will be accompanied by (i) notice from the Debtors explaining that acceptance of the payment by the Lien Claimant constitutes its agreement to provide the Trade Terms and explaining the consequences of its failure to comply with such agreement and (ii) a copy of the order granting this Motion.

-10-

22.     The Debtors shall maintain a matrix summarizing (a) the name of each Lien Claimant paid on account of prepetition claims, (b) the amount of the Lienholder Payments paid to each Lien Claimant and (c) the goods or services provided by such Lien Claimants.  This matrix will be provided bi-weekly, one week in arrears, to the U.S. Trustee, the professionals to the official committee of unsecured creditors (the "Committee") and the administrative agent for the Debtors' proposed postpetition secured debtor-in-possession financing (the "DIP Agent") via their attorneys; provided, however, that the professionals to the Committee shall keep the matrix confidential on a professionals-only basis.

## Argument

23.     The Debtors submit that the entry of an order authorizing them to pay, in their discretion, prepetition claims is necessary and in the best interests of the Debtors' estates and creditor constituencies.  Without the authorization to pay Lien Claims, the Debtors risk losing current and prospective customers and business.

### *Section 363(b) Authorizes the Debtors to Make Postpetition Payments of Prepetition Lien Claims*

24.     Section 363(b) of the Bankruptcy Code allows the debtors, after notice and hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A debtor's decisions to use, sell or lease assets outside the ordinary course of business must be based upon a sound business purpose.  See In re Channel One Commc'ns, Inc., 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (citing Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983)).  See also TLP Servs., LLC v. Stoebner (In re Polaroid Corp.), 460 B.R. 740, 741-42 (B.A.P. 8th Cir. 2011) (allowing a trustee, pursuant in part to section 363(b)(1), to use cash collateral to fund efforts to recover funds from third parties); accord Comm. of Equity Sec. Holders v. Lionel Corp. (In re

Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); In re W.A. Mallory Co. Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales.") (citing WBQ P'ship v. Va. Dep't of Med. Assistance Servs. (In re WBQ P'ship), 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)); Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 143 (2d Cir. 1992) (holding that the sale of property of the estate is justified if it is supported by a good business reason); In re Ionosphere Clubs, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a motion pursuant to section 363(b) of the Bankruptcy Code is "a good business reason").

25.     Courts in this jurisdiction and others have consistently been reluctant to interfere with corporate decisions unless "it is made clear that those decisions are, inter alia, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." In re Farmland Indus., Inc., 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003 ) (citing In re United Artists Theatre Co., 315 F.3d 217, 233 (3d Cir. 2003), Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985), and In re Defender Drug Stores, Inc., 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992)). See also Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC), 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (holding that the business judgment rule may be satisfied "'as long as the proposed action appears to enhance the debtor's estate'") (quoting Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 566 n.16 (8th Cir. 1997) (emphasis in original, internal quotations and alteration omitted)); Four B. Corp. v. Food Barn Stores, Inc. (In

-12-

re Food Barn Stores, Inc.), 107 F.3d 558, 567 n.16 (8th Cir. 1997) (holding that "[w]here the [debtor's] request is not manifestly unreasonable or made in bad faith, the court should normally grant approval 'as long as the proposed action appears to enhance the debtor's estate'") (quoting Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985)) (internal alterations and quotations omitted); Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (finding that "[c]ourts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence").

26.    Here, the Debtors believe that a sound business purpose exists for paying certain Lien Claimants.  The Lien Claimants' services and Debtors' access to certain equipment in the Lien Claimants' possession, is crucial for the orderly and efficient operation of the Debtors' coal businesses.  Certain creditors may refuse to provide those services or give the Debtors access to that equipment and coal if they are not paid for their prepetition claims.  Unless the Debtors have the authority to pay such recalcitrant Lien Claimants, their businesses will suffer irreparable harm.

***Section 105(a) and the Doctrine of Necessity Provide a Basis for Payment to Lien Claimants***

27.    Further, the Court may authorize payment to the Lien Claimants pursuant to section 105(a) of the Bankruptcy Code and the doctrine of necessity.  Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105. The purpose of section 105 of the Bankruptcy Code is to ensure the bankruptcy court has the power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction."  2 Collier on Bankruptcy ¶ 105.01 (Alan N. Resnick & Henry J. Sommer eds.,

16th ed. 2015).  "Under [section 105 of the Bankruptcy Code,] the court can permit pre-plan

payment of a pre-petition obligation when essential to the continued operation of the debtor."

