**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>Peabody Energy Corporation, <u>et al.</u>,<br>                          Debtors.[1] | Case No. 16-42529<br>CHAPTER 11<br><br>(Joint Administration Requested)<br><br>Hearing Date and Time:<br>TBD<br><br>Hearing Location:<br>TBD |

**MOTION OF THE DEBTORS AND DEBTORS IN**
**POSSESSION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE CONTINUATION AND ASSUMPTION  OF**
**THE ADM AGREEMENT AND (II) GRANTING RELATED RELIEF**

Peabody Energy Corporation ("<u>PEC</u>") and certain of its direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), hereby move this Court, pursuant to sections 105(a), 363, 364 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), for the entry of interim and final orders (a) authorizing the continuation and assumption of the ADM Agreement (as defined below), and (b) granting related relief, and in support thereof, respectfully represent as follows:[2]

**Jurisdiction and Venue**

1.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States

---

[1]      The Debtors and their employer identification numbers are listed on Schedule 1 attached hereto.  The addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

[2]      Copies of the proposed orders will be made available on the Debtors' case website at http://www.kccllc.net/peabody.

District Court for the Eastern District of Missouri.  This is a core proceeding pursuant to 28

U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.      On April 13, 2016 (the "Petition Date"), the Debtors commenced their

reorganization cases by filing voluntary petitions for relief under chapter 11 the Bankruptcy

Code.  The Debtors are authorized to continue to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

3.      Debtor PEC is a Delaware corporation headquartered in St. Louis,

Missouri.  PEC was incorporated in 1998 and became a public company in 2001.  Each of the

other Debtors is a wholly-owned direct or indirect subsidiary of PEC.

4.      PEC is the world's largest private-sector coal company (by volume), with

26 active coal mining operations located in the United States and Australia.  The Debtors'

domestic mines produce and sell thermal coal, which is primarily purchased by electricity

generators.  PEC's Australian operations mine both thermal and metallurgical coal, a majority of

which is exported to international customers.  As of December 31, 2015, Debtor PEC and its

subsidiaries' property holdings include 6.3 billion tons of proven and probable coal reserves and

approximately 500,000 acres of surface property through ownership and lease agreements.  In

the United States alone, as of December 31, 2015, the Debtors held an estimated 5.5 billion tons

of proven and probable coal reserves, and the Debtors generated sales of approximately 180

million tons of coal.  In addition to its mining operations, the Debtors market and broker coal

from other coal producers across the United States, Australia, Europe and Asia.

5.      The Debtors operate in a competitive and highly regulated industry that

has experienced strong headwinds and precipitously declining demand and pricing in recent

years due to the rise of low priced alternative energy sources – including an abundance of natural gas.  Combined with these factors, slowing global economic growth drove a wide range of goods prices lower in 2015 and resulted in the largest broad market decline since 1991.  Indeed, demand from electric utilities in the United States alone declined approximately 110 million tons in 2015.  These market conditions, in connection with lower realized pricing in the United States and Australia, resulted in a 21.0 million ton decline in the Debtors' and their non-debtor subsidiaries' coal sales during 2015.  As a result of these challenges, several large United States coal companies have filed for chapter 11 protection in recent years.

6.      A comprehensive description of the Debtors' businesses and operations, capital structure and the events leading to the commencement of these chapter 11 cases can be found in the Declaration of Amy Schwetz, Executive Vice President and Chief Financial Officer of Debtor PEC, in Support of First Day Pleadings of Debtors and Debtors in Possession (the "First Day Declaration"), which was filed contemporaneously herewith and is incorporated herein by reference.

### The Debtors' Clearing Activities

7.      In addition to mining operations, the Debtors and their non-Debtor affiliates market and broker coal from other coal producers, both as principal and agent, and trade coal and freight related contracts through trading and business offices in Australia, China, Germany, India, Indonesia, the United Kingdom and the U.S (the "Trading and Brokerage Business").  Coal brokering is conducted both as principal and agent in support of various coal production-related activities that may involve coal produced from the company's mines, coal sourcing arrangements with third-party mining companies or offtake agreements with other coal producers. The Trading and Brokerage segment also provides transportation-related services, which involve both financial derivative contracts and physical contracts.

8.      In connection with the Trading and Brokerage Business, the Debtors and their non-Debtor affiliates enter into exchanged-settled transactions on various exchanges, including the Chicago Mercantile Exchange (CME) Group, Intercontinental Exchange (ICE), LCH.Clearnet (formerly known as the London Clearing House), NOS Clearing ASA and Singapore Exchange (SGX).   To transact on an exchange, one must be an exchange member. Accordingly, the Debtors generally consummate their exchanged-settled transactions through a clearing agreement (the "ADM Agreement") with ADM Investor Services, Inc. ("ADM").

