# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

In re:

Peabody Energy Corporation, et al.,

Debtors.[1]

Case No. 16-42529
CHAPTER 11

(Joint Administration Requested)

Hearing Date and Time:
TBD

Hearing Location:
TBD

## APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, 28 U.S.C. § 156(c) AND BANKRUPTCY RULE 2002, FOR AN ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS, LLC AS CLAIMS, BALLOT AND NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

Peabody Energy Corporation ("PEC") and certain of its direct and indirect subsidiaries,

as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court,

pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"),

28 U.S.C. § 156(c) and Rule 2002 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), for entry of an order:  (a) authorizing them to retain and employ

Kurtzman Carson Consultants, LLC ("KCC") as claims, ballot and noticing agent (the "Claims

and Noticing Agent") in these chapter 11 cases, nunc pro tunc to the Petition Date and in

accordance with the terms and conditions set forth in the engagement agreement dated as of

March 11, 2016 (the "Engagement Agreement"),[2] a copy of which is attached hereto as Exhibit B;

---

[1]  The Debtors and their employer identification numbers are listed on Schedule 1 attached hereto.  The addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

[2]  Any references to, or summaries of, the Engagement Agreement in this Application are qualified by the express terms of the Engagement Agreement, which shall govern if there is any conflict between the

and (b) approving the terms of KCC's employment and retention, including the fee and expense structure and the indemnification and reimbursement (and related) provisions set forth in the Engagement Agreement, and in support thereof, respectfully represent as follows:[3]

## Jurisdiction and Venue

1.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.     On April 13, 2016 (the "Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions for relief under the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     Debtor PEC is a Delaware corporation headquartered in St. Louis, Missouri.  PEC was incorporated in 1998 and became a public company in 2001.  Each of the other Debtors is a wholly-owned direct or indirect subsidiary of PEC.

4.     PEC is the world's largest private-sector coal company (by volume), with 26 active coal mining operations located in the United States and Australia.  The Debtors'

---

(continued…)

Engagement Agreement and such summaries or references herein.  Additionally, any initially capitalized terms used in this Application and not otherwise defined herein have the meanings given to them in the Engagement Agreement.

[3]   A copy of the proposed order will be made available on the Debtors' case website at http://www.kccllc.net/peabody.

domestic mines produce and sell thermal coal, which is primarily purchased by electricity generators. PEC's Australian operations mine both thermal and metallurgical coal, a majority of which is exported to international customers. As of December 31, 2015, Debtor PEC and its subsidiaries' property holdings include 6.3 billion tons of proven and probable coal reserves and approximately 500,000 acres of surface property through ownership and lease agreements. In the United States alone, as of December 31, 2015, the Debtors held an estimated 5.5 billion tons of proven and probable coal reserves, and the Debtors generated sales of approximately 180 million tons of coal. In addition to its mining operations, the Debtors market and broker coal from other coal producers across the United States, Australia, Europe and Asia.

5.     The Debtors operate in a competitive and highly regulated industry that has experienced strong headwinds and precipitously declining demand and pricing in recent years due to the rise of low priced alternative energy sources – including an abundance of natural gas. Combined with these factors, slowing global economic growth drove a wide range of goods prices lower in 2015 and resulted in the largest broad market decline since 1991. Indeed, demand from electric utilities in the United States alone declined approximately 110 million tons in 2015. These market conditions, in connection with lower realized pricing in the United States and Australia, resulted in a 21.0 million ton decline in the Debtors' and their non-debtor subsidiaries' coal sales during 2015. As a result of these challenges, several large United States coal companies have filed for chapter 11 protection in recent years.

6.     A comprehensive description of the Debtors' businesses and operations, capital structure and the events leading to the commencement of these chapter 11 cases can be found in the Declaration of Amy Schwetz, Executive Vice President and Chief Financial Officer of Debtor PEC, in Support of First Day Motions of Debtors and Debtors in Possession (the "First

Day Declaration"), which was filed contemporaneously herewith and is incorporated herein by reference.

7.      In support of this Application, the Debtors submit the Declaration of Evan Gershbein, Senior Vice-President of Corporate Restructuring Services (the "Gershbein Declaration"), which is attached hereto as Exhibit A and incorporated herein by reference.

### Qualifications of KCC

8.      The Debtors propose to engage KCC to act as the Debtors' Claims and Noticing Agent.  In that capacity, KCC will transmit, receive, docket and maintain proofs of claim filed in connection with these chapter 11 cases.  This retention will expedite the distribution of notices and the processing of claims, and the Office of the Clerk of the United States Bankruptcy Court for the Eastern District of Missouri (the "Clerk's Office") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

9.      KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, balloting and other related services critical to the effective administration of chapter 11 cases. KCC is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  KCC has developed efficient and cost-effective methods to handle properly the voluminous mailings associated with the noticing, claims processing and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders and all parties in interest.  Further, KCC will work with the Clerk's Office to ensure that such methodology conforms with all of the Court's procedures, the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Missouri (the "Local Bankruptcy Rules"), the Procedures Manual accompanying the

Local Bankruptcy Rules (the "Procedures Manual") and the provisions of any orders entered by this Court.

10.     KCC has substantial experience in matters of this size and complexity and has acted as the official claims, ballot and noticing agent in many large bankruptcy cases in this District and other districts nationwide.  See, e.g., In re Falcon Prods., Inc., No. 05-41108 (Bankr. E.D. Mo. Mar. 10, 2005) (Docket No. 255); accord In re Alpha Natural Res., Inc., No. 15-33896 (Bankr. E.D. Va. Aug. 5, 2015) (Docket No. 93); In re Walter Energy, Inc., No. 15-02741 (Bankr. N.D. Ala. July 15, 2015) (Docket No. 55); In re AMF Bowling Worldwide, Inc., No. 12-36495 (Bankr. E.D. Va. Nov. 14, 2012) (Docket No. 61); In re Old HB, Inc. (f/k/a Hostess Brands, Inc.), No. 12-22052 (Bankr. S.D.N.Y. Jan. 27, 2012) (Docket No. 201); In re Eastman Kodak Co., No. 12-10202 (Bankr. S.D.N.Y. Jan. 19, 2012) (Docket No. 47); In re Movie Gallery, Inc., No. 10-30696 (Bankr. E.D. Va. Feb. 3, 2010) (Docket No. 73); In re Circuit City Stores, Inc., No. 08-35653 (Bankr. E.D. Va. Nov. 12, 2008) (Docket No. 108).

