**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

In re:

Peabody Energy Corporation, <u>et al.</u>,

Debtors.[1]

Case No. 16-42529
CHAPTER 11

(Joint Administration Requested)

Hearing Date and Time:
TBD

Hearing Location:
TBD

**MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER**
**AUTHORIZING THE RETENTION AND COMPENSATION OF PROFESSIONALS**
**UTILIZED BY THE DEBTORS IN THE ORDINARY COURSE OF BUSINESS**

Peabody Energy Corporation ("<u>PEC</u>") and certain of its direct and indirect

subsidiaries, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), hereby move this

Court, pursuant to sections 105(a), 327 and 330 of title 11 of the United States Code

(the "<u>Bankruptcy Code</u>"), Rule 2014 of the Federal Rules of Bankruptcy Procedure

(the "<u>Bankruptcy Rules</u>") and Rule 2014 of the Local Rules of Bankruptcy Procedure for the

United States Bankruptcy Court for the Eastern District of Missouri (the "<u>Local Bankruptcy</u>

<u>Rules</u>"), for an order:  (a) authorizing them to retain, employ and pay certain professionals

(each, an "<u>Ordinary Course Professional</u>") in the ordinary course of the Debtors' businesses on

the terms and conditions set forth immediately below, without the submission of separate

retention applications and the issuance of separate retention orders for each Ordinary Course

Professional; and (b) approving such retention and employment as of the Petition Date or the

---

[1]     The Debtors and their employer identification numbers are listed on Schedule 1 attached hereto.  The
        addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

date the Ordinary Course Professional commenced their work (the "Retention Date"), and in

support thereof, respectfully represent as follows:[2]

### Jurisdiction and Venue

1.      This Court has subject matter jurisdiction to consider this matter pursuant

to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States

District Court for the Eastern District of Missouri.  This is a core proceeding pursuant to

28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

2.      On April 13, 2016 (the "Petition Date"), the Debtors commenced their

reorganization cases by filing voluntary petitions for relief under the Bankruptcy Code.  The

Debtors are authorized to continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      Debtor PEC is a Delaware corporation headquartered in St. Louis,

Missouri.  PEC was incorporated in 1998 and became a public company in 2001.  Each of the

other Debtors is a wholly-owned direct or indirect subsidiary of PEC.

4.      PEC is the world's largest private-sector coal company (by volume), with

26 active coal mining operations located in the United States and Australia.  The Debtors'

domestic mines produce and sell thermal coal, which is primarily purchased by electricity

generators.  PEC's Australian operations mine both thermal and metallurgical coal, a majority of

which is exported to international customers.  As of December 31, 2015, Debtor PEC and its

subsidiaries' property holdings include 6.3 billion tons of proven and probable coal reserves and

approximately 500,000 acres of surface property through ownership and lease agreements.  In

---

[2]      A copy of the proposed order will be made available on the Debtors' case website at
http://www.kccllc.net/peabody.

the United States alone, as of December 31, 2015, the Debtors held an estimated 5.5 billion tons of proven and probable coal reserves, and the Debtors generated sales of approximately 180 million tons of coal.  In addition to its mining operations, the Debtors market and broker coal from other coal producers across the United States, Australia, Europe and Asia.

5.      The Debtors operate in a competitive and highly regulated industry that has experienced strong headwinds and precipitously declining demand and pricing in recent years due to the rise of low priced alternative energy sources – including an abundance of natural gas.  Combined with these factors, slowing global economic growth drove a wide range of goods prices lower in 2015 and resulted in the largest broad market decline since 1991.  Indeed, demand from electric utilities in the United States alone declined approximately 110 million tons in 2015.  These market conditions, in connection with lower realized pricing in the United States and Australia, resulted in a 21.0 million ton decline in the Debtors' and their non-debtor subsidiaries' coal sales during 2015.  As a result of these challenges, several large United States coal companies have filed for chapter 11 protection in recent years.

6.      A comprehensive description of the Debtors' businesses and operations, capital structure and the events leading to the commencement of these chapter 11 cases can be found in the Declaration of Amy Schwetz, Executive Vice President and Chief Financial Officer of Debtor PEC, in Support of First Day Motions of Debtors and Debtors in Possession (the "First Day Declaration"), which was filed contemporaneously herewith and is incorporated herein by reference.

***Ordinary Course Professionals***

7.      The Debtors' officers and management, in the performance of their duties, regularly call upon a variety of Ordinary Course Professionals to provide professional services to

assist them in carrying out their assigned duties and responsibilities in the ordinary course of the Debtors' business.  These Ordinary Course Professionals provide valuable – and sometimes essential – assistance in addressing issues of importance to the Debtors' operations.  A nonexclusive list of Ordinary Course Professionals that the Debtors were able to identify as of the Petition Date is attached hereto as  Exhibit A (the "OCP List").[3]

8.      The Debtors desire to employ the Ordinary Course Professionals to render professional services to their estates in the same manner and for the same purposes as such services were provided prior to the Petition Date.  It is essential that the employment of the Ordinary Course Professionals, many of whom are familiar with the Debtors' business and affairs, be continued.  Indeed, the continued and uninterrupted support of the Ordinary Course Professionals will avoid disruption of the Debtors' normal business operations and preserve the value of their estates.  It would be impractical, inefficient and overly burdensome for the Debtors and this Court to require each Ordinary Course Professional to separately apply to this Court for the approval of its employment and compensation.

