## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |
|---|---|
| In re: | Case No. 16-42529 -399 |
|  | CHAPTER 11 |
| Peabody Energy Corporation, et al., | |
| Debtors. | (Jointly Administered) |
|  | Related to Docket No. 45 |

### INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364 AND 507(b) AND (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

Upon the motion (the "**Motion**"),[1] dated April 13, 2016, of Peabody Energy Corporation

(the "**Borrower**") and its affiliated debtors, each as debtor and debtor-in-possession (collectively

with the Borrower, the "**Debtors**"), in the above-captioned chapter 11 cases (the "**Cases**")

pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1),

364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy**

**Code**") and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), seeking, among other things:

(1)  authorization for the Borrower to obtain post-petition financing (the

"**DIP Financing**"), and for the other Debtors (other than Peabody Holdings

(Gibraltar) Limited, Peabody IC Holdings, LLC and Peabody IC Funding

Corporation) (the "**Debtor Guarantors**" and, together with the Borrower and

Peabody Holdings (Gibraltar) Limited as pledgor under the DIP Documents (as

---

[1]     Capitalized terms used, but not defined herein, shall have the meanings set forth in the DIP Documents (as defined below).

defined herein), the "**Debtor Loan Parties**" and collectively with non-Debtor Global Center for Energy and Human Development, LLC ("**Global Center**"), the "**Loan Parties**") to guaranty the Borrower's obligations in connection with the DIP Financing, consisting of, (a) a senior secured superpriority non-amortizing term loan in the aggregate principal amount of up to $500,000,000 (the "**DIP Term Facility**"), (b) a cash collateralized letter of credit facility in the aggregate amount of up to $100,000,000 (the "**DIP L/C Facility**" and together with the DIP Term Facility and the Bonding Facility Letters of Credit (as defined below), the "**DIP Facilities**") and (c) an accommodation facility for Bonding Requests (as defined below) by Bonding Beneficiaries (as defined in the DIP Credit Agreement (as defined herein)) in the form of (or any combination of) (i) the Bonding Carve Out (as defined below) and/or (ii) the issuance of letters of credit under the DIP Credit Agreement secured by cash collateral (the "**Bonding Facility Letters of Credit**" and, together with the Bonding Carve Out, the "**Bonding Accommodation**"), in an aggregate stated amount (the "**Bonding Accommodation Cap**") of up to $200,000,000, in each case subject to the terms and conditions set forth in the DIP Credit Agreement, by and among the Borrower (as Debtor-in-Possession), the other Loan Parties thereto, Citibank, N.A. ("**Citi**"), acting as administrative agent and L/C Issuer (in such capacities and together with any respective successor thereto, the "**DIP Agent**") and the lenders (the "**DIP Lenders**") from time to time party to the DIP Credit Agreement, in each case to be arranged by Citigroup Global Markets Inc. (the "**Lead Arranger**");

2

(2)  authorization for the Debtor Loan Parties to execute and enter into, and to cause Global Center to execute and enter into, the DIP Documents and to perform all such other and further acts as may be required in connection with the DIP Documents;

(3)  the granting of adequate protection in the form of the Adequate Protection Obligations (as defined and described below) solely to (a) the lenders (the "**Pre-Petition Credit Agreement Lenders**")  and other Secured Parties (as defined in the Pre-Petition Credit Agreement (as defined below)) under or in connection with that certain Amended and Restated Credit Agreement, dated as of September 24, 2013 (as heretofore amended, supplemented or otherwise modified in accordance with the terms thereof, including pursuant to that certain Omnibus Amendment Agreement, dated as of February 5, 2015, the "**Pre-Petition Credit Agreement**"), by and among the Borrower, the lenders and letter of credit issuers party thereto, Citi as administrative agent (in such capacity and together with any successor thereto, the "**Pre-Petition Agent**") and the other agents and arrangers party thereto, that certain Pledge and Security Agreement (the "**Pre-Petition Security Agreement**"), dated as of February 5, 2015, by and among the Borrower, the Pre-Petition Guarantors (as defined below), and Citi as administrative agent, and that certain Amended and Restated Pledge Agreement, dated as of September 24, 2013 (the "**Pre-Petition Pledge Agreement**" and, collectively with the Pre-Petition Credit Agreement, the Pre-Petition Security Agreement, and the guaranties, mortgages and pledges and all other documentation executed in connection therewith (including, for these purposes,

3

any Swap Contracts or Cash Management Agreements (each as defined in the

Pre-Petition Credit Agreement) and the documents governing such arrangements,

the "**Existing Credit Documents**"), among Peabody Investments Corp. and Citi,

as administrative agent, and (b) the other Secured Parties (as defined in the Pre-

Petition Credit Agreement) under the Existing Credit Documents (together with

the Pre-Petition Credit Agreement Lenders, the "**Pre-Petition Lenders**" and,

collectively with the Pre-Petition Agent, the "**First Lien Secured Parties**") and

(b) the holders (the "**Second Lien Noteholders**") of the 10% Senior Secured

Second Lien Notes due 2022 (the "**Second Lien Notes**") issued under or in

connection with (x) that certain Indenture, dated as of March 16, 2015 (as

heretofore amended, supplemented or otherwise modified in accordance with the

terms thereof, the "**Second Lien Notes Indenture**") and, together with the

security agreements, guaranties, mortgages, pledges and all other documentation

executed in connection therewith, the "**Existing Second Lien Indenture**

**Documents**", and, together with the Existing Credit Documents, the "**Existing**

**Secured Agreements**"), by and among the Borrower, the subsidiary guarantors

party thereto, and U.S. Bank, National Association, and any successor trustee, as

trustee and collateral agent (in such capacities, the "**Second Lien Notes Trustee**"

and, together with Second Lien Noteholders, the "**Second Lien Secured Parties**"

and, collectively with the First Lien Secured Parties, the "**Pre-Petition Secured**

**Parties**"), whose liens and security interests are being primed by the DIP

Financing;

4

(4)  authorization for the Debtors to continue to use Cash Collateral (as defined below) and all other Pre-Petition Collateral (as defined below) in which any of the Pre-Petition Secured Parties has an interest, and the granting of adequate protection in the form of the Adequate Protection Obligations and the Adequate Protection Liens to the Pre-Petition Secured Parties, as applicable, with respect to, *inter alia*, such use of their Cash Collateral and all use and diminution in the value of such Cash Collateral and the Pre-Petition Collateral, as applicable;

(5)  approval of certain stipulations in paragraph 4 of this Interim Order by the Debtors with respect to the Existing Secured Agreements and the liens and security interests arising therefrom;

(6)  the granting of superpriority claims under section 364(c)(1) of the Bankruptcy Code to the DIP Lenders payable from, and having recourse to, all pre-petition and post-petition property of the Debtors' estates and all proceeds thereof (including, subject only to and effective upon entry of the Final Order (as defined below), any Avoidance Proceeds (as defined below)), subject to the Fees Carve Out (as defined below) and the Bonding Carve Out (to the extent provided herein);

(7)  subject only to and effective upon entry of the Final Order and without prejudice to paragraph 27(c), the limitation of the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code;

(8)  pursuant to Bankruptcy Rule 4001, that an interim hearing (the "**Interim Hearing**") on the Motion be held before this Court to consider entry of an order granting the Motion on an interim basis (as entered on the docket, the

5

"**Interim Order**") (a) authorizing the Borrower, on an interim basis, to forthwith

borrow or obtain letters of credit from the DIP Lenders (and incur bonding

obligations) under (or as permitted by) the DIP Documents up to an aggregate

principal or face amount not to exceed (i) $200,000,000 under the DIP Term

Facility, (ii) $100,000,000 under the DIP L/C Facility and (iii) $200,000,000

under the Bonding Accommodation, in each case subject to the terms set forth in

the DIP Credit Agreement, to provide operating cash for the Debtors and bonding

and letter of credit capacity for the Debtors' businesses (including, without

limitation, to pay interest, fees and expenses in accordance with this Interim

Order, the Final Order, and the DIP Documents and to satisfy all Adequate

Protection Obligations authorized hereunder), (b) authorizing the Debtors'

continued use of Cash Collateral and all other Pre-Petition Collateral, and (c)

granting adequate protection in the form of the Adequate Protection Obligations

and the Adequate Protection Liens; and

(9)  that this Court schedule a final hearing (the "**Final Hearing**") to be

held within 45 days of the entry of this Interim Order to consider entry of a final

order (the "**Final Order**") approving the relief granted herein on a final basis.

Due and appropriate notice of the Motion, the relief requested therein and the Interim

Hearing having been served by the Debtors on the Pre-Petition Agent and its counsel, the Second

Lien Notes Trustee, counsel to Wilmington Trust Company as Indenture Trustee, counsel to any

ad hoc committees, counsel to PNC Bank, as Administrator under the Debtors' prepetition

accounts receivable securitization facility,  the United Mine Workers of America, the Debtors'

50 largest unsecured creditors, the Office of the United States Trustee for the Eastern District of

Missouri (the "**U.S. Trustee**"), the Internal Revenue Service, the Securities and Exchange

Commission, the United States Department of the Interior, the United States Department of

Labor, the United States Attorney's Office for the Eastern District of Missouri, approximately

350 lienholders or leaseholders with an interest in the Debtors' estates, all relevant state taxing

authorities, and all of the Debtors' landlords, and owners and/or operators of premises at which

any of the Debtors inventory and/or equipment is located; and it appearing that no other or

further notice need be provided.

The Interim Hearing having been held by this Court on April 14, 2016.

Upon the record made by the Debtors in the Motion, the *Declarartion of Amy Schwetz,*

*Executive Vice President and Chief Financial Officer of Debtor Peabody Energy Corporation in*

*Support of First Day Pleadings of Debtors and Debtors in Possession, the Declaration of Tyler*

*W. Cowan, Managing Director of Lazard  Freres & Co., LLC, proposed financial advisors and*

*investment bankers for the Debtors in Support of the Motion*, and the *Declaration of Carlin*

*Adrianopoli, Senior Managing Director at FTI, proposed  financial advisor to the Debtors  in*

*Support of Certain First Days Motions*, and at the Interim Hearing, and after due deliberation

and consideration and sufficient cause appearing therefor;

It is hereby ORDERED that the Motion is GRANTED in that:

1.      *Disposition*.  The Motion is granted, on an interim basis, in accordance with the

terms of this Interim Order.  Any objections to the Motion with respect to the entry of this

Interim Order that have not been withdrawn, waived or settled (as set forth herein), and all

reservations of rights included therein, are hereby denied and overruled on the merits.

2.      *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      *Notice*.  Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion or the entry of this Interim Order shall be required. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

4.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party and subject in all respects to the limitations thereon contained in paragraphs 4(l),  18(e) and 20 below, the Debtors admit, stipulate and agree that:

(a)      as of the filing of the Debtors' chapter 11 petitions (the "**Petition Date**"), the Debtors were indebted and liable to the First Lien Secured Parties and the Second Lien Secured Parties, without defense, counterclaim or offset of any kind, as follows:

(i)      the Borrower is indebted to the First Lien Secured Parties, as applicable, in the aggregate principal amount of approximately $2,117,000,000 in respect of loans made and in the aggregate principal amount of approximately $675,000,000 in respect of issued letters of credit (the "**Existing R/C Letters of Credit**") and amounts owed in respect of any other Secured Obligations (as defined in the Pre-Petition Credit Agreement), in each case, by the First Lien Secured Parties pursuant to, and in accordance with the terms of, the Existing Credit Documents, plus accrued and unpaid interest thereon  and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees

8

that are chargeable or reimbursable under the Existing Credit Documents),
amounts, charges, costs, indemnities and other obligations incurred in connection
therewith as provided under the Existing Credit Documents) (collectively, the
"**Pre-Petition First Lien Debt**"), which Pre-Petition First Lien Debt is
guaranteed on a joint and several basis by all of the other Debtors (excluding
Debtors Four Star Holdings, LLC; Kentucky United Coal, LLC; Midwest Coal
Reserves of Kentucky, LLC; Peabody Asset Holdings, LLC; Peabody China,
LLC; Peabody Holdings (Gibraltar) Limited; Peabody IC Funding Corporation;
Peabody IC Holdings, LLC; Peabody Mongolia, LLC; PG Investment Six, LLC;
Seneca Property, LLC; Southwest Coal Holdings, LLC; Twentymile Equipment
Company, LLC; United Minerals Company, LLC) (collectively, the "**Pre-
Petition Guarantors**") under the terms of the applicable Existing Credit
Documents and, subject to the "Principal Property Cap" as defined in the Pre-
Petition Credit Agreement) where applicable, is secured by first-priority liens on
and security interests in the Senior Collateral (as defined in that certain First
Lien/Second Lien Intercreditor Agreement dated as of March 16, 2015 among the
Prepetition Agent, the Second Lien Notes Trustee, the Borrower and the Pre-
Petition Guarantors (as heretofore amended, supplemented or otherwise modified
in accordance with the terms thereof, the "**ICA**")) of the Borrower and the Pre-
Petition Guarantors  including, without limitation, Cash Collateral (such liens and
security interests in the Senior Collateral, collectively, the "**Pre-Petition Lender
Security Interests**"); *provided* that, for the avoidance of doubt, the Pre-Petition

