**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>Peabody Energy Corporation, et al.,<br><br>Debtors. | Case No. 16-42529-399<br>CHAPTER 11<br><br>Jointly Administered<br><br>Hearing Date and Time:<br>May 17, 2016 at 10:00 a.m. (Central)<br><br>Objection Deadline:<br>May 10, 2016<br><br>Hearing Location:<br>United States Courthouse<br>Thomas F. Eagleton Federal Building<br>5th Floor, North Courtroom<br>111 S. 10th Street<br>St. Louis, Missouri 63102 |

**SECOND OMNIBUS MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO SECTION 105 AND 365 OF THE BANKRUPTCY CODE, FOR AN ORDER AUTHORIZING THE REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES *NUNC PRO TUNC* TO THE DATE OF THIS MOTION**

Peabody Energy Corporation ("PEC") and certain of its direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court, pursuant to sections 105 and 365 of the Bankruptcy Code, for the entry of an order authorizing them to reject the executory contracts and unexpired leases identified on Exhibit A attached

hereto (collectively, the "Agreements"),[1] with such rejections to take effect as of the date of this Motion,[2] and in support thereof, respectfully represent as follows:

## Jurisdiction and Venue

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On April 13, 2016 (the "Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. Debtor PEC is a Delaware corporation headquartered in St. Louis, Missouri. PEC was incorporated in 1998 and became a public company in 2001. Each of the other Debtors is a wholly-owned direct or indirect subsidiary of PEC.

4. PEC is the world's largest private-sector coal company (by volume), with 26 active coal mining operations located in the United States and Australia. The Debtors' domestic mines produce and sell thermal coal, which is primarily purchased by electricity generators. PEC's Australian operations mine both thermal and metallurgical coal, a majority of which is

---

1 The term "Agreements" as used in this Motion includes any modifications, amendments, addenda or supplements thereto or restatements thereof. With respect to each Agreement, Exhibit A hereto sets forth, among other things, the applicable counterparty for the Agreement (each a "Counterparty," and collectively, the "Counterparties").

2 A copy of the proposed order will be made available on the Debtors' case website at http://www.kccllc.net/peabody.

exported to international customers. As of December 31, 2015, Debtor PEC and its subsidiaries' property holdings include 6.3 billion tons of proven and probable coal reserves and approximately 500,000 acres of surface property through ownership and lease agreements. In the United States alone, as of December 31, 2015, the Debtors held an estimated 5.5 billion tons of proven and probable coal reserves, and the Debtors generated sales of approximately 180 million tons of coal. In addition to its mining operations, the Debtors market and broker coal from other coal producers across the United States, Australia, Europe and Asia.

5. The Debtors operate in a competitive and highly regulated industry that has experienced strong headwinds and precipitously declining demand and pricing in recent years due to the rise of low priced alternative energy sources – including an abundance of natural gas. Combined with these factors, slowing global economic growth drove a wide range of goods prices lower in 2015 and resulted in the largest broad market decline since 1991. Indeed, demand from electric utilities in the United States alone declined approximately 110 million tons in 2015. These market conditions, in connection with lower realized pricing in the United States and Australia, resulted in a 21.0 million ton decline in the Debtors' and their non-debtor subsidiaries' coal sales during 2015. As a result of these challenges, several large United States coal companies have filed for chapter 11 protection in recent years.

6. A comprehensive description of the Debtors' businesses and operations, capital structure and the events leading to the commencement of these chapter 11 cases can be found in the Declaration of Amy Schwetz, Executive Vice President and Chief Financial Officer of Debtor PEC, in Support of First Day Motions of Debtors and Debtors in Possession (the "First Day Declaration"), which was filed on April 13, 2016.

## The Agreements

7. The Debtors and their advisors are actively reviewing the Debtors' executory contracts and unexpired leases. As a result of this review, the Debtors have determined in their business judgment that the Agreements set forth on Exhibit A hereto are not necessary to their ongoing business operations or restructuring efforts. The Debtors further believe, in their business judgment, that they could not assume and assign the Agreements in a manner that would provide any economic benefit to the Debtors' estates. Additionally, the Debtors submit that continuing the Agreements would be burdensome and would provide no corresponding benefit or utility to the Debtors or their estates. The Agreements are not necessary for the Debtors' continuing business operations of the Debtors' estates, and maintaining the Agreements would impose unnecessary costs and burdens (including unnecessary administrative charges) on the Debtors' estates and hamper their ability to reorganize.

