**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re | Case No. 16-42529-399 |
| | (Judge Schermer) |
| PEABODY ENERGY CORPORATION, *et al.* | Chapter 11 |
| | Jointly Administered |
| Debtors. | <u>Hearing</u>: March 16, 2017 at 9:00 A.M. |
| | (Central Time) |

**LIMITED OBJECTION OF BLUE TEE CORP. TO CONFIRMATION OF
SECOND AMENDED PLAN OF REORGANIZATION OF
<u>PEABODY ENERGY CORPORATION AND RELATED DEBTORS</u>**

Blue Tee Corp. ("<u>Blue Tee</u>"), a creditor and party-in-interest, through its undersigned counsel,

hereby objects, pursuant to 11 U.S.C. §§ 1128(b), 1129, and 365 and Rule 3020 of the Federal Rules

of Bankruptcy Procedure, on the limited bases described herein, to confirmation of the *Second*

*Amended Joint Plan of Reorganization of Debtors and Debtors-in-Possession* [Docket No. 2229] (the

"<u>Plan</u>") filed by the Debtors[1] on or about January 27, 2017, as amended and supplemented.

<u>**OVERVIEW OF BLUE TEE'S POSITION**</u>

As will be discussed, Blue Tee, Peabody Energy Corporation ("<u>PEC</u>"), Gold Fields Mining,

LLC ("<u>Gold Fields</u>") (a subsidiary of PEC formerly known as "Gold Fields Mining Corp."), and

Global Energy Finance LLC ("<u>GEF</u>") are parties to a Settlement Agreement dated March 16, 2011

(the "<u>2011 Settlement Agreement</u>"), a prepetition agreement that has been designated by the Debtors

as an Executory Contract to be assumed in connection with confirmation of the Plan and ultimately,

assigned to the Gold Fields Liquidating Trust.  As stated in its previously filed *Limited Objection to*

*Notice Regarding (A) Executory Contracts and Unexpired Leases to be Assumed or Assumed and*

---

[1] Capitalized terms not defined herein shall have the meaning ascribed in the Plan.

*Assigned Pursuant to Section 365 of the Bankruptcy Code, (B) Amounts Required to Cure Defaults Under Such Contracts and Leases and (C) Related Defaults* [Docket No. 2558] (the "Assumption Objection"), Blue Tee supports assumption of the 2011 Settlement Agreement and of the corresponding obligations, generally.  To the extent that assumption and assignment is to be effected through the Plan, however, confirmation should be conditioned on PEC and Gold Fields expressly demonstrating, as is required by 11 U.S.C. § 365(b)(1), that they will cure, or provide adequate assurance that they will timely cure any existing defaults under the 2011 Settlement Agreement, and separately provide adequate assurance of future performance under the 2011 Settlement Agreement by the Gold Fields Liquidating Trust, as the proposed assignee thereof.  In its present form, the Plan fails to comply with all applicable provisions of the Bankruptcy Code, primarily, 11 U.S.C. § 365, and cannot be confirmed under 11 U.S.C. § 1129(a).  The Plan is likewise unconfirmable on account of the Debtors' attempt to realize value from certain of the Gold Fields Policies that are owned by Blue Tee despite the Debtors' failure to indemnify Gold Fields for Blue Tee Liabilities (as defined below) insured under such Policies, and failure to provide adequate means for implementation of the Plan with regards to the Gold Fields Debtors, all as described herein.

## CASE AND PROCEDURAL BACKGROUND

1.      PEC is a public corporation formed under the laws of Delaware, with headquarters in St. Louis, Missouri.  PEC, a holding company, is described by the Debtors as comprising "the world's largest private-sector coal company (by volume) with 26 active coal mining operations located in the United States and Australia."  PEC and 152 of its direct and indirect subsidiaries each filed a voluntary petition commencing these chapter 11 cases on or about April 13, 2016 (the "Petition Date").  The Debtors' cases are jointly administered for administrative purposes only.

2.      The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Pursuant to an order dated January 26, 2017, the Bankruptcy Court approved the Debtors' *Second Amended Disclosure Statement with Respect to Second Amended Joint Plan of Reorganization* [Docket No. 2231] (the "Disclosure Statement").

4.      In their Disclosure Statement, the Debtors describe the Plan as a "global and integrated compromise and settlement between the Debtors and the Creditor Co-Proponents," that will reduce the Debtors' debt burden by $6 billion, with the key tenets of the Plan memorialized in the Plan Support Agreement ("PSA") that was previously approved by the Court.  The Debtors have classified the Debtor entities into five different Debtor Groups, referred to as Group A (Peabody Energy Corporation), Group B (Encumbered Guarantor Debtors), Group C (Gold Fields Debtors), Group D (Peabody Holdings (Gibraltar) Limited), and Group E (Unencumbered Debtors).  Claims and Interests within each Debtor Group are classified in up to 12 Classes.

5.       The Debtors are presently soliciting votes towards the Plan, and a hearing regarding confirmation of the Plan is currently scheduled for March 16, 2017 at 9:00 A.M.

**ASSUMPTION PROCEDURES**

6.      The treatment of Executory Contracts and Unexpired Leases is set forth in Article III of the Plan.  Specifically, Article III.A.1 of the Plan states that:

> Except as otherwise provided in the Plan, in any contract, instrument, release or other agreement or document entered into in connection with the Plan or in a Final Order of the Bankruptcy Court, or as requested in any motion Filed on or prior to the Effective Date, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the applicable Debtor or Debtors will assume, or assume and assign, as indicated, each Executory Contract or Unexpired Lease listed on Exhibit III.A.1; provided, however, that the Debtors and the Reorganized Debtors reserve the right, at any time on or prior to the Effective Date, to amend Exhibit III.A.1 to:  (a) delete any Executory Contract or Unexpired Lease listed therein, thus providing for its

rejection pursuant to Section III.B; (b) add any Executory Contract or Unexpired Lease thereto, thus providing for its assumption, or assumption and assignment, pursuant to this Section III.A.1; or (c) modify the amount of any Cure Amount Claim.  The Debtors and the Reorganized Debtors reserve the right, at any time until the date that is 30 days after the Effective Date, to amend Exhibit III.A.1 to identify or change the identity of the Reorganized Debtor or other Person that will be an assignee of an Executory Contract or Unexpired Lease….

