**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Peabody Energy Corporation, <u>et</u> <u>al</u>., | ) | Chapter 11 |
| | ) | Case No. 16-42529-399 |
| Reorganized Debtors. | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| Reorganized Peabody Energy Corporation, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| The County of San Mateo, individually and on | ) | |
| behalf of the People of the State of California; | ) | |
| The City of Imperial Beach, a municipal | ) | |
| corporation, individually and on behalf of the | ) | |
| People of the State of California; and | ) | |
| the County of Marin, individually and on | ) | |
| behalf of the People of the State of California, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION**

      This matter comes before me on the motion of Reorganized Peabody Energy Corporation (PEC)[1] requesting that I enter an order enforcing the discharge and injunction provisions set forth in the Debtors' Chapter 11 plan and confirmation order in respect to three complaints filed in California state courts. Specifically, PEC asks that I enter an order enjoining the Plaintiffs (defined below) from prosecuting their causes of action against PEC and requiring the Plaintiffs to dismiss those actions with prejudice. The Plaintiffs filed an objection, as amended (Amended Objection) to the motion. For the reasons stated, I grant PEC's motion.

---

[1] I use the term "PEC" to refer to both Reorganized Peabody Energy Corporation and Peabody Energy Corporation as it existed prior to the Effective Date (defined below).

-1-

**BACKGROUND AND FACTS**

On April 13, 2016, PEC and 153 of its affiliates (Debtors) filed petitions for relief under Chapter 11 of the Bankruptcy Code. On March 17, 2017, I entered an order confirming (Confirmation Order) the Debtors' second amended Chapter 11 plan (Plan). The Plan became effective on April 3, 2017 (Effective Date).

**The Complaints**

Less than four months after the Effective Date, the County of San Mateo; the City of Imperial Beach; and the County of Marin (Plaintiffs) filed three separate but nearly identical complaints (Complaints) in California state courts against "Peabody Energy Corp." and numerous major members of the fossil fuel industry.[2] The Complaints have been removed to federal court.

The voluminous Complaints (ranging from 263 to 267 paragraphs before the prayer for relief) name nearly forty defendants and mention PEC in only four numbered paragraphs. They allege that the Defendants are responsible for greenhouse gas emissions between 1965 and 2015. *See, e.g.,* San Mateo Complaint, ¶ 75 ("Defendants, through their extraction, promotion, marketing, and sale of their fossil fuel products, caused approximately 20% of global fossil fuel product-related $CO_2$ between 1965 and 2015, with contributions currently continuing unabated."); *Id.*, ¶ 7 ("Defendants are directly responsible for 227.6 gigatons of $CO_2$ emissions between 1965 and 2015, representing 20.3% of total emissions of that potent greenhouse gas during that period."). They also allege that greenhouse gas emissions have led to sea level rise and damages to the Plaintiffs' property and that by 2050 the emissions will lead to "extreme flooding" on California's Pacific coasts and rising sea levels in the Plaintiffs jurisdictions. Complaints, ¶¶ 7 and 8.

In the rare instances that PEC is mentioned specifically, the Complaints focus on PEC's conduct of exporting coal pre-Effective Date and allege that PEC continues exporting coal from California. They state that PEC "does and has done substantial fossil fuel product-related business in California, including exporting substantial volumes of coal through coal shipping terminals in California, particularly from the ports of Long Beach (Los

---

[2] As a whole, the Defendants named in the Complaints are, according to the Plaintiffs, "vertically integrated extractors, producers, refiners, manufacturers, distributors, promoters, marketers, and sellers of fossil fuel products." Complaints, ¶ 2.

Angeles County), Stockton (San Joaquin County), Richmond (Contra Costa County), and San Francisco." Complaints ¶ 22(b). And they allege that between 1997 and 2003, PEC "exported coal. . . through the Los Angeles Export Terminal. . . ." *Id.,* ¶ 22. In addition, the Plaintiffs complain that in 1991 PEC engaged in "a national climate change science denial campaign" and that PEC was "linked to . . . groups that undermine the scientific bases linking Defendants' fossil fuel products to climate change and sea level rise. . . ." Complaints, ¶¶ 118, 138; see also Complaints, ¶ 39. The Complaints also include allegations that PEC "continues to export coal out of California ports." Complaints, ¶ 22.

The Plaintiffs assert eight causes of action (Causes of Action, and as they pertain to PEC, PEC Causes of Action) against "Peabody Energy Corp." and the other defendants: (1) one count (First Cause of Action) for public nuisance on behalf of the People of the State of California; and (2) seven counts on behalf of either the County of San Mateo, the City of Imperial Beach, California or the County of Marin, for:

| Cause of Action | Tort |
| --- | --- |
| Second Cause of Action | public nuisance |
| Third Cause of Action | strict liability for failure to warn |
| Fourth Cause of Action | strict liability for design defect |
| Fifth Cause of Action | private nuisance |
| Sixth Cause of Action | negligence |
| Seventh Cause of Action | negligence for failure to warn |
| Eighth Cause of Action | trespass |

*See* San Mateo Complaint, ¶¶ 179-267; Imperial Beach Complaint, ¶¶ 176-264, Marin Complaint, ¶¶ 180-268.