In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing In re Ionosphere Clubs, Inc.,

98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)).

    28.    In addition, under the "doctrine of necessity," courts allow the immediate

payment of prepetition claims where such payment is essential to the debtor's continued

operations.  See In re Wehrenberg, Inc., 260 B.R. 468, 469 (Bankr. E.D. Mo. 2001) ("Pursuant to

11 U.S.C. § 105(a) the Court may authorize the payment of prepetition claims when such

payments are necessary to the continued operation of the Debtor"); In re United Am., Inc.,

327 B.R. 776, 782 (Bankr. E.D. Va. 2005) (acknowledging the existence of the doctrine of

necessity "because otherwise there will be no reorganization and no creditor will have an

opportunity to recoup any part of its prepetition claim"); accord In re Boston & Me. Corp.,

634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize

trustees to pay claims for goods and services that are indispensably necessary to the debtors'

continued operation).

    29.    The Debtors submit that the requested relief represents a sound exercise of

their business judgment, is necessary to avoid immediate and irreparable harm and is justified

under sections 105(a) and 363(b) of the Bankruptcy Code and the doctrine of necessity.

Permitting the Debtors to provide payments to Lien Claimants is essential to the Debtors'

reorganization, and discretionary payments to the Lien Claimants subject to the terms and

conditions set forth herein and the circumstances outlined above would be a reasonable exercise

of the Debtors' business judgment.  It is essential that the Debtors be granted the authority to

immediately pay such Lien Claimants to ensure that the flow of coal through the Debtors'

distribution network (including products being delivered to the Debtors' customers) remains constant, timely and efficient.  Interruptions in the Debtors' supply chain would likely cause disruptions of their businesses and a corresponding loss of customer confidence.

30.    Further, payments to the Lien Claimants is also justified because these service providers are important to the Debtors' operations.  Even if alternative service providers were available, delays and increased costs that are likely to be incurred with such replacements would be substantial and only diminish the value of the Debtors' assets.

31.    Moreover, because the amounts of most of the Lien Claims likely are for less than the value of the property in the Lien Claimants' possession most of the Lien Claimants will likely assert that they are fully secured creditors.  In general, pursuant to section 506 of the Bankruptcy Code, fully secured creditors are entitled to receive (a) payment in full of their prepetition claims and (b) the postpetition interest accruing on such claims up to the value of the collateral.  Consequently, payment of the Lien Claims now will (a) in most cases give the Lien Claimants no more than they otherwise would be entitled to receive on account of their claims in the chapter 11 process if they have valid liens and (b) save the Debtors the cost of interest that otherwise may accrue on any over-secured Lien Claims.  Accordingly, the Debtors' general creditors are not prejudiced by the relief sought herein.

32.    Bankruptcy courts in this District and elsewhere have granted similar relief in numerous other cases.  See, e.g., In re Noranda Aluminum, Inc., No. 16-10083 (Bankr. E.D. Mo. Feb. 10, 2016) (Docket No. 97); In re Arch Coal, Inc., No. 16-40120 (Bankr. E.D. Mo. Jan. 14, 2016) (Docket No. 93); accord In re Walter Energy, Inc., No. 15-02741 (Bankr. N.D. Ala. July 15, 2015 and Sept. 14, 2015) (Docket Nos. 59 and 723) (interim and final orders); In re Alpha Natural Res., Inc., No. 15-33896 (Bankr. E.D. Va.