9.      The Debtors' clearing relationship with ADM requires the Debtors to satisfy certain initial and variation margin requirements.  Initial margin is the margin that the Debtors are required to pay to be able to initially buy or sell a futures contracts.  Variation margin, on the other hand, is the additional margin that ADM requires of its clients based on daily changes in the value of our positions.  As of the Petition Date, the Debtors' obligations to ADM were fully collateralized through the posting of cash margin.

10.      The Debtors desire to continue their Trading and Brokerage Business in the ordinary course post-bankruptcy.  In order to continue this business, the Debtors must be free to honor margin calls, if any, associated with their prepetition trades, including margin calls based on post-bankruptcy price movements.  In addition, the Debtors must be free, in their business judgment, to enter into new trades, post the associated margin and otherwise transact and perform their obligations under the ADM Agreement and exchange rules.

## Argument

### The Debtors Enter Into and Perform Under Cleared Transactions in the Ordinary Course of Business

11.      The Debtors believe that performing under the ADM Agreement is within the ordinary course of their business and that they can consummate transactions under the ADM

Agreement on a postpetition basis without notice and a hearing. Nonetheless, ADM may be unwilling to do business with the Debtors without specific authorization from the Court for such transactions. Indeed, courts have granted similar relief in other major coal company reorganizations and other cases. See, e.g., In re Arch Coal, Inc., No. 16-40120 (Bankr. E.D. Mo. Jan. 14, 2016) (Docket No. 84); In re Patriot Coal Corp., No. 12-12900 (Bankr. S.D.N.Y. Aug. 16, 2012) (Docket No. 365); accord In re Energy Future Holdings Corp., No. 14-10979 (Bankr. D. Del. June 6, 2014) (Docket No. 860); In re AMR Corp., No. 11-15463 (Bankr. S.D.N.Y. Dec. 22, 2011) (Docket No. 433).[3]

12.     As a consequence, counterparties have come to expect that debtors that wish to enter into trading transactions will seek and obtain such relief. Thus, out of an abundance of caution, the Debtors request that the Court determine that the performance of the ADM Agreement and entering into transactions under such agreement are "ordinary course transactions" within the meaning of section 363(c)(1) of the Bankruptcy Code, or, in the alternative, grant the Debtors authority pursuant to section 363(b)(1) of the Bankruptcy Code to enter into transactions and perform under the ADM Agreement without further order of the Court.

13.     To effectively manage the risks inherent in the Debtors' businesses, the Debtors must also be able to continue to perform under the ADM Agreement on an uninterrupted basis postpetition. Further, the Debtors must be able to maintain the confidentiality of the basic terms of such transactions. Given the confidential and immediate nature of entering into transactions under the ADM Agreement, it is impractical and counterproductive to require the Debtors to seek separate approval with respect to each such transaction.

---

[3]     Unreported orders cited herein are not attached to this Motion. Copies of these orders will be made available to the Court or other parties upon request made to the Debtors' counsel.

14.     Pursuant to section 363 of the Bankruptcy Code, a debtor, as debtor in possession, is authorized to "enter into transactions . . . in the ordinary course of business without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  Section 363(c) "strik[es] the optimal balance between the interests of the debtors and the creditors" to "serve the 'overriding goal of maximizing the value of the estate.'"  Habinger, Inc. v. Metro. Cosmetic & Reconstructive Surgical Clinic, P.A., 124 B.R. 784, 786 (D. Minn. 1990) (quoting United States ex rel. Harrison v. Estate of Deutscher (In re H&S Transp. Co.), 115 B.R. 592, 599 (M.D Tenn. 1990)).  "The ordinary course of business standard is intended to allow a debtor the flexibility it needs to run its business and respond quickly to changes in the business climate."  Habinger, 124 B.R. at 786 (internal quotation marks omitted).

15.     The Bankruptcy Code does not define "ordinary course of business." However, bankruptcy courts within the 8th Circuit have held that a transaction qualifies as "ordinary course" if it: (a) "is of a type that is commonly undertaken within the debtor's industry," Peltz v. Gulfcoast Workstation Grp. (In re Bridge Info. Sys.), 293 B.R. 479, 486 (Bankr. E.D. Mo. 2003); and (b) is ordinary and consistent with the reasonable expectations of creditors.  Johnston v. First St. Cos. (In re Waterfront Cos.), 56 B.R. 31, 35 (Bankr. D. Minn. 1985).  See also In re Bridge Info. Sys., Inc., 293 B.R. at 486 (courts look to "whether interested parties would reasonably expect[] the particular debtor in possession to seek court approval before entering into the questioned transaction").  A "fundamental characteristic of an 'ordinary' post-petition business transaction is its similarity to a pre-petition business practice."  In re Commercial Mortg. & Fin., Co., 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (quoting Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.), 186 B.R. 414, 425 (N.D. Ill. 1995).  See also Comm. of

Asbestos Related Litigants v. Johns Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 617 (Bankr. S.D.N.Y. 1986) (finding that "the nature of the debtor's business prior to its Chapter 11 filing is compared to its course of conduct postpetition").  In determining whether a transaction is ordinary, two relevant factors are the type of business a debtor is engaged in as well as the size and nature of the business and transaction in question.  In re H&S Transp. Co., 115 B.R. at 598.  The Debtors will generally enter into transactions with ADM under the ADM Agreement of the same type as the prepetition transactions.  Furthermore, the size and nature of the transactions will be similar to the prepetition activities, as will the Debtors' reasons for entering into the transactions.