11.     The Debtors have obtained and reviewed engagement proposals from four other well-respected claims, ballot and noticing agents commonly retained in large chapter 11 cases to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's quality of services and expertise.

## Terms of Engagement

*Services to be Provided*

12.     Pursuant to the Engagement Agreement, KCC will perform the following tasks in its role as Claims and Noticing Agent (the "KCC Services"), as well as all quality control relating thereto:

(a)    Prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including: (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code; (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of hearings on motions filed by the Office of the United States Trustee for the Eastern District of Missouri (the "United States Trustee"); (vi) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d); (vii) notice of the effective date of any plan; and (viii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b)    Maintain official copies of the Debtors' respective schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the other information required by the Schedules;

(c)    Maintain (i) lists of all potential creditors, equity holders and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010(b) and update and make these lists available upon request by a party in interest or the Clerk's Office;

(d)    Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify such potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)    Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)    For all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk's Office, pursuant to Local Bankruptcy Rule 9004(D)(3), a certificate of service within 24 hours of such service which includes:  (i) either a copy of the notice served or the docket number(s) and title(s) of the

pleading(s) served; (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses; (iii) the manner of service; and (iv) the date served;

(g)    Process all proofs of claim received, including those received by the Clerk's Office, check said processing for accuracy and maintain the original proofs of claim in a secure area;

(h)    Maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk's Office; upon its request, provide the Clerk's Office with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed:  (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.); (vi) the applicable Debtor against which the claim is filed; and (vii) any disposition of the claim;

(i)    Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(j)    As directed by the Clerk's Office, record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(k)    Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of KCC not less than weekly;

(l)    Upon completion of the docketing process for all claims received in each chapter 11 case, turn over to the Clerk's Office, at its request, copies of the Claims Registers for its review;

(m)    Monitor the Court's docket for all:  (i) notices of appearance; (ii) address changes; and (iii) claims-related pleadings and orders filed, and make, as directed by the Clerk's Office,  notations on and/or changes to the applicable Claims Register(s) and any service or mailing lists, including identifying and eliminating duplicative names and addresses from such lists;

(n)    As directed by the Clerk's Office, identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(o)    Assist in the dissemination of information to the public and respond to requests for administrative information regarding these

chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(p)    Assist with, among other things, solicitation, balloting and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such services, processing requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices and institutional holders;

(q)    Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

(r)    Assist in the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

(s)    Provide a confidential data room, if requested;

(t)    Manage and coordinate any distributions pursuant to a chapter 11 plan;

(u)    Provide such other claims processing, noticing, plan solicitation, tabulation and related administrative services as may be requested from time to time by the Debtors;

(v)    If these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's Office within three days of notice to KCC of entry of the order converting these chapter 11 cases;

(w)    30 days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing KCC as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(x)    Within seven days of notice to KCC of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases; and

(y)    At the close of these chapter 11 cases, destroy all documents related to these chapter 11 cases and certify such destruction, in writing, to the Clerk's Office, specifying the method of destruction, the date of destruction, and any reference number or other relevant information for the destruction of the paper proofs of claim.

13.     The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC.

14.     KCC shall not employ any past or present employee of the Debtors for work that involves the Debtors' bankruptcy cases.

15.     KCC will follow the notice, claims, solicitation and balloting procedures that conform to the guidelines promulgated by the Clerk, the Judicial Conference of the United States and as may be entered by the Court's order.

### *Professional Compensation*

16.     The fees to be charged by KCC in connection with these chapter 11 cases are set forth in the Engagement Agreement.  The Debtors respectfully request that the undisputed fees and expenses incurred by KCC in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.  Specifically, the Debtors request authorization to compensate KCC in accordance with the terms and conditions set forth in the Engagement Agreement.  The Debtors respectfully submit that KCC's rates for its services are competitive and comparable to the rates charged by their competitors for similar services.

17.     KCC agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on (i) the Debtors; (ii) the United States Trustee for the Eastern District of Missouri; (iii) counsel for the Debtors; (iv) counsel for any official committee monitoring the expenses of the Debtors; and (v) any party in interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in

-9-

an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

18.     Prior to the Petition Date, the Debtors provided KCC a retainer in the amount of $50,000.  KCC seeks first to apply the retainer to all prepetition invoices, and thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

*Indemnification*

19.     As part of the overall compensation to KCC under the terms of the Engagement Agreement, the Debtors have agreed to certain indemnification obligations.  The Engagement Agreement provides that Debtors will indemnify, defend and hold harmless KCC and its affiliates, members, directors, officers, employees, consultants, subcontractors and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from KCC's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Retention Order.  Both the Debtors and KCC believe that such an indemnification obligation is customary, reasonable and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

**Disclosure Regarding KCC's Disinterestedness**

20.     The Debtors have many creditors, and accordingly, KCC may have rendered and may continue to render services to certain of these creditors.  KCC has not and will not represent the separate interests of any such creditor in connection with these cases.  KCC may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as claims, ballot and noticing agent for another chapter 11 debtor or as a class action settlement administrator.

-10-

21.     Although the Debtors do not propose to employ KCC under section 327 of

the Bankruptcy Code (with any such retention to be sought by separate application), KCC has

nonetheless reviewed its electronic database to determine whether it has any relationships with

certain material creditors and parties in interest identified by the Debtors, and, to the best of the

Debtors' knowledge, information and belief, and except as disclosed in the Gershbein

Declaration, KCC has represented that it neither holds nor represents any interest materially

adverse to the Debtors' estates in connection with any matter on which it would be employed.