9.      Accordingly, the Debtors request the authority to retain, employ and pay the Ordinary Course Professionals on the terms set forth herein without further order of the Court.  The streamlined procedures set forth herein will save the Debtors' estates the substantial expense associated with applying separately for the retention of each professional, as well as the incurrence of additional fees related to the preparation and prosecution of interim fee

---

[3]      The Debtors have prepared the OCP List based on a review of the professionals they have employed regularly on a historical basis.  The Debtors have not determined which of the parties identified on the OCP List in fact will continue to provide services to the Debtors on a postpetition basis.  As such, the OCP List is not intended to constitute a representation that each party listed thereon will be retained, employed and paid by the Debtors during the course of these cases.  Likewise, the Debtors believe that there may be additional professionals that will provide services as Ordinary Course Professionals in these cases, but that were not identified by the Debtors' preliminary review and thus are not included on the attached OCP List.  Accordingly, the Debtors reserve all rights in connection with the OCP List.

-4-

applications.  The OCP Payment Procedures (as defined below) also will relieve the Court, the

United States Trustee and any official committee(s) appointed in these cases (each, a

"Committee") of the burden of reviewing numerous applications involving relatively small

amounts of fees and expenses.

10.     Although certain of the Ordinary Course Professionals may hold

unsecured claims against the Debtors for prepetition services rendered to the Debtors, the

Debtors do not believe that any of the Ordinary Course Professionals have an interest adverse to

the Debtors, their creditors or other parties in interest that should preclude such Ordinary Course

Professional from continuing to represent the Debtors.  Thus, the Ordinary Course Professionals

proposed to be retained should meet the special counsel retention requirement under section

327(e) of the Bankruptcy Code.

### *Ordinary Course Professional Fee Limit*

11.     The Debtors seek to continue employing Ordinary Course Professionals to

render a variety of professional services to the Debtors in the same manner and for the same

purposes as the Ordinary Course Professionals did prior to the Petition Date.  After reviewing

historical Ordinary Course Professional expense information, the Debtors do not believe that any

individual Ordinary Course Professional will have monthly fees, exclusive of expenses, of more

than $75,000 or total fees, exclusive of expenses, of more than $750,000 during the pendency of

these chapter 11 cases (together, the "OCP Fee Limits").  As described below, however, if the

fees of any Ordinary Course Professional exceed the OCP Fee Limits, such Ordinary Course

Professional will be required to comply with the proposed OCP Payment Procedures.  Moreover,

as also described below, any Ordinary Course Professional that becomes materially involved in

the administration of these cases such that it is a "professional" under section 327 of the

-5-

Bankruptcy Code – even if its fees are below the OCP Fee Limits – will be retained in accordance with applicable sections of the Bankruptcy Code.

### ***Ordinary Course Professional Payment Procedures***

12.    The Debtors propose that they be permitted to retain and compensate each Ordinary Course Professional, without prior application to the Court, subject to the procedures (the "OCP Payment Procedures") set forth below.  These procedures will save the Debtors the substantial expense associated with applying separately to retain each Ordinary Course Professional and will prevent the Debtors from incurring additional fees associated with submitting interim fee applications during these chapter 11 cases.  Based on these facts, the Debtors submit to the Court that the following procedures are in the best interests of the Debtors' estates, creditors and other interested parties:

(a)    Pursuant to sections 105(a), 327 and 330 of the Bankruptcy Code, to the extent deemed necessary by the Debtors, the Debtors will be authorized to employ and compensate the Ordinary Course Professionals set forth on Exhibit A in the ordinary course of their business and in accordance with the OCP Payment Procedures.

(b)    Each Ordinary Course Professional shall provide the Debtors with a declaration (an "OCP Declaration") substantially in the form attached hereto as Exhibit B, at the following addresses:  (i) Peabody Energy Corporation, 701 Market Street, St. Louis, MO 63101 (Attn: Scott T. Jarboe, Esq., Vice President and Deputy General Counsel Corporate and Capital Markets; (ii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, OH  44114 (Attn:  Heather Lennox, Esq.); (iii) Jones Day, 51 Louisiana Avenue, NW, Washington, DC 20001 (Attn:  Amy Edgy, Esq. and Daniel T. Moss, Esq.); and (iv) Armstrong Teasdale LLP, 7700 Forsyth Boulevard, St. Louis, MO  63105 (Attn:  Steven N. Cousins, Esq. and Susan K. Ehlers, Esq.).

(c)    Each OCP Declaration shall certify that the relevant Ordinary Course Professional does not represent or hold an adverse interest to the Debtors or their estates with respect to the matter on which the professional is to be employed.  Each such Ordinary Course Professional shall periodically update its OCP Declaration to the extent necessary to reflect new facts or circumstances relevant to its retention.

(d)     Counsel to the Debtors shall promptly file any OCP Declaration received with the Court and serve such declaration on (i) counsel for any Committee (as defined below) appointed in these cases; and (ii) the Office of the United States Trustee (the "United States Trustee") for the Eastern District of Missouri, 111 South 10th Street, Suite 6.353, St. Louis, MO 63102  (Attn: Paul Randolph, Esq., Assistant United States Trustee) (each, an "OCP Notice Party" and, collectively with the Debtors, the "OCP Notice Parties").

(e)     The OCP Notice Parties shall have 14 days after the service of an OCP Declaration to object to the retention, employment or payment of the Ordinary Course Professional filing such declaration on the terms, and pursuant to the procedures, described herein (the "Objection Deadline"). Any objecting party shall serve its objection upon the OCP Notice Parties and the relevant Ordinary Course Professional on or before the Objection Deadline.  If an objection cannot be resolved within 14 days after the Objection Deadline, then the retention, employment or payment of the Ordinary Course Professional that is the subject of the objection shall be scheduled for hearing by the Debtors at the next regularly scheduled omnibus hearing date that is no less than 20 days from that date or on a date otherwise agreed to by the parties.  The Debtors shall not be authorized to retain, employ or pay such Ordinary Course Professional until all outstanding objections have been withdrawn, resolved or overruled by order of the Court.

(f)     If no objection is received from any of the OCP Notice Parties by the Objection Deadline with respect to an Ordinary Course Professional, the Debtors shall be authorized, pursuant to section 327 of the Bankruptcy Code, to retain, employ and pay that Ordinary Course Professional in accordance with the OCP Payment Procedures effective as of the Retention Date without further hearing before the Court.