Lender Security Interests do not extend to any "Excluded Assets" as such term is defined in the Existing Credit Documents; and

(ii)      the Borrower is indebted to the Second Lien Secured Parties in the aggregate principal amount of $1,000,000,000 (plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Existing Credit Documents), amounts, charges, costs, indemnities and other obligations incurred in connection therewith as provided in the Existing Second Lien Indenture Documents) in respect of the Second Lien Notes (the "**Second Lien Notes Debt**" and, together with the Pre-Petition First Lien Debt, the "**Stipulated Debt**"), which Second Lien Notes Debt is guaranteed on a joint and several basis by all of the Pre-Petition Guarantors under the terms of the applicable Existing Second Lien Indenture Documents and secured, subject to the "Principal Property Cap" and "Residual Second Lien Principal Property Cap Amount" (in each case, as defined in the Second Lien Notes Indenture) where applicable, by liens on and security interests in the Second Priority Collateral (as defined in the ICA and, together with the Senior Collateral, the "**Pre-Petition Collateral**") of the Debtors, including, without limitation, Cash Collateral (collectively, the "**Second Lien Notes Security Interests**" and, together with the Pre-Petition Lender Security Interest, the "**Stipulated Security Interests**"); *provided* that, for the avoidance of doubt, the Second Lien Notes Security Interests do not extend to any "Excluded Assets" as such term is defined in the Existing Second Lien Indenture Documents;

10

(b)      the ICA is binding and enforceable against the Borrower, the Pre-Petition

Guarantors and the Second Lien Secured Parties in accordance with its terms (as set forth in the

acknowledgement attached thereto);

(c)      the Borrower and the Pre-Petition Guarantors owe the Pre-Petition First

Lien Debt to the First Lien Secured Parties, without defense, counterclaim or offset of any kind,

plus accrued and unpaid interest thereon and fees, expenses (including any attorneys',

accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under

the Existing Credit Documents), amounts, charges, costs, indemnities and other obligations

incurred prior to the Petition Date in connection therewith, whether or not evidenced by any

note, agreement or instrument, whether or not contingent, whenever arising, accrued, accruing,

due, owing or chargeable as provided in the Existing Credit Documents;

(d)      the Pre-Petition First Lien Debt is (i) legal, valid, binding and enforceable

against the Borrower and the Pre-Petition Guarantors, each in accordance with its terms (other

than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and

(ii) not subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim,

offset, subordination, recharacterization, avoidance or other claim, cause of action or other

challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or

otherwise (except for any lien subordination contemplated in the ICA)

(e)      the Borrower and the Pre-Petition Guarantors owe the Second Lien Notes

Debt to the Second Lien Secured Parties, without defense, counterclaim or offset of any kind,

plus accrued and unpaid interest thereon and fees, expenses (including any attorneys',

accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under

the Existing Credit Documents), amounts, charges, costs, indemnities and other obligations

incurred prior to the Petition Date in connection therewith, whether or not evidenced by any note, agreement or instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable as provided in the Existing Second Lien Indenture Documents;

(f)    the Second Lien Notes Debt is (i) legal, valid, binding and enforceable against the Borrower and the Pre-Petition Guarantors, each in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and (ii) not subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise (except for any lien subordination contemplated in the ICA);

(g)    the Stipulated Security Interests are (i) legal, valid, binding, enforceable, non-avoidable and duly perfected and are (ii) not subject to any attachment, contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise (except for any lien subordination contemplated in the ICA) and, as of the Petition Date and before giving effect to this Interim Order, the Debtors are not aware of any other liens or security interests having priority over the Stipulated Security Interests, except, as the case may be, certain liens permitted under any of the Existing Secured Agreements;

(h)    none of the Pre-Petition Secured Parties controls the Debtors or Global Center or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are insiders of the Debtors by virtue of any of

12

the actions taken with respect to, in connection with, related to or arising from the Existing

Secured Agreements;

(i)      the liens granted to the DIP Agent on behalf of the DIP Lenders pursuant

to this Interim Order and the DIP Documents shall be perfected, valid, enforceable and non-

avoidable liens against the Loan Parties; and

(j)      except as set forth in subparagraph (l) below, the Debtors hereby

absolutely and unconditionally acknowledge and agree that no claims or causes of action exist

against, or with respect to, the Pre-Petition Secured Parties under any agreements by and among

the Debtors and any such party that is in existence as of the Petition Date;

(k)      except as set forth in subparagraph (l) below, effective as of the date of

entry of the Interim Order the Debtors hereby absolutely and unconditionally release and forever

discharge and acquit each of the Pre-Petition Secured Parties and their respective Representatives

(as defined below) (collectively, the "**Released Parties**") from any and all obligations and

liabilities to the Debtors (and their successors and assigns) and from any and all claims,

demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the

Petition Date (collectively, the "**Released Claims**") of any kind, nature or description, whether

known or unknown, foreseen or unforeseen, or liquidated or unliquidated, arising in law or

equity or upon contract or tort or under any state or federal law or otherwise, arising out of or

related to the Existing Secured Agreements, the obligations owing and the financial obligations

made thereunder, the DIP Facilities, the DIP Documents, the negotiation thereof and of the deal

reflected thereby, and the obligations owing and the financial obligations made thereunder, as

well as the Cases, and/or the negotiation, formulation or preparation of any agreements,

instruments or other documents related thereto, in each case that the Debtors at any time had,

13

now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order, whether such Released Claims are matured or unmatured or known or unknown or contingent, liquidated or unliquidated;

(l)     Notwithstanding anything to the contrary herein except and subject to (i) paragraph 13(i) of this Interim Order and (ii) paragraph 19 of this Interim Order with respect to whether any cash as of the Petition Date constitutes cash collateral (as that term is defined in section 363(a) of the Bankruptcy Code), nothing in this Interim Order prejudices the rights, claims or defenses of any party in interest (including the Specified Lenders') with respect to the CNTA Dispute (as defined in the DIP Credit Agreement) or whether any cash as of the Petition Date constitutes cash collateral (as that term is defined in section 363(a) of the Bankruptcy Code).  The Pre-Petition Secured Parties, the Debtors and all other parties in interest (including the Specified Lenders) reserve all rights, claims and defenses with respect to the CNTA Dispute and whether any cash as of the Petition Date constitutes cash collateral (as that term is defined in section 363(a) of the Bankruptcy Code).

5.     *Findings Regarding the DIP Financing*.

(a)     Good cause has been shown for the entry of this Interim Order.

(b)     The Debtor Loan Parties have an immediate need to obtain the DIP Financing, and the Debtors have an immediate need to continue to use Cash Collateral to permit, among other things, the orderly continuation of the operation of their businesses; to maintain business relationships with vendors, suppliers and customers; to make payroll; to make capital expenditures; to fulfill other bonding and regulatory requirements; to pay the Adequate Protection Obligations; and to satisfy other working capital and operational needs.  The access of

14

the Debtors to sufficient working capital and liquidity made available through the use of Cash

Collateral, incurrence of new indebtedness for borrowed money and other financial

accommodations is vital to the preservation and maintenance of the going concern value of the

Debtors and to a successful reorganization of the Debtors and to payment of the Adequate

Protection Obligations.

      (c)    The Debtor Loan Parties are unable to obtain financing on more favorable

terms from sources other than the DIP Lenders under the DIP Documents and are unable to

obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as

an administrative expense.  The Debtor Loan Parties also are unable to obtain secured credit

allowable solely under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code

without the Debtor Loan Parties granting to the DIP Agent and the DIP Lenders, subject to the

Fees Carve Out and the Bonding Carve Out as (and to the extent) provided for herein, the DIP

Liens (as defined below) and the Superpriority Claims (as defined below) and the Adequate

Protection Obligations and Adequate Protection Liens, in each case, under the terms and

conditions set forth in this Interim Order and in the DIP Documents.

      (d)    The terms of the DIP Financing as approved herein, the terms of the

Adequate Protection Obligations and Adequate Protection Liens granted to the Pre-Petition

Secured Parties, as applicable, and the terms on which the Debtors may continue to use Cash

Collateral pursuant to this Interim Order and the DIP Documents are fair and reasonable, reflect

the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and

constitute reasonably equivalent value and fair consideration.

      (e)    The First Lien Secured Parties have consented to the Debtor Loan Parties'

use of Cash Collateral and the other Pre-Petition Collateral on the terms and conditions provided

in this Interim Order, and the Debtor Loan Parties' entry into the DIP Documents in accordance

with and subject to the terms and conditions in this Interim Order and the DIP Documents.  For

the avoidance of doubt, this consent includes without limitation the granting of the DIP Liens on

a priming basis under section 364(d) of the Bankruptcy Code.

(f)     The Second Lien Secured Parties have consented or are deemed under the

ICA to have consented to the Loan Parties' use of Cash Collateral and the other Pre-Petition

Collateral, and the Loan Parties' entry into the DIP Documents in accordance with and subject to

the terms and conditions in this Interim Order and the DIP Documents.  For the avoidance of

doubt, this consent includes without limitation the granting of the DIP Liens on a priming basis

under section 364(d) of the Bankruptcy Code.

(g)     The DIP Financing as approved herein, as well as the terms of the

Adequate Protection Obligations and Adequate Protection Liens have been negotiated in good

faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, each of the Pre-

Petition Secured Parties, and each of their respective Representatives, and all of the Debtor Loan

Parties' obligations and indebtedness arising under, in respect of or in connection with the DIP

Financing and the DIP Documents, including without limitation, (i) all loans made to, and all

letters of credit issued for the account of, the Debtors pursuant to the superpriority secured

debtor-in-possession credit agreement substantially in the form attached as Exhibit B to the

Motion (the "**DIP Credit Agreement**"), and (ii) any "**Obligations**" (as defined in the DIP Credit

Agreement) of the Debtor Loan Parties permitted under the DIP Credit Agreement in each case

owing to the DIP Agent, any DIP Lender or any of their respective banking affiliates, in

accordance with the terms of the DIP Documents, any obligations, to the extent provided for in

the DIP Documents, to indemnify the DIP Agent or the DIP Lenders and to pay any fees,

16

expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are

chargeable or reimbursable under the Existing Credit Documents), amounts, charges, costs,

indemnities and other obligations that are chargeable or reimbursable under the this Interim

Order, the Final Order, or the DIP Documents), charges, indemnities and other obligations

incurred in connection therewith (all of the foregoing in clauses (i) and (ii), collectively, the

"**DIP Obligations**",  it being understood that the fees and expenses payable under paragraphs

27(a) and 27(b) shall not constitute DIP Obligations), shall be deemed to have been extended by

the DIP Agent and the DIP Lenders and their affiliates in good faith, as that term is used in

section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by

section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders (and the

successors and assigns of each) shall be entitled to the full protection of section 364(e) of the

Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed

or modified, on appeal or otherwise.

    (h)  Each of the Pre-Petition Secured Parties has acted in good faith regarding

the DIP Financing and the Debtors' continued use of the Pre-Petition Collateral (including the

Cash Collateral) to fund the administration of the Debtors' estates and continued operation of

their businesses (including payment of the Adequate Protection Obligations and the granting of

the Adequate Protection Liens), in accordance with the terms hereof.  The Pre-Petition Secured

Parties are entitled to the adequate protection provided in this Interim Order as and to the extent

set forth herein pursuant to §§ 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the

Motion and on the record presented to the Court, the terms of the proposed adequate protection

arrangements and of the use of the Pre-Petition Collateral (including the Cash Collateral) are fair

and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute

reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided* that

nothing in this Interim Order or the other DIP Documents shall (x) be construed as the

affirmative consent by any of the Pre-Petition Secured Parties for the use of Cash Collateral

other than on the terms set forth in this Interim Order and in the context of the DIP Financing

authorized by this Interim Order, (y) be construed as a consent by any party to the terms of any

other financing or any other lien encumbering the Pre-Petition Collateral (whether senior or

junior) or (z) prejudice, limit or otherwise impair the rights of any of the Pre-Petition Secured

Parties, subject to any applicable provisions of the ICA, to seek new, different or additional

adequate protection or assert the interests of any of the Pre-Petition Secured Parties and nothing

herein prejudices, limits, or otherwise impairs the rights of any party in interest to oppose such

relief.