## Argument

***Rejection of the Agreements Is an Appropriate Exercise of the Debtors' Business Judgment and Should Be Authorized***

8. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a). Courts routinely approve motions to assume, assume and assign or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 567 n.16 (8th Cir. 1997) ("Although the court uses a business judgment test in deciding whether to approve a trustee's motion to assume, reject, or assign an unexpired lease or executory contract, this entails a determination that the transaction is in the best interest of the estate."); In re Steaks

to Go, Inc., 226 B.R. 35, 37 (Bankr. E.D. Mo. 1998) ("Generally, a Bankruptcy Court is to review a decision by a debtor in possession or a trustee to reject an executory contract, and order rejection if the rejection is based on the debtor or trustee's best business judgment in the circumstances."). See also NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (stating that the traditional standard applied by courts under section 365 of the Bankruptcy Code is that of "business judgment"); In re GP Express Airlines, Inc., 200 B.R. 222, 230 (Bankr. D. Neb. 1996) ("In deciding whether to approve a debtor's assumption of an executory contract, bankruptcy courts usually apply the best business judgment test. The best business judgment test generally requires a showing that assumption of an executory contract benefits and is in the best interests of the bankruptcy estate, and is the result of the exercise of reasonable business judgment.").

9. Courts generally will not second-guess a debtor's reasonable and good faith business judgment concerning the assumption or rejection of an executory contract or unexpired lease. See, e.g., In re Food Barn Stores, Inc., 107 F.3d at 567 n.16 ("Where the trustee's request is not manifestly unreasonable or made in bad faith, the court should normally grant approval 'as long as the proposed action appears to enhance the debtor's estate.'") (quoting Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985); Crystalin, L.L.C. v. Selma Props, Inc.. (In re Crystalin, L.L.C.), 293 B.R. 455, 464 (B.A.P. 8th Cir. 2003) ("If the initial test is met, the bankruptcy court should not interfere with the trustee or debtor-in-possession's business judgment 'except upon a finding of bad faith or gross abuse of their business discretion.'") (quoting Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985).

10. The "business judgment" test is not a strict standard; it merely requires a showing that assumption of the executory contract will benefit the debtor's estate. See In re Crystalin,

L.L.C., 293 B.R. at 463-64 ("[The business judgment test] is not an onerous [test] and does not require the bankruptcy court to place 'itself in the position of trustee or debtor-in-possession and determin[e] whether assuming the lease would be a good business decision or a bad one.'") (quoting Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d. Cir. 1993)); Sundial Asphalt Co. v. V.P.C. Investors Corp. (In re Sundial Asphalt Co.), 147 B.R. 72, 81 (E.D.N.Y. 1992) ("Under the 'business judgment' test, an executory contract for the sale of land should be rejected if the debtor can demonstrate that rejection will benefit the estate"). Further, "[s]ection 365 enables the trustee to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not." L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.), 209 F.3d 291, 298 (3d Cir. 2000). See also Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co., 83 F.3d 735, 741 (5th Cir. 1996) (section 365 of the Bankruptcy Code "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed").

11. The Agreements are not necessary or valuable to the Debtors' business activities or reorganization. The Debtors, in their sound business judgment, submit that the Agreements are neither compatible with the Debtors' business needs nor a source of potential value for the Debtors' future operations, creditors or other parties in interest. The Agreements either provide no ongoing benefit to the Debtors' estates or provide benefits that are substantially less than the corresponding costs. Rejecting the Agreements will collectively save the Debtors millions of dollars and, for all the reasons set forth herein, is clearly beneficial to the Debtors' estates and creditors. The Debtors and their financial advisors have thoroughly considered the available alternatives to rejection of the Agreements and believe that the relief requested herein is most

likely to maximize the value of the estates. Accordingly, to avoid incurring additional unnecessary expenses associated with the Agreements, the Debtors seek to reject the Agreements effective nunc pro tunc to the date of this Motion, pursuant to section 365(a) of the Bankruptcy Code.