*Plan*, Art. III.A.1, p. 37.

7.      The Confirmation Order will "constitute an order of the Bankruptcy Court approving the assumption (including any related assignment resulting from the Restructuring Transactions or otherwise) of Executory Contracts and Unexpired Leases pursuant to Section III.A as of the Effective Date…" *Plan,* Art. III.A.3.

8.      The Plan further provides that "Cure Amount Claims" will be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, "at the option of the applicable Debtor or Reorganized Debtor:  (a) by payment of the Cure Amount Claim in Cash on the Effective Date; or (b) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease." *Plan,* Art. III.A.4.

### THE SUBJECT CONTRACTS AND PROPOSED PLAN TREATMENT THEREOF

9.      As is described more extensively in its Proofs of Claim [Nos. 5548 and 5549], Blue Tee is the successor-in-interest to "Blue Tee Acquisition Corp.", an entity formed in or about 1985 to participate in a leveraged buy-out of the non-mining assets of Gold Fields American Industries ("GFAI"), then a subsidiary of Gold Fields Acquisition Corp. ("GFAC") (the "1985 Transaction").  GFAI was the corporate successor to American Zinc, Lead & Smelting Company, later known as American Zinc Company and Azcon Co. (collectively, "American Zinc").  At the time of the 1985 Transaction, through a Reorganization Agreement dated December 9, 1985 (the "1985 Agreement"), Blue Tee acquired certain insurance policies that had been purchased by American Zinc, and GFAC agreed to indemnify Blue Tee and its past and present employees,

4

agents, directors and shareholders against "Environmental Claims," which were defined as "any claim based upon, arising out of or otherwise in respect of historical mining operations of GFAI and the Subsidiaries," which included American Zinc (the "Environmental Liabilities").

10.     On or about March 11, 1993, Blue Tee and GFAC entered into a written agreement concerning insurance rights relating to the Environmental Liabilities, "made as of the 9th day of December, 1985," (the "Understanding and Agreement"), as later supplemented.  Through the Understanding and Agreement, Blue Tee assigned to GFAC all claims that Blue Tee held against its insurance companies under its insurance policies in respect of "relevant Environmental Claims and Relevant Losses," which included the Environmental Liabilities, as well as claims against third-parties for contribution relating to those liabilities.[2]  GFAC was expressly subrogated to claims or rights that Blue Tee had against insurance companies and under the insurance policies solely with regard to environmental claims defended by GFAC or loss paid by GFAC.

11.     Through a series of corporate transactions not related to or facilitated by Blue Tee in any way, GFAC, then known as "Peabody Investments" ("PII") and a subsidiary of The Energy Group plc ("TEG"), sold Gold Fields (then known as "Gold Fields Mining Corp.") to P&L Coal Holdings, Inc. ("P&L Coal"), and the parties and their corporate parents entered into written agreements providing for indemnification of claims brought against each other following the transaction.  At that time, PII, as successor to GFAC, through an agreement dated October 19, 1998 (the "October 1998 Agreement"), assigned to Gold Fields the insurance rights that GFAC had or would have relating to the Environmental Liabilities and Gold Fields agreed to "assume…the obligations of GFAC to Blue Tee under the Understanding and Agreement and its supplements."  Gold Fields became a subsidiary of P&L, with the latter becoming PEC; PII later

_____

[2] A list of "Relevant Environmental claims" as of execution of the Understanding and Agreement was attached as an appendix thereto, as was subsequently amended.

merged into and was survived by GEF.  The 1985 Agreements remained in full force and effect at all times, in favor of Blue Tee.

12.    After PEC and Gold Field's unsuccessful attempt to limit its separate obligation to indemnify GFAC's corporate successors for Environmental Liabilities asserted by Blue Tee against GFAC (or its successors) under the 1985 Agreement in a case captioned *Global Energy Finance LLC v. Peabody Energy Corp., Gold Fields Mining LLC, and Blue Tee Corp.,* C.A. No. 08C-10-129 RRC (Delaware Superior Court, New Castle County), representatives of GEF, Blue Tee, PEC and Gold Fields achieved a global resolution of all claims and issues among them as embodied in the 2011 Settlement Agreement.[3]

13.    Generally, through the 2011 Settlement Agreement, PEC and Gold Fields (defined as the "Peabody Parties") agreed to "jointly and severally assume, irrevocably and for all time, all past, present, and future liabilities" of Blue Tee with respect to "Blue Tee Liabilities."  Blue Tee Liabilities are defined to include, among other claims, claims for indemnification of Environmental Liabilities arising out of, or otherwise in respect of historical mining operations of American Zinc, including claims that had previously been tendered by Blue Tee to GFAC for indemnification pursuant to the 1985 Agreement (the "Blue Tee Liabilities").

14.    Through Paragraph 11 of the 2011 Settlement Agreement, the parties agreed that: "All existing and enforceable agreements between or among two or more of the Parties shall remain in effect," specifically including the October 1998 Agreement, the agreement through which GFAC assigned its rights with regard to insurance policies under the Understanding and Agreement to Gold Fields.  The 1985 Agreement and the Understanding and Agreement were both attached as exhibits to the 2011 Settlement Agreement, as well.