There is one prayer for relief section in each Complaint, asking for the following relief for all Causes of Action "1. Compensatory damages in an amount according to proof; 2. Equitable relief to abate the nuisances complained of herein; 3. Reasonable attorneys' fees pursuant to California Code of Civil Procedure 1021.5 or otherwise; 4. Punitive damages; 5. Disgorgement of profits; 6. Costs of suit; and 7. For such and other relief as the court may deem proper." San Mateo Complaint, p. 98, Imperial Beach Complaint, p. 95, Marin Complaint, p. 99. In addition, the Complaints include statements concerning requested relief in the separate counts. Overall, the Plaintiffs state that they "seek[ ] to ensure that the parties responsible for sea level rise **bear the costs** of its impacts on the [City or

County], rather than Plaintiffs, local taxpayers or residents." San Mateo Complaint and Marin Complaint, ¶ 11, *see also* Imperial Beach Complaint, ¶ 11 (using similar language) (emphasis added).

**Applicable Plan and Confirmation Order Provisions Used to Resolve These Issues**

The interpretation of certain provisions of the Plan and Confirmation Order form the focus of the dispute before me, and I set forth below several relevant provisions of these documents.

**Discharge and Injunction Provisions:**

**a. Complete Satisfaction, Discharge and Release**

*Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims* (other than Intercompany Claims, except to the extent provided in the Restructuring Transactions) and termination of all Interests (other than Subsidiary Debtor Interests) *arising on or before the Effective Date*, including any interest accrued on Claims from and after the Petition Date. *Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date* and consistent with Exhibit IV.F.1 to the Plan: (a) *discharge the Debtors from all Claims or other Liabilities that arose on or before the Effective Date* and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, *whether or not* (i) *a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code,* (ii) *a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code* or (iii) *the holder of a Claim based on such debt has accepted the Plan*; and (b) terminate all Interests and other rights of holders of Interests in the Debtors other than Subsidiary Debtor Interests.

Plan, § V.E.2.a; Confirmation Order, ¶ 29 (emphasis added).

**b. Discharge and Termination**

In accordance with Section V.E.2.a, *except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date* and consistent with Exhibit IV.F.1 to the Plan, *of a discharge of all Claims and other debts and Liabilities*

> *against the Debtors* and a termination of all Interests and other rights of the holders of Interests in the Debtors (other than Subsidiary Debtor Interests), pursuant to, and solely to the full extent provided by, sections 524(a)(1), 524(a)(2) and 1141(d) of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtors or Reorganized Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest. For the avoidance of doubt, pursuant to section 1141(d)(3) of the Bankruptcy Code, the confirmation of the Plan does not discharge the Gold Fields Debtors.

Plan, § V.E.2.b; Confirmation Order, ¶ 29 (emphasis added).

> ***Except as specifically set forth in the Plan or this Order, Confirmation will, as of the Effective Date, pursuant to, and solely to the full extent provided by, sections 524 and 1141 of the Bankruptcy Code, discharge the Reorganized Debtors of and from all Claims and other debts and Liabilities***, in accordance with Section V.E.2 of the Plan, ***and no creditors shall have recourse against any Reorganized Debtor or any of their assets or property on account of such Claims and other debts and Liabilities***; provided, however, for the avoidance of doubt, pursuant to section 1141(d)(3) of the Bankruptcy Code, the confirmation of the Plan does not discharge the Gold Fields Debtors.

Confirmation Order, ¶ 30 (emphasis added).

**c. Injunction**

On the Effective Date, except as otherwise provided herein or in the Confirmation Order:

a. ***All Persons who have been, are or may be holders of (a) Claims*** or (b) Interests, ***shall be enjoined from taking any of the following actions against or affecting the Debtors, their Estates or assets or the Reorganized Debtors, or the respective assets or property thereof, with respect to such Claims*** or Interests (other than actions brought to enforce any rights or obligations under the Plan and appeals, if any, from the Confirmation Order):

    i.    ***commencing, conducting or continuing*** in any manner, directly or indirectly, ***any suit***, action or other proceeding of any kind ***against*** the Debtors, their Estates or Assets or ***the Reorganized Debtors***, or the respective assets or property thereof;

    ii.        enforcing, levying, attaching, collecting or otherwise ***recovering by any manner or means***, directly or indirectly, ***any judgment***, award, decree or order ***against*** the Debtors, their Estates or Assets or the ***Reorganized Debtors***, or the respective assets or property thereof .
. . .

Plan, § V.E.3.a; Confirmation Order, ¶ 22 (emphasis added).[3]

### EPA Settlement Provisions

This dispute concerns clarifying language added to the Debtors' Plan and Confirmation Order (and disclosed through the Debtors' disclosure statement) which was the subject of significant negotiations between the Debtors, the U.S. Environmental Protection Agency (EPA), the Department of the Interior, other governmental entities and many Indian Nations as part of a settlement in connection with the plan confirmation process (EPA Settlement). Section V.E.6.a.i of the Plan and Paragraph 24 of the Confirmation Order, providing the language added in connection with the EPA Settlement, are set forth in my detail in my discussion below.