Aug. 5, 2015 and Sept. 3, 2015) (Docket Nos. 104 and 350) (same); In re Patriot Coal Corp.,

No. 12-51502 (Bankr. S.D.N.Y. July 11, 2012 and Aug. 2, 2012) (Docket Nos. 40 and 255)

(interim and final orders authorizing the debtors to pay the prepetition claims of certain potential

lienholders).[8]

**Request for Authority for Banks to Honor and
Pay Checks and Fund Transfers Related to Lien Claims**

33.     The Debtors also request that all applicable banks and other financial

institutions (collectively, the "Banks") be authorized when requested by the Debtors, to receive,

process, honor and pay any and all checks presented for payment of, and to honor all fund

transfer requests made by the Debtors related to Lien Claims, whether such checks were

presented or fund transfer requests were submitted prior to or after the Petition Date, provided

that sufficient funds are available and standing in the Debtors' credit in the applicable accounts to

cover such checks and fund transfers.  The Debtors represent that these checks are drawn on

identifiable disbursement accounts and can be readily identified as relating directly to the

authorized payments to the Lien Claimants.  Accordingly, the Debtors believe that checks other

than those relating to authorized payments will not be honored inadvertently.  Any such financial

institution may rely on the representations of such Debtors as to which checks are issued or wire

transfers are made and authorized to be paid in accordance with this Motion without any duty of

further inquiry and without liability for relying on such representations.

**Requests for Immediate Relief and Waiver of Stay**

34.     Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), the Debtors seek the entry of orders granting the relief

---

[8]     Unreported orders cited herein are not attached to this Motion.  Copies of these orders will be made
available to the Court or other parties upon request made to the Debtors' counsel.

requested by this Motion on a final basis and, to the extent it applies, a waiver of any stay of the effectiveness of such orders.

35.     Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting … a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate including a motion to pay all or part of a claim that arose before the filing of the petition."  Fed. R. Bankr. P. 6003(b).  In other words, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may authorize the relief prior to the twenty-second day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."
Fed. R. Bankr. P. 6004(h).

36.     As set forth above, in the First Day Declaration and in the Supporting Declaration, it is vital that court grant the relief requested herein, and the Debtors submit that ample cause exists to justify:  (a) the immediate entry of an Order granting the relief sought herein pursuant to Bankruptcy Rule 6003(b), to the extent it applies; and (b) a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies, with respect to the order.

**Reservation of Rights**

37.     Nothing contained herein or in the proposed Order is intended or should be construed as:  (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute any claim on any grounds;

(c) a promise to pay any claim; (d) an implication or admission that any particular claim against the Debtors is a Lien Claim; or (e) a request to assume or reject any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.  The Debtors expressly reserve the right to contest any claims related to the Lien Claimants under applicable bankruptcy and non-bankruptcy law.  The Debtors expressly reserve the right to contest any Lien Claims under applicable bankruptcy and non-bankruptcy law.

### Notice

38.    Notice of this Motion has been given to: (a) Davis Polk & Wardwell LLP and Bryan Cave LLP as counsel to Citibank, N.A. as Administrative Agent for the First Lien Secured Credit Facility and the Debtors' proposed debtor in possession secured credit facility; (b) Brown Rudnick LLP, as counsel to Wilmington Savings Fund Society, FSB as prospective trustee and collateral agent for the Secured Second Lien Notes; (c) Foley & Lardner LLP, as counsel to Wilmington Trust Company as prospective Indenture Trustee for the Unsecured Notes;[9] (d) Robinson & Cole LLP, as counsel to U.S. Bank as resigning trustee and collateral agent for the Second Lien Notes, the Unsecured Notes and the Convertible Notes;[10] (e) counsel to any ad hoc committees; (f) the Debtors' 50 largest unsecured creditors; (g) Mayer Brown LLP, as counsel to PNC Bank, N.A., as Administrator under the Debtors' prepetition accounts receivable securitization facility; (h) the United Mine Workers of America; (i) the Office of the United States Trustee for the Eastern District of Missouri; (j) the Internal Revenue Service; (k) the Securities and Exchange Commission; (l) the United States Department of the Interior;

---

[9]    These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due September 2020; (iii) 6.25% Senior Notes due September 2021; and the (iv) 7.875% Senior Notes due November 2026.

[10]    These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due September 2020; (iii) 6.25% Senior Notes due September 2021; (iv) 7.875% Senior Notes due November 2026; and the (v) Convertible Junior Subordinated Debentures due December 2066.

(m) the United States Department of Labor; (n) the United States Attorney's Office for the

Eastern District of Missouri; and (o) Pension Benefit Guaranty Corporation (collectively, the

"Notice Parties").  In light of the nature of the relief requested, the Debtors submit that no further

notice is necessary.