16.    As noted above, the Debtors believe that they are authorized to enter into transactions under the ADM Agreement in the ordinary course without further order of this Court.  Although the Debtors believe that consummation of the transactions under the ADM Agreement is within the ordinary course of their businesses and that they can consummate these transactions without notice and a hearing, the Debtors nevertheless request that the Court enter an order authorizing them to enter into and perform under these transactions, in part because ADM may be unwilling to take any "risk" on the "ordinary course issue" fearing that any postpetition transaction may later be avoided under section 549 of the Bankruptcy Code. Alternatively, if the transactions under the ADM Agreement are deemed or determined not to be in the ordinary course of the Debtors' businesses, then the Debtors request that the Court enter an order pursuant to section 363(b)(1) of the Bankruptcy Code authorizing the Debtors to enter into transactions and perform under the ADM Agreement on a post-petition basis.

17.    Section 363(b) of the Bankruptcy Code allows the debtors, after notice and hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1). A debtor's decisions to use, sell or lease assets outside the ordinary course of business must be based upon a sound business purpose. See In re Channel One Commc'ns, Inc., 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (citing Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983)). See also TLP Servs., LLC v. Stoebner (In re Polaroid Corp.), 460 B.R. 740, 741-42 (B.A.P. 8th Cir. 2011) (allowing a trustee, pursuant in part to section 363(b)(1), to use cash collateral to fund efforts to recover funds from third parties); accord Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); In re W.A. Mallory Co. Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales.") (citing WBQ P'ship v. Va. Dep't of Med. Assistance Servs. (In re WBQ P'ship), 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)); Official Comm. Of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 143 (2d Cir. 1992) (holding that the sale of property of the estate is justified if it is supported by a good business reason); In re Ionosphere Clubs, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a motion pursuant to section 363(b) of the Bankruptcy Code is "a good business reason").

18.    Courts have consistently been reluctant to interfere with corporate decisions unless "it is made clear that those decisions are, inter alia, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." In re Farmland Indus., Inc., 294 B.R 855, 881 (Bankr. W.D. Mo. 2003) (citing In re United Artists Theatre Co., 315 F.3d 217, 233 (3d Cir. 2003), Richmond Leasing Co. v. Capital

Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985) and In re Defender Drug Stores, Inc., 145 B.R.

312, 317 (B.A.P. 9th Cir. 1992)).  See also Crystalin, L.L.C. v. Selma Props., Inc. (In re

Crystalin, L.L.C.), 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (holding that the business

judgment rule may be satisfied "'as long as the proposed action appears to enhance the debtor's

estate.'") (quoting Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107

F.3d 558, 567 n.16 (8th Cir. 1997)) (emphasis in original, internal quotations and alterations

omitted); Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558,

567 n.16 (8th Cir. 1997) (holding that "[w]here the [debtor's] request is not manifestly

unreasonable or made in bad faith, the court should normally grant approval 'as long as the

proposed action appears to enhance the debtor's estate'") (quoting Richmond Leasing Co. v.

Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985) (internal alterations and quotations

omitted)); Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated

Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (finding that "[c]ourts are loath to interfere with

corporate decisions absent a showing of bad faith, self-interest, or gross negligence").

19.    The Debtors submit that the requested relief represents a sound exercise of their

business judgment, is necessary to avoid immediate and irreparable harm and is justified under

sections 105(a) and 363(b) of the Bankruptcy Code.  If authorization to perform and enter into

transactions under the ADM Agreement is not granted, the Debtors will be at a financial

disadvantage vis-à-vis their competitors, and the Debtors will be unable to take advantage of

their expertise in the industry and the common industry practice employed to hedge risk and

manage expenses.  As such, the Debtors respectfully request the entry of an order providing that

the Debtors are authorized to enter into and consummate transactions under the ADM Agreement

without further order of the Court.

***Authority to Pledge Collateral and Other Credit Support under Cleared Transactions***

20.      The Debtors may be required in certain circumstances to provide credit support (collectively, "Credit Support") to ADM, including by prepaying obligations, pledging collateral, posting initial or variation margin or providing other forms of collateral to ADM.  The Debtors thus request authority to provide necessary Credit Support to ADM in accordance with the ADM Agreement or otherwise agreed; provided, however, that the provision of Credit Support is consistent with the Debtors' postpetition debtor in possession financing facility (the "DIP Financing Agreement") and the A/R Facility.  The Debtors believe that ADM was fully collateralized as of the Petition Date.  The Debtors also believe that ADM is entitled to the protections of section 364(e) of the Bankruptcy Code.