22.     Moreover, in connection with its retention as Claims and Noticing Agent,

KCC represents in the Gershbein Declaration, among other things, that:

(a)     KCC is not a creditor of the Debtors;

(b)     KCC is a "disinterested person" as that term is defined in
        section 101(14) of the Bankruptcy Code,[4] as modified by
        section 1107(b) of the Bankruptcy Code,[5] with respect to the
        matters upon which it is engaged;

(c)     By accepting employment as Claims and Noticing Agent in these
        chapter 11 cases, KCC will not consider itself employed by the
        United States government and shall not seek, and waives its right
        to receive, any compensation from the United States government in
        its capacity as Claims and Noticing Agent in these chapter 11 cases;

(d)     In its capacity as Claims and Noticing Agent in these chapter 11
        cases, KCC will not be an agent of the United States and will not
        act on behalf of the United States;

---

[4]     Pursuant to section 101(14) of the Bankruptcy Code, the term "disinterested person" means "a person that –
        (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before
        the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an
        interest materially adverse to the interest of the estate or of any class of creditors or equity security holders,
        by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any
        other reason." 11 U.S.C. § 101(14).

[5]     Pursuant to section 1107(b) of the Bankruptcy Code, "notwithstanding section 327(a) of [the Bankruptcy
        Code], a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor
        in possession solely because of such person's employment by or representation of the debtor before the
        commencement of the case." 11 U.S.C. § 1107(b).

(e)        KCC will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent in these chapter 11 cases;

(f)        In its capacity as Claims and Noticing Agent in these chapter 11 cases, KCC will not intentionally misrepresent any fact to any person;

(g)        In its capacity as Claims and Noticing Agent in these chapter 11 cases, KCC shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

(h)        In its capacity as Claims and Noticing Agent in these chapter 11 cases, KCC will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(i)        None of the services provided by KCC as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's Office.

23.     KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

### Argument

24.     Section 156(c) of title 28 of the United States Code empowers the Court to utilize outside agents and facilities for notice, claims and other administrative purposes, provided that the Debtors' estates pay the cost of such services. Section 156(c) states:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

25.     Although the Debtors have not yet filed their schedules of assets and

liabilities, they anticipate that these chapter 11 cases will involve many thousands of potential

creditors and other parties in interest and, thus, likely will impose heavy administrative burdens

upon the Clerk's Office.  In view of the anticipated number of creditors, the Debtors submit that

the appointment of KCC:  (i) will relieve the Debtors, the Court and the Clerk's Office of

substantial administrative burdens and/or related costs; (ii) expedite the service of notices and

pleadings; (iii) streamline the claims administration and vote solicitation and tabulation

processes; and (iv) otherwise promote the efficient administration of these cases.  For the

foregoing reasons, Debtors submit that the appointment of a claims and noticing agent is both

necessary and in the best interests of both the Debtors' estates and their creditors.

26.     Courts in this District and others have approved similar relief in other

chapter 11 cases.  See, e.g., In re Noranda Aluminum, Inc., No. 16-10083 (Bankr. E.D. Mo.

Feb. 12, 2016) (Docket No. 116); In re Arch Coal, Inc., No. 16-40120 (Bankr. E.D. Mo.

Jan. 15, 2016) (Docket No. 102); In re Bakers Footwear Grp., Inc., No. 12-49658

(Bankr. E.D. Mo. Oct. 9, 2012) (Docket No. 74); In re Falcon Prods., Inc., No. 05-41108

(Bankr. E.D. Mo. Mar. 10, 2005) (Docket No. 255) (granting order to retain and employee KCC

as claims and noticing agent); accord In re Alpha Natural Res., Inc., No. 15-33896

(Bankr. E.D. Va. Aug. 5, 2015) (Docket No. 93) (granting order to retain and employee KCC as

claims and noticing agent); In re Walter Energy, Inc., No. 15-02741 (Bankr. N.D. Ala.

July 15, 2015) (Docket No. 55) (same); In re Patriot Coal Corp., No. 15-32450 (Bankr. E.D. Va.

May 14, 2015) (Docket No. 83); In re James River Coal Co., No. 14-31848 (Bankr. E.D. Va.

Apr. 10, 2014) (Docket No. 76); In re Patriot Coal Corp., No. 12-12900 (Bankr. S.D.N.Y.

July 11, 2012) (Docket No. 45).[6]

### Notice

27.     Notice of this Motion has been given to: (a) Davis Polk & Wardwell LLP

and Bryan Cave LLP as counsel to Citibank, N.A. as Administrative Agent for the First Lien

Secured Credit Facility and the Debtors' proposed debtor in possession secured credit facility;

(b) Brown Rudnick LLP, as counsel to Wilmington Savings Fund Society, FSB as prospective

trustee and collateral agent for the Secured Second Lien Notes; (c) Foley & Lardner LLP, as

counsel to Wilmington Trust Company as prospective Indenture Trustee for the Unsecured

Notes;[7] (d) Robinson & Cole LLP, as counsel to U.S. Bank as resigning trustee and collateral

agent for the Second Lien Notes, the Unsecured Notes and the Convertible Notes;[8] (e) counsel to

any ad hoc committees; (f) the Debtors' 50 largest unsecured creditors; (g) Mayer Brown LLP, as

counsel to PNC Bank, N.A., as Administrator under the Debtors' prepetition accounts receivable

securitization facility; (h) the United Mine Workers of America; (i) the Office of the United

States Trustee for the Eastern District of Missouri; (j) the Internal Revenue Service; (k) the

Securities and Exchange Commission; (l) the United States Department of the Interior; (m) the

United States Department of Labor; (n) the United States Attorney's Office for the Eastern

District of Missouri; and (o) Pension Benefit Guaranty Corporation (collectively, the "Notice

---

[6]     Unreported orders cited herein are not attached to this Application.  Copies of these orders will be made
available to the Court or other parties upon request made to the Debtors' counsel.

[7]     These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due
September 2020; (iii) 6.25% Senior Notes due September 2021; and the (iv) 7.875% Senior Notes due
November 2026.

[8]     These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due
September 2020; (iii) 6.25% Senior Notes due September 2021; (iv) 7.875% Senior Notes due
November 2026; and the (v) Convertible Junior Subordinated Debentures due December 2066.