(g)     The Debtors may, without formal application to the Court, pay 100% of the undisputed fees and disbursements incurred by an Ordinary Course Professional upon the submission to, and approval by, the Debtors of an appropriate monthly invoice setting forth in reasonable written detail the nature of the services rendered and disbursements actually incurred during the month; provided, however, that all payments to Ordinary Course Professionals shall be subject to the OCP Fee Limits and that nothing herein prevents the Debtors from disputing any such invoices.

(h)     To the extent that the fees sought by any Ordinary Course Professional exceed the monthly OCP Fee Limit of $75,000, then such Ordinary Course Professional shall, on or before the 20th day of the month following the month for which such fees are sought, serve a "Monthly Statement" on the OCP Notice Parties for the full amount of fees sought in such month.

-7-

(i) If any OCP Notice Party has an objection to the fees sought in a particular Monthly Statement, such party shall, no later than the 15th day following the service of such Monthly Statement (the "Monthly Statement Objection Deadline"), serve upon the relevant Ordinary Course Professional and the other OCP Notice Parties a written objection setting forth the nature of the objection.

(j) If the Debtors do not receive an objection to a given Monthly Statement on or prior to the Monthly Statement Objection Deadline, the Debtors shall promptly pay all fees identified therein.

(k) If the Debtors receive a timely objection to a Monthly Statement, the Debtors shall withhold payment of that portion of the Monthly Statement to which the Objection is directed (the "Withheld Fees") and promptly pay the remainder of the fees sought unless the Court, upon notice and a hearing, directs payment to be made.

(l) If (i) the parties to a Monthly Statement objection are able to resolve their dispute and (ii) the relevant Ordinary Course Professional serves upon the OCP Notice Parties a statement describing such resolution, then the Debtors shall promptly pay the Withheld Fees to such Ordinary Course Professional.

(m) If an Ordinary Course Professional seeks payment of fees in excess of the aggregate OCP Fee Limit of $750,000, such Ordinary Course Professional shall, unless the United States Trustee agrees or the Court orders otherwise, file a fee application with the Court for any such excess amount in accordance with sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Eastern District of Missouri and any applicable fee guidelines promulgated by the United States Trustee or the Court.

(n) If the aggregate fees incurred by an Ordinary Course Professional during the pendency of these cases would exceed the aggregate OCP Fee Limit of $750,000 if the professional's most recent request were to be paid, then such Ordinary Course Professional shall file an application with the Court to be retained in accordance with section 327 of the Bankruptcy Code and Bankruptcy Rule 2014(a).

(o) At three-month intervals during the pendency of these chapter 11 cases (each such interval, a "Quarter"), beginning with the Quarter ending June 30, 2016, the Debtors shall file with the Court and serve on the OCP Notice Parties, no later than 40 days after the end of such Quarter, a statement including the following information for each Ordinary Course Professional:  (i) the name of the Ordinary Course Professional, (ii) the aggregate amounts of fees and expenses incurred by such Ordinary Course

Professional during the reported Quarter and (iii) all postpetition payments made to the Ordinary Course Professional through the end of the reported Quarter.

(p)     The Debtors reserve the right to (i) retain additional Ordinary Course Professionals from time to time during these chapter 11 cases by having such Ordinary Course Professional comply with these procedures and (ii) request that the Court modify these OCP Payment Procedures.

(q)     Notwithstanding anything to the contrary set forth herein, the Debtors shall retain the right to apply to the Court for authorization to employ any Ordinary Course Professional, nunc pro tunc to the Petition Date, should it later be determined that the Debtors are required to file a formal retention application for such Ordinary Course Professional for any reason.

**Argument**

***The Ordinary Course Professionals Are Not Professionals Under Section 327(a) of the Bankruptcy Code***

13.     To determine whether an entity to be employed in a bankruptcy case is a "professional" within the meaning of section 327(a) of the Bankruptcy Code,[4] most courts have applied either a "quantitative" or a "qualitative" test.  See In re Seven Cntys. Servs., Inc., 496 B.R. 852, 855 (Bankr. W.D. Ky. 2013) (citing In re First Merchs. Acceptance Corp., No. 97-1500, 1997 WL 873551, at *2 (D. Del. Dec. 15, 1997)).  Under the quantitative test, courts have required that an entity providing professional services must play a "central role" in the administration of the estate before it is considered a professional under section 327 of the Bankruptcy Code.[5]  In re Dairy Dozen-Milnor, LLP, 441 B.R. 918, 922 (Bankr. D.N.D. 2010)

---

[4]     Section 327(a) of the Bankruptcy Code provides that, with certain exceptions, "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under [the Bankruptcy Code]." 11 U.S.C. § 327(a).

[5]     See, e.g., U.S. Tr. v. Bloom (In re Palm Coast, Matanza Shores L.P.), 101 F.3d 253, 257 (2d Cir. 1996) (stating that "professional persons" are "limited to persons in those occupations which play a central role in the administration of the debtor proceeding"); In re Yuba Westgold, Inc., 157 B.R. 869, 872 (Bankr. N.D. Iowa 1993) ("Not all professionals which might be hired by a debtor-in-possession come within the purview of § 327(a).  Professionals that do are those which play an 'intimate role in the reorganization of

-9-

("This Court is inclined to follow the cases that define 'professional person' as an individual who takes a central role in the administration of the debtor's bankruptcy proceedings, as opposed to one who provides services to the debtor that are necessary regardless of whether a bankruptcy petition was filed."); Farrell v. Am. Exec. Mgmt., Inc. (In re North Star Mgmt., LP), 308 B.R. 906, 912 (B.A.P. 8th Cir. 2004) (citing DOLA Intern. Corp. v. Bordlemay (In re DOLA Intern. Corp.), 88 B.R. 950, 954 (Bankr. D. Minn. 1988)) (stating that "professional person" has "regularly been accepted to mean [a person] who play[s] a central role in the administration of the proceedings.")).  See also First Merchs., 1997 WL 873551, at *2.  By contrast, under the qualitative test, an entity is considered a professional if it is permitted to exercise discretion and autonomy in addressing the administration of the estate.[6]  In re Bartley Lindsay Co., 137 B.R. 305 (Bankr. D. Minn. 1991) (relying on both qualitative and quantitative factors to find