(i)    The Debtors have requested entry of this Interim Order pursuant to

Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief set forth in this Interim

Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the

DIP Financing and the use of Pre-Petition Collateral, including Cash Collateral, in accordance

with this Interim Order and the DIP Documents are therefore in the best interests of the Debtors'

estates.

6.    *Authorization of the DIP Financing and the DIP Documents*.

(a)    The Debtor Loan Parties are hereby authorized to, and authorized to cause

Global Center to, enter into and perform all obligations under the DIP Documents.  The

Borrower is hereby authorized to borrow money and obtain letters of credit pursuant to the DIP

Credit Agreements, and the Debtor Guarantors are hereby authorized to, and to cause Global

Center to, guaranty such borrowings and the Borrower's obligations with respect to such letters

18

of credit, up to an aggregate principal or face amount of (i) $200,000,000 under the DIP Term

Facility, (ii) $100,000,000 under the DIP L/C Facility, and (iii) $200,000,000 of Bonding

Facility Letters of Credit (in each case plus accrued and unpaid interest thereon and fees,

expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are

chargeable or reimbursable under the Existing Credit Documents), amounts, charges, costs,

indemnities and other obligations that are chargeable or reimbursable under the DIP Documents),

charges, indemnities and other obligations provided for in the DIP Documents and subject to any

limitations of borrowings under the DIP Documents) in accordance with the terms and

conditions of this Interim Order and the DIP Documents, which borrowings shall be used for all

purposes permitted under the DIP Documents, including, without limitation, to provide working

capital for the Debtors, to cash collateralize letters of credit to be issued by one or more banks

for the account of the Debtor Loan Parties, and additional bonding capacity and to pay interest,

fees and expenses in accordance with this Interim Order and the DIP Documents.

(b)      In furtherance of the foregoing and without further approval of this Court,

each Debtor Loan Party is authorized and directed to perform, and is authorized and directed to

cause Global Center to perform, all acts, to make, execute and deliver all instruments and

documents (including, without limitation, the execution or recordation of security agreements,

mortgages and financing statements), and to pay all fees, that may be reasonably required or

necessary for the Debtor Loan Parties' performance of their obligations under the DIP Financing,

including, as applicable and without limitation:

(i)      the execution, delivery and performance of the DIP Credit

Agreement and any exhibits attached thereto, all related or ancillary documents and agreements,

including all security and pledge agreements, and any mortgages contemplated thereby

19

(collectively, and together with the letter agreements referred to in clause (iii) below, in each

case, as may be amended, supplemented or otherwise modified pursuant to their respective

terms, the "**DIP Documents**"),

        (ii)     the execution and delivery of, and performance under, one or more

amendments, waivers, consents or other modifications in each case in accordance with the DIP

Documents and subject to this Order in such form as the Debtor Loan Parties, the DIP Agent and

the Required Lenders, the Supermajority Required Lenders or each DIP Lender, as applicable,

may agree, it being understood that no further approval of the Court shall be required for

authorizations, amendments, waivers, consents or other modifications to and under the DIP

Documents (and any fees, paid-in-kind fees and other expenses (including any attorneys',

accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and

other obligations paid in connection therewith), so long as they do not shorten the maturity of the

extensions of credit thereunder or increase the commitments, modify the rate or timing of

payments of interest or the letter of credit fees payable thereunder;

        (iii)     the non-refundable payment to the DIP Agent, the Lead Arranger

and/or the DIP Lenders, as the case may be, of all fees (which fees shall be, and shall be deemed

to have been, approved upon entry of this Interim Order and upon payment thereof, shall not be

subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset,

subordination, recharacterization, avoidance or other claim, cause of action or other challenge of

any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and

any amounts due (or that may become due) in respect of the indemnification obligations referred

to in the DIP Credit Agreements (and in the separate letter agreements between any and all Loan

Parties, on one hand, and the DIP Agent and/or DIP Lenders, on the other, in connection with the

DIP Financing) and reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in the DIP Documents (and the reasonable fees and expenses of Willkie Farr & Gallagher LLP, as counsel for certain of the DIP Lenders, incurred on or prior to the date hereof) and the professionals to the Specified Lenders as provided in this order without the need to file retention motions or fee applications, or to provi2de notice to any party, and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and unavoidable obligations of the Loan Parties, enforceable against the Loan Parties in accordance with the terms of the DIP Documents and this Interim Order.  No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, any Avoidance Action (as defined below) or under any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim or counterclaim.

7.    *DIP Superpriority Claims*.

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtor Loan Parties (without the need to file any proof of claim) with priority over any and all administrative expenses, diminution in value claims (including all Adequate Protection Obligations) and all other claims against the

Debtor Loan Parties, now existing or hereafter arising, of any kind whatsoever, including,

without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b)

of the Bankruptcy Code, and over any and all administrative expenses or other claims arising

under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c) (subject to entry of the Final Order

and without prejudice to paragraph 27(c) of this Interim Order), 507(a), 507(b), 726, 1113 or

1114 of the Bankruptcy Code (collectively the "**DIP Superpriority Claims**"), whether or not

such expenses or claims may become secured by a judgment lien or other non-consensual lien,

levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the

Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the

Bankruptcy Code and shall be payable from and have recourse to all pre- and post-petition

property of the Debtor Loan Parties, including, without limitation, any and all cash and cash

collateral of the Debtor Loan Parties (whether maintained with the DIP Agent or otherwise) and

any investment of such cash and cash collateral, inventory, accounts receivable, other rights to

payment whether arising before or after the Petition Date (including, without limitation, post-

petition intercompany claims against the Debtor Loan Parties and their non-Debtor affiliates),

contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents,

instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts,

patents, copyrights, trademarks, trade names, rights under license agreements, other intellectual

property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents, and

profits of all the foregoing, whether arising under section 552(b) of the Bankruptcy Code or

otherwise, other than the Debtor Loan Parties' claims and causes of action pursuant to sections

502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code (collectively, "**Avoidance**

**Actions**"), but, subject only to and effective upon entry of the Final Order, the DIP Superpriority

Claims shall have recourse to any proceeds or other property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**"), (i) subject only to the Fees Carve Out and the Bonding Carve Out to the extent specifically provided for herein and (ii) solely with respect to the Servicer, the Sub-Servicers and each Subsidiary Originator (each as defined in the A/R Securitization Order and, collectively, the "**Securitization Debtors**"), *pari passu* with the superpriority claim granted under the interim order (the "**A/R Securitization Order**") authorizing certain Debtors to continue their securitization facility [related to Docket No. 38] ("**A/R Securitization Facility Superpriority Claim**"). Any payments, distributions or other proceeds received on account of such DIP Superpriority Claims shall be promptly delivered to the DIP Agent to be applied or further distributed by the DIP Agent on account of the DIP Obligations in such order as is specified in the DIP Documents. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(b)     For purposes hereof, the "**Fees Carve-Out**" is an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $25,000 (without regard to the notice set forth in (iii) below); and (iii) allowed and unpaid claims for unpaid fees, costs, and expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors or the official committee of unsecured creditors in the Cases (the "**Creditors' Committee**"), if any, whose retention is approved by the

23

Court pursuant to sections 327 and 1103 of the Bankruptcy Code (collectively, the "**Professional Persons**"), that are incurred (A) at any time before delivery by the DIP Agent of a Fees Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Fees Carve-Out Trigger Notice (the "**Pre-Trigger Date Fees**"), which shall be paid to the extent allowed by the Court and (B) after the occurrence (the "**Trigger Date**") and during the continuance of an Event of Default (as defined in the DIP Credit Agreement) and delivery of notice (the "**Fees Carve-Out Trigger Notice**") thereof (which notice may be by email) to the Debtors, the Debtors' counsel, the U.S. Trustee, and lead counsel for the Creditors' Committee, if any, in an aggregate amount not to exceed $7.5 million (the amount set forth in this clause (iii)(B) being the "**Post-EoD Fees Carve-Out Amount**"); provided that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (iii)(A) or (iii)(B) above, on any grounds.

(c)    Notwithstanding the foregoing, the Fees Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP Lenders, the Administrative Agent or the Pre-Petition Secured Parties (whether in such capacity or otherwise) or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Documents or the Existing Secured Agreements, including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP Lenders, the DIP Agent; (c) attempts to prevent, hinder or otherwise delay any of the DIP

24

Lenders' or the DIP Agent's assertion, enforcement or realization upon any Collateral in accordance with the DIP Documents and the Final Order other than to seek a determination that an Event of Default has not occurred or is not continuing; or (d) paying any amount on account of any claims arising before the commencement of the Cases unless such payments are approved by an order of the Court.

(d)     For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Documents, the Fees Carve-Out shall be senior to all liens and claims securing the DIP Documents (except with respect to claims of the Bonding Facility L/C Issuer to amounts held in the Bonding Facility Letter of Credit Account and with respect to the claims of the L/C Facility L/C Issuer to amounts held in the L/C Facility Letter of Credit Account (as such terms are defined in the DIP Credit Agreement)), the Adequate Protection Liens, the Adequate Protection Obligations, and any and all other liens or claims securing the DIP Facilities.

(e)     For purposes hereof, the "**Bonding Carve Out**" is a carve-out from the Collateral entitling certain governmental authorities that are or would be beneficiaries of surety bonds, letters of credit or other financial assurances (each, a "**Bonding Beneficiary**") making any demand, request or requirement for any surety bond, letter of credit or other financial assurance pursuant to applicable law, in each case, to the extent such surety bond, letter of credit or other financial assurance is to satisfy or replace an amount for which a Debtor is self-bonded (a "**Bonding Request**") to receive a claim (a "**Bonding Superpriority Claim**") having priority over any or all administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code (including, without limitation, the Fees Carve Out), except with respect to the claims of the Bonding Facility L/C Issuer to amounts held in the Bonding Facility Letter of Credit Account and with respect to the claims of the L/C Facility L/C Issuer to amounts held in the L/C Facility

25

Letter of Credit Account, to satisfy such Bonding Request.  The aggregate face amount of all
Bonding Facility Letters of Credit, together with the aggregate amount of all Bonding
Superpriority Claims, shall not exceed the Bonding Accommodation Cap.  The Debtors shall be
authorized to terminate the Bonding Carve Out by issuing and delivering a notice in writing to
the DIP Agent (the "**Bonding Carve Out Termination Notice**"), with a copy of any such notice
delivered to counsel to each of the Pre-Petition Agent and the Second Lien Notes Trustee.  Upon
issuance and delivery by the Debtors of the Bonding Carve Out Termination Notice to the DIP
Agent, immediately, automatically and without further action, the Bonding Carve Out will
terminate and be permanently reduced to $0 for all purposes hereunder, and the Bonding
Beneficiaries shall thereafter cease to have any rights in respect of the Bonding Carve Out.
Except as set forth in this paragraph 7(e), the Debtors may not terminate the Bonding Carve Out.