***Deeming the Agreements Rejected Effective as of the Date of this Motion is Appropriate***

12. The Debtors also respectfully submit that it is appropriate for the Court to deem the Agreements rejected nunc pro tunc to the date of this Motion. Courts in this District and others have held that bankruptcy courts may, in their discretion, authorize rejection under section 365 of the Bankruptcy Code retroactive to a date prior to entry of the order authorizing such rejection. See, e.g., In re Noranda Aluminum, Inc., No. 16-10083 (Bankr. E.D. Mo. Mar. 15, 2016) (Docket No. 419) (granting debtors' motion to reject certain executory contracts, nunc pro tunc to the petition date); In re Arch Coal, Inc., No. 16-40120 (Bankr. E.D. Mo. Feb. 24, 2016) (Docket No. 390) (order granting debtors' motion to reject certain executory contracts nunc pro tunc to the petition date). See also In re At Home Corp., 392 F.3d 1064, 1065-66 (9th Cir. 2004) (affirming bankruptcy court's approval of retroactive rejection); Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.), 67 F.3d 1021, 1028 (1st Cir. 1995) (approving retroactive orders of rejection where the balance of the equities favors such relief); In re Sky Ventures, LLC, 523 B.R. 163, 165 (Bankr. D. Minn. 2014) (authorizing rejection of leases retroactive to the petition date); In re Chi-Chi's, Inc., 305 B.R. 396, 399 (Bankr. D. Del. 2004) (holding that a bankruptcy court may approve retroactive rejection of nonresidential lease); Stonebriar Mall LP v. CCI Wireless, LLC (In re CCI Wireless, LLC), 297 B.R. 133, 140 (D. Colo. 2003) (stating that section 365(d)(3) authorizes a bankruptcy court to set the effective date of rejection as early as the filing date of the motion to reject). But see In re Valley Steel

Prods. Co., Inc., 147 B.R. 168, 171 (Bankr. E.D. Mo. 1992) ("This court agrees that the effective date of the trustee's rejection of an unexpired lease should be the date on which the court issues its order approving the rejection, not the date on which the debtor filed its petition seeking bankruptcy protection."); In re Worths Stores Corp., 130 B.R. 531, 534 (Bankr. E.D. Mo. 1991) ("Certainly allowing rejection of the lease upon the filing of the Debtors' Motion would run contrary to [Bankruptcy Rules 6006(a) and 9014]. Second, allowing rejection at the time the Motion was filed effectively renders any subsequent Court order a meaningless formality.").

13. In this instance, the balance of the equities favors the relief requested herein. Without a retroactive date of rejection, the Debtors will be potentially forced to incur unnecessary administrative charges for Agreements that do not provide a benefit to the Debtors and their estates in excess of the costs associated therewith. Moreover, the Counterparties to the Agreements will not be unduly prejudiced if the rejection of the Agreements are deemed effective as of the date of this Motion because counsel for and/or the Counterparties will receive notice of this Motion via overnight delivery (and electronic mail as applicable) and the Counterparties were informed of the Debtors' intent to reject the Agreements prior to the filing of this Motion.

**Notice**

14. In accordance with *the Order Establishing Certain Notice, Case Management and Administrative Procedures* (Docket No. 114) (the "Case Management Order"), notice of this Motion has been given to (a) the Counterparties, (b) all parties on the Master Service List (as defined in the Case Management Order) and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service. In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## **No Prior Request**

15. No prior request for the relief sought in this Motion has been made to this Court or any other court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an order, substantially in the form submitted to the Court, granting the relief requested herein and (ii) grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated: April 29, 2016
St. Louis, Missouri

Respectfully submitted,

/s/ Steven N. Cousins
Steven N. Cousins, MO 30788
Susan K. Ehlers, MO 49855
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Facsimile: (314) 612-2239
Email: scousins@armstrongteasdale.com
Email: sehlers@armstrongteasdale.com

Heather Lennox
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: hlennox@jonesday.com

Amy Edgy
Daniel T. Moss
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: aedgy@jonesday.com
Email: dtmoss@jonesday.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**Exhibit A**

| | NON-DEBTOR CONTRACTUAL COUNTERPARTY | COUNTERPARTY ADDRESS | CONTRACT NAME | CONTRACT DATE | REJECTION DATE |
|---|---|---|---|---|---|
| 1. | GC Air, LLC | GC Air, LLC<br>10 Riverview Drive,<br>Danbury, CT 06810<br><br>GC Air, LLC<br>44 Old Ridgebury Road<br>Danbury, CT 06810 | Aircraft Lease Agreement (with amendments and applicable annexes) | June 26, 2009 | April 29, 2016 |
| 2. | GE Capital | GE Capital, Corporate Aircraft Division<br>500 West Monroe Street<br>Chicago, IL 60661-3671<br>Attn: Senior Risk Officer<br><br>GE Capital<br>10 Riverview Drive,<br>Danbury, CT 06810<br>Attn: Associate General Counsel, Corporate Aircraft | Letter of Undertaking | N/A | April 29, 2016 |
| 3. | Noble Americas Corp. | Matt Vincent<br>Noble Americas Corp.<br>Four Stamford Plaza<br>107 Elm Street<br>7th Floor<br>Stamford, CT 06902 | Coal Purchase Contract | January 22, 2015 | April 29, 2016 |