---

[3] To the extent that any summary of the terms and effect of the 2011 Settlement Agreement is inconsistent with the 2011 Settlement Agreement, the terms of the 2011 Settlement Agreement prevail.

15.     Through a separate exhibit to the 2011 Settlement Agreement, the Supplemental Indemnification Agreement dated March 16, 2011 (the "Supplemental Agreement") (collectively with the 2011 Settlement Agreement, the "2011 Agreements"), the Peabody Parties agreed to continue to, at their sole expense, assume the defense of, defend, manage, negotiate and settle Blue Tee Liabilities; monitor, oversee and implement any injunctive relief, including any investigation or remediation of any kind; and otherwise handle any and all third-party claims relating to Blue Tee Liabilities. *Supplemental Agreement, Par. C.1.*  In addition, PEC absolutely, unconditionally and irrevocably agreed to guarantee the performance of Gold Fields' duties and obligations to Blue Tee.

16.     On February 17, 2017, the Debtors, pursuant to the Contract Procedures Order, filed Exhibit III.A.1 of the Plan [Docket No. 2445] (the "Assumption Schedule"), listing the 2011 Settlement Agreement as an Executory Contract to be assumed by way of the Plan, with the assignee "T.B.D.", and listing a Cure Amount of zero.  Following the timely filing by Blue Tee of the Assumption Objection, the Assumption Schedules were amended on or about March 3, 2017 [Docket No.  2571] (the "Amended Schedules") to indicate that upon assumption, the 2011 Settlement Agreement will be assigned to the Gold Fields Liquidating Trust, still listing a cure payment of zero.

17.     Meanwhile, the Debtors filed various exhibits to the Plan [Docket No. 2584], including the Gold Fields Liquidating Trust Agreement, as Exhibit I.A120 (the "Trust Agreement").  Schedule A to the Trust Agreement lists all the assets which constitute the Trust, and includes a number of insurance policies defined as the Gold Fields Policies.  The Trust Agreement provides no express language that the Gold Fields Policies are to be used solely for future performance and cure of the obligations of Gold Fields under the 2011 Settlement

Agreement, indicating only that the Trust Assets are to be liquidated to pay creditors under the Plan.

18.     While Blue Tee has the ability to separately object to the Amended Schedules on Section 365 bases, given that the Debtors appear to accomplish assumption and assignment through the Plan without complying with the precise statutory requirements set forth in Section 365, Blue Tee submits that the Plan must be amended to impose on the Debtors the conditions for assumption of the 2011 Agreements present in the Code and the pertinent agreements, and to provide for adequate means for the Plan's implementation once the Trust Assets are segregated from the Peabody corporate structure and from the financial resources available to the remaining Debtors.

## OBJECTION TO CONFIRMATION

19.     Section 1129 conditions confirmation of a plan of reorganization on the demonstration by a plan proponent that the plan complies with each element of Section 1129 by clear and convincing evidence.  See In re New Midland Plaza Assocs., 247 B.R. 877, 883 (Bankr. S.D. Fla. 2000).  Here, the Plan fails to comply with Section 365 with regard to treatment of Executory Contracts, rendering it un-confirmable, as well as implicates Section 1123(a)(5) and Section 541 principles.

A.     **The Plan Fails to Comply with Section 365's Conditions for Assumption and Assignment**

20.     Under the guise of assumption, the Debtors seek to do what Section 365 prohibits – have their proverbial cake, and eat it too.  They do so by attempting to accomplish the assumption by only one debtor the 2011 Settlement Agreement, Gold Fields, by extricating themselves from the terms and provisions of the Supplemental Agreement incorporated into the 2011 Settlement Agreement, and assigning the assumed 2011 Settlement Agreement to the Gold Fields Liquidating

8

Trust, a mere shell with only nominal cash assets – all in an effort to realize the cash proceeds of the Gold Fields Policies to pay the Debtors' general unsecured creditors, such as the Noteholder Claims. Such structure is prohibited by the Bankruptcy Code.

21. Section 365(a) of the Bankruptcy Code provides that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). It is a well-established principle that a contract may not be assumed in part--adopting the favorable aspects and rejecting the unfavorable aspects. See In re FBI Distrib. Corp., 330 F.3d at 36 (1st Cir. 2003) (quoting NLRB v. Bildisco & Bildisco, 465 U.S. 513, 531-32 (1984) (if a debtor-in-possession assumes an executory contract, it assumes the contract *cum onere*); In re Washington Capital Aviation & Leasing, 156 B.R. 167, 172 (Bankr. E.D. Va. 1993). When a debtor assumes a contract, therefore, it takes that agreement *cum onere*, subject to existing burdens. See In re Physiotherapy Holdings, Inc., 538 B.R. 225, 229 (D. Del. 2015) (citing In re Fleming Cos., 499 F.3d 300, 308 (3d Cir. 2007)); Dep't of Air Force v. Carolina Parachute Corp., 907 F.2d 1469, 1472 (4th Cir. 1990). Correspondingly, *all* of the contracts that comprise an integrated agreement must either be assumed or rejected, *since they all make up one contract*. See Philip Servs. Corp. v. Luntz (In re Philip Servs., Inc.), 284 B.R. 541, 547–48 (Bankr. D. Del. 2002), aff'd 303 B.R. 574 (D. Del. 2003)(emphasis added); In re Karfakis, 162 B.R. 719, 725 (Bankr. E.D. Pa. 1993).

22. Here, the parties' relationship involves the 2011 Agreements – one integrated, indivisible, agreement. State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Section 365. In re NewPage Corp., No. 13-52429, 2017 WL 571478 (Bankr. D. Del. Feb. 13, 2017) See also Empire State Bldg. Co. v. New York Skyline, Inc. (In re New York Skyline, Inc.), 432 B.R. 66, 77 (Bankr. S.D.N.Y.