### Relevant Definitions

### Definition of "Claim"

Section I.A.46 of the Plan defines the term "Claim" as "a claim, as defined in section 101(5) of the Bankruptcy Code, against a Debtor or its Estate." Plan, § I.A.46. Section 101(5) of the Bankruptcy Code defines "claim" as:

    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

    (B) ***right to an equitable remedy for breach of performance if such breach gives rise to a right to payment***, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (emphasis added).

---

[3] Paragraph 22 of the Confirmation Order says "assets for the Reorganized Debtors" rather than "assets or the Reorganized Debtors" as is set forth in the Plan.

-6-

**Definition of "Environmental Law"**

The definition of "Environmental Law" in § I.A.92 of the Plan is set forth in my discussion below.

**Definition of "Liabilities"**

Section I.A.144 of the Plan defines Liabilities as:

any and all ***Claims***, obligations, suits, judgments, damages, demands, debts, rights, ***Causes of Action***, and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, ***arising in law, equity or otherwise, that are based*** in whole or in part ***on any act, event, injury, omission, transaction, agreement, employment, exposure or other occurrence taking place on or prior to the Effective Date***.

Plan, § I.A.144 (emphasis added).

**Definition of "Reorganized Debtors"**

Section I.A.193 of the Plan defines "Reorganized Debtors" as:

***on and after the Effective Date***, subject to the Restructuring Transactions, ***each of the Debtors as to which the Plan is confirmed***, including but not limited to Reorganized PEC, but excluding the Gold Fields Debtors.

Plan, § I.A.193 (emphasis added).

## DISCUSSION

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), 157(b)(2)(B), my interpretation of my Confirmation Order, and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. The parties have not contested my authority to enter a final order in this dispute.

The Plaintiffs have not established that they had, in the first instance, any basis for a claim (pre-Effective Date or post-Effective Date). The only factual allegations in the Complaints specifically identifying PEC are that: PEC exported coal from terminals or ports in Los Angeles County, San Joaquin County, Contra Costa County, and San Francisco, County (and the allegation that PEC continues to export coal from California terminals); and

was a member of trade organizations which, according to the Plaintiffs, deny climate change. Interestingly, none of the counties from which PEC allegedly exported coal are plaintiffs in the Complaints pending in California. Equally noteworthy, it is undisputed that PEC is not a self bond guarantor, owner, lessee, permittee, or operator of any real estate in California, and it is conceded that PEC has no mining operations in California.

Nevertheless, assuming that claims exist, I analyze whether those claims have been discharged or instead fall within the exceptions to discharge set forth in the Plan and Confirmation Order. *See also* 11 U.S.C. § 1141(d)(1)(A) ("Except as otherwise provided . . . in the order confirming the plan, the confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation, . . . whether or not . . . a proof of the claim based on such debt is filed. . . .").

### Plaintiffs Do Not Hold a Pre-petition Claim

I begin my analysis with the possible pre-Effective Date claims.[4] The Plaintiffs do not dispute that they received notice of the Debtors' bankruptcy cases, and the other operative deadlines in the Debtors' bankruptcy cases, but they did not file a proof of claim or otherwise participate in the cases. Accordingly, any pre-Effective Date claim that the Plaintiffs had was defined in the Plan as a "Claim" and has been discharged. The Debtors' pre-petition bar date order (Bar Date Order) established October 11, 2016 as the deadline for any governmental unit to file a pre-petition claim against the Debtors and stated that any entity that was required to file a proof of claim and failed to do so by the bar date "shall be forever barred, estopped and enjoined from" asserting the "claim against the Debtors or their estates or property."[5] Bar Date Order at ¶¶ 11 and 17. Section II.A.1.h.iii of the Plan states that the Plan does not modify the Bar Date Order. Plan, § II.A.1.h.iii.

---

[4] I conclude that Plaintiffs' claims are pre-petition based upon their consistent reference to the 50 year period from 1965 to 2015. Additionally, it defies common sense to believe human responsibility for climate change started after April 3, 2017, the Effective Date.

[5] A separate notice in the Debtors' cases was filed on the Effective Date. That notice stated that the court had established May 3, 2017 as the bar date for the assertion of post-petition administrative claims and that, pursuant to § II.A.1.h. of the Plan, the failure to file an administrative expense claim by the bar date would bar the creditor from asserting the claim and lead to discharge of it.