**No Prior Request**

39.    No prior request for the relief sought in this Motion has been made to this

or any other Court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an order, substantially in the form submitted to the Court, granting the relief requested herein; and (iii) grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated: April 13, 2016
St. Louis, Missouri

Respectfully submitted,

 /s/ Steven N. Cousins
Steven N. Cousins, MO 30788
Susan K. Ehlers, MO 49855
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
 St. Louis, MO  63105
Telephone:  (314) 621-5070
Facsimile:  (314) 612-2239
Email:  scousins@armstrongteasdale.com
Email:  sehlers@armstrongteasdale.com

Heather Lennox (*pro hac vice* pending)
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Email:  hlennox@jonesday.com

Amy Edgy (*pro hac vice* pending)
Daniel T. Moss (*pro hac vice* pending)
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
Email:  aedgy@jonesday.com
Email:  dtmoss@jonesday.com

*Proposed Attorneys for Debtors
and Debtors in Possession*

## <u>SCHEDULE 1</u>

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 1. | Peabody Energy Corporation | 13-4004153 |
| 2. | American Land Development, LLC | 20-3405570 |
| 3. | American Land Holdings of Colorado, LLC | 26-3730572 |
| 4. | American Land Holdings of Illinois, LLC | 30-0440127 |
| 5. | American Land Holdings of Indiana, LLC | 20-2514299 |
| 6. | American Land Holdings of Kentucky, LLC | 20-0766113 |
| 7. | American Land Holdings of New Mexico, LLC | 32-0478983 |
| 8. | American Land Holdings of West Virginia, LLC | 20-5744666 |
| 9. | Arid Operations, Inc. | 84-1199578 |
| 10. | Big Ridge, Inc. | 37-1126950 |
| 11. | Big Sky Coal Company | 81-0476071 |
| 12. | Black Hills Mining Company, LLC | 32-0049741 |
| 13. | BTU Western Resources, Inc. | 20-1019486 |
| 14. | Caballo Grande, LLC | 27-1773243 |
| 15. | Caseyville Dock Company, LLC | 20-8080107 |
| 16. | Central States Coal Reserves of Illinois, LLC | 43-1869432 |
| 17. | Central States Coal Reserves of Indiana, LLC | 20-3960696 |
| 18. | Century Mineral Resources, Inc. | 36-3925555 |
| 19. | Coal Reserve Holding Limited Liability Company No. 1 | 43-1922737 |
| 20. | COALSALES II, LLC | 43-1610419 |
| 21. | Colorado Yampa Coal Company, LLC | 95-3761211 |
| 22. | Conservancy Resources, LLC | 20-5744701 |
| 23. | Cottonwood Land Company | 43-1721982 |
| 24. | Cyprus Creek Land Company | 73-1625890 |
| 25. | Cyprus Creek Land Resources LLC | 75-3058264 |
| 26. | Dyson Creek Coal Company, LLC | 43-1898526 |
| 27. | Dyson Creek Mining Company, LLC | 20-8080062 |
| 28. | El Segundo Coal Company, LLC | 20-8162824 |
| 29. | Empire Land Holdings, LLC | 61-1742786 |
| 30. | Falcon Coal Company, LLC | 35-2006760 |
| 31. | Four Star Holdings, LLC | 30-0885825 |
| 32. | Francisco Equipment Company, LLC | 37-1805119 |
| 33. | Francisco Land Holdings Company, LLC | 36-4831111 |
| 34. | Francisco Mining, LLC | 30-0922117 |
| 35. | Gallo Finance Company, LLC | 43-1823616 |
| 36. | Gold Fields Chile, LLC | 13-3004607 |
| 37. | Gold Fields Mining, LLC | 36-2079582 |
| 38. | Gold Fields Ortiz, LLC | 22-2204381 |
| 39. | Hayden Gulch Terminal, LLC | 86-0719481 |
| 40. | Highwall Mining Services Company | 20-0010659 |
| 41. | Hillside Recreational Lands, LLC | 32-0214135 |
| 42. | HMC Mining, LLC | 43-1875853 |
| 43. | Illinois Land Holdings, LLC | 26-1865197 |
| 44. | Independence Material Handling, LLC | 43-1750064 |
| 45. | James River Coal Terminal, LLC | 55-0643770 |
| 46. | Juniper Coal Company, LLC | 43-1744675 |
| 47. | Kayenta Mobile Home Park, Inc. | 86-0773596 |
| 48. | Kentucky Syngas, LLC | 26-1156957 |
| 49. | Kentucky United Coal, LLC | 35-2088769 |
| 50. | Lively Grove Energy, LLC | 20-5752800 |
| 51. | Lively Grove Energy Partners, LLC | 26-0180403 |
| 52. | Marigold Electricity, LLC | 26-0180352 |
| 53. | Midco Supply and Equipment Corporation | 43-6042249 |
| 54. | Midwest Coal Acquisition Corp. | 20-0217640 |
| 55. | Midwest Coal Reserves of Illinois, LLC | 20-3960648 |