21.      In the absence of such relief, ADM may refuse to consummate transactions if the Debtors do not comply with their margin requirements.  Therefore, to preserve the value of the Debtors' estates, the Debtors request the express authority to provide Credit Support under the ADM Agreement.

22.      Section 364(c) of the Bankruptcy Code permits a debtor unable to obtain unsecured credit in the ordinary course of business under section 364(a) of the Bankruptcy Code to obtain credit (a) with priority over any or all administrative expenses specified in sections 503(b) or 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien or (c) secured by a junior lien on property of the estate that is subject to a lien.  To obtain secured credit on a postpetition basis, a debtor must demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis.  Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986) (affirming lower court's approval of a loan made to the debtor under section 364(d) of the Bankruptcy Code).  See also In re Ames Dept. Stores, Inc., 115 B.R. 34, 37

(Bankr. S.D.N.Y. 1990) (debtor must demonstrate inability to obtain unsecured credit to acquire approval of loan under section 364(c)).  In making this showing, the Bankruptcy Code "imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable."  In re Snowshoe Co., 789 F.2d at 1088.  See also In re Ames Dept. Stores, 115 B.R. at 40 (to obtain relief under section 364(c), "a debtor is not required to seek credit from every possible source").  Courts grant a debtor considerable deference in exercising its sound business judgment to obtain such credit, provided that the agreement is consistent with the provisions of, and policies underlying the Bankruptcy Code.  See In re Farmland Indus., Inc., 294 B.R. at 879-81 (court may consider debtor's business judgment, among other things, in determining whether to approve postpetition financing under section 364).

23.     Inability to provide Credit Support to ADM could cause disruption to the Debtors' operations and expose the Debtors to fluctuations in market prices.  Further, with respect to those transactions under the ADM Agreement that are used for hedging purposes, any future posting of collateral will not result in any net loss to the Debtors.  ADM will realize on its collateral only if the Debtors owe ADM money.  The Debtors will owe money to ADM for hedging transactions, and the collateral that will have been posted will be at risk, only when the prices of the subject of the hedge become favorable to ADM.  In these situations, although the Debtors may owe money on account of the transaction, the Debtors' businesses will have benefited from the favorable price movements of the hedge in question.  Consequently, the losses, if any, from the transaction that serve as a hedge on operating costs, will likely be offset by gains in the Debtors' operations.  Thus, the benefits of the Debtors' hedging strategy at ADM can be realized only by the Debtors continuing their prepetition practices.

24.     As stated above, the Debtors believe that performing transactions under the ADM

Agreement is within the ordinary course of their businesses.  Accordingly, providing Credit

Support is also within the ordinary course of the Debtors' businesses.  Moreover, the relief

requested herein is in the best interest of the Debtors' estates and creditors.

25.     Further, the Court may authorize the Debtors to provide Credit Support in

accordance with the ADM Agreement pending assumption pursuant to section 105(a) of the

Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to issue

"any order, process, or judgment that is necessary or appropriate to carry out the provisions of"

the Bankruptcy Code.  11 U.S.C. § 105.  The purpose of section 105 of the Bankruptcy Code is

to ensure the bankruptcy court has the power to take whatever action "is appropriate or necessary

in aid of the exercise of [its] jurisdiction."  2 Collier on Bankruptcy ¶ 105.01 (Alan N. Resnick &

Henry J. Sommer eds., 16th ed. 2015).  "Under [section 105 of the Bankruptcy Code,] the court

can permit pre-plan payment of a pre-petition obligation when essential to the continued

operation of the debtor."  In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing In re

Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)).

26.     In addition, under the "doctrine of necessity," courts allow the immediate

payment of prepetition claims where such payment is essential to the debtor's continued

operations.  See In re Wehrenberg, Inc., 260 B.R. 468, 469 (Bankr. E.D Mo. 2001) ("Pursuant to

11 U.S.C. § 105(a) the Court may authorize the payment of prepetition claims when such

payments are necessary to the continued operation of the Debtor."); In re United Am., Inc., 327

B.R. 776, 782 (Bankr. E.D. Va. 2005) (acknowledging the existence of the doctrine of necessity

"because otherwise there will be no reorganization and no creditor will have an opportunity to

recoup any part of its prepetition claim"); accord In re Boston & Me. Corp., 634 F.2d 1359, 1382

(1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). Here, the ADM Agreement was fully collateralized as of the Petition Date. To the extent additional Credit Support is required under the ADM Agreement due to post-petition market movements or new trades, the Debtors seek the authority to provide such Credit Support immediately to ADM in accordance with their clearing relationship.