-14-

<u>Parties</u>").  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

### <u>No Prior Request</u>

28.     No prior request for the relief sought in this Application has been made to this or any other Court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that the Court:  (i) enter an order granting the relief requested herein; and (ii) grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated:  April 13, 2016
        St. Louis, Missouri

Respectfully submitted,

/s/ Steven N. Cousins
Steven N. Cousins, MO 30788
Susan K. Ehlers, MO 49855
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
 St. Louis, MO  63105
Telephone:  (314) 621-5070
Facsimile:  (314) 612-2239
Email:  scousins@armstrongteasdale.com
Email:  sehlers@armstrongteasdale.com

Heather Lennox (*pro hac vice* pending)
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Email:  hlennox@jonesday.com

Amy Edgy (*pro hac vice* pending)
Daniel T. Moss (*pro hac vice* pending)
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
Email:  aedgy@jonesday.com
Email:  dtmoss@jonesday.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

## SCHEDULE 1

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 1. | Peabody Energy Corporation | 13-4004153 |
| 2. | American Land Development, LLC | 20-3405570 |
| 3. | American Land Holdings of Colorado, LLC | 26-3730572 |
| 4. | American Land Holdings of Illinois, LLC | 30-0440127 |
| 5. | American Land Holdings of Indiana, LLC | 20-2514299 |
| 6. | American Land Holdings of Kentucky, LLC | 20-0766113 |
| 7. | American Land Holdings of New Mexico, LLC | 32-0478983 |
| 8. | American Land Holdings of West Virginia, LLC | 20-5744666 |
| 9. | Arid Operations, Inc. | 84-1199578 |
| 10. | Big Ridge, Inc. | 37-1126950 |
| 11. | Big Sky Coal Company | 81-0476071 |
| 12. | Black Hills Mining Company, LLC | 32-0049741 |
| 13. | BTU Western Resources, Inc. | 20-1019486 |
| 14. | Caballo Grande, LLC | 27-1773243 |
| 15. | Caseyville Dock Company, LLC | 20-8080107 |
| 16. | Central States Coal Reserves of Illinois, LLC | 43-1869432 |
| 17. | Central States Coal Reserves of Indiana, LLC | 20-3960696 |
| 18. | Century Mineral Resources, Inc. | 36-3925555 |
| 19. | Coal Reserve Holding Limited Liability Company No. 1 | 43-1922737 |
| 20. | COALSALES II, LLC | 43-1610419 |
| 21. | Colorado Yampa Coal Company, LLC | 95-3761211 |
| 22. | Conservancy Resources, LLC | 20-5744701 |
| 23. | Cottonwood Land Company | 43-1721982 |
| 24. | Cyprus Creek Land Company | 73-1625890 |
| 25. | Cyprus Creek Land Resources LLC | 75-3058264 |
| 26. | Dyson Creek Coal Company, LLC | 43-1898526 |
| 27. | Dyson Creek Mining Company, LLC | 20-8080062 |
| 28. | El Segundo Coal Company, LLC | 20-8162824 |
| 29. | Empire Land Holdings, LLC | 61-1742786 |
| 30. | Falcon Coal Company, LLC | 35-2006760 |
| 31. | Four Star Holdings, LLC | 30-0885825 |
| 32. | Francisco Equipment Company, LLC | 37-1805119 |
| 33. | Francisco Land Holdings Company, LLC | 36-4831111 |
| 34. | Francisco Mining, LLC | 30-0922117 |
| 35. | Gallo Finance Company, LLC | 43-1823616 |
| 36. | Gold Fields Chile, LLC | 13-3004607 |
| 37. | Gold Fields Mining, LLC | 36-2079582 |
| 38. | Gold Fields Ortiz, LLC | 22-2204381 |
| 39. | Hayden Gulch Terminal, LLC | 86-0719481 |
| 40. | Highwall Mining Services Company | 20-0010659 |
| 41. | Hillside Recreational Lands, LLC | 32-0214135 |
| 42. | HMC Mining, LLC | 43-1875853 |
| 43. | Illinois Land Holdings, LLC | 26-1865197 |
| 44. | Independence Material Handling, LLC | 43-1750064 |
| 45. | James River Coal Terminal, LLC | 55-0643770 |
| 46. | Juniper Coal Company, LLC | 43-1744675 |
| 47. | Kayenta Mobile Home Park, Inc. | 86-0773596 |
| 48. | Kentucky Syngas, LLC | 26-1156957 |
| 49. | Kentucky United Coal, LLC | 35-2088769 |
| 50. | Lively Grove Energy, LLC | 20-5752800 |
| 51. | Lively Grove Energy Partners, LLC | 26-0180403 |
| 52. | Marigold Electricity, LLC | 26-0180352 |
| 53. | Midco Supply and Equipment Corporation | 43-6042249 |
| 54. | Midwest Coal Acquisition Corp. | 20-0217640 |
| 55. | Midwest Coal Reserves of Illinois, LLC | 20-3960648 |