_____

(continued…)

the debtor's estate'.") (internal citation omitted); In re Fortune Natural Res. Corp., 366 B.R. 558, 563 (Bankr. E.D. La. 2007) (adopting the quantitative test in ruling that "professional persons" under section 327 of the Bankruptcy Code are those who "play a central role in the administration" of the debtor's estate) (citation omitted); Elstead v. Nolden (In re That's Entm't Mktg. Grp.), 168 B.R. 226, 230 (N.D. Cal. 1994) (defining "professional person" under section 327 of the Bankruptcy Code as a person whose role is "central to the administration of the estate") (citation omitted); In re Sieling Assocs. Ltd. P'ship, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991) (defining "professional person" under section 327 of the Bankruptcy Code as a person whose role is "central to the administration of the estate"); In re D'Lites of Am., Inc., 108 B.R. 352, 355 (Bankr. N.D. Ga. 1989) (section 327 approval not necessary for one who provides services to the debtor that are incidental to its ongoing business operations); Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1989) (finding that "the phrase 'professional persons' … is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate").

[6]   See, e.g., In re Smith, 524 B.R. 689, 694 (Bankr. S.D. Tex. 2015) (discussing both qualitative and quantitative factors, but stating that "[g]enerally, to qualify as a 'professional person' under § 327(a), a person must be a professional in the ordinary sense of the word – that is, a person must perform high-level, specialized services requiring 'discretion or autonomy'") (citation omitted); In re Neidig Corp., 117 B.R. 625, 629 (Bankr. D. Colo. 1990) (most common factor in determining whether person is a professional is amount of autonomy or discretion person is given by the debtor or trustee in performing its services); In re Fretheim, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (applying qualitative test and stating that "it must be determined whether an employee is to be given discretion or autonomy in some part of the administration of the debtor's estate"); In re Rusty Jones, Inc., 109 B.R. 838 (Bankr. N.D. Ill. 1989).

-10-

that consultant was a "professional person" under section 327(a), in part, because he "provided specialized services to the Debtor and acted with relatively unfettered discretion and autonomy in supervising the day-to-day affairs of the business."); First Merchs., 1997 WL 873551, at *2. Thus, "[w]hile the quantitative test focuses on the significance of the individual's role to the debtor proceeding and the qualitative test focuses on the amount of discretion the individual has in accomplishing that role, the bottom line of both tests involves an examination of the types of duties to be undertaken by the individual." First Merchs., 1997 WL 873551, at *2.

14. Seeking to synthesize the two approaches, the First Merchs. court developed a nonexclusive list of factors to be considered when determining whether an entity to be employed by a debtor is a professional within the meaning of section 327(a) of the Bankruptcy Code. These factors include:

(a) whether the entity controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization;

(b) whether the entity is involved in negotiating the terms of a plan of reorganization;

(c) whether the entity's employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

(d) whether the entity is given discretion or autonomy to exercise its own professional judgment in some part of the administration of the debtor's estate;

(e) the extent of the entity's involvement in the administration of the debtor's estate; and

(f) whether the entity's services involve some degree of special knowledge or skill, such that the entity can be considered a professional within the ordinary meaning of the term.

First Merchants, 1997 WL 873551, at *3. These factors must be considered in their totality; no single factor is dispositive. Id. Nevertheless, professionals assisting in the routine operation of a

-11-

debtor's business and affairs, rather than the administration of its bankruptcy estate, are not professionals that must be retained under section 327 of the Bankruptcy Code.  Id. at *4.

15.     Considering all of the First Merchants factors, the Debtors believe that the Ordinary Course Professionals are not "professionals" within the meaning of section 327(a) of the Bankruptcy Code.  In particular, the Ordinary Course Professionals generally will not be involved in the administration of these chapter 11 cases and will not be involved in counseling and advising the Debtors with respect to the material restructuring issues to be addressed. Instead, Ordinary Course Professionals will provide services in connection with the ongoing management of the Debtors' day-to-day business operations and affairs.  In most instances, the Ordinary Course Professionals were retained prepetition and the services to be provided would be necessary whether or not the Debtors had commenced these chapter 11 cases.  To the extent that services provided by the Ordinary Course Professionals involve some element of administration of the Debtors' estates, that involvement will be minimal or tangential.  As a result, the Debtors do not believe that the retention and compensation of the Ordinary Course Professionals must be approved by the Court.  Nevertheless, out of an abundance of caution, the Debtors seek the relief requested in this Motion to avoid any subsequent controversy regarding the Debtors' employment and payment of the Ordinary Course Professionals during the pendency of these chapter 11 cases.