        8.    *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon
the date of entry of this Interim Order and without the necessity of the execution, recordation
of filings by the Debtor Loan Parties of mortgages, security agreements, control agreements,
pledge agreements, financing statements or other similar documents, or the possession or
control by the DIP Agent of, or over, any Collateral, the following security interests and liens
are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Lenders (all
property identified in clauses 8(a), 8(b), 8(c), and 8(d) below being collectively referred to as
the "**Collateral**"), subject only to, other than in the case of the claims of the Bonding Facility
L/C Issuer to amounts held in the Bonding Facility Letter of Credit Account and with respect
to the claims of the L/C Facility L/C Issuer to amounts held in the L/C Facility Letter of Credit
Account, and the payment of the Fees Carve-Out and the Bonding Carve-Out (all such liens

26

and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP

Lenders, pursuant to this Interim Order and the DIP Documents, the "**DIP Liens**"):

(a)    First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of

the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority

senior security interest in and lien upon all tangible and intangible pre- and post-petition property

of the Debtor Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on

or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively,

"**Unencumbered Property**"), including, without limitation, any and all unencumbered cash of

the Debtor Loan Parties (whether maintained with the DIP Agent or otherwise) and any

investment of such cash and cash collateral, inventory, accounts receivable, other rights to

payment whether arising before or after the Petition Date (including, without limitation, post-

petition intercompany claims against the Debtor Loan Parties and their non-Debtor affiliates),

contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents,

instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts,

patents, copyrights, trademarks, trade names, rights under license agreements, other intellectual

property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents, and

profits of all the foregoing, whether arising under section 552(b) of the Bankruptcy Code or

otherwise, in each case other than (i) the Excluded Assets, but including any proceeds of

Excluded Assets and (ii) Avoidance Actions, but, subject only to and effective upon entry of the

Final Order, including any Avoidance Proceeds;

(b)    Liens Priming Prepetition Secured Parties' Liens.  Pursuant to section

364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first

priority senior priming security interest in and lien upon all pre- and post-petition property of

Loan Parties (*provided* that with respect to the property of Peabody Holdings (Gibraltar) Limited, "Collateral" shall only include 65% of the equity interests in non-Debtor Peabody Investments (Gibraltar) Limited) (including, without limitation, any and all cash and cash collateral of the Debtor Loan Parties (whether maintained with the DIP Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, post-petition intercompany claims against the Debtor Loan Parties and their non-Debtor affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements, other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents, and profits of all the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, in each case other than (i) the Excluded Assets, but including any proceeds of Excluded Assets and (ii) the Avoidance Actions, but, subject only to and effective upon entry of the Final Order, including any Avoidance Proceeds, whether now existing or hereafter acquired, that is subject to the existing liens presently securing the Stipulated Debt (including in respect of issued but undrawn letters of credit).  Such security interests and liens shall be senior in all respects to the interests in such property of the Pre-Petition Secured Parties arising from current and future liens of the Pre-Petition Secured Parties (including, without limitation, the Adequate Protection Liens) (collectively, the "**Primed Liens**") and to any liens and security interests to which such Primed Liens are senior or *pari passu*;

(c)    <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in

and lien upon all pre- and post-petition property of the Debtor Loan Parties, including, without limitation, any and all cash and cash collateral of the Debtor Loan Parties (whether maintained with the DIP Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, post-petition intercompany claims against the Debtor Loan Parties and their non-Debtor affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements, other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents, and profits of all the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, in each case other than (i) the Excluded Assets, but including any proceeds of Excluded Assets and (ii) the Avoidance Actions, but, subject only to and effective upon entry of the Final Order, including any Avoidance Proceeds, that is subject to valid, perfected and unavoidable liens permitted under the Existing Secured Agreements to the extent such permitted liens are senior to the Pre-Petition Lender Security Interests and were in existence immediately prior to the Petition Date (other than, for the avoidance of doubt, the Primed Liens), or to any such valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code;

(d)      Liens Senior to Certain Other Liens.  The DIP Liens shall not be subject or subordinate to or made *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Debtor Loan Parties and their estates under section 551 of the Bankruptcy Code.  Unless otherwise provided for in the DIP Documents, the DIP Liens and the Adequate

29

Protection Liens shall not be subject to or subordinate to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board, or court for any liability of the Debtor Loan Parties;

(e)     Relative Priority of DIP Liens.  With respect to amounts held in the Bonding Facility Letter of Credit Account, the DIP Liens securing the claims of the Bonding Facility L/C Issuer shall be senior in all respects to (i) the Fees Carve Out, (ii) the Bonding Carve Out and (iii) the DIP Liens securing any other DIP Obligations. With respect to amounts held in the L/C Facility Letter of Credit Account, the DIP Liens securing the claims of the L/C Facility  L/C Issuer shall be senior in all respects to (i) the Fees Carve Out, (ii) the Bonding Carve Out and (iii) the DIP Liens securing any other DIP Obligations.

9.     *Protection of DIP Lenders' Rights.*

(a)     So long as there are any DIP Obligations outstanding (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been indefeasibly paid in full and no letters of credit are outstanding), or the DIP Lenders have any Commitments (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, the Pre-Petition Secured Parties shall (i) have no right to and shall take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Existing Secured Agreements, or this Interim Order, or otherwise seek to exercise or exercise any enforcement rights or remedies against any Collateral, including in connection with the Adequate Protection Liens except to the extent authorized by an order of this Court, (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, Collateral, to the extent such transfer, disposition, sale or release is authorized under the DIP Documents, (iii) not file

any further financing statements, trademark filings, copyright filings, mortgages, notices of lien

or similar instruments, or otherwise take any action to perfect their security interests in the

Collateral unless, solely as to this clause (iii), the DIP Agent or DIP Lenders file financing

statements or other documents to perfect the liens granted pursuant to this Interim Order, or as

may be required by applicable state law to continue the perfection of valid and unavoidable liens

or security interests as of the Petition Date and (iv) deliver or cause to be delivered, at the

Debtors' cost and expense, any termination statements, releases and/or assignments in favor of

the DIP Agent, the DIP Lenders or other documents necessary to effectuate and/or evidence the

release, termination and/or assignment of liens on any portion of the Collateral subject to any

sale or disposition.

        (b)      The automatic stay provisions of section 362 of the Bankruptcy Code are

vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to

enforce all of their rights under the DIP Documents (including any cash dominion as provided

for in the DIP Documents) and to exercise all rights and remedies under the DIP Documents;

*provided*, that any such rights and remedies that are exercisable only upon an Event of Default

(other than the giving of any notice, including the Fees Carve Out Trigger Notice) shall require

the giving of five Business Days' prior written notice via email to the Debtors and their lead

counsel, with copies to the U.S. Trustee and counsel to the Creditors' Committee (which period

shall run concurrently with any notice period provided under the DIP Documents) (the "**Default**

**Notice Period**").  Upon receipt, the Debtors shall promptly distribute such notice to the U.S.

Trustee and counsel to (i) the Pre-Petition Agent, (ii) the Second Lien Notes Trustee, (iii)

counsel to the Specified Lenders (iv) the Administrator for the A/R Securitization Facility and

(v) counsel to the Creditors' Committee.  In any hearing regarding any exercise of rights or

remedies under the DIP Documents (which hearing must take place within the Default Notice Period), the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors and the Pre-Petition Secured Parties hereby waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Interim Order or the DIP Documents.  In no event shall the DIP Agent, the DIP Lenders or the Pre-Petition Secured Parties (solely in the case of the Pre-Petition Secured Parties, subject to entry of the Final Order) be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.  Further, subject only to and effective upon entry of the Final Order, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Pre-Petition Secured Parties.

(c)    No rights, protections or remedies of the DIP Agent or the DIP Lenders granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by (i) any actual or purported withdrawal of the consent of any party to the Debtors' authority to continue to use Cash Collateral, (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

(d)    Neither the DIP Agent nor the DIP Lenders (each in their capacities as such) shall be subject to any obligations under the ICA.  None of the DIP Credit Agreement, the DIP Documents, or the DIP Obligations shall be subject to the terms of the ICA.

32

10.     *Limitation on Charging Expenses Against Collateral.*  Except to the extent of the Fees Carve-Out, and effective upon entry of this Interim Order with respect to the Collateral of the DIP Agent and DIP Lenders, and subject only to and effective upon entry of the Final Order with respect to the Pre-Petition Collateral and Collateral of the Pre-Petition Secured Parties and without prejudice to paragraph 27(c) of this Interim Order, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral or the Pre-Petition Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the express prior written consent of the DIP Agent and the Pre-Petition Agent as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, or any of the Pre-Petition Secured Parties.

11.     *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent on behalf of itself and the DIP Lenders to the Pre-Petition Agent on behalf of itself and the Pre-Petition Lenders, subject to the second proviso in paragraph 13(d) of this Interim Order, in each case, pursuant to the provisions of the Interim Order, this Final Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly (and with respect to the Pre-Petition Secured Parties, subject to entry of the Final Order and without prejudice to paragraph 27(c) of this Interim Order), sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code or the equitable doctrine of marshaling.

33

12.     *Use of Cash Collateral*.

(a)      The Debtor Loan Parties are hereby authorized, subject to the terms and conditions of this Interim Order, to use all Cash Collateral of the Pre-Petition Secured Parties; *provided*, that the Pre-Petition Secured Parties are granted adequate protection as hereinafter set forth including, without limitation, in the form of the Adequate Protection Obligations and Adequate Protection Liens, except on the terms and conditions of this Interim Order, the Debtors shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.  Each of the following events shall be deemed a "**Cash Collateral Termination Event**"):

(i)      confirmation of a plan of reorganization in any of the Cases other than a plan of reorganization that is reasonably acceptable to the Required Pre-Petition Lenders (as defined below) (any such plan, an "**Acceptable Plan**") or any of the Debtors or any of their respective direct or indirect affiliates or subsidiaries shall, in the Court, file, propose, support, or fail to contest in good faith the filing or confirmation of a plan of reorganization that is not an Acceptable Plan; *provided* that for the avoidance of doubt it shall not constitute a Cash Collateral Termination Event if, without the support of any of the Debtors, any party other than the Debtors seeks to or does confirm such a plan of reorganization;

(ii)      the earlier of (A) the Maturity Date (as defined in the DIP Credit Agreement), (B) an acceleration of the Maturity Date, or (C) failure to meet any Adequate Protection Milestone (as defined below);

(iii)      a sale of all or substantially all of the assets of the Debtors or Global Center; or

34

(iv)    other than with respect to the matters described in paragraph 4(l), the Debtors or any of their respective direct or indirect affiliates or subsidiaries commences any action, including the filing of any pleading, against any of the Pre-Petition Secured Parties with respect to the Stipulated Debt or the Stipulated Security Interests.

(b)    Upon the occurrence of a Cash Collateral Termination Event, the Pre-Petition Agent may (or at the direction of the Required Pre-Petition Lenders, will)  upon five business days' written notice to the Debtors, commence a proceeding in the Court to determine the Debtors' right to any further use of the Cash Collateral, and the Debtors' authorization to use the Cash Collateral shall be deemed automatically terminated on the fifth business day following commencement of such proceeding unless the Court orders otherwise by such time, and no further consent to the use of Cash Collateral shall be implied by any other action, inaction or acquiescence by any of the First Lien Secured Parties.

13.    *Adequate Protection of First Lien Secured Parties*.  The First Lien Secured Parties are entitled, pursuant to sections 361, 362, 363(e) and 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their respective interests in the Pre-Petition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of their respective interests in the Pre-Petition Collateral (including Cash Collateral) as provided in the Bankruptcy Code, the priming of the Pre-Petition Agent's security interests and liens in the Pre-Petition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Interim Order and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Senior Lender Adequate Protection Claim**").  As adequate protection, the First Lien Secured Parties are hereby granted the following (collectively, the "**Senior Lender Adequate Protection Obligations**"):

35

(a)    <u>Pre-Petition Secured Lender Adequate Protection Liens</u>.  The Pre-Petition Agent (for itself and for the benefit of the Pre-Petition Lenders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Senior Lender Adequate Protection Claim, a security interest in and lien upon all of the Collateral, subject and subordinate only to (i) DIP Liens and any liens on the Collateral to which such liens so granted to the DIP Agent are junior, (ii) the Fees Carve Out, and (iii)  the Bonding Carve Out (the "**Senior Lender Adequate Protection Liens**").  For the avoidance of doubt, other than with respect to the Senior Lender Adequate Protection Liens, no liens are granted under this Interim Order for the benefit of the First Lien Secured Parties on any cash held by Global Center or on the equity interests of Global Center.

(b)    <u>Continuation of Liens</u>.  To the extent replacement liens are not available, the liens granted to the First Lien Secured Parties under the terms of the Pre-Petition Credit Agreement shall continue in full force and effect and shall continue to secure the obligations of the Debtors under the Pre-Petition Credit Agreement.