9

2010); In re Buffets Holdings, Inc., 387 B.R. 115, 120 (Bankr. D. Del. 2008) (holding that divisibility is clearly a question of state law).  The 2011 Agreements are to be interpreted in accordance with Delaware law, without giving effect to the choice-of-law rules or principles of such law.

23.    Under Delaware law, "[w]here a contract is executed which refers to another instrument and makes the conditions of such other instrument a part of it, the two will be interpreted together as the agreement of the parties." Lipson v. Anesthesia Servs., P.A., 790 A.2d 1261, 1278 (Del. Super. Ct. 2001).  In this instance, from the language and purpose of the 2011 Agreements, it is apparent that each agreement supplemented the other, forming a single integrated transaction and contract.  See In re Universal Marketing, Inc., 541 B.R. 259, 282 (Bankr. E. D. Pa. 2015).  Indeed, Paragraph 12 of the Supplemental Agreement expressly provides for integration of the two 2011 Agreements, providing:

> **Construction with Settlement Agreement**. This Agreement has been negotiated, drafted and executed in conjunction with, and at the same time as, the Settlement Agreement; and the two agreements, accordingly, shall be construed together.

*Supplemental Agreement, Par. 12*.  The Supplemental Agreement also makes clear that its purpose is merely to delineate more clearly the process for tendering by Blue Tee to the Peabody Parties of claims constituting Blue Tee Liabilities, stating that: "The Peabody Parties and Blue Tee wish to enter into this Supplemental Indemnification Agreement in order to provide further clarity and details with respect to the manner in which the Peabody Parties shall discharge their obligations to manage, pay for and otherwise be responsible for the Blue Tee Liabilities pursuant to, and as set forth in, the Settlement Agreement."  *Id. at Par. E.*

24.    "Contracts are to be interpreted as written, and effect must be given to their clear and unambiguous terms." SV Inv. Partners, LLC v. ThoughtWorks, Inc., 7 A.3d 973, 983 (Del. Ch. 2010).  Given that the parties intended for the 2011 Agreements to be integrated and treated

10

as one contract among Peabody, Gold Fields, and Blue Tee, divisibility of the 2011 Agreements cannot be accomplished through Section 365.  See In re United Air Lines, Inc., 453 F.3d 463, 468, 470 (7th Cir. 2006) (applying Colorado law and concluding that agreement to lease airport space and to repay bond issue for building on that space were not independent agreements); In re Holland Enters., Inc. 25 B.R. 301 (Bankr. E.D.N.C. 1982); In re Buffets Holdings Inc., 387 B.R. 115 (Bankr. D. Del. 2008); In re T & H Diner, Inc., 108 B.R. 448 (D.N.J. 1989).

25.    With the 2011 Agreements not being divisible, assumption of the 2011 Settlement Agreement necessarily includes assumption of each of the provisions and obligations of the 2011 Settlement Agreement as well as the Supplemental Agreement.  The impact is to impose significant obligations on *PEC – not merely Gold Fields* – given that, among other conditions, "PEC shall have *full responsibility and liability for managing and paying for the Blue Tee Liabilities, and indemnifying Blue Tee*, and holding it harmless, with respect to the Blue Tee Liabilities," and even if PEC elects to delegate responsibility for handling such claims and process to an affiliate, "*PEC at all times shall remain responsible and liable* for managing and paying for the Blue Tee Liabilities, and indemnifying Blue Tee, and holding it harmless, with respect to the Blue Tee Liabilities, in accordance with the provisions of this Supplemental Indemnification Agreement, the Settlement Agreement, and/or the referenced prior agreements."  *Supplemental Agreement, Par. 5* (emphasis added).

26.    Despite this, the Debtors propose that the 2011 Agreements be assumed only by Gold Fields, with a cure cost of "zero," and that following assumption, *only the Gold Fields Liquidating Trust* bears responsibility for the Blue Tee Liabilities with the Plan providing that "holders of Allowed Claims against any Gold Fields Debtor will have recourse solely to the assets of the Gold Fields Liquidating Trust."  *Plan, Art. IV(J)(3)(b).*

11

27.     Initially, as stated in Blue Tee's pending Assumption Objection, before assumption can be accomplished by any Debtor, the Debtors must first "cure" or provide adequate assurance that they will cure all defaults existing under the 2011 Agreements, defaults described by the Debtors as follows:

> Although Gold Fields has paid remediation costs as a result of the indemnification obligations, Blue Tee has been identified as a potentially responsible party ("PRP") at six designated national priority list ("NPL") sites under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and similar statutes. Of these sites where Blue Tee has been identified as a PRP, neither Gold Fields nor PEC is a party to any cleanup orders relating to the operations of Blue Tee's predecessor. In addition to the NPL sites, Blue Tee has been named a PRP at a minimum of twelve other sites, where Gold Fields has either paid remediation costs or settled the environmental claims on behalf of Blue Tee. As a result of filing the Chapter 11 Cases, Gold Fields has now stopped paying these remediation costs.

*Disclosure Statement*, p. 58-59.

28.     Sequentially, after cure and assumption occurs in accordance with Section 365(b), an assumed contract may be assigned under 365(f) – but only if, under Section 365(f)(2)(B), the assignor makes a showing of "adequate assurance of future performance by the assignee of such contract" – here, the Gold Fields Liquidating Trust.  See 11 U.S.C. § 365(f)(2)(B); In re Food Barn Stores, Inc., 107 F.3d 558, 562 (8th Cir. 1997).