**Plaintiffs' Alleged Post-Effective Date Claims**

Because the Plaintiffs chose not to file proofs of claims, the analysis could stop here and I could rule in PEC's favor. Notwithstanding six references in each Complaint referring to the period between 1965 and 2015, the Plaintiffs contend that they also asserted post-Effective Date claims against a Reorganized Debtor. I agree with PEC that the Complaints do not set forth post-Effective Date claims and instead concern only pre-Effective Date (and pre-petition) conduct and harm as they do not include factual allegations to support anything further.[6]

Assuming that the Plaintiffs were allowed to proceed with their PEC Causes of Action notwithstanding the bar dates, I also examine whether: (1) the PEC Causes of Action fall within the EPA Settlement; and (2) the First Cause of Action in each Complaint sets forth a discharged "Claim." The plain terms of the Plan and Confirmation Order reveal that the Plaintiffs may not pursue their PEC Causes of Action.

**A.    EPA Settlement Provisions**

The EPA Settlement language was added to the Disclosure Statement and Confirmed Plan provide assurances that post-Effective Date the EPA and other governmental bodies and several Indian Nations could still enforce environmental laws and regulations relating to ongoing **mining operations** of the Reorganized Debtors. I examine whether each of the Complaints survives based on the EPA Settlement language.

**I.    Plan § V.E.6.a.i.A**

Section V.E.6.a.i.A of the Plan (Section A) states that nothing in the Plan or Confirmation Order:

i. releases, discharges, exculpates, precludes or enjoins the enforcement of:

---

[6] The Plaintiffs contend that I should limit any relief I grant to enjoining the Plaintiffs from seeking to remedy the harm that was caused up through the Plan's Effective Date and that I should leave for the California courts the issue of whether the Complaint properly asserts a post-Effective Date cause of action. Unfortunately for the Plaintiffs, I can review the Complaints today based only on what is contained within them and they do not sufficiently allege a post-Effective Date cause of action and do not fall within the EPA Settlement provisions which preserve certain environmental claims.

-9-

> A. ***any liability or obligation to, or any claim or any cause of action by, a Governmental Unit*** (which, solely for purposes of this section, shall include federally recognized Indian Tribes) ***under any applicable Environmental Law to which any Reorganized Debtor is subject to the extent that it is the owner, lessee, permittee or operator of real property or a mining operation after the Effective Date (whether or not such liability, obligation, claim or cause of action is based in whole or in part on acts or omissions prior to the Effective Date, but only to the extent applicable Environmental Law imposes such claim or cause of action on such Reorganized Debtor in its capacity as the self bond guarantor, owner, lessee, permittee or operator of real property or a mining operation after the Effective Date***); provided, that all of the Debtors' or Reorganized Debtors' claims, defenses or Causes of Action related thereto under applicable Environmental Law are likewise preserved;

Plan, § V.E.6.a.i.A; Confirmation Order, ¶ 24.  This provision does not apply to the PEC Causes of Action because: (1) the alleged liability, obligation to, claim, or cause of action by the Plaintiffs does not arise under "Environmental Law"; and (2) the alleged liability of the Reorganized Debtor does not attach because the Reorganized Debtors are the "self bond guarantor, owner, lessee, permittee or operator of real property or a mining operation after the Effective Date." (*i.e.,* because of their relationship to land post-emergence).

### a. Environmental Law

The Plan defines "Environmental Law" as:

> ***all federal, state and local statutes, regulations and ordinances concerning pollution or protection of the environment, or environmental impacts on human health and safety***, including the Atomic Energy Act; the Clean Air Act; the Comprehensive Environmental Response, Compensation, and Liability Act; the Clean Water Act; the Emergency Planning and Community Right to Know Act; the Federal Insecticide, Fungicide, and Rodenticide Act; the Resource Conservation and Recovery Act; the Safe Drinking Water Act; the Surface Mining Control and Reclamation Act; the Toxic Substances Control Act; ***and any state or local equivalents of the foregoing***.

Plan, § I.A.92 (emphasis added).

-10-

### (i) First, Second and Fifth Causes of Action

The First, Second and Fifth Causes of Action (for public and private nuisance) in the Complaints are brought under the California Nuisance Statute, and for the First Causes of Action, the related Public Nuisance Enabling Statute (both defined below in the separate discussion of the First Causes of Action). The Plaintiffs believe these Causes of Action qualify as Environmental Laws because they are statutory.

The California nuisance actions do not fit within the definition of Environmental Law because that definition would include a statute, regulation or ordinance only if it "concern[s] pollution or protection of the environment, or environmental impacts on human health and safety." Plan, § I.A.92. The Plan clause requiring a link to "pollution or protection of the environment, or environmental impacts on human health and safety" is informed by the list of specific federal statutes that follow it and relate to the physical environment upon which PEC mines. *Id.* The definition of Environmental Law also requires that any state or local statute, regulation or ordinance that is not included with those specifically listed be the "equivalents of the foregoing." *Id.* For a cause of action to fit within the definition of Environmental Law, it must be similar to the other statutes listed in the definition. *See Black's Law Dictionary* (10th ed. 2014) (defining *ejusdem generis*, "[a] canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed."). The California state public nuisance statute covers a broad range of matters, only a small portion of which concern the environment. To allow such a statute to qualify as an Environmental Law would unreasonably expand the Plan's environmental exceptions from discharge.