|  | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 56. | Midwest Coal Reserves of Indiana, LLC | 20-3405958 |
| 57. | Midwest Coal Reserves of Kentucky, LLC | 20-3405872 |
| 58. | Moffat County Mining, LLC | 74-1869420 |
| 59. | Mustang Energy Company, LLC | 43-1898532 |
| 60. | New Mexico Coal Resources, LLC | 20-3405643 |
| 61. | NM Equipment Company, LLC | 36-4821991 |
| 62. | Pacific Export Resources, LLC | 27-5135144 |
| 63. | Peabody America, LLC | 93-1116066 |
| 64. | Peabody Archveyor, L.L.C. | 43-1898535 |
| 65. | Peabody Arclar Mining, LLC | 31-1566354 |
| 66. | Peabody Asset Holdings, LLC | 20-3367333 |
| 67. | Peabody Bear Run Mining, LLC | 26-3582291 |
| 68. | Peabody Bear Run Services, LLC | 26-3725923 |
| 69. | Peabody Caballo Mining, LLC | 83-0309633 |
| 70. | Peabody Cardinal Gasification, LLC | 20-5047955 |
| 71. | Peabody China, LLC | 43-1898525 |
| 72. | Peabody Coalsales, LLC | 20-1759740 |
| 73. | Peabody COALTRADE International (CTI), LLC | 20-1435716 |
| 74. | Peabody COALTRADE, LLC | 43-1666743 |
| 75. | Peabody Colorado Operations, LLC | 20-2561644 |
| 76. | Peabody Colorado Services, LLC | 26-3723774 |
| 77. | Peabody Coulterville Mining, LLC | 20-0217834 |
| 78. | Peabody Development Company, LLC | 43-1265557 |
| 79. | Peabody Electricity, LLC | 20-3405744 |
| 80. | Peabody Employment Services, LLC | 26-3730348 |
| 81. | Peabody Energy Generation Holding Company | 73-1625891 |
| 82. | Peabody Energy Investments, Inc. | 68-0541702 |
| 83. | Peabody Energy Solutions, Inc. | 43-1753832 |
| 84. | Peabody Gateway North Mining, LLC | 27-2294407 |
| 85. | Peabody Gateway Services, LLC | 26-3724075 |
| 86. | Peabody Holding Company, LLC | 74-2666822 |
| 87. | Peabody Holdings (Gibraltar) Limited | 20-5543587 |
| 88. | Peabody IC Funding Corporation | 46-2326991 |
| 89. | Peabody IC Holdings, LLC | 30-0829603 |
| 90. | Peabody Illinois Services, LLC | 26-3722638 |
| 91. | Peabody Indiana Services, LLC | 26-3724339 |
| 92. | Peabody International Investments, Inc. | 26-1361182 |
| 93. | Peabody International Services, Inc. | 20-8340434 |
| 94. | Peabody Investments Corp. | 20-0480084 |
| 95. | Peabody Magnolia Grove Holdings, LLC | 61-1683376 |
| 96. | Peabody Midwest Management Services, LLC | 26-3726045 |
| 97. | Peabody Midwest Mining, LLC | 35-1799736 |
| 98. | Peabody Midwest Operations, LLC | 20-3405619 |
| 99. | Peabody Midwest Services, LLC | 26-3722194 |
| 100. | Peabody Mongolia, LLC | 20-8714315 |
| 101. | Peabody Natural Gas, LLC | 43-1890836 |
| 102. | Peabody Natural Resources Company | 51-0332232 |
| 103. | Peabody New Mexico Services, LLC | 20-8162939 |
| 104. | Peabody Operations Holding, LLC | 26-3723890 |
| 105. | Peabody Powder River Mining, LLC | 43-0996010 |
| 106. | Peabody Powder River Operations, LLC | 20-3405797 |
| 107. | Peabody Powder River Services, LLC | 26-3725850 |
| 108. | Peabody PowerTree Investments, LLC | 20-0116980 |
| 109. | Peabody Recreational Lands, L.L.C. | 43-1898382 |
| 110. | Peabody Rocky Mountain Management Services, LLC | 26-3725390 |
| 111. | Peabody Rocky Mountain Services, LLC | 20-8162706 |
| 112. | Peabody Sage Creek Mining, LLC | 26-3730653 |
| 113. | Peabody School Creek Mining, LLC | 20-3585831 |