***The Debtors Should be Authorized to Assume the ADM Agreement***

27.    The ADM Agreement constitutes an executory contract that the Debtors may assume under section 365(a) of the Bankruptcy Code. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). See also NLRB v. Bildisco & Bildisco, 465 U.S. 513, 521 (1984) superseded by statute on other grounds, Pub. L. No. 98-353, § 541(a), 98 Stat. 390 (July, 10, 1984) Codified at 11 U.S.C. § 1113; Cameron v. Pfaff Plumbing & Heating, Inc., 966 F.2d 414, 415 (8th Cir. 1992). Assumption or rejection of an executory contract by a debtor is subject to review under the business judgment standard. See In re Food Barn Stores, Inc., 107 F.3d at 567 n.16; In re Gateway Apparel, Inc., 210 B.R. 567, 570 (Bankr. E.D. Mo. 1997). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." In re Tama Beef Packing, Inc., 277 B.R. 407, 413 (Bankr. N.D. Iowa 2002) (quoting Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993)).

28.     Courts regularly approve debtors' proposed assumptions or rejections upon finding that such debtors have exercised their sound business judgment.  See In re Crystalin, L.L.C., 293 B.R. at 463-64 (The business judgment test "is not an onerous one and does not require the bankruptcy court to place itself in the position of the trustee or debtor") (internal quotation marks omitted); accord In re Steaks to Go, Inc., 226 B.R. 35, 37 (Bankr. E.D. Mo. 1998) (noting that a court will generally approve of a rejection of an executory contract "if the rejection is based on the debtor['s] . . . best business judgment in the circumstances").  See also In re Audra-John Corp., 140 B.R. 752, 756 (Bankr. D. Minn. 1992) ("The [business judgment] test embodies considerable deference to the proponent of the rejection . . . so long as it can articulate sound business reasons for repudiating the contract.") (internal citation omitted); In re MF Global Holdings Ltd., 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012) ("Courts generally will not second-guess a debtor's business judgment . . . ."); Butler v. Resident Care Innovation Corp., 241 B.R. 37, 47 (D.R.I. 1999) ("[T]he reviewing court ought to defer to the Trustee's decision . . . unless the decision is so unreasonable that it could not be based on sound business judgment, but only on bad faith or whim.") (internal quotation marks omitted); In re G Survivor Corp., 171 B.R. 755, 758 (Bankr. S.D.N.Y. 1994) aff'd sub nom. John Forsyth Co. v. G Licensing, Ltd., 187 B.R. 111 (S.D.N.Y. 1995) ("a bankrupt's decision to reject an executory contract because of perceived business advantage requires that the decision be accepted by courts unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse" of the debtor's retained business discretion); COR Route 5 Co. v. Penn Traffic Co. (In re Penn Traffic Co.), 524 F.3d 373, 383 (2d Cir. 2008) (The business judgment standard "presupposes that the estate will assume a contract only where doing so will be to its economic advantage and will reject contracts whose performance would benefit the counterparty at the expense of the estate").

29.     As discussed above, the Debtors' decision to continue the ADM Agreement and enter into transactions thereunder is a sound exercise of the Debtors' business judgment.  As part of the assumption, the Debtors will continue to perform under the ADM Agreement, including providing Credit Support as required.  As with the Debtors' other business decisions related to continuation of the ADM Agreement, the Debtors' decision to assume the ADM Agreement satisfies the business judgment test.  Thus, this Court should authorize the Debtors to assume the ADM Agreement under section 365 of the Bankruptcy Code.

## Requests for Immediate Relief and Waiver of Stay

30.     Pursuant to Rules 4001(c), 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek the entry of orders granting the relief requested by this Motion on an interim and final basis and, to the extent it applies, a waiver of any stay of the effectiveness of such order.

31.     Bankruptcy Rule 4001(c) provides that, when presented with a motion for authority to obtain credit, the "court may conduct a hearing before [14 days after service of the motion], but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Fed. R. Bankr. P. 4001(c).  Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate including a motion to pay all or part of a claim that arose before the filing of the petition."  Fed. R. Bankr. P. 6003(b).  In other words, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may authorize the relief prior to the 22nd day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale,

or lease of property other than cash collateral is stayed until the expiration of 14 days after entry

of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).

32.      As set forth above and in the Declaration of James A. Tichenor (the "Tichenor

Declaration"), it is vital that the Court grant the relief requested herein and the Debtors submit

that ample cause exists to justify:  (a) the immediate entry of the order granting the relief sought

herein pursuant to Bankruptcy Rules 4001(c) and 6003(b) to the extent that they apply; and (b) a

waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies, with

respect to the order.

### Reservation of Rights

33.      Nothing contained herein or in the proposed order is intended or should be

construed as:  (a) an admission as to the validity of any claim, security interest or lien against any

of the Debtors or non-Debtor affiliates; (b) a waiver of the Debtors' or any other party in

interest's rights to dispute any claim, security interest or lien on any grounds; (c) a promise or

requirement to pay any claim;  or (d) a waiver or limitation of the Debtors' rights under the

Bankruptcy Code or any other applicable law.