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 56. | Midwest Coal Reserves of Indiana, LLC | 20-3405958 |
| 57. | Midwest Coal Reserves of Kentucky, LLC | 20-3405872 |
| 58. | Moffat County Mining, LLC | 74-1869420 |
| 59. | Mustang Energy Company, LLC | 43-1898532 |
| 60. | New Mexico Coal Resources, LLC | 20-3405643 |
| 61. | NM Equipment Company, LLC | 36-4821991 |
| 62. | Pacific Export Resources, LLC | 27-5135144 |
| 63. | Peabody America, LLC | 93-1116066 |
| 64. | Peabody Archveyor, L.L.C. | 43-1898535 |
| 65. | Peabody Arclar Mining, LLC | 31-1566354 |
| 66. | Peabody Asset Holdings, LLC | 20-3367333 |
| 67. | Peabody Bear Run Mining, LLC | 26-3582291 |
| 68. | Peabody Bear Run Services, LLC | 26-3725923 |
| 69. | Peabody Caballo Mining, LLC | 83-0309633 |
| 70. | Peabody Cardinal Gasification, LLC | 20-5047955 |
| 71. | Peabody China, LLC | 43-1898525 |
| 72. | Peabody Coalsales, LLC | 20-1759740 |
| 73. | Peabody COALTRADE International (CTI), LLC | 20-1435716 |
| 74. | Peabody COALTRADE, LLC | 43-1666743 |
| 75. | Peabody Colorado Operations, LLC | 20-2561644 |
| 76. | Peabody Colorado Services, LLC | 26-3723774 |
| 77. | Peabody Coulterville Mining, LLC | 20-0217834 |
| 78. | Peabody Development Company, LLC | 43-1265557 |
| 79. | Peabody Electricity, LLC | 20-3405744 |
| 80. | Peabody Employment Services, LLC | 26-3730348 |
| 81. | Peabody Energy Generation Holding Company | 73-1625891 |
| 82. | Peabody Energy Investments, Inc. | 68-0541702 |
| 83. | Peabody Energy Solutions, Inc. | 43-1753832 |
| 84. | Peabody Gateway North Mining, LLC | 27-2294407 |
| 85. | Peabody Gateway Services, LLC | 26-3724075 |
| 86. | Peabody Holding Company, LLC | 74-2666822 |
| 87. | Peabody Holdings (Gibraltar) Limited | 20-5543587 |
| 88. | Peabody IC Funding Corporation | 46-2326991 |
| 89. | Peabody IC Holdings, LLC | 30-0829603 |
| 90. | Peabody Illinois Services, LLC | 26-3722638 |
| 91. | Peabody Indiana Services, LLC | 26-3724339 |
| 92. | Peabody International Investments, Inc. | 26-1361182 |
| 93. | Peabody International Services, Inc. | 20-8340434 |
| 94. | Peabody Investments Corp. | 20-0480084 |
| 95. | Peabody Magnolia Grove Holdings, LLC | 61-1683376 |
| 96. | Peabody Midwest Management Services, LLC | 26-3726045 |
| 97. | Peabody Midwest Mining, LLC | 35-1799736 |
| 98. | Peabody Midwest Operations, LLC | 20-3405619 |
| 99. | Peabody Midwest Services, LLC | 26-3722194 |
| 100. | Peabody Mongolia, LLC | 20-8714315 |
| 101. | Peabody Natural Gas, LLC | 43-1890836 |
| 102. | Peabody Natural Resources Company | 51-0332232 |
| 103. | Peabody New Mexico Services, LLC | 20-8162939 |
| 104. | Peabody Operations Holding, LLC | 26-3723890 |
| 105. | Peabody Powder River Mining, LLC | 43-0996010 |
| 106. | Peabody Powder River Operations, LLC | 20-3405797 |
| 107. | Peabody Powder River Services, LLC | 26-3725850 |
| 108. | Peabody PowerTree Investments, LLC | 20-0116980 |
| 109. | Peabody Recreational Lands, L.L.C. | 43-1898382 |
| 110. | Peabody Rocky Mountain Management Services, LLC | 26-3725390 |
| 111. | Peabody Rocky Mountain Services, LLC | 20-8162706 |
| 112. | Peabody Sage Creek Mining, LLC | 26-3730653 |
| 113. | Peabody School Creek Mining, LLC | 20-3585831 |

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 114. | Peabody Services Holdings, LLC | 26-3726126 |
| 115. | Peabody Southwest, LLC | 20-5744732 |
| 116. | Peabody Southwestern Coal Company, LLC | 43-1898372 |
| 117. | Peabody Terminal Holding Company, LLC | 26-1087861 |
| 118. | Peabody Terminals, LLC | 31-1035824 |
| 119. | Peabody Trout Creek Reservoir LLC | 30-0746873 |
| 120. | Peabody Twentymile Mining, LLC | 26-3725223 |
| 121. | Peabody Venezuela Coal Corp. | 43-1609813 |
| 122. | Peabody Venture Fund, LLC | 20-3405779 |
| 123. | Peabody-Waterside Development, L.L.C. | 75-3098342 |
| 124. | Peabody Western Coal Company | 86-0766626 |
| 125. | Peabody Wild Boar Mining, LLC | 26-3730759 |
| 126. | Peabody Wild Boar Services, LLC | 26-3725591 |
| 127. | Peabody Williams Fork Mining, LLC | 20-8162742 |
| 128. | Peabody Wyoming Gas, LLC | 20-5744610 |
| 129. | Peabody Wyoming Services, LLC | 26-3723011 |
| 130. | PEC Equipment Company, LLC | 20-0217950 |
| 131. | PG INVESTMENTS SIX, L.L.C. | 43-1898530 |
| 132. | Point Pleasant Dock Company, LLC | 20-0117005 |
| 133. | Pond River Land Company | 73-1625893 |
| 134. | Porcupine Production, LLC | 43-1898379 |
| 135. | Porcupine Transportation, LLC | 43-1898380 |
| 136. | Riverview Terminal Company | 13-2899722 |
| 137. | Sage Creek Holdings, LLC | 26-3286872 |
| 138. | Sage Creek Land & Reserves, LLC | 38-3936826 |
| 139. | School Creek Coal Resources, LLC | 20-2902073 |
| 140. | Seneca Coal Company, LLC | 84-1273892 |
| 141. | Seneca Property, LLC | 36-4820253 |
| 142. | Shoshone Coal Corporation | 25-1336898 |
| 143. | Southwest Coal Holdings, LLC | 37-1794829 |
| 144. | Star Lake Energy Company, L.L.C. | 43-1898533 |
| 145. | Sugar Camp Properties, LLC | 35-2130006 |
| 146. | Thoroughbred Generating Company, L.L.C. | 43-1898534 |
| 147. | Thoroughbred Mining Company LLC. | 73-1625889 |
| 148. | Twentymile Coal, LLC | 95-3811846 |
| 149. | Twentymile Equipment Company, LLC | 38-3982017 |
| 150. | Twentymile Holdings, LLC | 38-3937156 |
| 151. | United Minerals Company, LLC | 35-1922432 |
| 152. | West Roundup Resources, LLC | 20-2561489 |
| 153. | Wild Boar Equipment Company, LLC | 32-0488114 |
| 154. | Wild Boar Land Holdings Company, LLC | 36-4831131 |

## **Exhibit A**

**Gershbein Declaration**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>Peabody Energy Corporation, <u>et al.</u>,<br><br>          Debtors. | Case No. 16-42529<br>CHAPTER 11<br><br>(Joint Administration Requested)<br><br>Hearing Date and Time:<br>TBD<br><br>Hearing Location:<br>TBD |

**DECLARATION OF EVAN GERSHBEIN IN SUPPORT OF DEBTORS' APPLICATION, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, 28 U.S.C. § 156(c) AND BANKRUPTCY RULE 2002, FOR AN ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS, LLC AS CLAIMS, BALLOT AND NOTICING AGENT, _NUNC PRO TUNC_ TO THE PETITION DATE**

I, Evan Gershbein, under penalty of perjury, declare as follows:

1. I am the am the Senior Vice-President of Corporate Restructuring Services of Kurtzman Carson Consultants, LLC ("<u>KCC</u>"), a company specializing in the administration of large bankruptcy cases. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2. This declaration (the "<u>Declaration</u>") is made in support of the Application of the Debtors and Debtors in Possession, Pursuant to Section 105(a) of the Bankruptcy Code, 28 U.S.C. § 156(c) and Bankruptcy Rule 2002, for an Order Authorizing Retention and Employment of Kurtzman Carson Consultants, LLC as Claims, Ballot and Noticing Agent, <u>Nunc Pro Tunc</u> to the Petition Date (the "<u>Application</u>").[9]

---

[9] Capitalized terms not otherwise defined herein have the meanings given to them in the Application.