16.     Courts in this District and elsewhere have granted Chapter 11 debtors the authority to retain and compensate ordinary course professionals on terms and conditions similar to those set forth herein.  See, e.g., In re Noranda Aluminum, Inc., No. 16-10083 (Bankr. E.D. Mo. March 11, 2016) (Docket No. 393) (authorizing the debtor to retain attorneys, accountants and consultants in the ordinary course of business and pay them a maximum of

$75,000 per month or $750,000 in the aggregate per professional); In re Arch Coal, Inc.,

No. 16-40120 (Bankr. E.D. Mo. Feb. 24, 2016 (Docket No. 400) (authorizing the debtor to retain

attorneys used in the ordinary course of business and pay them a maximum of $75,000 per

month or $700,000 total per professional); In re Bakers Footwear Group, Inc., No. 12-49658

(Bankr. E.D. Mo. Nov. 1, 2012) (Docket No. 169) (authorizing the debtor to retain certain

attorneys and real estate, design and property tax consultants and pay such ordinary course

professionals a maximum of $7,500 per month or $75,000 total per professional); In re US

Fidelis, Inc., No. 10-41902 (Bankr. E.D. Mo. Mar. 22, 2010) (Docket No. 57) (granting first-day

motion authorizing retention and compensation of attorneys, auditors, accountants and tax

consultants and authorizing pay for such ordinary course professionals of $5,000 per month or

$50,000 total per professional); accord In re Alpha Natural Res., Inc., No. 15-33896

(Bankr. E.D. Va. Sept. 3, 2015) (Docket No. 346) (authorizing $75,000 per month per ordinary

course professional or $775,000 aggregate per ordinary course professional over the course of

the chapter 11 cases); In re Patriot Coal Corp., No. 15-32450 (Bankr. E.D. Va. June 10, 2015)

(Docket No. 275) (authorizing $60,000 per month per ordinary course professional or $500,000

aggregate per ordinary course professional over the course of the chapter 11 cases); In re James

River Coal Co., No. 14-31848 (Bankr. E.D. Va. May 9, 2014) (Docket No. 246) (authorizing

$50,000 per month per ordinary course professional or $500,000 aggregate per ordinary course

professional over the course of the chapter 11 cases); In re Patriot Coal Corp., No. 12-12900

(Bankr. S.D.N.Y. Aug. 2, 2012) (Docket No. 263) (authorizing $50,000 per month per ordinary

course professional or $500,000 aggregate per ordinary course professional over the course of

the chapter 11 cases).[7]

---

[7]     Unreported orders cited herein are not attached to this Motion.  Copies of these orders will be made

**Reservation of Rights**

17.    Nothing contained herein or in the proposed order is intended or should be construed as:  (a) an admission as to the validity or priority of any claim against the Debtors; (b a waiver of the Debtors' or any party in interest's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim against the Debtors is a claim of a type that, by this Motion, the Debtors seek authority to pay; or (e) a request to assume or reject any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.  The Debtors expressly reserve the right to contest any claims related to the OCP under applicable bankruptcy and non-bankruptcy law.

**Notice**

18.    Notice of this Motion has been given to: (a) Davis Polk & Wardwell LLP and Bryan Cave LLP as counsel to Citibank, N.A. as Administrative Agent for the First Lien Secured Credit Facility and the Debtors' proposed debtor in possession secured credit facility; (b) Brown Rudnick LLP, as counsel to Wilmington Savings Fund Society, FSB as prospective trustee and collateral agent for the Secured Second Lien Notes; (c) Foley & Lardner LLP, as counsel to Wilmington Trust Company as prospective Indenture Trustee for the Unsecured Notes;[8] (d) Robinson & Cole LLP, as counsel to U.S. Bank as resigning trustee and collateral

---

available to the Court or other parties upon request made to the Debtors' counsel.

[8]    These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due September 2020; (iii) 6.25% Senior Notes due September 2021; and the (iv) 7.875% Senior Notes due November 2026.

agent for the Second Lien Notes, the Unsecured Notes and the Convertible Notes;[9] (e) counsel to any ad hoc committees; (f) the Debtors' 50 largest unsecured creditors; (g) Mayer Brown LLP, as counsel to PNC Bank, N.A., as Administrator under the Debtors' prepetition accounts receivable securitization facility; (h) the United Mine Workers of America; (i) the Office of the United States Trustee for the Eastern District of Missouri; (j) the Internal Revenue Service; (k) the Securities and Exchange Commission; (l) the United States Department of the Interior; (m) the United States Department of Labor; (n) the United States Attorney's Office for the Eastern District of Missouri; and (o) Pension Benefit Guaranty Corporation (collectively, the "Notice Parties").  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

### No Prior Request

19.     No prior request for the relief sought in this Motion has been made to this or any other Court in connection with these chapter 11 cases.

---

9       These include the: (i) 6.00% Senior Notes due November 2018; (ii) 6.50% Senior Notes due September 2020; (iii) 6.25% Senior Notes due September 2021; (iv) 7.875% Senior Notes due November 2026; and the (v) Convertible Junior Subordinated Debentures due December 2066.

-15-

WHEREFORE, the Debtors respectfully request that the Court:  (i) enter an order, substantially in the form submitted to the Court, granting the relief requested herein; and (ii) grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated: April 13, 2016
      St. Louis, Missouri

Respectfully submitted,

/s/ Steven N. Cousins
Steven N. Cousins, MO 30788
Susan K. Ehlers, MO 49855
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
 St. Louis, MO  63105
Telephone:  (314) 621-5070
Facsimile:  (314) 612-2239
Email:  scousins@armstrongteasdale.com
Email:  sehlers@armstrongteasdale.com

Heather Lennox (*pro hac vice* pending)
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Email:  hlennox@jonesday.com

Amy Edgy (*pro hac vice* pending)
Daniel T. Moss (*pro hac vice* pending)
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
Email:  aedgy@jonesday.com
Email:  dtmoss@jonesday.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