(c)    <u>Pre-Petition Secured Lender Section 507(b) Claim</u>.  The Pre-Petition Agent, on behalf of itself and the Pre-Petition Lenders, is hereby granted, subject to the Fees Carve Out and the Bonding Carve Out, a superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Senior Lender Adequate Protection Claim, immediately junior to (i) the DIP Superpriority Claims held by the DIP Agent and the DIP Lenders and (ii) solely with respect to the Securitization Debtors, the A/R Securitization Facility Superpriority Claim, and senior to all other superpriority claims or administrative expenses (other than the Fees Carve Out and the Bonding Carve Out) and shall

36

have recourse to and be payable from all of the Collateral including, without limitation, subject

to entry of the Final Order, Avoidance Proceeds (the "**Senior Lender 507(b) Claim**"); *provided*

that, unless otherwise expressly agreed to in writing by the DIP Agent, the First Lien Secured

Parties shall not receive or retain any payments, property or other amounts in respect of the

Senior Lender 507(b) Claim or under the Existing Credit Documents unless and until the DIP

Obligations and any claim having a priority superior to or *pari passu* with the DIP Superpriority

Claims have indefeasibly been paid in cash in full in accordance with the DIP Documents and

the Commitments have been terminated (the "**Senior Lender 507(b) Adequate Protection**

**Claim**").

        (d)    <u>Pre-Petition Secured Lender Cash Payments</u>.  The Pre-Petition Agent

(or, if applicable, an issuing bank for a letter of credit or a swap counterparty) shall receive from

the Debtors for the benefit of itself and the First Lien Secured Parties, as applicable, (i) within

three Business Days following entry of this Interim Order, or, if earlier, upon the closing of the

DIP Term Facility, immediate cash payment of all accrued and unpaid interest on the Pre-

Petition First Lien Debt and letter of credit fees at the non-default rates provided for in the

Existing Credit Documents and all other accrued and unpaid fees and expenses (including, but

not limited to, fees owed to the Pre-Petition Agent) owing to the Pre-Petition Agent under the

Existing Credit Documents incurred prior to the Petition Date and (ii) monthly cash payment,

paid on the first business day of the month, in an amount equal to the interest on the Pre-Petition

First Lien Debt, letter of credit fees and other fees at the non-default rates provided for in the

Existing Credit Documents (it being understood and agreed that (i) with respect to Loans (as

defined in the Pre-Petition Credit Agreement), such interest will be calculated in accordance with

section 2.08(a) of the Pre-Petition Credit Agreement as if such Loans were Eurocurrency Rate

Loans (as defined in the Pre-Petition Credit Agreement) and the Borrower were able to elect or

continue Interest Periods (as defined in the Pre-Petition Credit Agreement) with respect to such

Loans in accordance with the Pre-Petition Credit Agreement without the need for any consent or

approval from the Pre-Petition Agent or any Pre-Petition Lender, (ii) with respect to each Letter

of Credit (as defined in the Pre-Petition Credit Agreement), such fees shall be calculated in

accordance with sections 2.03(i) and (j) of the Pre-Petition Credit Agreement and (iii) with

respect to each Swap Contract, such interest shall be calculated in accordance with clause (i)

above as if such Swap Contract were a Revolving Credit Loan (as defined in the Pre-Petition

Credit Agreement) with a three-month Interest Period); *provided* that the First Lien Secured

Parties shall reserve the right to assert claims for the payment of additional interest calculated at

any other applicable rate of interest (including, without limitation, default rates), or on any other

basis, provided for in the Existing Credit Documents and to the extent permitted by the

Bankruptcy Code; *provided further* that if and only if the Court determines that the First Lien

Secured Parties were undersecured as of the Petition Date under section 506(b) of the

Bankruptcy Code, then the Creditors' Committee (as defined below), the Debtors, or any other

party in interest (including the Specified Lenders) may assert that any payments made in respect

of this paragraph 13(d) of this Interim Order or the Final Order in respect of the Pre-Petition

Credit Agreement constitute and may be recharacterized as principal repayments on account of

the Pre-Petition First Lien Debt or as part of the Pre-Petition Lenders' secured claim.  All

defenses to any effort to recharacterize such payments are expressly reserved.

        (e)    <u>Liquidity Preservation Period</u>.  During a Liquidity Preservation Period (as

defined in the DIP Credit Agreement), within five business days after the beginning of such

Liquidity Preservation Period, the Debtors shall (i) file with the Bankruptcy Court (x) a

stipulation consented to by the Pre-Petition Agent (with the consent of the Required Pre-Petition

Lenders) or (y) a motion seeking entry of an order, in either case authorizing the Debtors to cease

making the adequate protection payments of interest described in paragraph 13(d) of this Interim

Order and, once entered, the corresponding provision of the Final Order, until such time as such

Liquidity Preservation Period has ended and (ii) use commercially reasonable efforts to obtain

entry by the Bankruptcy Court of such stipulation or order, as applicable, as soon as reasonably

practical and in any event within 30 days of the beginning of such Liquidity Preservation Period.

       (f)    <u>Pre-Petition Secured Lender Fees and Expenses</u>.  The Pre-Petition Agent

shall receive from the Debtors for the benefit of itself and the First Lien Secured Parties, as

applicable, (i) within three Business Days following entry of this Interim Order, or, if earlier,

upon the closing of the DIP Term Facility, all accrued and unpaid fees and disbursements

(including, but not limited to, fees owed to the Pre-Petition Agent) owing to the Pre-Petition

Agent under the Existing Credit Documents and incurred prior to the Petition Date and

(ii) current cash payments of all reasonable fees and expenses payable to the Pre-Petition Agent

under the Existing Credit Documents, including, but not limited to, the reasonable and

documented fees and disbursements of one lead counsel, one local restructuring counsel,

additional local counsel for other jurisdictions as needed and consistent with past practice and

two financial advisors to represent the interests of the First Lien Secured Parties, in each case

whether incurred prior to or subsequent to the Petition Date.

       (g)    <u>Pre-Petition Secured Lender Adequate Protection Milestones</u>.  The Pre-

Petition Agent, on behalf of itself and the Pre-Petition Lenders, is hereby entitled to performance

of those certain case milestones set forth in clauses (b), (c), (d), (f), and (g) of section 6.19 of the

DIP Credit Agreement as in effect as of the date of entry of this Interim Order (the "**Adequate Protection Milestones**").

        (h)    <u>Pre-Petition Secured Lender Reporting</u>.  The Pre-Petition Agent, on behalf of itself and the Pre-Petition Lenders, is hereby entitled to receive all financial reporting and other reports and notices delivered by the Borrower to the DIP Agent or any DIP Lender in connection with the DIP Facilities.

        (i)    <u>Principal Property Cap</u>.   After the Petition Date, the "Principal Property Cap" (as defined in the Pre-Petition Credit Agreement or the Second Lien Notes Indenture) shall be neither increased nor reduced; *provided* that except as set forth in this paragraph 13(i), the Debtors, the DIP Agent, the DIP Lenders (including the Specified Lenders), the First Lien Secured Parties and all other parties in interest reserve their rights with respect to the CNTA Dispute, including the interpretation and calculation of the "Principal Property Cap."

        14.    *Adequate Protection of Second Lien Secured Parties*.  The Second Lien Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their respective interests in the Pre-Petition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of their respective interests in the Pre-Petition Collateral as provided in the Bankruptcy Code, the priming of the Second Lien Noteholders' security interests and liens in the Pre-Petition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Interim Order and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Noteholder Adequate Protection Claim**" and, together with the Senior Lender Adequate Protection Claim, the "**Adequate Protection Claims**").  As adequate protection, the Second Lien Secured Parties are hereby granted the following (collectively, the

"**Noteholder Adequate Protection Obligations**" and, together with the Senior Lender Adequate Protection Obligations, the "**Adequate Protection Obligations**"):

(a)        <u>Second Lien Noteholder Adequate Protection Liens</u>.  The Second Lien Notes Trustee (for itself and for the benefit of the Second Lien Noteholders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Noteholder Adequate Protection Claim, a security interest in and lien upon all of the Collateral, subject and subordinate only to (i) the DIP Liens, and any liens on the Collateral to which such liens so granted to the DIP Agent are junior; (ii) the Senior Lender Adequate Protection Liens, (iii) the Fees Carve Out, (iv) the Bonding Carve Out and (v) the Pre-Petition Lender Security Interests (the "**Noteholder Adequate Protection Liens**" and together with the Senior Lender Adequate Protection Liens, the "**Adequate Protection Liens**").  For the avoidance of doubt, other than with respect to the Noteholder Adequate Protection Liens, no liens are granted under this Interim Order for the benefit of the Second Lien Secured Parties on any cash held by Global Center or on the equity interests of Global Center.

(b)        <u>Continuation of Liens</u>.  To the extent replacement liens are not available, the liens granted to the Second Lien Notes Trustee and the Second Lien Noteholders under the terms of the Existing Second Lien Indenture Documents shall continue in full force and effect and shall continue to secure the Obligations of the Debtors under the Existing Second Lien Indenture Documents, and such liens held by the Second Lien Notes Trustee shall be junior in priority to and subject to all liens granted hereunder and shall be governed by the Existing Secured Agreements, including, without limitation, the ICA, as set forth in Paragraph 22 hereof.

41

(c)      Second Lien Noteholder Section 507(b) Claim.  The Second Lien Notes Trustee, on behalf of itself and the Second Lien Noteholders, is hereby granted, subject to the Fees Carve Out, the Bonding Carve Out, the DIP Superpriority Claims and the Senior Lender 507(b) Adequate Protection Claims, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code, immediately junior to the Senior Lender 507(b) Adequate Protection Claims and senior to all other superpriority claims (other than the Fee Carve Out, Bonding Carve Out, the DIP Superpriority Claims, A/R Securitization Facility Superpriority Claim (solely with respect to the Securitization Debtors) and the Senior Lender 507(b) Adequate Protection Claims); *provided* that (i) notwithstanding section 1129(a)(9)(A) of the Bankruptcy Code, a plan of reorganization in any of the Cases may provide for the satisfaction of any Noteholder 507(b) Adequate Protection Claims with consideration other than cash to the extent that Required Pre-Petition Lenders agree to payment of any Senior Lender 507(b) Adequate Protection Claims in consideration other than cash pursuant to such plan of reorganization, (ii) that the mix of non-cash consideration used to satisfy any Noteholder 507(b) Adequate Protection Claims shall be the same as the mix of non-cash consideration used to satisfy any Senior Lender 507(b) Adequate Protection Claims unless the Required Second Lien Noteholders consent to different treatment by accepting the proposed plan of reorganization and (iii) unless otherwise expressly agreed to in writing by the DIP Agent, the Second Lien Secured Parties shall not receive or retain any payments, property or other amounts in respect of the superpriority claims under section 507(b) of the Bankruptcy Code granted hereunder or under the Existing Credit Documents unless and until the DIP Obligations have indefeasibly been paid in cash in full in accordance with the DIP Documents (the

42

"**Noteholder 507(b) Adequate Protection Claim**" and, together with the Senior Lender

507(b) Adequate Protection Claim, the "**507(b) Claims**").

15.     *Reservation of Rights of Pre-Petition Secured Parties*.  Under the circumstances

and given that the above-described adequate protection is consistent with the Bankruptcy Code,

including, without limitation, section 506(b) thereof, the Court finds that the adequate

protection provided herein, including, without limitation, in the form of the Adequate

Protection Obligations and Adequate Protection Liens is reasonable and sufficient to protect

the interests of the Pre-Petition Secured Parties; *provided* that any of the Pre-Petition Secured

Parties may request further or different adequate protection, and the Debtors or any other party

may, consistent with the terms of the ICA (the terms of which, for the avoidance of any doubt,

shall not be affected or modified in any way by this Interim Order) or any other Existing

Secured Agreement, contest any such request; *provided further* that any such additional or

modified adequate protection shall at all times be subordinate and junior to the DIP Liens and

DIP Superpriority Claims and, with respect to any additional or modified adequate protection

for the Second Lien Notes Trustee or the Second Lien Noteholders, such adequate protection

shall at all times be subordinate and junior to the Senior Lender Adequate Protection Liens, the

Senior Lender Adequate Protection Obligations, and any claims of the First Lien Secured

Parties arising from the Existing Credit Documents.  Except as expressly provided herein,

nothing contained in this Interim Order (including, without limitation, the authorization of the

use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in

law or equity to any Pre-Petition Secured Party, the DIP Agent or any DIP Lender, including,

without limitation, rights of a party to a swap agreement, securities contract, commodity

contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or

other rights with respect thereto as permitted by law (or the right of a Debtor to contest such

assertion).  The Adequate Protection Liens and Adequate Protection Obligations (including,

without limitation, the Adequate Protection Milestones) described herein may be amended,

modified or terminated (or, in the case of the Adequate Protection Milestones, amended,

modified or extended) only, and shall be binding on the First Lien Secured Parties only, by

order of the Court or the prior written consent of the Pre-Petition Credit Agreement Lenders

holding more than 50% of the outstanding principal amount of the Pre-Petition First Lien Debt

(the "**Required Pre-Petition Lenders**"), and no such consent shall be implied by any other

action, inaction or acquiescence by any of the Pre-Petition Agent or the Pre-Petition Lenders;

*provided* that nothing contained in this Interim Order shall be read to impact the rights of any

party, including the Specified Lenders (as defined in the DIP Credit Agreement), to object to

any such amendments or modifications  including any assertion by the First Lien Secured

Parties for the payment of additional interest calculated at any other applicable rate of interest

(including, without limitation, default rates or interest upon interest).