29.     Although there is no single test for the determination of whether such "adequate assurance of future performance" has been given, courts have considered a range of factors, including "the financial ability to perform the contract; the general economic climate; the existence of a guarantee; the reputation of the party seeking to assume responsibility for the contract; and past dealings between the parties."  See In re Res. Tech. Corp., 624 F.3d 376, 383-84 (7th Cir. 2010) (citing Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985)); In re Liljeberg Enterprises, Inc., 304 F.3d 410, 438–39 (5th Cir. 2002). Where the debtor cannot

make a showing that the proposed assignee is at least more likely than not capable of meeting the

contractual obligations, assumption and assignment is not permissible.  See In re Res Tech Corp.,

624 F.3d at 384 (affirming denial of motion to assume and assign, and citing proposed assignee's

lack of independent assets or revenue stream, complete dependence on other entities for capital,

and failure to explain how it would obtain the funds necessary to perform the debtor's obligations

under the contracts).

30.     In this instance, the Debtors candidly state in their Disclosure Statement that:

> The Debtors believe that the Gold Fields Debtors *have limited assets, minimal*
> *insurance recoveries and significant environmental and other liabilities*.  With
> respect to assets, the Gold Fields Debtors have, among other things, two pieces of
> real property assets comprising a few acres of land, the Historic Gold Fields
> Policies, under $1.0 million in cash, an interest in the litigation captioned as Blue
> Tee Corp. v. Xtra Intermodal, Inc. Case No. 13- 00830 pending in the United States
> District Court for the Southern District of Illinois and contribution claims regarding
> environmental liabilities against other potentially responsible parties.

*Disclosure Statement*, *p. 16* (emphasis added).

31.     The Environmental Protection Agency ("EPA"), the United States Department of

Interior, and several state environmental agencies (collectively, the "Agencies"), have filed proofs

of claim against PEC and Gold Fields asserting claims for environmental remediation costs and

natural resource damages associated with former mining operations of American Zinc conducted

on the Blue Tee Sites.  The Agencies have asserted claims against the Debtors as third-party

beneficiaries of the 2011 Agreements, seeking to enforce the Debtors' obligations to indemnify

Blue Tee for the cost of paying Blue Tee Liabilities, in the collective amount of $1,239,530,373.63

(the "Agencies' Claims").

32.     While Blue Tee does not concede that the amount of the Agencies' Claims

represents obligations for which Blue Tee is primarily liable, it is clear that the amount of Blue

Tee Liabilities potentially subject to indemnification and payment upon assumption of the 2011

Agreements far exceeds the limited scope of assets the Debtors propose will fund the Gold Fields Liquidating Trust, rendering Blue Tee without adequate assurance of financial performance and preventing assignment of the 2011 Agreements without more – significantly more.  Failure to demonstrate adequate assurance of future performance while attempting to secure assumption and assignment of the 2011 Agreement through the Plan renders the Plan unconfirmable.

      B.      **The Plan Contains Inadequate Means for Implementation Pertaining to the Gold Fields Debtors**.

33.      In order for the Plan to be confirmed, the Debtors must make "adequate means for implementation" of the Plan under Section 1123(a)(5). 11 U.S.C. § 1123(a)(5).

34.      While all Debtors other than the Gold Fields Debtors are to be reorganized and remain in existence, in order to satisfy and discharge claims against the Gold Fields Debtors, the Debtors propose to transfer all assets of the Gold Fields Debtors to the Gold Fields Liquidating Trust, and to issue shares in that Trust to holders of claims against the Gold Fields Debtors on a pro rata basis.  As set forth in the Plan and the Trust Agreement, the Trust will be administered by a yet-to-be identified trustee whose fees and expenses while serving in that capacity for an undefined time period, along with distributions to creditors, are exclusively funded by Trust Assets.

35.      Based merely on information set forth in the Disclosure Statement and the treatment afforded to creditors of other Debtors under the Plan, the purpose of the creation of the Gold Fields Liquidating Trust appears to be to separate certain legacy environmental liabilities and contaminated real property from the active mining assets of the Reorganized Debtors and their assets.[4]  One method to accomplish this goal is the purported transfer to the Gold Fields

---

[4] This intent is made clear from the scope of the discharge, properly carving out an exception for enforcement of environmental claims arising under any Environmental Law to which any Reorganized Debtor is subject to the extent that it is an owner, lessee, permittee or operator of real property *after the Effective Date*.  *Plan, p. 60.*

Liquidating Trust of contaminated real property owned by Gold Fields in Caney, Kansas formerly operated by American Zinc that was acquired by Gold Fields under a 1999 Administrative Order, real property that Blue Tee understands contains smelter waste, debris, and metals-contaminated soils that the EPA has alleged are leaching into area groundwater and will potentially cause harm to surrounding residents if left on site, without proper maintenance.

36.     While shifting such legacy costs and claims to the Gold Fields Liquidating Trust, the Debtors leave the Gold Fields Liquidating Trustee with very little ability to implement the more general purposes of the Gold Fields Liquidating Trust, let alone address imminent threats to public safety occurring on real property.  The only unrestricted Gold Fields Liquidating Trust Asset appears to be cash on deposit with PNC Bank, N.A. with an approximate balance of $767,717.10. *See Gold Fields Liquidating Trust Agreement*, Ex. I.A.120. All other cash is apparently held in three Trust Accounts that were created exclusively for funding of remediation costs at three distinct parcels of land pursuant to three separate Consent Orders entered into with the EPA.  *Id.*  These assets are restricted, and to the extent are capable of being "transferred" to the Gold Fields Liquidating Trust, such transfer does not remove any restrictions of the Trusts or Consent Decrees. See In re Cent. Med. Ctr., Inc., 122 B.R. 568, 574 (Bankr. E.D. Mo. 1990) (where funds are held in trust or earmarked for a given class of beneficiaries, the proceeds of the funds are not property of the estate.).