The Plaintiffs argue for a broader construction of the definition of Environmental Law. For example, they believe that the inclusion of the federal statutes listed in the definition were not meant to limit the otherwise broad definition of Environmental Law and they point to the use of the word "including" before the listed items and the definition of the term "including" in the Plan to mean "including without limitation." *See* Plan at § I.B.1(h). The Debtors agree that the term "including" is not limiting. However, they appropriately point out that the definition of Environmental Law may include statutes and regulations other than the federal statutes that are specifically listed in that definition as long as those other statutes or regulations are within the scope of the listed statutes. This does not mean that

any statute that may only slightly apply to environmental matters (such as the California Nuisance Statute) will qualify under the definition of Environmental Law.

### (ii) Third, Fourth, Sixth, Seventh and Eighth Causes of Action

The Third, Fourth, Sixth, Seventh and Eighth Causes of Action in the Complaints (for failure to warn, design defect, negligence and trespass) fail because they do not meet the requirement of the Environmental Law definition that they are brought under a "federal, state and local statute, regulation and ordinance." Instead, they are brought by the Plaintiffs based on common law.[7]

The basis for the Plaintiffs' claim that the Third, Fourth, Sixth, Seventh and Eighth Causes of Action fit within the definition of Environmental Law is that, although they are brought under the common law, they are the equivalents of California's and other states' statutory tort laws that themselves fit within the definition of Environmental Law. The Plaintiffs look to the last clause of the definition (*i.e.*, "and any state or local equivalents of the foregoing."). Plan, § I.A.92.

The Plaintiffs believe that their state common law Causes of Action suffice because the initial phrase in the definition, "all federal, state and local statutes, regulations and ordinances concerning pollution or protection of the environment, or environmental impacts on human health and safety" is the antecedent to the last phrase in the definition, "and any state or local equivalents of the foregoing." Plan, § I.A.92 (emphasis added). I disagree. The list of specific federal statutes set forth in the Environmental Law definition should be read as the antecedent to the phrase "and any state or local equivalents of the foregoing" in that definition, so state common law equivalents of a state statute meeting the definition of Environmental Law would not suffice. *Id.* If the provision were read as the Plaintiffs suggest (*i.e.,* so the last phrase was read to mean that any common law equivalent of an otherwise qualifying state statute would suffice), the terms "state and local" would not be necessary in the initial phrase of the definition (*i.e.*, it would read "all federal, ***state and local*** statutes, regulations and ordinances . . . . and any ***state or local*** equivalent of the foregoing."). *Id.; See Corley v. U.S.*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (quoting *Hibbs v. Winn,* 542 U.S. 88, 101 (2004)).

---

[7] The term "common law" is not mentioned in the definition of Environmental Law.

-12-

I also view the EPA Settlement provisions in light of the fact that they were added as a part of a settlement with the EPA. If I read the initial phrase in the Environmental Law definition as the Plaintiffs request, states would be allowed to rely on common law but the federal government would not be allowed to rely on common law because the word "federal" does not appear in the last clause of the definition (*i.e.*, it would read "all *federal*, *state* and *local* statutes, regulations and ordinances . . . . and any *state* or *local* equivalent of the foregoing.") Plan, § I.A.92 (emphasis added). That cannot be what the parties intended.

Even if state common law actions could fit within the Environmental Law definition provided they were the equivalent of an otherwise qualifying state statute, the Plaintiffs have not established that the statutes they cite from California and other states are equivalent to the Plaintiffs' common law tort causes of action. For example, the Plaintiffs cite to a California statute concerning negligence and intentional acts while furnishing alcoholic beverages to minors, which is clearly inapplicable. *See* Cal. Civ. Code § 1714. The Plaintiffs also have not shown that the statutes that they cite (even if they were the equivalents of common law causes of action) are Environmental Laws because each of the Plaintiffs' cited statutes, like the California statute concerning negligence and intentional acts while furnishing alcoholic beverages to minors, is unduly broad. Reading those statutes to be Environmental Laws would unreasonably expand the environmental exceptions from discharge and effectively read the term "environment" out of the definition. *See Corley*, 556 U.S. at 314.

The common law causes of action asserted by the Plaintiffs in the Third, Fourth, Sixth, Seventh and Eighth Causes of Action also fail for the independent reasons that they do not in the first instance "concern[ ] pollution or protection of the environment, or environmental impacts on human health and safety" and are not "equivalents" under the Environmental Law definition. This is true for the reasons I stated above concerning the First, Second and Fifth Causes of Action. Plan, § I.A.92.