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 114. | Peabody Services Holdings, LLC | 26-3726126 |
| 115. | Peabody Southwest, LLC | 20-5744732 |
| 116. | Peabody Southwestern Coal Company, LLC | 43-1898372 |
| 117. | Peabody Terminal Holding Company, LLC | 26-1087861 |
| 118. | Peabody Terminals, LLC | 31-1035824 |
| 119. | Peabody Trout Creek Reservoir LLC | 30-0746873 |
| 120. | Peabody Twentymile Mining, LLC | 26-3725223 |
| 121. | Peabody Venezuela Coal Corp. | 43-1609813 |
| 122. | Peabody Venture Fund, LLC | 20-3405779 |
| 123. | Peabody-Waterside Development, L.L.C. | 75-3098342 |
| 124. | Peabody Western Coal Company | 86-0766626 |
| 125. | Peabody Wild Boar Mining, LLC | 26-3730759 |
| 126. | Peabody Wild Boar Services, LLC | 26-3725591 |
| 127. | Peabody Williams Fork Mining, LLC | 20-8162742 |
| 128. | Peabody Wyoming Gas, LLC | 20-5744610 |
| 129. | Peabody Wyoming Services, LLC | 26-3723011 |
| 130. | PEC Equipment Company, LLC | 20-0217950 |
| 131. | PG INVESTMENTS SIX, L.L.C. | 43-1898530 |
| 132. | Point Pleasant Dock Company, LLC | 20-0117005 |
| 133. | Pond River Land Company | 73-1625893 |
| 134. | Porcupine Production, LLC | 43-1898379 |
| 135. | Porcupine Transportation, LLC | 43-1898380 |
| 136. | Riverview Terminal Company | 13-2899722 |
| 137. | Sage Creek Holdings, LLC | 26-3286872 |
| 138. | Sage Creek Land & Reserves, LLC | 38-3936826 |
| 139. | School Creek Coal Resources, LLC | 20-2902073 |
| 140. | Seneca Coal Company, LLC | 84-1273892 |
| 141. | Seneca Property, LLC | 36-4820253 |
| 142. | Shoshone Coal Corporation | 25-1336898 |
| 143. | Southwest Coal Holdings, LLC | 37-1794829 |
| 144. | Star Lake Energy Company, L.L.C. | 43-1898533 |
| 145. | Sugar Camp Properties, LLC | 35-2130006 |
| 146. | Thoroughbred Generating Company, L.L.C. | 43-1898534 |
| 147. | Thoroughbred Mining Company LLC. | 73-1625889 |
| 148. | Twentymile Coal, LLC | 95-3811846 |
| 149. | Twentymile Equipment Company, LLC | 38-3982017 |
| 150. | Twentymile Holdings, LLC | 38-3937156 |
| 151. | United Minerals Company, LLC | 35-1922432 |
| 152. | West Roundup Resources, LLC | 20-2561489 |
| 153. | Wild Boar Equipment Company, LLC | 32-0488114 |
| 154. | Wild Boar Land Holdings Company, LLC | 36-4831131 |