### Notice

34.      Notice of this Motion has been given to: (a) Davis Polk & Wardwell LLP and

Bryan Cave LLP as counsel to Citibank, N.A. as Administrative Agent for the First Lien Secured

Credit Facility and the Debtors' proposed debtor in possession secured credit facility; (b) Brown

Rudnick LLP, as counsel to Wilmington Savings Fund Society, FSB as prospective trustee and

collateral agent for the Secured Second Lien Notes; (c) Foley & Lardner LLP, as counsel to

Wilmington Trust Company as prospective Indenture Trustee for the Unsecured Notes;[4] (d)

Robinson & Cole LLP, as counsel to U.S. Bank as resigning trustee and collateral agent for the

Second Lien Notes, the Unsecured Notes and the Convertible Notes;[5] (e) counsel to any ad hoc

committees; (f) the Debtors' 50 largest unsecured creditors; (g) Mayer Brown LLP, as counsel to

PNC Bank, N.A., as Administrator under the Debtors' prepetition accounts receivable

securitization facility; (h) the United Mine Workers of America; (i) the Office of the United

States Trustee for the Eastern District of Missouri; (j) the Internal Revenue Service; (k) the

Securities and Exchange Commission; (l) the United States Department of the Interior; (m) the

United States Department of Labor; (n) the United States Attorney's Office for the Eastern

District of Missouri; (o) Pension Benefit Guaranty Corporation; and (p) ADM (collectively, the

"Notice Parties").  In light of the nature of the relief requested, the Debtors submit that no further

notice is necessary.

## No Prior Request

35.    No prior request for the relief sought in this Motion has been made to this or any

other Court in connection with these chapter 11 cases.

---

[4]    These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due
September 2020; (iii) 6.25% Senior Notes due September 2021; and the (iv) 7.875% Senior Notes due
November 2026.

[5]    These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due
September 2020; (iii) 6.25% Senior Notes due September 2021; (iv) 7.875% Senior Notes due
November 2026; and the (v) Convertible Junior Subordinated Debentures due December 2066.

WHEREFORE, the Debtors respectfully request that the Court:  (i) enter an interim order, substantially in the form submitted to the Court, granting the relief requested herein on an interim basis; (ii) enter a final order, substantially in the form submitted to the Court, granting the relief requested herein; and (iii) grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated:  April 13, 2016
        St. Louis, Missouri

Respectfully submitted,

/s/ Steven N. Cousins
Steven N. Cousins, MO 30788
Susan K. Ehlers, MO 49855
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
Suite 1800
St. Louis, MO  63105
Telephone:  (314) 621-5070
Facsimile:  (314) 621-5065
Email:  scousins@armstrongteasdale.com
Email: sehlers@armstrongteasdale.com

Heather Lennox (*pro hac vice* pending)
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

Amy Edgy (*pro hac vice* pending)
Daniel T. Moss (*pro hac vice* pending)

Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Proposed Attorneys for Debtors
and Debtors in Possession*