3.      KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, balloting and other related services critical to the effective administration of chapter 11 cases. KCC is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  KCC has developed efficient and cost-effective methods to handle properly the voluminous mailings associated with the noticing, claims processing and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders and all parties in interest.  Further, KCC will work with the Clerk's Office to ensure that such methodology conforms with all of the Court's procedures, the Local Rules and the provisions of any orders entered by this Court.

4.      KCC has substantial experience in matters of this size and complexity and has acted as the official notice, claims and solicitation agent in many large bankruptcy cases in this District and other districts nationwide.  See, e.g., In re Falcon Prods., Inc., No. 05-41108 (Bankr. E.D. Mo. March 10, 2005) (Docket No. 255); accord In re Alpha Natural Res., Inc., No. 15-33896 (Bankr. E.D. Va. Aug. 5, 2015) (Docket No. 93); In re Walter Energy, Inc., No. 15-02741 (Bankr. N.D. Ala. July 15, 2015) (Docket No. 55); In re AMF Bowling Worldwide, Inc., No. 12-36495 (Bankr. E.D. Va. Nov. 14, 2012) (Docket No. 61); In re Old HB (f/k/a Hostess Brands, Inc.), No. 12-22052 (Bankr. S.D.N.Y. Jan. 27, 2012 (Docket No. 201); In re Eastman Kodak Co., No. 12-10202 (Bankr. S.D.N.Y. Jan. 19, 2012) (Docket No. 47); In re Movie Gallery, Inc., No. 10-30696 (Bankr. E.D. Va. Feb. 3, 2010) (Docket No. 73); In re Circuit City Stores, Inc., No. 08-35653 (Bankr. E.D. Va. Nov. 12, 2008) (Docket No. 108).

5.      The Debtors seek to engage KCC to provide certain noticing, claims processing and balloting administration services as set forth in the Application.  As agent and

custodian of Court records pursuant to 28 U.S.C. § 156(c), KCC will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "Clerk's Office"), the services specified in the Application and the Engagement Agreement and, at the Debtors' request, any related administrative, technical and support services as specified in the Application and the Engagement Agreement.

6.      The Engagement Agreement, which is attached as Exhibit B to the Application, sets forth the fees KCC charges for the services it will provide to the Debtors. The proposed compensation arrangement is consistent with, and typical of, arrangements of KCC and its competitor firms to provide claims, ballot and noticing agent services in chapter 11 cases.

7.      KCC requests that the Debtors pay their fees and expenses in accordance with the terms of the Engagement Agreement.  KCC will submit invoices summarizing, in reasonable detail, the services and expenses for which compensation is sought.

### KCC's Disinterestedness

8.      KCC represents, among other things, the following:

(a)      KCC is not a creditor of the Debtors;

(b)      KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code,[9] as modified by section 1107(b) of the Bankruptcy Code,[10] with respect to the matters upon which it is engaged;

---

[9]      Pursuant to section 101(14) of the Bankruptcy Code, the term "disinterested person" means "a person that – (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."  11 U.S.C. § 101(14).

[10]      Pursuant to section 1107(b) of the Bankruptcy Code, "notwithstanding section 327(a) of [the Bankruptcy Code], a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).

(c)     By accepting employment as Claims and Noticing Agent in these chapter 11 cases, KCC will not consider itself employed by the United States government and shall not seek, and waives its right to receive, any compensation from the United States government in its capacity as Claims and Noticing Agent in these chapter 11 cases;

(d)     In its capacity as Claims and Noticing Agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

(e)     KCC will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent in these chapter 11 cases;

(f)     In its capacity as Claims and Noticing Agent in these chapter 11 cases, KCC will not intentionally misrepresent any fact to any person;

(g)     In its capacity as Claims and Noticing Agent in these chapter 11 cases, KCC shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

(h)     In its capacity as Claims and Noticing Agent in these chapter 11 cases, KCC will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(i)     None of the services provided by KCC as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's Office.

9.      Although the Debtors do not propose to retain KCC under section 327 of the Bankruptcy Code (with any such retention to be sought by separate application), I caused to be submitted for review by our conflicts system the names of certain material creditors and parties in interest in these chapter 11 cases identified by the Debtors (the "Potential Parties in Interest"). The list of Potential Parties in Interest was provided by certain of the Debtors' other professionals and included individuals or institutions in the following categories:  (a) the Debtors; (b) recently dissolved or divested entities; (c) non-debtor subsidiaries of the Debtors; (d) significant shareholders of PEC; (e) major noteholders and related parties; (f) current and

recent former officers and directors of the Debtors; (g) major current business affiliations of the Debtors' current directors; (h) the Debtors' professionals and service providers; (i) known professionals for certain non-Debtor parties in interest; (j) depositary and disbursement banks of the Debtors; (k) beneficiaries of letters of credit issued by the Debtors; (l) major lessors and related entities for assets used by Debtors; (m) insurers, insurance brokers and third party administrators of insurance plans for the benefit of the Debtors; (n) parties in litigation with the Debtors; (o) the Debtors' largest unsecured creditors (excluding noteholders); and (p) parties to the Debtors' material contracts, license agreements and parties to permits (that are not large unsecured creditors).  We also have considered publicly available information identifying (a) attorneys for the United States Trustee's office and (b) bankruptcy judges for the Eastern District of Missouri.  The results of the conflict check were compiled and reviewed by KCC professionals under my supervision.  At this time, and as set forth in further detail herein, KCC is not aware of any relationship that would present a disqualifying conflict of interest.  Should KCC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to file promptly a supplemental declaration.