-16-

## SCHEDULE 1

|     | Debtor's Name | Debtor's EIN Number |
| --- | --- | --- |
| 1. | Peabody Energy Corporation | 13-4004153 |
| 2. | American Land Development, LLC | 20-3405570 |
| 3. | American Land Holdings of Colorado, LLC | 26-3730572 |
| 4. | American Land Holdings of Illinois, LLC | 30-0440127 |
| 5. | American Land Holdings of Indiana, LLC | 20-2514299 |
| 6. | American Land Holdings of Kentucky, LLC | 20-0766113 |
| 7. | American Land Holdings of New Mexico, LLC | 32-0478983 |
| 8. | American Land Holdings of West Virginia, LLC | 20-5744666 |
| 9. | Arid Operations, Inc. | 84-1199578 |
| 10. | Big Ridge, Inc. | 37-1126950 |
| 11. | Big Sky Coal Company | 81-0476071 |
| 12. | Black Hills Mining Company, LLC | 32-0049741 |
| 13. | BTU Western Resources, Inc. | 20-1019486 |
| 14. | Caballo Grande, LLC | 27-1773243 |
| 15. | Caseyville Dock Company, LLC | 20-8080107 |
| 16. | Central States Coal Reserves of Illinois, LLC | 43-1869432 |
| 17. | Central States Coal Reserves of Indiana, LLC | 20-3960696 |
| 18. | Century Mineral Resources, Inc. | 36-3925555 |
| 19. | Coal Reserve Holding Limited Liability Company No. 1 | 43-1922737 |
| 20. | COALSALES II, LLC | 43-1610419 |
| 21. | Colorado Yampa Coal Company, LLC | 95-3761211 |
| 22. | Conservancy Resources, LLC | 20-5744701 |
| 23. | Cottonwood Land Company | 43-1721982 |
| 24. | Cyprus Creek Land Company | 73-1625890 |
| 25. | Cyprus Creek Land Resources LLC | 75-3058264 |
| 26. | Dyson Creek Coal Company, LLC | 43-1898526 |
| 27. | Dyson Creek Mining Company, LLC | 20-8080062 |
| 28. | El Segundo Coal Company, LLC | 20-8162824 |
| 29. | Empire Land Holdings, LLC | 61-1742786 |
| 30. | Falcon Coal Company, LLC | 35-2006760 |
| 31. | Four Star Holdings, LLC | 30-0885825 |
| 32. | Francisco Equipment Company, LLC | 37-1805119 |
| 33. | Francisco Land Holdings Company, LLC | 36-4831111 |
| 34. | Francisco Mining, LLC | 30-0922117 |
| 35. | Gallo Finance Company, LLC | 43-1823616 |
| 36. | Gold Fields Chile, LLC | 13-3004607 |
| 37. | Gold Fields Mining, LLC | 36-2079582 |
| 38. | Gold Fields Ortiz, LLC | 22-2204381 |
| 39. | Hayden Gulch Terminal, LLC | 86-0719481 |
| 40. | Highwall Mining Services Company | 20-0010659 |
| 41. | Hillside Recreational Lands, LLC | 32-0214135 |
| 42. | HMC Mining, LLC | 43-1875853 |
| 43. | Illinois Land Holdings, LLC | 26-1865197 |
| 44. | Independence Material Handling, LLC | 43-1750064 |
| 45. | James River Coal Terminal, LLC | 55-0643770 |
| 46. | Juniper Coal Company, LLC | 43-1744675 |
| 47. | Kayenta Mobile Home Park, Inc. | 86-0773596 |
| 48. | Kentucky Syngas, LLC | 26-1156957 |
| 49. | Kentucky United Coal, LLC | 35-2088769 |
| 50. | Lively Grove Energy, LLC | 20-5752800 |
| 51. | Lively Grove Energy Partners, LLC | 26-0180403 |
| 52. | Marigold Electricity, LLC | 26-0180352 |
| 53. | Midco Supply and Equipment Corporation | 43-6042249 |
| 54. | Midwest Coal Acquisition Corp. | 20-0217640 |
| 55. | Midwest Coal Reserves of Illinois, LLC | 20-3960648 |

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 56. | Midwest Coal Reserves of Indiana, LLC | 20-3405958 |
| 57. | Midwest Coal Reserves of Kentucky, LLC | 20-3405872 |
| 58. | Moffat County Mining, LLC | 74-1869420 |
| 59. | Mustang Energy Company, LLC | 43-1898532 |
| 60. | New Mexico Coal Resources, LLC | 20-3405643 |
| 61. | NM Equipment Company, LLC | 36-4821991 |
| 62. | Pacific Export Resources, LLC | 27-5135144 |
| 63. | Peabody America, LLC | 93-1116066 |
| 64. | Peabody Archveyor, L.L.C. | 43-1898535 |
| 65. | Peabody Arclar Mining, LLC | 31-1566354 |
| 66. | Peabody Asset Holdings, LLC | 20-3367333 |
| 67. | Peabody Bear Run Mining, LLC | 26-3582291 |
| 68. | Peabody Bear Run Services, LLC | 26-3725923 |
| 69. | Peabody Caballo Mining, LLC | 83-0309633 |
| 70. | Peabody Cardinal Gasification, LLC | 20-5047955 |
| 71. | Peabody China, LLC | 43-1898525 |
| 72. | Peabody Coalsales, LLC | 20-1759740 |
| 73. | Peabody COALTRADE International (CTI), LLC | 20-1435716 |
| 74. | Peabody COALTRADE, LLC | 43-1666743 |
| 75. | Peabody Colorado Operations, LLC | 20-2561644 |
| 76. | Peabody Colorado Services, LLC | 26-3723774 |
| 77. | Peabody Coulterville Mining, LLC | 20-0217834 |
| 78. | Peabody Development Company, LLC | 43-1265557 |
| 79. | Peabody Electricity, LLC | 20-3405744 |
| 80. | Peabody Employment Services, LLC | 26-3730348 |
| 81. | Peabody Energy Generation Holding Company | 73-1625891 |
| 82. | Peabody Energy Investments, Inc. | 68-0541702 |
| 83. | Peabody Energy Solutions, Inc. | 43-1753832 |
| 84. | Peabody Gateway North Mining, LLC | 27-2294407 |
| 85. | Peabody Gateway Services, LLC | 26-3724075 |
| 86. | Peabody Holding Company, LLC | 74-2666822 |
| 87. | Peabody Holdings (Gibraltar) Limited | 20-5543587 |
| 88. | Peabody IC Funding Corporation | 46-2326991 |
| 89. | Peabody IC Holdings, LLC | 30-0829603 |
| 90. | Peabody Illinois Services, LLC | 26-3722638 |
| 91. | Peabody Indiana Services, LLC | 26-3724339 |
| 92. | Peabody International Investments, Inc. | 26-1361182 |
| 93. | Peabody International Services, Inc. | 20-8340434 |
| 94. | Peabody Investments Corp. | 20-0480084 |
| 95. | Peabody Magnolia Grove Holdings, LLC | 61-1683376 |
| 96. | Peabody Midwest Management Services, LLC | 26-3726045 |
| 97. | Peabody Midwest Mining, LLC | 35-1799736 |
| 98. | Peabody Midwest Operations, LLC | 20-3405619 |
| 99. | Peabody Midwest Services, LLC | 26-3722194 |
| 100. | Peabody Mongolia, LLC | 20-8714315 |
| 101. | Peabody Natural Gas, LLC | 43-1890836 |
| 102. | Peabody Natural Resources Company | 51-0332232 |
| 103. | Peabody New Mexico Services, LLC | 20-8162939 |
| 104. | Peabody Operations Holding, LLC | 26-3723890 |
| 105. | Peabody Powder River Mining, LLC | 43-0996010 |
| 106. | Peabody Powder River Operations, LLC | 20-3405797 |
| 107. | Peabody Powder River Services, LLC | 26-3725850 |
| 108. | Peabody PowerTree Investments, LLC | 20-0116980 |
| 109. | Peabody Recreational Lands, L.L.C. | 43-1898382 |
| 110. | Peabody Rocky Mountain Management Services, LLC | 26-3725390 |
| 111. | Peabody Rocky Mountain Services, LLC | 20-8162706 |
| 112. | Peabody Sage Creek Mining, LLC | 26-3730653 |
| 113. | Peabody School Creek Mining, LLC | 20-3585831 |