      16.    *Perfection of DIP Liens and Adequate Protection Liens*.

      (a)    Subject to the provisions of paragraph 9(a) above, the DIP Agent, the DIP

Lenders and the Pre-Petition Secured Parties are hereby authorized, but not required, to file or

record (and to execute in the name of the Debtor Loan Parties, as their true and lawful attorneys,

with full power of substitution, to the maximum extent permitted by law) financing statements,

trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any

jurisdiction, or take possession of or control over assets, or take any other action, in each case, in

order to validate and perfect the liens and security interests granted to them hereunder.  Whether

or not the DIP Agent on behalf of the DIP Lenders, the Pre-Petition Agent on behalf of the Pre-

Petition Lenders, the Second Lien Notes Trustee on behalf of the Second Lien Noteholders shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, except as otherwise provided herein, and not subject to challenge dispute or subordination, at the time and on the date of entry of this Interim Order and subject to the terms hereof.  Upon the request of the DIP Agent, each of the Pre-Petition Secured Parties, without any further consent of any party, is authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded and filed, as applicable, as of the Petition Date.

(b)    A certified copy of this Interim Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and recording, as applicable.  For the avoidance of doubt, the automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent to take all actions, as applicable, referenced in this subparagraph (b) and in the immediately preceding subparagraph (a).

17.    *Real Property Leases*.  As a requirement and precondition to the DIP Lenders' willingness to lend and in furtherance of the DIP Superiority Claims provided for in paragraph 7 of this Interim Order and pursuant to the DIP Documents, under which DIP

45

Obligations are payable from and have recourse to all of the Debtor Loan Parties' pre- and post-petition property including, among other things, all of the Debtor Loan Parties' Real Property Leases (as defined in the DIP Credit Agreement), the DIP Lenders shall have the following protections with respect to the Debtor Loan Parties' Real Property Leases, regardless of whether any particular Real Property Lease or group of Real Property Leases constitutes Collateral, which protections shall be enforced by the DIP Agent as authorized, approved, and granted pursuant to the provisions of this Interim Order and in accordance with the terms of the DIP Credit Agreement:

(a)    Remedies Upon an Event of Default.  If an Event of Default shall have occurred and be continuing, the DIP Agent shall, with respect to any Real Property Lease or group of Real Property Leases to which any of the Debtors are party, be permitted, and is hereby authorized, approved, and granted:

(i)    to exercise the Debtor Loan Parties' rights pursuant to section 365(f) of the Bankruptcy Code with respect to any such Real Property Lease(s) and, subject to this Court's approval after notice and hearing, assign any such Real Property Lease(s) in accordance with section 365 of the Bankruptcy Code notwithstanding any language to the contrary in any of the applicable lease documents or executory contracts;

(ii)    (a) find an acceptable (in the DIP Agent's good faith and reasonable discretion) replacement lessee, which may include the DIP Agent or any of its affiliates, to whom such Real Property Lease(s) may be assigned, (b) hold, and manage all aspects of, an auction or other bidding process to find such acceptable replacement lessee, (c) in connection with any such auction, agree, on behalf of the Debtor Loan Parties, to a break-up fee or to reimburse reasonable fees and expenses (subject to Court approval of such fees and

46

expenses) of any stalking horse bidder up to an amount not to exceed 3.00% of the purchase price of such Real Property Lease, if necessary, and may make any such payments on behalf of such Debtor Loan Party, and any amount used by the DIP Agent to make such payments shall, at the election of the DIP Agent in its sole discretion, be deemed a Borrowing (as defined in the DIP Credit Agreement) under the DIP Credit Agreement,  (d) notify the Debtor Loan Parties of the selection of any replacement lessee pursuant to this Paragraph 17(a), upon receipt of which the Debtors shall promptly (1) file a motion seeking expedited relief and a hearing on the earliest court date available for purposes of, if necessary, assuming such Real Property Lease and assigning it to such assignee and, and (2) cure any defaults, that have occurred and are continuing under such Real Property Lease(s) to the extent required by the Court (subject to the DIP Lenders' right to cure defaults as set forth in Paragraph 17(e) of this Interim Order); or

(iii)    (a) direct any Debtor Loan Party that is a lessee under a Real Property Lease to assign such Real Property Lease to the DIP Agent, on behalf of itself and the DIP Lenders, as collateral for the DIP Obligations, (b) direct such Debtor Loan Party lessee to assume such Real Property Lease to the extent assumption is required under the Bankruptcy Code as a prerequisite to such assignment; and (c) notify the Debtor Loan Parties of the selection of any replacement lessee pursuant to this Paragraph 17(a), upon receipt of which the Debtor Loan Parties shall promptly (1) file a motion seeking expedited relief and a hearing on the earliest court date available for purposes of, if necessary, assuming such Real Property Lease and assigning it to the DIP Agent and, and (2) cure any defaults, if any, that have occurred and are continuing under such Real Property Lease(s) to the extent required by the Court; *provided*, that any assignment of any such Real Property Lease(s) as Collateral securing the DIP Obligations shall not impair the Debtors' ability to subsequently assume (if not already assumed) and assign

47

such Real Property Lease(s) pursuant to section 365 of the Bankruptcy Code or to enjoy the

protections of section 365(f) of the Bankruptcy Code with respect to any such assignment,

*provided*, that the foregoing clauses (i) through (iii) shall not apply to Real Property Leases that

are rejected on the effective date of an Acceptable Reorganization Plan.

(b)     <u>Right to Credit Bid</u>.  Prior to any sale or assignment of any Real Property

Lease or group of Real Property Leases, the Debtors shall first provide 30 days' prior written

notice to the DIP Agent (unless such notice provision is waived by the DIP Agent).  During such

notice period, or thereafter until Court approval of a sale or assignment, the DIP Agent, on behalf

of the applicable DIP Lenders, shall be permitted to credit bid forgiveness of some or all of the

outstanding DIP Obligations (in an amount equal to at least the consideration offered by any

other party in respect of such assignment) outstanding under the DIP Term Facility as

consideration in exchange for any such Real Property Lease(s); *provided*, that to the extent the

Borrower is entitled to retain a portion of the total consideration paid in respect of such

assignment in accordance with the DIP Credit Agreement, the applicable portion of the

consideration shall be paid in cash.  In addition, in connection with the exercise of any of the DIP

Agent's rights pursuant to the DIP Credit Agreements or this Interim Order to direct or compel a

sale or assignment of any Real Property Lease(s), the DIP Agent, on behalf of the applicable DIP

Lenders, shall be permitted to credit bid forgiveness of some or all of the outstanding DIP

Obligations (in an amount equal to at least the consideration offered by any other party in respect

of such sale or assignment) as consideration in exchange for such Real Property Lease(s).

Pursuant to section 364(e) of the Bankruptcy Code, absent a stay pending appeal, the DIP

Lenders' right to credit bid shall not be affected by the reversal or modification on appeal of the

Debtors' authorization pursuant to this Interim Order or the Final Order to obtain credit and incur

48

debt as and in accordance with the terms set forth herein.  Notwithstanding anything to the contrary herein, the foregoing right of the DIP Agent set forth in this Paragraph 17(b) shall not apply to Real Property Leases that are sold or assigned as contemplated in the Agreed Business Plan (as defined in the DIP Credit Agreement).

            (c)       <u>Special Rights with Respect to Proposed Rejections of Real Property Leases</u>.  Unless all DIP Obligations shall have indefeasibly been satisfied in full in cash (and, with respect to outstanding letters of credit issued or deemed issued pursuant to the DIP Credit Agreements, cash collateralized in accordance with the provisions of the DIP Credit Agreements), the Debtor Loan Parties shall not seek, and it shall constitute an Event of Default and terminate the right of the Debtor Loan Parties to use Cash Collateral if any of the Debtor Loan Parties seeks, pursuant to section 365 of the Bankruptcy Code, to reject or otherwise terminate (including, without limitation, as a result of the expiration of the assumption period provided for in section 365(d)(4) of the Bankruptcy Code to the extent applicable, the last day of such period being the "**Automatic Rejection Date**") (x) a Material Lease (as defined in the DIP Credit Agreement) or (y) during the continuance of an Event of Default under the Credit Agreement, a Real Property Lease, in each case, without first providing 30 days' prior written notice to the DIP Agent (unless such notice provision is waived by the DIP Agent in its sole discretion) during which time the DIP Agent shall be permitted to find an acceptable (in the DIP Agent's good faith and reasonable discretion) replacement lessee (which may include the DIP Agent or its affiliates) to whom such lease may be assigned.  If a prospective assignee is not found within such 30-day notice period, the Debtor Loan Parties may proceed to reject such lease.  If such a prospective assignee is timely found, the Debtor Loan Parties shall (i) not seek to reject such lease, (ii) promptly withdraw any previously filed rejection motion, (iii) promptly file

a motion seeking expedited relief and a hearing on the earliest court date available for purposes of assuming such lease and assigning it to such prospective assignee and (iv) cure any defaults that have occurred and are continuing under such lease unless the Borrower and the DIP Agent agree that any such cure obligation is overly burdensome on the cash position of the Debtor Loan Parties with such agreement not to be unreasonably withheld; *provided*, that this Paragraph 18(c) shall not apply to Real Property Leases that are rejected on the effective date of an Acceptable Reorganization Plan (as defined in the DIP Credit Agreement).  For the avoidance of doubt, it is understood and agreed that on or prior to the 30th day prior to the Automatic Rejection Date (as defined in the DIP Credit Agreement), the Debtor Loan Parties shall have delivered (and hereby agree to deliver) written notice to the DIP Agent of each outstanding Real Property Lease that they intend to reject (including, without limitation, through automatic rejection on the Automatic Rejection Date, to the extent applicable) from and after the date of such notice (or, if applicable, notice that the Debtor Loan Parties will seek to extend the Automatic Rejection Date as provided in section 365(d)(4) of the Bankruptcy Code); *provided*, that if the Debtor Loan Parties fail to deliver any such notice to the DIP Agent prior to such date with respect to any such Real Property Lease (or a notice indicating that no such Real Property Leases shall be rejected), the Debtor Loan Parties shall be deemed, for all purposes hereunder, to have delivered notice to the DIP Agent as of such date that they intend to reject all outstanding Real Property Leases.

(d)    <u>Assumption Orders</u>.  Any order of this Court approving the assumption of any Real Property Lease shall specifically provide that the applicable Debtor Loan Party shall be authorized to assign such Real Property Lease pursuant to, and to enjoy the protections of, section 365(f) of the Bankruptcy Code subsequent to the date of such assumption.

50

(e)     <u>DIP Lenders' Right to Cure Defaults</u>.  If any of the Debtor Loan Parties is required to cure any monetary defaults under any Real Property Lease pursuant to any order of this Court or otherwise in connection with any assumption or assumption and assignment of any such Real Property Lease pursuant to section 365(f) of the Bankruptcy Code, and such monetary default is not, within five business days of the receipt by such Debtor of notice from the DIP Agent pursuant to the applicable provision(s) of the DIP Credit Agreement or any other notice from the DIP Agent requesting the cure of such monetary default, cured in accordance with the provisions of such applicable court order as arranged by the DIP Agent, the DIP Agent may cure any such monetary defaults on behalf of the applicable Debtor(s).

18.     *Preservation of Rights Granted Under this Interim Order*.