37.     The remaining Trust Assets consist of the Gold Fields Policies, with unknown liquid value for the benefit of creditors of the Gold Fields Debtors or undescribed coverage availability.  In any event, among the Gold Fields Policies are a series of insurance policies that were originally purchased by American Zinc or other of Blue Tee's corporate successors which are exclusively owned by Blue Tee (the "Blue Tee Policies") and that are the subject of a pending

declaratory judgment action, captioned *Century Indemnity Company and Pacific Employers Insurance Company v. Blue Tee Corporation; Gold Fields Mining, LLC; Arid Operations, Inc.; Gold Fields Chile, LLC; and Gold Fields Ortiz, LLC*, Adv. Pro. No. 17-04010 (the "Insurance Litigation").

38.     The Debtors are without the ability to transfer these policies outright to the Gold Fields Liquidating Trust through the Plan or otherwise.  Compelling non-debtor third parties to transfer assets and contract rights is beyond the scope of the authority afforded by the Bankruptcy Code to the Debtors or to the Bankruptcy Court – the Bankruptcy Code speaks only to those assets and rights that are property of the estate, as defined in 11 U.S.C. § 541.  For instance, within Section 1123(b)(3)(A), a plan may provide for "the settlement or adjustment of any claim or interest *belonging to the debtor or the estate*," and under Section 1123(b)(4), may provide for the "sale of all or substantially all of the *property of the estate*, and the distribution of the proceeds of such sale among holders of claims or interests."

39.     No matter how broad the definition of property of the estate and how expansive the authority afforded a debtor and a bankruptcy court over that property of the estate, nowhere does the Bankruptcy Code afford either a debtor or court the authority to compel a non-debtor such as Blue Tee to convey legal and equitable title that it owns.  See In re Cent. Med. Ctr., Inc., 122 B.R. at 573 ("[A] debtor may not use Section 541(a) to divest another of property to which they rightfully have title."); United States v. Whiting Pools, Inc., 462 U.S. 198, 205, n.8 (1983) (Section 541 is not limitless, and expressly excludes the property of third parties in which the debtor holds only "some minor interest such as a lien or bare legal title.").  Blue Tee owns the Blue Tee Policies.

16

40.     Whatever rights that PEC and Gold Fields hold with regard to the Blue Tee Policies are defined by the limits of the parties' historic contracts.  Pursuant to the Understanding and Agreement, Blue Tee assigned to GFAC "all claims that Blue Tee has or hereafter shall have against any of the Insurance Companies, under any of the Insurance Policies or any theory of common law or statutory provisions, in respect of any and all Relevant Environmental Claims and Relevant Losses."  Blue Tee further agreed that GFAC "shall be, and is, subrogated to (a) any and all claims or rights that Blue Tee has or hereafter shall have against any of the Insurance Companies, under any of the Insurance Policies…in respect of any Relevant Environmental Claim that is defended by GFAC, or Relevant Loss that is paid or satisfied by GFAC . . . ."

41.     These same rights against insurance companies that issued the Blue Tee Policies respecting environmental claims were transferred from GFAC to Gold Fields pursuant to the October 1998 Agreement at the time Gold Fields agreed to assume GFAC's obligations to Blue Tee under the 1986 Agreement, and were re-stated through the 2011 Agreements.  Any property rights that Gold Fields holds, though, *pertain only to claims that Gold Fields has agreed to provide indemnity for and that are assumed or paid by Gold Fields*.

42.     As described above, however, Gold Fields and Peabody have each made clear to Blue Tee and the Agencies that they are no longer willing to honor the indemnification obligations owing to Blue Tee on account of Blue Tee Liabilities even if the 2011 Agreements are assumed. Barring a ruling in Gold Fields' favor in the Insurance Litigation, therefore, Gold Fields' rights to assert claims under the Blue Tee Policies are precluded for so long as the indemnification provisions have been materially breached.

### RESERVATION OF RIGHTS

17

To the extent that the Debtors remove the 2011 Settlement Agreement from the Assumption Schedule following filing of this Limited Objection, Blue Tee reserves the right to assert additional bases warranting denial of confirmation based on the treatment of Blue Tee's corresponding rejection damages claims against PEC and Gold Fields.

## **CONCLUSION**

For the reasons set forth above, confirmation of the Plan should be denied until remedied to comply with Section 365 and 1123(a)(5).

Respectfully submitted,

BLUE TEE CORP.,

By:＿＿＿/s/ Robert J. Labate＿＿＿＿＿＿＿＿
One of Its Attorneys

Robert J. Labate (*pro hac vice*)
Richard A. Bixter, Jr. (*pro hac vice*)
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th Floor
Chicago, Illinois  60603
(312) 263-3600
robert.labate@hklaw.com
richard.bixter@hklaw.com

and

Lynne B. Xerras, Esq. Mass. Bar 132441 (admitted pro hac vice)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617)523-2700
lynne.xerras@hklaw.com