        **b.**    **Post-Effective Date Relationship to Real Property or Mining Operation**

As stated above, the term "Environmental Law" is defined to mean laws like the examples set forth in that definition. The specific laws set forth in the Environmental Law definition create obligations based on an entity's present relationship to the land. *See, e.g.,*

Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et. seq.; In re CMC Heartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992) ("CERCLA creates a claim running with the land [that] depend[s] not at all on the debtor's actions before or during the reorganization."). It follows that, based on the Environmental Law definition and the additional language in Section A, the liabilities retained under the EPA Settlement provisions are liabilities based on a Reorganized Debtor's relationship to the land post-emergence, not its pre-petition conduct generally.[8]

The allegations in the Complaints are not based on the Reorganized Debtors' real property or mining operation (*i.e.,* relationship to the land). The factual allegations in the Complaints concerning PEC allege the pre-petition exporting of coal through California shipping terminals and membership in organizations that the Plaintiffs characterize as climate change deniers, with only general assertions that PEC continues to ship coal from California terminals. It is not sufficient for purposes of Section A that the PEC Causes of Action merely relate to coal. The necessary connection to post-Effective Date relationship to land is absent. This is no surprise since the actions are brought in California and Plaintiffs have not alleged that PEC has any real property or mining operations in California.

## II.    Plan § V.E.6.a.i.B

Section V.E.6.a.i.B of the Plan and paragraph 24 of the Confirmation Order (Section B) state that nothing in the Plan or Confirmation Order:

> i. releases, discharges, exculpates, precludes or enjoins the enforcement of:
> . . .
> B. **any claim of a Governmental Unit** (which, solely for purposes of this section, shall include federally recognized Indian Tribes) **under any Environmental Law, or other applicable police or regulatory law, in each case that**, in accordance with the Bankruptcy Code and bankruptcy law, **arises from the mining operation of any Reorganized Debtor**; provided, that all of the Debtors' or Reorganized Debtors' claims, defenses or Causes of Action related thereto under any Environmental Law, or other applicable police or regulatory law, are likewise preserved . . . .

---

[8] It is apparent that the EPA Settlement was added to make it clear that the Plan and Confirmation Order's discharge and injunction provisions were not intended to prevent laws that impose obligations on Reorganized Debtors who have a relationship to land from attaching liability based on the Reorganized Debtors' relationship to land after the Effective Date.

-14-

Plan, § V.E.6.a.i.B; Confirmation Order, ¶ 24 (emphasis added).  This provision does not apply to the PEC Causes of Action because they: (1) are not brought under any Environmental Law or police or regulatory law; and (2) they are not a "claim . . . arising from the mining operation of any Reorganized Debtor."

### a. Environmental Law or Police or Regulatory Law

#### (i) Environmental Law

For the reasons stated above in my discussion of Plan Section A, the Causes of Action in the Complaints are not brought under an Environmental Law, as that term is defined in the Plan.  *See* Plan, § I.A.92.

#### (ii) Police Powers

Although the Plan and Confirmation Order do not define the phrase "police or regulatory law," Bankruptcy Code § 362(b)(4), providing an exception to the automatic stay for a governmental unit's actions to enforce its "police and regulatory" powers, includes similar language and guides my interpretation here.  *See* 11 U.S.C. § 362(a)(4).  This exception is limited.  An action brought to obtain a pecuniary advantage over other creditors is not an exercise of police powers.  *See United States v. Commonwealth Cos., Inc. (In re Commonwealth Cos., Inc.),* 913 F.2d 518, 523 (8th Cir. 1990) ("[A]s a general matter, § 362(b)(4) does not include governmental actions that would result in a pecuniary advantage to the government *vis à vis* other creditors of the debtor's estate."); *State of Missouri v. U.S. Bankr. Ct. for the E.D. of Ark.*, 647 F.2d 768, 776 (8th Cir. 1981) (an action "primarily relate[d] to the protection of the pecuniary interest in the debtors' property" is not an exercise of police powers.).

The Plaintiffs argue that their PEC Causes of Action are actions focused on protection of the environment and the health, welfare and safety of the Plaintiffs' residents and taxpayers, and that they are not actions to gain a pecuniary advantage just because they include an incidental request for damages.

The clear purpose of the PEC Causes of Action is for the Plaintiffs to obtain a pecuniary advantage.  This is apparent from the allegations in the Complaints, the prayers for relief, and from the Plaintiffs' own characterizations of their PEC Causes of Action.  The specific relief requested from PEC concerns only PEC's alleged conduct of exporting coal

from California terminals and membership in trade organizations, all pre-petition, with only conclusory allegations that PEC continues offensive conduct. It is unclear how the transporting of coal poses a safety concern. The Complaints seek damages and the disgorgement of all profits looking backward from the last fifty years, with only an incidental request for forward looking relief. Consistent with their allegations and requests for damages is the Plaintiffs' statement of the purposes underlying the Causes of Action: "The Governmental Plaintiffs filed the Complaints in order to ensure that the Defendants, as opposed to the Governmental Plaintiffs and their residents and taxpayers, bear the ***costs and burdens*** of addressing the foreseeable harm that is being, and will increasingly be, caused by the defendants' products." Amended Objection at ¶ 5; *see also* San Mateo Complaint, ¶ 11 ("By this action, the County seeks to ensure that the parties responsible for sea level rise ***bear the costs*** of its impacts on the County, rather than Plaintiffs, local taxpayers or residents.") (emphasis added).