## SCHEDULE 1

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 1. | Peabody Energy Corporation | 13-4004153 |
| 2. | American Land Development, LLC | 20-3405570 |
| 3. | American Land Holdings of Colorado, LLC | 26-3730572 |
| 4. | American Land Holdings of Illinois, LLC | 30-0440127 |
| 5. | American Land Holdings of Indiana, LLC | 20-2514299 |
| 6. | American Land Holdings of Kentucky, LLC | 20-0766113 |
| 7. | American Land Holdings of New Mexico, LLC | 32-0478983 |
| 8. | American Land Holdings of West Virginia, LLC | 20-5744666 |
| 9. | Arid Operations, Inc. | 84-1199578 |
| 10. | Big Ridge, Inc. | 37-1126950 |
| 11. | Big Sky Coal Company | 81-0476071 |
| 12. | Black Hills Mining Company, LLC | 32-0049741 |
| 13. | BTU Western Resources, Inc. | 20-1019486 |
| 14. | Caballo Grande, LLC | 27-1773243 |
| 15. | Caseyville Dock Company, LLC | 20-8080107 |
| 16. | Central States Coal Reserves of Illinois, LLC | 43-1869432 |
| 17. | Central States Coal Reserves of Indiana, LLC | 20-3960696 |
| 18. | Century Mineral Resources, Inc. | 36-3925555 |
| 19. | Coal Reserve Holding Limited Liability Company No. 1 | 43-1922737 |
| 20. | COALSALES II, LLC | 43-1610419 |
| 21. | Colorado Yampa Coal Company, LLC | 95-3761211 |
| 22. | Conservancy Resources, LLC | 20-5744701 |
| 23. | Cottonwood Land Company | 43-1721982 |
| 24. | Cyprus Creek Land Company | 73-1625890 |
| 25. | Cyprus Creek Land Resources LLC | 75-3058264 |
| 26. | Dyson Creek Coal Company, LLC | 43-1898526 |
| 27. | Dyson Creek Mining Company, LLC | 20-8080062 |
| 28. | El Segundo Coal Company, LLC | 20-8162824 |
| 29. | Empire Land Holdings, LLC | 61-1742786 |
| 30. | Falcon Coal Company, LLC | 35-2006760 |
| 31. | Four Star Holdings, LLC | 30-0885825 |
| 32. | Francisco Equipment Company, LLC | 37-1805119 |
| 33. | Francisco Land Holdings Company, LLC | 36-4831111 |
| 34. | Francisco Mining, LLC | 30-0922117 |
| 35. | Gallo Finance Company, LLC | 43-1823616 |
| 36. | Gold Fields Chile, LLC | 13-3004607 |
| 37. | Gold Fields Mining, LLC | 36-2079582 |
| 38. | Gold Fields Ortiz, LLC | 22-2204381 |
| 39. | Hayden Gulch Terminal, LLC | 86-0719481 |
| 40. | Highwall Mining Services Company | 20-0010659 |
| 41. | Hillside Recreational Lands, LLC | 32-0214135 |
| 42. | HMC Mining, LLC | 43-1875853 |
| 43. | Illinois Land Holdings, LLC | 26-1865197 |
| 44. | Independence Material Handling, LLC | 43-1750064 |
| 45. | James River Coal Terminal, LLC | 55-0643770 |
| 46. | Juniper Coal Company, LLC | 43-1744675 |
| 47. | Kayenta Mobile Home Park, Inc. | 86-0773596 |
| 48. | Kentucky Syngas, LLC | 26-1156957 |
| 49. | Kentucky United Coal, LLC | 35-2088769 |
| 50. | Lively Grove Energy, LLC | 20-5752800 |
| 51. | Lively Grove Energy Partners, LLC | 26-0180403 |
| 52. | Marigold Electricity, LLC | 26-0180352 |
| 53. | Midco Supply and Equipment Corporation | 43-6042249 |
| 54. | Midwest Coal Acquisition Corp. | 20-0217640 |
| 55. | Midwest Coal Reserves of Illinois, LLC | 20-3960648 |

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 56. | Midwest Coal Reserves of Indiana, LLC | 20-3405958 |
| 57. | Midwest Coal Reserves of Kentucky, LLC | 20-3405872 |
| 58. | Moffat County Mining, LLC | 74-1869420 |
| 59. | Mustang Energy Company, LLC | 43-1898532 |
| 60. | New Mexico Coal Resources, LLC | 20-3405643 |
| 61. | NM Equipment Company, LLC | 36-4821991 |
| 62. | Pacific Export Resources, LLC | 27-5135144 |
| 63. | Peabody America, LLC | 93-1116066 |
| 64. | Peabody Archveyor, L.L.C. | 43-1898535 |
| 65. | Peabody Arclar Mining, LLC | 31-1566354 |
| 66. | Peabody Asset Holdings, LLC | 20-3367333 |
| 67. | Peabody Bear Run Mining, LLC | 26-3582291 |
| 68. | Peabody Bear Run Services, LLC | 26-3725923 |
| 69. | Peabody Caballo Mining, LLC | 83-0309633 |
| 70. | Peabody Cardinal Gasification, LLC | 20-5047955 |
| 71. | Peabody China, LLC | 43-1898525 |
| 72. | Peabody Coalsales, LLC | 20-1759740 |
| 73. | Peabody COALTRADE International (CTI), LLC | 20-1435716 |
| 74. | Peabody COALTRADE, LLC | 43-1666743 |
| 75. | Peabody Colorado Operations, LLC | 20-2561644 |
| 76. | Peabody Colorado Services, LLC | 26-3723774 |
| 77. | Peabody Coulterville Mining, LLC | 20-0217834 |
| 78. | Peabody Development Company, LLC | 43-1265557 |
| 79. | Peabody Electricity, LLC | 20-3405744 |
| 80. | Peabody Employment Services, LLC | 26-3730348 |
| 81. | Peabody Energy Generation Holding Company | 73-1625891 |
| 82. | Peabody Energy Investments, Inc. | 68-0541702 |
| 83. | Peabody Energy Solutions, Inc. | 43-1753832 |
| 84. | Peabody Gateway North Mining, LLC | 27-2294407 |
| 85. | Peabody Gateway Services, LLC | 26-3724075 |
| 86. | Peabody Holding Company, LLC | 74-2666822 |
| 87. | Peabody Holdings (Gibraltar) Limited | 20-5543587 |
| 88. | Peabody IC Funding Corporation | 46-2326991 |
| 89. | Peabody IC Holdings, LLC | 30-0829603 |
| 90. | Peabody Illinois Services, LLC | 26-3722638 |
| 91. | Peabody Indiana Services, LLC | 26-3724339 |
| 92. | Peabody International Investments, Inc. | 26-1361182 |
| 93. | Peabody International Services, Inc. | 20-8340434 |
| 94. | Peabody Investments Corp. | 20-0480084 |
| 95. | Peabody Magnolia Grove Holdings, LLC | 61-1683376 |
| 96. | Peabody Midwest Management Services, LLC | 26-3726045 |
| 97. | Peabody Midwest Mining, LLC | 35-1799736 |
| 98. | Peabody Midwest Operations, LLC | 20-3405619 |
| 99. | Peabody Midwest Services, LLC | 26-3722194 |
| 100. | Peabody Mongolia, LLC | 20-8714315 |
| 101. | Peabody Natural Gas, LLC | 43-1890836 |
| 102. | Peabody Natural Resources Company | 51-0332232 |
| 103. | Peabody New Mexico Services, LLC | 20-8162939 |
| 104. | Peabody Operations Holding, LLC | 26-3723890 |
| 105. | Peabody Powder River Mining, LLC | 43-0996010 |
| 106. | Peabody Powder River Operations, LLC | 20-3405797 |
| 107. | Peabody Powder River Services, LLC | 26-3725850 |
| 108. | Peabody PowerTree Investments, LLC | 20-0116980 |
| 109. | Peabody Recreational Lands, L.L.C. | 43-1898382 |
| 110. | Peabody Rocky Mountain Management Services, LLC | 26-3725390 |
| 111. | Peabody Rocky Mountain Services, LLC | 20-8162706 |
| 112. | Peabody Sage Creek Mining, LLC | 26-3730653 |
| 113. | Peabody School Creek Mining, LLC | 20-3585831 |