          10.     KCC is an indirect subsidiary of Computershare Limited.  Computershare Limited is a financial services and technologies provider for the global securities industry.  Within the Computershare corporate structure, KCC operates as a separate, segregated business unit.  As such, any relationships that Computershare Limited and its affiliates maintain do not create an interest of KCC that would be materially adverse to the Debtors' estates or any class of creditors or equity security holders.

11.     To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither KCC nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties. KCC may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as Claims and Noticing Agent for another chapter 11 debtor.

12.     KCC has and will continue to represent clients in matters unrelated to these chapter 11 cases.  In addition, KCC has and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' chapter 11 cases in matters unrelated to these cases. KCC may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

13.     KCC and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms and financial advisors.  Such firms engaged by KCC or its personnel may appear in chapter 11 cases representing the Debtor or parties in interest. All engagements where such firms represent KCC or its personnel in their individual capacities are unrelated to these chapter 11 cases.

14.     From time to time, KCC partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be Debtor PEC, often without KCC's or its personnel's knowledge.  Each KCC partner or employee generally owns

substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell or vote any particular security. The Investment Fund is generally operated as a blind pool, meaning that when the KCC partners or employees make an investment in the Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

15. From time to time, KCC partners or employees may personally directly acquire a debt or equity security of a company, including, potentially, Debtor PEC. KCC has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work. In this regard, all KCC partners and employees are barred from trading in securities with respect to which they possess confidential information.

16. To the best of my knowledge, neither KCC nor any of its partners or employees represents any interest materially adverse to the Debtors' estates with respect to any matter upon which KCC is to be engaged. Based on the foregoing, I believe that KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated:  April 4, 2016
       Los Angeles, CA

By: _____
     Evan Gershbein
     Senior Vice President,
     Corporate Restructuring Services

## Exhibit B

**Engagement Agreement**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 11th day of March 2016, between Peabody Energy Corporation (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC"). In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.    SERVICES

A.    KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.    KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.    Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.    The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.    The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

II.     PRICES, CHARGES AND PAYMENT

A.     KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates and prices set by KCC that are in effect as of the date of this Agreement and in accordance with the KCC Fee Structure. KCC reserves the right to make reasonable increases to the KCC Fee Structure on an annual basis to be effective on the first business day of each year. KCC reserves the right to reasonably increase its prices, charges and rates annually. If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Company.

B.     In addition to fees and charges for services, the Company agrees to pay KCC's reasonable and documented out of pocket expenses incurred in connection with services provided under this Agreement.

C.     In addition to all fees for services and expenses hereunder, and, as of the commencement of any case under title 11 of the United States Code by the Company (a "Bankruptcy Case"), upon prior approval of the Bankruptcy Court the Company shall pay to KCC (i) any fees and charges related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.     Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.     KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. KCC's invoices will contain reasonably detailed descriptions of charges for both hourly (fees) and non-hourly (expenses) case specific charges. Where total invoice amounts are expected to exceed $10,000 in any single month, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within thirty (30) days of receipt of the invoice by the Company. The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice. Late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law. Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.     In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) and that all amounts due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate. As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with the Bankruptcy Court seeking entry of an order pursuant to section 156(c) approving this Agreement in its entirety (the "Retention Order"). The form and substance of the motion and the Retention Order shall be

2



# KCC AGREEMENT FOR SERVICES

reasonably acceptable to KCC. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with section 156(c) and the Retention Order. The parties recognize and agree that if there is a conflict between the terms of this Agreement and the terms of the Retention Order, the terms of the Retention Order shall govern during the chapter 11 case or other proceeding.

G.      To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $50,000 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

III.     RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

IV.     NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.



# KCC AGREEMENT FOR SERVICES

V.       CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement.  Further, KCC agrees to make no public announcements, press releases or other public statements regarding the services provided under this Agreement without first obtaining the prior written consent of the Company, which such consent shall not be unduly withheld or delayed.  Without limiting the foregoing, except as provided below, neither KCC nor the Company will disclose the other party's confidential information to any third party without the other party's consent.  For the avoidance of any doubt, confidential information shall not include information that:

- is or becomes generally available to the public other than as a result of a breach of an obligation under this section;

- is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

- is or has been independently developed by the recipient; provided that it is understood and agreed that nothing contained in this section shall permit KCC to disclose information developed by KCC for the Company in connection with this Agreement.

Without limiting the foregoing, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process.  If KCC is served with legal process or any other demand that might require disclosure of any information (including, without limitation, documents or other materials) described herein, KCC will provide the Company and the Company's lead restructuring counsel with prompt notice of, and the opportunity to raise objections to, such process or demand (without violating any legal or regulatory requirement). If no protective order or other remedy is obtained, KCC will only furnish that portion of the information (including, without limitation, documents or other materials) that it is advised by counsel is legally required to be disclosed and will use reasonable efforts to obtain reasonable assurance that such information will be accorded confidential treatment.

VI.      SUSPENSION OF SERVICE AND TERMINATION

A.       This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.       In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer.  The Company agrees to



# KCC AGREEMENT FOR SERVICES

pay for such services in accordance with KCC's then existing prices for such services.  If such termination occurs following entry of the Retention Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility in the Bankruptcy Case.

C.      Any data, programs, storage media or materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company.  The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days,  KCC may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice.  Notwithstanding any term herein to the contrary, following entry of the Retention Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

## VII.    SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

## VIII.   BANK ACCOUNTS

At the Company's request and subject to Court approval following any chapter 11 filing, KCC shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company.  To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.



# KCC AGREEMENT FOR SERVICES

IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    Upon prior application to, and approval of, the Bankruptcy Court and as of the Chapter 11 Filing, the Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.    Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss.  In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.  In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement.