-2-

| | Debtor's Name | Debtor's EIN Number |
|---|---|---|
| 114. | Peabody Services Holdings, LLC | 26-3726126 |
| 115. | Peabody Southwest, LLC | 20-5744732 |
| 116. | Peabody Southwestern Coal Company, LLC | 43-1898372 |
| 117. | Peabody Terminal Holding Company, LLC | 26-1087861 |
| 118. | Peabody Terminals, LLC | 31-1035824 |
| 119. | Peabody Trout Creek Reservoir LLC | 30-0746873 |
| 120. | Peabody Twentymile Mining, LLC | 26-3725223 |
| 121. | Peabody Venezuela Coal Corp. | 43-1609813 |
| 122. | Peabody Venture Fund, LLC | 20-3405779 |
| 123. | Peabody-Waterside Development, L.L.C. | 75-3098342 |
| 124. | Peabody Western Coal Company | 86-0766626 |
| 125. | Peabody Wild Boar Mining, LLC | 26-3730759 |
| 126. | Peabody Wild Boar Services, LLC | 26-3725591 |
| 127. | Peabody Williams Fork Mining, LLC | 20-8162742 |
| 128. | Peabody Wyoming Gas, LLC | 20-5744610 |
| 129. | Peabody Wyoming Services, LLC | 26-3723011 |
| 130. | PEC Equipment Company, LLC | 20-0217950 |
| 131. | PG INVESTMENTS SIX, L.L.C. | 43-1898530 |
| 132. | Point Pleasant Dock Company, LLC | 20-0117005 |
| 133. | Pond River Land Company | 73-1625893 |
| 134. | Porcupine Production, LLC | 43-1898379 |
| 135. | Porcupine Transportation, LLC | 43-1898380 |
| 136. | Riverview Terminal Company | 13-2899722 |
| 137. | Sage Creek Holdings, LLC | 26-3286872 |
| 138. | Sage Creek Land & Reserves, LLC | 38-3936826 |
| 139. | School Creek Coal Resources, LLC | 20-2902073 |
| 140. | Seneca Coal Company, LLC | 84-1273892 |
| 141. | Seneca Property, LLC | 36-4820253 |
| 142. | Shoshone Coal Corporation | 25-1336898 |
| 143. | Southwest Coal Holdings, LLC | 37-1794829 |
| 144. | Star Lake Energy Company, L.L.C. | 43-1898533 |
| 145. | Sugar Camp Properties, LLC | 35-2130006 |
| 146. | Thoroughbred Generating Company, L.L.C. | 43-1898534 |
| 147. | Thoroughbred Mining Company LLC. | 73-1625889 |
| 148. | Twentymile Coal, LLC | 95-3811846 |
| 149. | Twentymile Equipment Company, LLC | 38-3982017 |
| 150. | Twentymile Holdings, LLC | 38-3937156 |
| 151. | United Minerals Company, LLC | 35-1922432 |
| 152. | West Roundup Resources, LLC | 20-2561489 |
| 153. | Wild Boar Equipment Company, LLC | 32-0488114 |
| 154. | Wild Boar Land Holdings Company, LLC | 36-4831131 |