(a)     (i) Other than the Fees Carve Out and the Bonding Carve Out (in each case to the extent provided herein) no claim or lien having a priority superior to and (ii) other than the A/R Securitization Facility Superpriority Claim (solely with respect to the Securitization Debtors), no claim or lien having a priority *pari passu* with those granted by this Interim Order to the DIP Agent and the DIP Lenders shall be granted or allowed while any portion of the DIP Financing (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations remain outstanding, and the DIP Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Unless all DIP Obligations shall have been indefeasibly paid in full in cash (and, with respect to outstanding letters of credit issued pursuant to the DIP Credit Agreements, cash collateralized on terms and conditions acceptable to the DIP Agent in accordance with the

provisions of the DIP Credit Agreements) and the Adequate Protection Obligations shall have

been paid in full, the Debtors shall not seek, and it shall constitute an Event of Default (in

addition to those Events of Default set forth in the DIP Credit Agreement) and terminate the right

of the Debtors to use any and all Cash Collateral if the Debtors seek or if there are entered, (i)

any material modifications, amendments or any extensions of this Interim Order in a manner

adverse to the DIP Agent and DIP Lenders, without the prior written consent of the DIP Agent,

and no such consent shall be implied by any other action, inaction or acquiescence by the DIP

Agent; (ii) an order dismissing the Cases or converting any of the Cases to a case under chapter 7

of the Bankruptcy Code; (iii) an order appointing any chapter 11 trustee or an examiner with

enlarged powers (powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy

Code) in the Cases without the prior written consent of the Required Lenders; (iv) an order

appointing an examiner under section 1104 (other than a fee examiner) of the Bankruptcy Code

without the prior written consent of the Required Lenders, or the Debtors acquiesce in or consent

to any such appointment; (v) an order in any of the Cases denying or terminating use of cash

collateral by any of the Debtors if such order remains unstayed for more than three business days

following its entry; (vi) an order (that is not otherwise stayed, reversed, overturned, withdrawn or

settled within five days of the entry of such order) in any of the Cases granting relief from any

stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party

to proceed against any material assets of the Loan Parties in excess of $10 million; (vii) a final,

non-appealable order in the Cases charging any of the Collateral under section 506(c) of the

Bankruptcy Code against the DIP Agent or DIP Lenders without the consent of the DIP Agent,

or the commencement of other actions materially adverse to the DIP Agent's or DIP Lenders'

rights and remedies under the applicable DIP Documents or otherwise inconsistent with the

52

applicable DIP Documents; (viii) an order in any of the Cases granting authority to obtain

financing under section 364 of the Bankruptcy Code (other than under the DIP Facilities or in the

ordinary course of the Borrower's and/or the Guarantors' businesses), unless such financing

would, and in fact does, repay in full in cash all DIP Obligations upon consummation thereof; or

(ix) an order in any of the Cases granting adequate protection to any other person (except to the

extent permitted by the DIP Credit Agreement).  Notwithstanding the entry of any order

dismissing the Cases under section 1112 of the Bankruptcy Code or otherwise, such order shall

provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the DIP

Superpriority Claims, DIP Liens, Adequate Protection Obligations, Adequate Protection Liens,

priming liens, security interests, replacement security interests and administrative claims granted

to the DIP Agent and the DIP Lenders and, as applicable, the Pre-Petition Secured Parties

pursuant to this Interim Order shall continue in full force and effect and shall maintain their

priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection

Obligations shall have been paid and satisfied in full (and that such DIP Superpriority Claims,

DIP Liens, Adequate Protection Obligations, Adequate Protection Liens, priming liens, security

interests, replacement security interests and administrative claims, shall, notwithstanding such

dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction,

notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security

interests referred to in clause (i) above.

        (c)     If any or all of the provisions of this Interim Order are hereafter reversed,

modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the

validity of any DIP Obligations, the DIP Documents or Adequate Protection Obligations

incurred or the DIP Liens and Adequate Protections Liens granted prior to the actual receipt of

written notice by the DIP Agent, the Pre-Petition Agent, or the Second Lien Notes Trustee, as applicable, of the effective date of such reversal, modification, vacation or stay or (ii) the validity or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or any DIP Obligations, DIP Liens, Adequate Protection Obligations or Adequate Protection Liens incurred by the Debtors to the DIP Agent, the DIP Lenders or the Pre-Petition Secured Parties prior to the actual receipt of written notice by the DIP Agent, the Pre-Petition Agent, or the Second Lien Notes Trustee, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders and the Pre-Petition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims and all other rights and remedies of the DIP Agent and the DIP Lenders granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents) or (iii) the entry of an order confirming a chapter 11 plan in the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations.  The terms

54

and provisions of this Interim Order and the DIP Documents shall continue in these Cases, in any

successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7

cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims and all other

rights and remedies of the DIP Agent and the DIP Lenders granted by the provisions of this

Interim Order (including, without limitation, with respect to the rights of the DIP Agent as to the

Debtors' Real Property Leases as set forth in Paragraph 17 of this Interim Order) and the DIP

Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid

in full in cash.

(e)      Upon the occurrence of an Event of Default, the Debtors agree to enter

into good faith negotiations with interested parties in respect of a possible refinancing of the

Obligatoins.

19.      *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions,

agreements and releases contained in this Interim Order, including, without limitation, in

paragraph 4 of this Interim Order, shall be binding upon the Debtors and any successor thereto

(including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or

elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors'

stipulations, admissions, agreements and releases contained in this Interim Order, including,

without limitation, in paragraph 4 of this Interim Order, shall be binding upon all other parties

in interest, including, without limitation, any committee appointed in these Cases and any other

person or entity acting on behalf of the Debtors' estates in all circumstances for all purposes,

unless and except to the extent that (a) such party in interest has timely filed an adversary

proceeding or contested matter (subject to the limitations contained herein, including, *inter

alia*, in paragraphs 19 and 20 of this Interim Order) by the earlier of (i) the date that is the later

of 60 days after entry of the Final Order and (ii) and such later date (x) as has been agreed to, in writing, by the applicable Pre-Petition Agent or the Second Lien Notes Trustee, as applicable, that would be a defendant in its sole discretion or (y) as has been ordered by the Court upon a motion filed and served within any applicable period of time set forth in this paragraph (the "**Challenge Period**"), (i) challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Debt or the Prepetition Secured Parties' liens on the Prepetition Collateral or (ii) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, "**Challenge Proceedings**") against any of the Pre-Petition Secured Parties or (x) their respective predecessors, successors and assigns, affiliates, subsidiaries, funds, portfolio companies, management companies, and (y) with respect to each of the foregoing entities in clause (x), each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, Professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (with respect to clause (y), each solely in their capacity as such) (each entity listed in clauses (x) and (y) a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Existing Secured Agreements, the Stipulated Debt, and the Prepetition Collateral and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge Proceeding; *provided* that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.  If no such Challenge Proceeding

56

matter is timely and properly filed during the Challenge Period or the Court does not rule in

favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions,

agreements and releases contained in this Interim Order, including, without limitation, those

contained in paragraph 4 of this Interim Order shall be binding on all parties in interest,

including, without limitation, the Creditors' Committee; (b) notwithstanding any reservations

of rights contained in this Interim Order, the obligations of the Borrower and the Debtor

Guarantors under the Existing Secured Agreements, including the Stipulated Debt, shall

constitute allowed claims not subject to defense, claim, counterclaim, recharacterization,

subordination, offset or avoidance, for all purposes in these Cases, and any subsequent chapter

7 case(s); (c) the Stipulated Security Interests shall be deemed to have been, as of the Petition

Date, legal, valid, binding, perfected, security interests and liens, not subject to

recharacterization, subordination, avoidance or other defense; and (d) the Stipulated Debt and

the Stipulated Security Interests shall not be subject to any other or further claim or challenge

by the Creditors' Committee, any non-statutory committees appointed or formed in these Cases

or any other party in interest acting or seeking to act on behalf of the Debtors' estates and any

defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee, any

non-statutory committees appointed or formed in these Cases, or any other party acting or

seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or

otherwise, against any of the Pre-Petition Secured Parties and their Representatives arising out

of or relating to the Existing Agreements shall be deemed forever waived, released and barred.

If any such Challenge Proceeding is timely filed during the Challenge Period, the stipulations,

admissions, agreements and releases contained in this Interim Order, including, without

limitation, those contained in paragraph 4 of this Interim Order, shall nonetheless remain

binding and preclusive (as provided in the second sentence of this paragraph) on the Creditors'

Committee and on any other person or entity, except to the extent that such stipulations,

admissions, agreements and releases were expressly and successfully challenged in such

Challenge Proceeding as set forth in a final, non-appealable order of a court of competent

jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the

Bankruptcy Code), including the Creditors' Committee or any non-statutory committees

appointed or formed in these Cases, standing or authority to pursue any claim or cause of

action belonging to the Debtors or their estates, including, without limitation, Challenge

Proceedings with respect to the Existing Secured Agreements, the Stipulated Debt or the

Stipulated Security Interests; *provided* that the Specified Lenders shall have standing to be

heard in connection with the CNTA Dispute.  Notwithstanding anything to the contrary, this

paragraph 19 shall not limit or release any claims or defenses with respect to the CNTA

Dispute, and such claims and defenses shall not be subject to the Challenge Period.

20.    *Limitation on Use of DIP Financing Proceeds and Collateral.*  Except as set

forth in this paragraph, no borrowings under the DIP Financing, letters of credit, Cash

Collateral, Collateral, the Fees Carve Out and/or the Bonding Carve Out may be used, in the

Cases or any other proceeding of any kind, or in any jurisdiction, to (a) object and/or challenge

the amount, validity, perfection, priority or enforceability of or asserting any defense,

counterclaim or offset to, any amount due under the DIP Documents or the Existing Credit

Documents, the validity, perfection, priority, extent or enforceability of any amount due under

the DIP Documents or the Existing Credit Documents or the liens or claims granted under this

Interim Order, the DIP Documents or the Existing Credit Documents, or the Adequate

Protection Liens, or the Adequate Protection Obligations  including, in each case, without

58

limitation, for lender liability or pursuant to section 105, 502(d), 510, 544, 547, 548, 549, 550,

or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise, (b) investigate,

assert or prosecute any Claims and Defenses or causes of action against the DIP Agent, the DIP

Lenders, the Pre-Petition Agent, the Pre-Petition Lenders, the Second Lien Notes Trustee or

the Second Lien Noteholders and/or their respective Representatives, (c) prevent, hinder or

otherwise delay the DIP Agent's, the DIP Lenders', the Pre-Petition Agent's, the Pre-Petition

Lenders', the Second Lien Notes Trustee's or the Second Lien Noteholders' assertion,

enforcement or realization against or upon the Cash Collateral or the Collateral in accordance

with the DIP Documents, the Existing Credit Documents, the Existing Second Lien Indenture

Documents or this Interim Order, (d) seek to modify any of the rights granted to the DIP

Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders, the Second Lien

Notes Trustee or the Second Lien Noteholders hereunder or under the DIP Documents or the

Existing Secured Agreements, in each of the foregoing cases without such applicable parties'

prior written consent, (e) attempt to directly or indirectly modify any of the rights granted to

the DIP Lenders or the DIP Agent, (f) pay any amount on account of any claims arising prior to

the Petition Date unless such payments are (i) approved by an order of this Court and (ii) in

accordance with the DIP Documents and the 13-Week Projections; *provided* that, (A) the

Debtors may, in all cases set forth above, challenge the assertion or existence of an Event of

Default hereunder or under the DIP Facilities, (B) advisors to the Creditors' Committee may

investigate the claims and liens granted pursuant to the Existing Credit Documents or the

Existing Second Lien Indenture Documents during the Challenge Period and prosecute any

causes of action in connection therewith at an aggregate expense for such investigation and

prosecution not to exceed $50,000, (C) the foregoing limitations shall not apply to any

reimbursements of expenses of Specified Lenders in accordance with paragraph 27 of this Interim Order, which reimbusements and expenses shall be allocated in accordance with the proviso contained in paragraph 27(a) of this Interim Order, and (D) the limitations on the use of Collateral (other than Pre-Petition Collateral) contained in this paragraph 20 shall not apply to those matters described in paragraph 4(l) of this Interim Order.

21.     *Reservation of Rights*.  Nothing contained in this Interim Order shall prejudice the rights of the Debtors or any other party in interest (including the Specified Lenders) with respect to, and the Debtors, the Pre-Petition Secured Parties and all parties in interest (including the Specified Lenders) reserve all rights with respect to (i) the allocation of expenses and operating costs of the Debtors among the Debtors' unencumbered assets and the Collateral of the Pre-Petition Secured Parties and (ii) any past or future transfers of cash or others assets into Global Center or any other non-Debtor.  Further, nothing contained in this Interim Order shall prejudice the rights of any party to commence a declaratory judgment action (or any other action) seeking a determination with respect to the CNTA Dispute.

22.     *Priorities Among Pre-Petition Secured Parties*.  Notwithstanding anything to the contrary herein or in any other order of this Court, in determining the relative priorities and rights of the Pre-Petition Secured Parties (including, without limitation, the relative priorities and rights of the Pre-Petition Secured Parties with respect to the Adequate Protection Obligations granted hereunder), such priorities and rights shall continue to be governed by the Existing Secured Agreements including, without limitation, the ICA.

23.     *Maintenance of Letters of Credit*.  To the extent permitted by the DIP Documents, the Debtors are authorized to maintain and renew letters of credit issued under the DIP Credit Agreement on an uninterrupted basis, in accordance with the same practices and

procedures as were in effect prior to the Petition Date, and to take all actions reasonably appropriate with respect thereto, on an uninterrupted basis and in accordance with the same practices and procedures as were in effect prior to the Petition Date.