Dated:  March 9, 2017

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 9, 2017, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send electronic notification to all CM/ECF participants. I further certify that on March 9, 2017, a true and correct copy of the foregoing instrument will be furnished via electronic mail and U.S. Mail to all parties listed on the following matrix:

| Name | Firm / Address / Phone | Email Address |
|------|------------------------|---------------|
| Heather Lennox | Jones Day<br>North Point<br>901 Lakeside Avenue<br>Cleveland, OH  44114<br>216.586.7111 | hlennox@jonesday.com |
| Amy Edgy | Jones Day<br>51 Louisiana Avenue, N.W.<br>Washington, DC  20002-2113<br>202.879.3687 | aedgy@jonesday.com |
| Daniel T. Moss | Jones Day<br>51 Louisiana Avenue, N.W.<br>Washington, DC  20002-2113<br>202.879.3794 | dtmoss@jonesday.com |
| Steven N. Cousins | Armstrong Teasdale LLP<br>7700 Forsyth Blvd., Suite 1800<br>St. Louis, MO  63105<br>314.342.8033 | scousins@armstrongteasdale.com |
| Susan K. Ehlers | Armstrong Teasdale LLP<br>7700 Forsyth Blvd., Suite 1800<br>St. Louis, MO  63105<br>314.342.8078 | sehlers@armstrongteasdale.com |
| Leonora S. Long<br>Trial Attorney | Office of the U.S. Trustee<br>111 S. 10th Street, Suite 6.353<br>St. Louis, MO  63102<br>(314) 539-2980<br>(314) 539-2990 (Fax) | Leonora.Long@usdoj.gov |
| Paul A. Randolph<br>Assistant U.S. Trustee | Office of the U.S. Trustee<br>111 S. 10th Street, Suite 6.353<br>St. Louis, MO  63102<br>(314) 539-2984<br>(314) 539-2990 (Fax) | Paul.A.Randolph@usdoj.gov |

| Name | Firm / Address / Phone | Email Address |
|------|------------------------|---------------|
| Lorenzo Marinuzzi | Morrison & Foerster LLP<br>250 West 55th Street<br>New York, NY  10019-9601<br>(212) 468-8045<br>(212) 468-7900 (Fax) | lmarinuzzi@mofo.com |
| Jonathan I. Levine | Morrison & Foerster LLP<br>250 West 55th Street<br>New York  10019-9601<br>(212) 468-8012<br>(212) 468-7900 (Fax) | jonlevine@mofo.com |
| Jennifer L. Marines | Morrison & Foerster LLP<br>250 West 55th Street<br>New York  10019-9601<br>(212) 336-4491<br>(212) 468-7900 (Fax) | jmarines@mofo.com |
| Daniel J. Harris | Morrison & Foerster LLP<br>250 West 55th Street<br>New York  10019-9601<br>(212) 336-4292<br>(212) 468-7900 (Fax) | dharris@mofo.com |
| Melissa A. Hager | Morrison & Foerster LLP<br>250 West 55th Street<br>New York  10019-9601<br>(212) 336-4324<br>(212) 468-7900 (Fax) | mhager@mofo.com |
| Sherry K. Drei=sewerd | Spencer Fane<br>1 North Brentwood Blvd., Suite 1000<br>St. Louis, Missouri  63105<br>314.333.3934<br>314.862.4656 (Fax) | sdreisewerd@spencerfane.com |
| Eric C. Peterson | Spencer Fane<br>1 North Brentwood Blvd., Suite 1000<br>St. Louis, Missouri  63105<br>314.333.3937<br>314.862.4656 (Fax) | epeterson@spencerfane.com |
| Ryan C. Hardy | Spencer Fane<br>1 North Brentwood Blvd., Suite 1000<br>St. Louis, Missouri  63105<br>314.333.3922<br>314.862.4656 (Fax) | rhardy@spencerfane.com |
| Scott T. Jarboe | 720 Olive Street | |

| Name | Firm / Address / Phone | Email Address |
|------|------------------------|---------------|
| | Saint Louis, MO 63101<br>(314) 345-6000 | |
| Scott J. Goldstein | Spencer Fane<br>1000 Walnut Street, Suite 1400<br>Kansas City, Missouri 64106<br>816.292.8218<br>816.474.3216 (Fax) | sgoldstein@spencerfane.com |
| Lisa A. Epps | Spencer Fane<br>1000 Walnut Street, Suite 1400<br>Kansas City, Missouri 64106<br>816.292.8881<br>816.474.3216 (Fax)<br>816.582.5474 (Cell) | lepps@spencerfane.com |
| Andrea M. Chase | Spencer Fane<br>1000 Walnut Street, Suite 1400<br>Kansas City, Missouri 64106<br>816.292.8279<br>816.474.3216 | achase@spencerfane.com |
| Damian S. Schaible | Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>212 450 4580<br>212 701 5580 (Fax) | damian.schaible@davispolk.com |
| Angela M. Libby | Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>212 450 4433<br>212 607 7263 (Fax) | angela.libby@davispolk.com |
| Darren S. Klein | Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>212 450 4725<br>212 701 5725 (Fax) | darren.klein@davispolk.com |
| James I. McClammy | Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>(212) 450-4584<br>212 701 5725 (Fax) | james.mcclammy@davispolk.com |
| Benjamin Kaminetsky | Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>212 450 4259 | ben.kaminetzky@davispolk.com |

| Name | Firm / Address / Phone | Email Address |
|------|------------------------|---------------|
| | 212 701 5259 (Fax) | |
| Lloyd A. Palans | Bryan Cave LLP<br>One Metropolitan Square<br>211 North Broadway, Suite 3600<br>St. Louis, MO  63102-2750<br>314 259 2301<br>314 552 8301 (Fax) | lapalans@bryancave.com |
| Brian C. Walsh | Bryan Cave LLP<br>One Metropolitan Square<br>211 North Broadway, Suite 3600<br>St. Louis, MO  63102-2750<br>314 259 2717<br>314 552 8301 (Fax) | Brian.walsh@bryancave.com |
| Laura Uberti Hughes | Bryan Cave LLP<br>One Metropolitan Square<br>211 North Broadway, Suite 3600<br>St. Louis, MO  63102-2750<br>314 259 2801<br>314 552 8301 (Fax) | Laura.hughes@bryancave.com |
| Jay M. Goffman | Skadden Arps<br>4 Times Square<br>New York, NY  10036<br>212.735.2120<br>917.777.2120 (Fax) | jay.goffman@skadden.com |
| Shana A. Elberg | Skadden Arps<br>4 Times Square<br>New York, NY  10036<br>212.735.3882<br>917.777.3882 (Fax) | shana.elberg@skadden.com |
| John Young, Jr. | Stinson Leonard Street LLP<br>7700 Forsyth Blvd., Suite 1100<br>St. Louis, MO  63105-1821<br>314.719.3049<br>314.259.3979 (Fax)<br>314.591.2547 (Cell) | john.young@stinson.com |
| Jordan J. Feist | Woods, Fuller, Shultz & Smith P.C.<br>300 S. Phillips Avenue, Suite 300<br>Sioux Falls, SD  57104<br>(605) 336-3890<br>(605) 339-3357 (Fax) | Jordan.Feist@woodsfuller.com |