The Plaintiffs assert that governmental entities regularly use tort law to assert their police powers and that is what they are doing in the Complaints. The Plaintiffs have not shown that <u>the tort actions against PEC in the Complaints before me in this action</u> constitute an exercise of the Plaintiffs' police powers. Under the specific facts of this case, it is clear that the Plaintiffs' Causes of Action are not brought "under police or regulatory law."

      **b.**     **Reorganized Debtors' Mining Operations**

The Plaintiffs argue that each of the PEC Causes of Action is a "claim . . . that, . . . . arises from the mining operation of any Reorganized Debtor" as set forth in Section B because the coal that allegedly impacted the climate came from mines that are now owned by the Reorganized Debtors. This contention is based upon the Plaintiffs' reference to the term "of" in that clause as being synonymous with ownership, so the provision would be satisfied as long as the claim arises to any extent from a mining operation that is now owned by any Reorganized Debtor. The Plaintiffs believe that it is irrelevant whether the claim arose pre-Effective Date or post-Effective Date and that the "claim . . . that, . . . . arises from the mining operation of any Reorganized Debtor" language was intended to preserve pre-existing claims. I disagree.

Like with Section A, the PEC Cases of Action, which concern the exporting of coal and the participation in trade organizations, show why Section B does not apply. The Plaintiffs do not allege that PEC had mining operations in California, as is required by

-16-

Section B. Instead, they make the attenuated allegation that because PEC mined coal in other states, such operations caused harmful environmental effects in California. This does not change the reality that the only factual allegation of activity by PEC in California concerning the coal was the exporting of it.

In addition, the PEC Causes of Action do not fall within Section B because the language of that section was intended to apply to post-Effective Date claims, but the factual allegations in the Complaints concern only pre-Effective Date conduct by PEC, with no more than vague references to post-Effective Date claims.

The presence of the defined term "Reorganized Debtor" as used in the phrase "claim . . . that, . . . . arises from the mining operation of any Reorganized Debtor" shows why the Section B carve-out does not apply to pre-Effective Date claims. Recall that the Plan defines "Reorganized Debtors" as "**on and after the Effective Date**, subject to the Restructuring Transactions, **each of the Debtors as to which the Plan is confirmed**, including but not limited to Reorganized PEC, . . . ." Plan, § I.A.193 (emphasis added). The Reorganized Debtors did not come into existence until the Effective Date. Also, the word "claim" in Section B is not capitalized, but the Plan defines the capitalized word "Claim" to include a claim (as defined in the Bankruptcy Code) against the Debtors or their bankruptcy estates. *See* Plan § I.A.46. By deciding to not capitalize the word "claim" here (Section B), the parties must have intended to address claims against the Reorganized Debtors. The parties also chose to use the word "arises" in this section in its present tense, signifying that it is to include only present (and not past) claims. *See Carr v. U.S.*, 560 U.S. 438, 448 (2010) (stating, in the context of statutory interpretation, that "[c]onsistent with normal usage, [the Court has] frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach.").

The language of Section A also provides context to interpret the meaning of Section B. It states that the liability, obligation, claim or cause of action preserved by that provision may be "based in whole or in part on acts or omissions prior to the Effective Date" within the specific limitations set forth in Section A (*i.e,* that it is a liability, obligation, claim or cause of action that an applicable Environmental Law imposes on a "Reorganized Debtor in its capacity as the self bond guarantor, owner, lessee, permittee or operator of real property or a mining operation after the Effective Date."). Plan, § V.E.6.a.i.A. The language in Section A concerning claims based on acts or omissions prior to the Effective

Date is absent from Section B, which further proves that Section B does not carve out any pre-Effective Date claims. *See Corley v. U.S.*, 556 U.S. at 314.

The Plaintiffs argue that Section B would not be necessary if the Debtors had intended for that provision to apply prospectively to post-Effective Date claims because the post-Effective Date claims were not otherwise discharged in bankruptcy. I disagree. An important policy in Chapter 11 is to encourage consensual reorganizations. As stated, the focus of the negotiations concerning the EPA Settlement provisions was to ensure that the Reorganized Debtors honored their obligations concerning the land post-emergence, such as reclamation obligations. And as PEC pointed out, it is not uncommon for parties to include "comfort" language in Chapter 11 plans in an effort to encourage consensual reorganizations and to avoid disputes concerning the meaning of proposed plan language.

### B.    The First Cause of Action in Each Complaint

The Plaintiffs contend that, regardless of whether the EPA Settlement applies, the First Cause of Action in each Complaint is not barred by the Plan discharge and injunction because it does not set forth a "Claim" or a "Liability" as those terms are defined in the Bankruptcy Code and the Plan (and as set forth above). The discharge and injunction provisions discharge the Debtors from all Claims or other Liabilities arising on or before the Effective Date. The Plaintiffs argue that the definitions of Claim and Liability are focused solely on monetary (as opposed to equitable) obligations but the First Causes of Action seek only equitable relief.