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 114. | Peabody Services Holdings, LLC | 26-3726126 |
| 115. | Peabody Southwest, LLC | 20-5744732 |
| 116. | Peabody Southwestern Coal Company, LLC | 43-1898372 |
| 117. | Peabody Terminal Holding Company, LLC | 26-1087861 |
| 118. | Peabody Terminals, LLC | 31-1035824 |
| 119. | Peabody Trout Creek Reservoir LLC | 30-0746873 |
| 120. | Peabody Twentymile Mining, LLC | 26-3725223 |
| 121. | Peabody Venezuela Coal Corp. | 43-1609813 |
| 122. | Peabody Venture Fund, LLC | 20-3405779 |
| 123. | Peabody-Waterside Development, L.L.C. | 75-3098342 |
| 124. | Peabody Western Coal Company | 86-0766626 |
| 125. | Peabody Wild Boar Mining, LLC | 26-3730759 |
| 126. | Peabody Wild Boar Services, LLC | 26-3725591 |
| 127. | Peabody Williams Fork Mining, LLC | 20-8162742 |
| 128. | Peabody Wyoming Gas, LLC | 20-5744610 |
| 129. | Peabody Wyoming Services, LLC | 26-3723011 |
| 130. | PEC Equipment Company, LLC | 20-0217950 |
| 131. | PG INVESTMENTS SIX, L.L.C. | 43-1898530 |
| 132. | Point Pleasant Dock Company, LLC | 20-0117005 |
| 133. | Pond River Land Company | 73-1625893 |
| 134. | Porcupine Production, LLC | 43-1898379 |
| 135. | Porcupine Transportation, LLC | 43-1898380 |
| 136. | Riverview Terminal Company | 13-2899722 |
| 137. | Sage Creek Holdings, LLC | 26-3286872 |
| 138. | Sage Creek Land & Reserves, LLC | 38-3936826 |
| 139. | School Creek Coal Resources, LLC | 20-2902073 |
| 140. | Seneca Coal Company, LLC | 84-1273892 |
| 141. | Seneca Property, LLC | 36-4820253 |
| 142. | Shoshone Coal Corporation | 25-1336898 |
| 143. | Southwest Coal Holdings, LLC | 37-1794829 |
| 144. | Star Lake Energy Company, L.L.C. | 43-1898533 |
| 145. | Sugar Camp Properties, LLC | 35-2130006 |
| 146. | Thoroughbred Generating Company, L.L.C. | 43-1898534 |
| 147. | Thoroughbred Mining Company LLC. | 73-1625889 |
| 148. | Twentymile Coal, LLC | 95-3811846 |
| 149. | Twentymile Equipment Company, LLC | 38-3982017 |
| 150. | Twentymile Holdings, LLC | 38-3937156 |
| 151. | United Minerals Company, LLC | 35-1922432 |
| 152. | West Roundup Resources, LLC | 20-2561489 |
| 153. | Wild Boar Equipment Company, LLC | 32-0488114 |
| 154. | Wild Boar Land Holdings Company, LLC | 36-4831131 |