C.    The Company is responsible for the accuracy of the programs, data and information it submits for processing to KCC and for the output of such information.  KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company.  The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.    The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

6



# KCC AGREEMENT FOR SERVICES

**X.     FORCE MAJEURE**

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**XI.     INDEPENDENT CONTRACTORS**

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

**XII.     NOTICES**

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

| | |
|---|---|
| Kurtzman Carson Consultants LLC | Peabody Energy Corporation |
| 2335 Alaska Ave. | Attn:  Chief Legal Officer |
| El Segundo, CA  90245 | 701 Market Street, St. Louis, MO  63101 |
| Attn:  Drake D. Foster | Tel: (314) 342-7504 |
| Tel: (310) 823-9000 | |
| Fax: (310) 823-9133 | |
| E-Mail: dfoster@kccllc.com | |

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

**XIII.     APPLICABLE LAW**

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

**XIV.     ENTIRE AGREEMENT/ MODIFICATIONS**

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired



# KCC AGREEMENT FOR SERVICES

thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

## XV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

## XVI.   ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

## XVII.  ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]



# KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

_____
BY: Evan Gershbein                    DATE:
TITLE: SVP, Corporate Restructuring Services

Company

_____ 3/13/16
BY: Walter L. Hawkins, Jr.            DATE:
TITLE: Senior Vice President, Finance

9



## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

_____    DATE: 3/14/16
BY: Evan Gershbein
TITLE: SVP, Corporate Restructuring Services


Company


_____    DATE:
BY:
TITLE:

9



**KCC CORPORATE RESTRUCTURING
FEE STRUCTURE**

| Consulting Services & Rates[1 & 2] | |
|---|---|
| **Position** | **Hourly Rate** |
| *Executive Vice President* | *Waived* |

The Executive Vice President oversees and manages KCC's Restructuring group.

| | |
|---|---|
| *Director/Senior Managing Consultant* | *$175* |

The Director/Senior Managing Consultant is the primary contact for the company, counsel and other professionals and oversees and supports the entirety of an engagement. KCC's Directors and SMCs average over eight years of experience and are generally former practitioners.  In addition, Francine Durrer and Eric Kerwood, who have over 42 years of restructuring experience between them, will serve as an additional supervisory layer at this level at no charge.

| | |
|---|---|
| *Consultant/Senior Consultant* | *$70-$160* |

The Senior Consultant manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims, overseeing contract review, overseeing all mailings and generating custom claim and ballot reports. KCC's Senior Consultants average over five years of experience.

The Consultant is the day-to-day contact for mailings, including the preparation and filing of affidavits of service (a critical due process component). He/she also responds to creditor and counsel inquiries, maintains the public access website, identifies actionable pleadings (i.e., claims objections, notices of transfer, withdrawals, etc.) and updates the official claims register.  KCC's Consultants average over five years of experience.

| | |
|---|---|
| *Technology/Programming Consultant* | *$35-$70* |

The Technology/Programming Consultant assists with complex system requests, including unique claim/ballot reporting and custom website updates.

| | |
|---|---|
| *Clerical* | *$25-$50* |

The Clerical role will process incoming mail, including proofs of claim, ballots, creditor correspondence and returned mail. Also assists with the generation of mailing services.

| | |
|---|---|
| *Weekend, holidays and overtime* | *Waived* |

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control.

[2] KCC agrees to a 10% discount on all hourly fees. Further, KCC agrees to an additional 10% discount on all hourly fees, until such discount equals $100,000.

**KCC**

**KCC CORPORATE RESTRUCTURING
FEE STRUCTURE**

| Public Securities[3] & Solicitation Services | |
|---|---|
| **Position** | **Hourly Rate** |
| *Solicitation Lead/Securities Director* | *$215* |

The Solicitation Lead/Securities Director oversees all activities of the group and provides counsel with respect to solicitation and noticing events ensuring that processes employed are effective and practical for securities depositories, bank, brokers, nominees and their agents. In addition, this position oversees and provides counsel on all rights offerings, exchange offers and complex plan distributions to ensure accuracy and efficiency.

| | |
|---|---|
| *Securities Senior Consultant* | *$200* |

The Securities Senior Consultant is the day-to-day contact and acts as advisor on transactions including balloting with treatment election, rights offers, exchange offers and complex plan distributions. This position handles service of related materials to banks, brokers and agents and manages tabulation and audit processes, preparing detailed reporting of results.

- Voting Event - Mailing ballots to security holders and tabulating their votes on a plan of reorganization, including competing plan and pre-packaged plan voting, if applicable.

- Corporate Action Event - Mailing election forms to security holders and tabulating the results, e.g., rights offering elections, if applicable.

- NOL Motion – Review of motion and procedures and coordinate noticing to equity holders, if applicable.

| Printing Services | |
|---|---|
| Printing and photocopies | $0.09 per image[4] |
| Labels | Waived |
| Document folding and inserting | Waived |
| Envelopes | Varies by size |

| Noticing Services | |
|---|---|
| Electronic noticing (email) | Waived[5] |
| Electronic noticing (domestic facsimile) | $0.08 per page |
| Claims Acknowledgement Card | Waived |
| Insert creditor information into customized documents | Waived |
| Newspaper/Legal notice publishing | Quote prior to publishing |

---

[3] Certain events fees may be applicable.

[4] KCC agrees to a 10% further discount on printing, until such discount equals $100,000.

[5] A set-up fee for email services larger than 500 parties may apply. This set-up fee varies depending on the total number of parties.



**KCC CORPORATE RESTRUCTURING
FEE STRUCTURE**

| Claims Administration & Management Expenses | |
|---|---|
| Database and System Access (unlimited users) | Waived |
| Custom client reports | Waived |
| License fee and data storage | $0.10 per creditor per month |
| Case-specific public website hosting | Waived |

| KCC eServices | |
|---|---|
| Online claims filing (ePOC) | Waived |

| KCC CaseView | |
|---|---|
| Access to KCC CaseView | Waived |

- Proprietary, secured, password protected portal for unlimited users
- Comprehensive case data, including extensive real time analytics on claim, solicitation and processing information
- Functionality to run or request customized reports summarizing case analytics

| Document Management/Imaging | |
|---|---|
| Electronic imaging (scanning & bar coding) | $0.12 per imaged page |
| Virtual Data Room | Quote prior to VDR set-up |
| CD-ROMS (mass document storage) | Varies upon requirements |

| Call Center Support Services | |
|---|---|
| Case-specific voice-mail box for creditors | Waived |
| Interactive Voice Response ("IVR") | Set-up and per minute fee waived |
| Monthly maintenance charge | Waived |
| Management of Call Center | Standard hourly rates |
| Call Center Operator | $55 |

| Disbursements | |
|---|---|
| Check issuance | Quote prior to printing |
| W-9 mailing and maintenance of TIN database | See hourly rates and noticing charges |