## Exhibit A

**Nonexclusive List of Ordinary Course Professionals**

**Exhibit A**

| Vendor Name | Description |
| --- | --- |
| BABST,CALLAND,CLEMENTS & ZOMNIR | LEGAL |
| BAKER & MCKENZIE LLP | TAX / LEGAL |
| BAMBERGER FOREMAN OSWALD & HAHN LLP | LEGAL |
| BEVERIDGE & DIAMOND, PC | LEGAL |
| BKD LLP | TAX |
| BLOOSTON, MORDKOFSKY, DICKENS, DUFFY & PRENDERGAST, LLP | LEGAL |
| BONA LEX LLC | LEGAL |
| BROWNSTEIN HYATT FARBER SCHRECK LLP | LEGAL |
| CAVANAGH LAW FIRM | LEGAL |
| CITCO DEUTSCHLAND GMBH | TAX |
| CROWELL MORING | LEGAL |
| DECHERT LLP | LEGAL |
| DOWD BENNETT LLP | LEGAL |
| ERNST & YOUNG BELASTINGADVISEURS LLP | AUDIT / TAX |
| EVANS & DIXON, LLC | LEGAL |
| EVERSHEDS LLP | LEGAL |
| FENNEMORE CRAIG, P.C. | LEGAL |
| GORDON & GORDON, P.S.C. | LEGAL |
| GREENBERG TRAURIG | LEGAL |
| H&K LAW, LLC | LEGAL |
| HEUSSEN | LEGAL |
| HOGAN LOVELLS US LLP | LEGAL |
| HOLLAND & HART | LEGAL |
| HUNTON & WILLIAMS | LEGAL |
| ICE MILLER | LEGAL |
| JACKSON KELLY PLLC | LEGAL |
| JOHN R. CLINE, PLLC | LEGAL |
| KEEFE AND DEPAULI, PC | LEGAL |
| KING & SPALDING LLP | LEGAL |
| KLEIN, LUNDMARK, BARBERICH & LA MONT, PC | LEGAL |
| KOENMAN & KOENMAN ATTORNEYS AT LAW | LEGAL |
| KPMG ADVISORY SERVICES PVT LTD | TAX |
| KPMG LLP | AUDIT / TAX |
| LAWRENCE H. TRIBE | LEGAL |
| LIGHTHOUSE LEGAL CONSULTING, LLC | LEGAL |
| MANATT, PHELPS & PHILLIPS | LEGAL |
| MASEY & GAIL, LLP | LEGAL |
| MCANANY VAN CLEAVE & PHILLIPS, P.C | LEGAL |
| MCGUIRE WOODS LLP | LEGAL |
| MILLER & CHEVALIER | LEGAL |
| MODRALL SPERLING ROEHL HARRIS & SISK, P.A. | LEGAL |

**Exhibit A**

| Vendor Name | Description |
|---|---|
| MONTGOMERY AMATUZIO DUSBABEK CHASE, LLP | LEGAL |
| OGLETREE, DEAKINS, NASH, SMOAK & | LEGAL |
| PARK LEGAL LLC | LEGAL |
| PRICEWATERHOUSECOOPERS (PTY) LTD | TAX |
| PRICEWATERHOUSECOOPERS LLP | ACCOUNTING / AUDIT |
| PRICEWATERHOUSECOOPERS SERVICES LLP | TAX |
| PRICEWATERHOUSECOOPERS TAX TMZ LLC | TAX |
| PT PRIMA WAHANA CARAKA | LEGAL |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | LEGAL |
| RHINE ERNEST LLP | LEGAL |
| RITESMA & LYON PC | LEGAL |
| RODEY, DICKASON, SLOAN, AKIN, & ROBB, P.A. | LEGAL |
| SENNIGER POWERS | LEGAL |
| SHOOK, HARDY & BACON LLP | LEGAL |
| SIMPSON THACHER & BARTLETT LLP | LEGAL |
| SNELL & WILMER | LEGAL |
| TERRANCE GILEO FAYE | LEGAL |
| THOMPSON COBURN LLP | LEGAL |
| TROUTMAN SANDERS LLP | LEGAL |
| UHY LLP | AUDIT |
| VRANESH AND RAISCH, LLP | LEGAL |
| WACHTELL, LIPTON, ROSEN & KATZ | LEGAL |
| WILLMER HALE, LLP | LEGAL |

**<u>Exhibit B</u>**

**OCP Declaration**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br><br>Peabody Energy Corporation, <u>et al.</u>,<br><br>                       Debtors. | Case No. 16-42529<br>CHAPTER 11<br><br>(Joint Administration Requested)<br><br>Hearing Date and Time:<br>TBD<br><br>Hearing Location:<br>TBD |

<u>**DECLARATION OF ORDINARY COURSE PROFESSIONAL**</u>

The undersigned hereby declares, under penalty of perjury, as follows:

1.      I am a **[member, partner or similar representative]** of the following firm (the "<u>Firm</u>"), which maintains offices at the address and phone number listed below:

<u>Firm</u>:


<u>Address and Telephone Number</u>:


2.      This Declaration is submitted in connection with an order of the United States Bankruptcy Court for the Eastern District of Missouri authorizing Peabody Energy Corporation and the other above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") to retain certain professionals in the ordinary course of business during the pendency of the Debtors' chapter 11 cases (the "<u>Order</u>").  Since the date that the Debtors' chapter 11 cases were commenced (the "<u>Petition Date</u>"), the Debtors have requested that the Firm provide

professional services (or continue to provide such services) to the Debtors, and the Firm has agreed to provide such services.  Accordingly, the Firm is filing this Declaration pursuant to the Order.

3.      The Firm, through me, and **[other members, partners, associates or employees of the Firm]**, has provided, or plans to provide, the following services to the Debtors from and after the Petition Date:  _____.

4.      To the best of my knowledge, information and belief, formed after due inquiry, the Firm does not represent or hold an adverse interest to the Debtors or their estates with respect to the matter(s) on which the Firm is to be retained and employed.

5.      The Firm believes that it is owed approximately $_____ on account of services rendered and expenses incurred prior to the Petition Date in connection with the Firm's employment by the Debtors.

6.      The Firm further states that it has not shared, has not agreed to share, nor will it agree to share, any compensation received in connection with these chapter 11 cases with any party or person, although such compensation may be shared with any member or partner of, or any person employed by, the Firm.

7.      If, at any time during its employment by the Debtors, the Firm discovers any facts bearing on the matters described herein, the Firm will supplement the information contained in this Declaration.

Dated:  _____          By: _____
                                            **[Name]**
                                            **[Title]**


Sworn to and subscribed before me
this _____ day of _____, 2016

-2-