24.    *Citi as Collateral Agent*.  To the extent that (i) Citi, in its capacity as Collateral Agent under the Existing Credit Documents, or (ii) U.S. Bank, National Association, or any successor trustee, in its capacity as Collateral Agent under the Existing Second Lien Indenture Documents, is listed as loss payee under the Debtors' insurance policies as required under the Existing Credit Documents and Existing Second Lien Indenture Documents or is the secured party under any other Existing Credit Document or Existing Second Lien Indenture Documents, Citi, in its role as Collateral Agent under the DIP Credit Agreements, is also deemed to be the secured party under such Control Agreements, loss payee under the Debtors' insurance policies and the secured party under any other Existing Credit Document or Existing Second Lien Indenture Documents and shall act in that capacity and shall turn over and distribute any proceeds recovered or received <u>first</u>, for the benefit of the DIP Lenders in accordance with the DIP Credit Agreements and <u>second</u>, subsequent to indefeasible payment in full of all DIP Obligations, for the benefit of the Pre-Petition Secured Parties under the Existing Secured Agreements.

25.    *Payments Held in Trust*.  Except as expressly permitted in this Interim Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in Collateral, receives any proceeds of Collateral or receives any other payment with respect thereto from any other source prior to indefeasible satisfaction of all DIP Obligations under the DIP Documents, and termination of the Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall

hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Agent and DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

26.    *Credit Bidding*.

(a)    The DIP Agent shall, acting at the direction of the Required Lenders, have the right to credit bid up to the full amount of the DIP Obligations in any sale of the Collateral (including, without limitation, sales occurring under Section 363 of the Bankruptcy Code or included as part of any plan of reorganization subject to confirmation of such reorganization plan) as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

(b)    Subject to entry of the Final Order and the prior indefeasible satisfaction and discharge in full of all DIP Obligations and the termination of the Commitments thereunder, the full amount of the Pre-Petition First Lien Debt then outstanding may be used to "credit bid" for the assets and property of the Debtors (to the extent such assets are Senior Lender Collateral or secured by Senior Lender Adequate Protection Liens (but with respect thereto, solely to the extent of the value of the Senior Lender Adequate Protection Liens)) as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.  For the avoidance of doubt, no amount on account of the Pre-Petition First Lien Debt may be credit bid

62

in respect of any Collateral until all DIP Obligations have first been indefeasibly satisfied and paid in cash in full and the Commitments thereunder have been terminated.

27.    *Specified Lenders Expenses and Agreements.*

(a)    The Debtors shall pay or reimburse all reasonable, documented, out-of-pocket expenses of the Specified Lenders incurred through the date of entry of the Final Order, and, subject to entry of the Final Order, incurred thereafter, through the date that is 12 months following the Petition Date, in each case in connection with the Cases (but limited to $500,000 in any calendar month, subject to unlimited carry-forwards of unused amounts); *provided* that such expenses shall be charged against, and first payable from, cash or other assets determined by a final order of the Bankruptcy Court to be unencumbered by any prepetition lien or security interest; *provided further* that the amounts paid or reimbursed by the Debtors under this paragraph 27(a) shall in no event exceed $6,000,000.

(b)    Subject to entry of the Final Order, the Specified Lenders shall be granted an allowed administrative expense claim (which allowed administrative expense claim shall be junior to each of the Fees Carve-Out, the Bonding Carve-Out, the DIP Superpriority Claim,  and the A/R Securitization Facility Superpriority Claim, and any superpriority claims granted in respect of adequate protection) (the "**Specified Lender Allowed Administrative Expense Claim**") to the extent that the reasonable, documented, out-of-pocket expenses of the Specified Lenders incurred in connection with the Cases exceed the amounts payable under paragraph 27(a) of this Interim Order; *provided* that the amount of such allowed administrative expense claim shall not exceed $6,000,000.

(c)    None of the Specified Lenders nor any of their respective affiliates shall, and none of the Specified Lenders nor any of their respective affiliates shall permit their

respective attorneys or other professionals engaged in connection with or anticipation of these Cases to, object to entry of the Interim Order or the Final Order or any provision thereof or any of the terms or provisions of the DIP Documents; provided that (i) the Specified Lenders and their respective affiliates, and their respective affiliates' attorneys or other professionals engaged in connection with or anticipation of these Cases, shall be permitted to object to (x) a waiver of section 506(c) of the Bankruptcy Code, section 552(b) of the Bankruptcy Code, and marshaling, and the approval of a "credit bid," in each case, for the benefit of the Pre-Petition Secured Parties or (y) any changes or modifications to the rights or reservations of the Specified Lenders in any DIP Documents, Interim Order or Final Order and changes to the Adequate Protection Obligations for the Pre-Petition Secured Parties provided in this Interim Order; and (ii) the Specified Lenders' non-objection to entry of the Interim Order or the Final Order shall not be construed to limit any other rights that have been expressly reserved for parties in interest herein or in any DIP Document.

28.     *Notice of Lender Professional Fees*.  A copy of each invoice submitted to the Debtors for professional fees and expenses (to the extent incurred by such professionals after the Effective Date (as defined in the DIP Credit Agreement)) the payment of which is authorized by paragraphs 13(d), 27(a) or 27(b) above (such fees and expenses, the "**Lender Professional Fees**") shall be substantially simultaneously sent to the U.S. Trustee, counsel for the DIP Agent and counsel for any Creditors' Committee (collectively, the "**Lender Professional Fee Notice Parties**").  The invoices for such Lender Professional Fees shall include the number of hours billed and a reasonably detailed description of the services provided and the expenses incurred by the applicable professional; *provided, however,* that any such invoice (i) may be redacted to protect privileged, confidential or proprietary information

64

and (ii) shall not be required to contain individual time detail; *provided, further*, that the U.S. Trustee reserves the right to seek additional information and relief from the Court.  The Debtors and the Lender Professional Fee Notice Parties shall have 7 days after receipt of the applicable invoice to submit (to the applicable professional, the Debtors and the Lender Professional Fee Notice Parties) a written objection to the reasonableness of such Lender Professional Fees, which must contain a specific basis for the objection and quantification of the undisputed amount of the fees and expenses invoiced, and failure to object with specificity or to quantify the undisputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice.  None of the Lender Professional Fees shall be subject to Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines, and no recipient of any payment on account thereof shall be required to file with respect thereto any interim or final fee application with the Court.  Payment of Lender Professional Fees shall not be delayed based on any objections thereto, and the relevant professional shall only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final non-appealable order of this Court.

29.    *No Waiver Under the ICA*.  Subject to paragraph 9(d) hereof, nothing herein shall be considered a waiver of any rights of any party under the ICA.

30.    *Bankruptcy Rule 6003*. The requirements of Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

31.    *Waiver of Stay*.  Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Bankruptcy Rule that might otherwise delay the effectiveness of this Interim Order, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry

32.     *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

33.     *Retention of Jurisdiction*.  This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

34.     *Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

35.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Pre-Petition Secured Parties, any committee appointed in these Cases, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Pre-Petition Secured Parties, and the Debtors, and their respective successors and assigns; *provided*, *however*, that the DIP Agent and the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan under the DIP Credit Agreements or to exercise any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent and the DIP Lenders shall not solely by reason thereof be deemed to be in control of the properties or operations of or participating in the management of the Debtors, be deemed to have authority to determine the manner in which any Debtor's operations are conducted or deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental

66

Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq*., as amended, or any

similar federal or state statute).

36.    *Master Proof of Claim*.  In order to facilitate the processing of claims, to ease

the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, the

Pre-Petition Agent is authorized to file in the Debtors' lead chapter 11 case <u>In re Peabody</u>

<u>Energy Corporation, et al.</u>, (Case No. 16-42529) a single, master proof of claim on behalf of

itself and the Pre-Petition Lenders on account of any and all of their respective claims arising

under the Existing Credit Documents and hereunder (the "**Master Proof of Claim**") against

each of the Debtors.  Upon the filing of the Master Proof of Claim against each of the Debtors,

the Pre-Petition Agent and each Pre-Petition Lender, and each of their respective successors

and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its

name therein in respect of its claims against each of the Debtors of any type or nature

whatsoever with respect to the Existing Credit Documents, and the claim of each Pre-Petition

Lender (and each of its respective successors and assigns), named in the Master Proof of Claim

shall be treated as if such entity had filed a separate proof of claim in each of these Cases.  The

Pre-Petition Agent shall not be required in the Master Proof of Claim to identify whether any

Pre-Petition Lender acquired its claim from another party and the identity of any such party or

to amend the Master Proof of Claim to reflect a change in the holders of the claims set forth

therein or a reallocation among such holders of the claims asserted therein resulting from the

transfer of all or any portion of such claims.  The provisions of this paragraph 36 and the

Master Proof of Claim are intended solely for the purpose of administrative convenience and

shall not affect the right of each Pre-Petition Lender Party (or their successors in interest) to

vote separately on any plan proposed in these Cases.  The Pre-Petition Agent shall not be

required to file with the Master Proof of Claim any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the Pre-Petition Lenders, which instruments, agreements or other documents will be provided upon written request to counsel to the Pre-Petition Agent.

37.     *Final Hearing*.  The Final Hearing is scheduled for **May 5, 2016** at **2:00 p.m.** (prevailing Central Time) in the United States Bankruptcy Court, Eastern District of Missouri, United States Courthouse, Thomas F. Eagleton Federal Building, 5th Floor, North Courtroom, 111 S. 10th Street, St. Louis, Missouri, 63102.

38.     *Notice*.  The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing and to any Committee after the same has been appointed, or such Committee's counsel, if the same shall have been appointed.  No later than 24 hours after such service, the Debtors shall file a certificate of service with the Court.

39.     *Objections*.  Any objection to the granting of the relief requested by the Motion on a final basis shall be filed with the Court on or before **May 3, 2016** by **5:00 P.M.** Central Time (the "**Objection Deadline**"), and served by the Objection Deadline, upon:  (a) the U.S. Trustee, 111 South 10th Street, Suite 6.353, St. Louis, MO  63102 (Attn: Leonora S. Long, Esq., Assistant United States Trustee); (b) (i) the Debtors, c/o Peabody Energy Corporation, 701 Market Street, St. Louis, MO  63101  (Attn:  Scott T. Jarboe, Esq., Vice President and Deputy General Counsel Corporate and Capital Markets); (ii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, OH  44114 (Attn:  Heather Lennox, Esq.); (iii) Jones Day, 51

Louisiana Avenue, N.W., Washington, D.C. 20001 (Attn: Amy Edgy , Esq. and Daniel T. Moss, Esq.); (iv) Armstrong Teasdale LLP, 7700 Forsyth Boulevard, Suite 1800, St. Louis, Mo. 63105 (Attn: Steven N. Cousins, Esq. and Susan K. Ehlers, Esq.); (c) (i) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Damian S. Schaible, Esq. and Angela M. Libby, Esq.) and (ii) Bryan Cave LLP, 211 N. Broadway, Sutie 3600, St. Louis, Missouri 63102 (Attn: Laura Uberti Hughes, Esq.), as counsel to Citibank, N.A. as Administrative Agent for the First Lien Secured Credit Facility; (d) counsel to PNC Bank, N.A., as Administrator under the Debtors' prepetition accounts receivable securitization facility; (e) counsel to Wilmington Savings Fund Society, FSB as trustee and collateral agent for the Secured Second Lien Notes; (f) counsel to Wilmington Trust Company as Indenture Trustee for Unsecured Notes and the Convertible Notes; (g) counsel to any ad hoc committees; (h) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022 (Attn: Stephen E. Hessler, P.C. and Brian R. Ford)  and Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York (Attn: Kenneth H. Eckstein and Stephen Zide,) as co-counsel to certain Specified Lenders and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.

40.     No later than two days after the date this Order is entered on the docket, the Claims and Noticing Agent is directed to serve a copy of this Order and is directed to file a certificate of service no later than 24 hours after such service.

DATED:  April 14, 2016
St. Louis, Missouri

cke

Barry S. Schermer
United States Bankruptcy Judge

Submitted by:

Steven N. Cousins
Susan K. Ehlers
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO  63105

Heather Lennox (*pro hac vice* pending)
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114

Amy Edgy (*pro hac vice* pending)
Daniel T. Moss (*pro hac vice* pending)
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113

*Proposed Attorneys for Debtors
and Debtors in Possession*