| Name | Firm / Address / Phone | Email Address |
|---|---|---|
| Kenneth H. Eckstein | Kramer Levin Naftalis & Frankel LLP<br>1177 Avenue of the Americas<br>New York, New York  10036<br>212.715.9229<br>212.715.8229 (Fax) | keckstein@kramerlevin.com |
| Andrew M. Dove | Kramer Levin Naftalis & Frankel LLP<br>1177 Avenue of the Americas<br>New York, New York  10036<br>212.715.9483<br>212.715.8000 (Fax) | adove@kramerlevin.com |
| Stephen D. Zide | Kramer Levin Naftalis & Frankel LLP<br>1177 Avenue of the Americas<br>New York, New York  10036<br>212.715.9492<br>212.715.8163 (Fax) | szide@kramerlevin.com |
| P. Bradley O'Neill | Kramer Levin Naftalis & Frankel LLP<br>1177 Avenue of the Americas<br>New York, New York  10036<br>212.715.7583<br>212.715.8163 (Fax) | boneill@kramerlevin.com |
| Stephen E Hessler | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022-4611<br>212-446-4974<br>212-446-4900 (Fax) | stephen.hessler@kirkland.com |
| Melissa N. Koss | Kirkland & Ellis LLP<br>555 California Street<br>San Francisco, California  94104<br>415-439-1655<br>415-439-1500 (Fax) | melissa.koss@kirkland.com |
| Brian Ford | Kirkland & Ellis LLP<br>555 California Street<br>San Francisco, California  94104<br>415-439-1823<br>415-439-1500 (Fax) | Brian.ford@kirkland.com |
| Gregory D. Willard | Doster, Ullom & Boyle, LLC<br>16090 Swingley Ridge Road, Suite 620<br>Chesterfield, Missouri  63017<br>636-532-0042 | gwillard@dubllc.com |

| Name | Firm / Address / Phone | Email Address |
|---|---|---|
| John G. Boyle | Doster, Ullom & Boyle, LLC<br>16090 Swingley Ridge Road, Suite 620<br>Chesterfield, Missouri 63017<br>636-532-0042 | JBoyle@dubllc.com |
| Alec L. Moen | Doster, Ullom & Boyle, LLC<br>16090 Swingley Ridge Road, Suite 620<br>Chesterfield, Missouri 63017<br>636-532-0042 | amoen@dubllc.com |
| Howard S. Steel | Brown Rudnick LLP<br>7 Times Square<br>New York, NY 10036<br>212.209.4917<br>212.938.2806 | hsteel@brownrudnick.com |
| Spencer P. Desai | Desai Eggmann Mason LLC<br>7733 Forsyth Blvd., Suite 2075<br>Clayton, Missouri 63105<br>(314)- 854-8678 | sdesai@demlawllc.com |
| Danielle Suberi | Desai Eggmann Mason LLC<br>7733 Forsyth Blvd., Suite 2075<br>Clayton, Missouri 63105<br>314-881-0800 | dsuberi@demlawllc.com |
| Thomas H. Riske | Desai Eggmann Mason LLC<br>7733 Forsyth Blvd Suite 2075<br>Clayton, Missouri 63105<br>314-881-0800<br>314-881-0820 (Fax) | triske@demlawllc.com |
| Douglas E. Spelfogel | Foley & Lardner LLP<br>90 Park Avenue<br>New York, NY 10016-1314<br>212.338.3566<br>212.687.2329 (Fax) | dspelfogel@foley.com |
| Richard J. Bernard | Foley & Lardner LLP<br>90 Park Avenue<br>New York, NY 10016-1314<br>212.338.3586<br>212.687.2329 (Fax) | rbernard@foley.com |

| Name | Firm / Address / Phone | Email Address |
|------|------------------------|---------------|
| Mark L. Prager | Foley & Lardner LLP<br>321 North Clark Street, Suite 2800<br>Chicago, IL  60654-5313<br>312.832.4503<br>312.832.4700 (Fax) | mprager@foley.com |
| Thomas A. Pitta | Emmet, Marvin and Martin, LLP<br>120 Broadway, 32nd Floor<br>New York, NY 10271<br>212.238.3148<br>212.238.3100 (Fax) | tpitta@emmetmarvin.com |
| Edward P. Zujkowski | Emmet, Marvin and Martin, LLP<br>120 Broadway, 32nd Floor<br>New York, NY 10271<br>212.238.3021<br>212.238.3100 (Fax) | ezujkowski@emmetmarvin.com |
| Brad McCormack | The Sader Law Firm<br>2345 Grand Boulevard, Ste. 2150<br>Kansas City, MO 64108<br>816.561.1818<br>816.561.1818 | bmccormack@saderlawfirm.com |

/s/ Robert J. Labate
Attorney

#49838096_v2