Recall the definition of "Claim," which includes a "right to payment, . . . " and a "***right to an equitable remedy for breach of performance if such breach gives rise to a right to payment***, . . . ." 11 U.S.C. § 101(5)(B) (emphasis added); Plan, § I.A.46.

According to the Plaintiffs, since the First Cause of Action in each Complaint is brought in the name of the People of the State of California, it is only entitled to seek equitable relief and cannot form the basis for a Claim. They state that the California Public Nuisance Enabling Statute (defined below) "does not allow for the recovery of monetary damages and does not allow the [ ] Plaintiffs to mitigate the damage themselves and recover costs from the defendants. . . ." Amended Objection at ¶33.

-18-

California has a general nuisance statute (California Nuisance Statute), a portion of which pertains to public nuisances. *See generally* CAL. CIV. CODE §§ 3479, *et seq.; see, e.g.*, CAL CIV. CODE § 3480. California nuisance law generally allows for the recovery of damages. *See* CAL. CIV. P. CODE § 731 ("An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, . . . , and by the judgment in that action the nuisance may be ***enjoined or abated as well as damages recovered therefor***.") (emphasis added). With respect to a public nuisance action that is brought in the name of the People of the State of California, California Code of Civil Procedure § 731 (Public Nuisance Enabling Statute) states that:

> A civil action may be brought in the name of the people of the State of California ***to abate a public nuisance, as defined in Section 3480 of the Civil Code***, by the district attorney or county counsel of any county in which the nuisance exists, or by the city attorney of any town or city in which the nuisance exists. . . . The district attorney, county counsel, or city attorney of any county or city in which the nuisance exists shall bring an action whenever directed by the board of supervisors of the county, or whenever directed by the legislative authority of the town or city.

CAL. CIV. PROC. CODE § 731 (emphasis added).

I disagree with the Plaintiffs' contention that they do not assert a Claim in the First Causes of Action. The Plaintiffs themselves included specific language in the First Causes of Action asking for monetary damages. They allege that "Defendants' conduct . . . , justif[ies] an award of ***punitive and exemplary damages*** in an amount subject to proof at trial, and justifying ***equitable disgorgement of all profits*** Defendants obtained through their unlawful and outrageous conduct." San Mateo Complaint, ¶ 186; Imperial Beach Complaint, ¶ 183; Marin Complaint, ¶ 187 (emphasis added). And the Prayer for Relief at the end of each Complaint, which applies to all eight Causes of Action, also asks for compensatory and punitive damages and disgorgement of profits. San Mateo Complaint, p. 98; Imperial Beach Complaint, p. 95; Marin Complaint, p. 99.

In addition, each Complaint includes a Second Cause of Action which is brought by the individual county or city on its own behalf for public nuisance. It is undisputed that the Second Causes of Action seek damages. But the real party-in-interest in the First Causes of Action and the Second Causes of Action in each Complaint is the same, the county or city (*i.e.,* County of San Mateo, City of Imperial Beach or County of Marin). *See, e.g., California v. M&P Investments,* 213 F.Supp. 2d 1208, 1215 (E.D. Cal. 2002) (plaintiff in an

action brought under California Public Nuisance Enabling Statute was "the city which the city attorney represents."), *aff'd in part and appeal dsm. in part,* 46 Fed. Appx. 876 (9th Cir. 2002); CAL. CIV. PROC. CODE § 731.  In the Plaintiffs' own words, "Although the [First Cause of A]ction is technically brought 'in the name of the people,' the party bringing the action – and again, *the only party authorized to bring the action* – is the city or county." Amended Objection at ¶ 12 (emphasis in original).  Plaintiffs do not contend that they lack the ability to recover money damages generally under the California Nuisance Statute (such as under their Second Causes of Action).  It would put form over substance to say that while the same party-in-interest brings the First and Second Causes of Action in each Complaint (and the statutory scheme as a whole allows that party-in-interest to seek injunctive relief or money damages for the alleged nuisance), the First Causes of Action would not be "Claims" as that term is defined in the Bankruptcy Code and the Plan simply because each of the First Causes of Action is brought on behalf of the People of the State of California.

## CONCLUSION

Because the Plaintiffs chose not to participate in PEC's bankruptcy (including their decision not to file a claim), any pre-petition or pre-Effective Date claim they may have had was discharged.  Plaintiffs' asserted claims against the Reorganized Debtors do not fall within the exceptions to the discharge of the EPA provisions.  Accordingly, the *Motion of Reorganized Peabody Energy Corporation for Entry of an Order Enforcing the Discharge and Inunction Set Forth in the Confirmation Order and Plan* is granted in that: (1) the Plaintiffs are enjoined from prosecuting the PEC Causes of Action; and (2) the Plaintiffs shall promptly dismiss the PEC Causes of Action with prejudice.

DATED:  October 24, 2017  
St. Louis, Missouri

_____  
Barry S. Schermer  
United States Bankruptcy Judge