**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Peabody Energy Corporation, et al., | ) | Chapter 11 |
| | ) | Case No. 16-42529-399 |
| Reorganized Debtors. | ) | (Jointly Administered) |
| _____ | ) | |

**MEMORANDUM OPINION**

On December 5, 2017, I held a hearing on the motions to file proofs of claims after the deadline filed by: Shanen Givone; Kayla White; Rose Ann McClary; Matthew Raymond Derrick; Ashley Stanley; Debbie Dry; Kathleen Lacey; Kimberly Garcia; Tyler Mills; Karen Riley; Leisha R. Holden; The Late Peggy Anne Rentfro; Floyd Woolever; Patsy S. Barbee; Steven M. Barbee; and Max Humphrey (Joplin Parties).  In connection with the motions to file proofs of claims after the deadline, many of the Joplin Parties also filed pleadings that I treat as motions to allow the proofs of claims, as well as other related motions and support documents (together, Motions).[1]  Peabody Energy Corporation and certain of its subsidiaries as reorganized Debtors (Reorganized Debtors) objected to the Motions and the Liquidating Trustee for the Gold Fields Liquidating Trust[2] supported the Reorganized Debtors' objection.  For the reasons stated, I deny the Motions.

I acknowledge that the Joplin Parties have alleged in their filings serious and significant hardships in connection with historical events, circumstances and issues.  I am sympathetic to the injuries they allege.  Notwithstanding the gravity of the Joplin Parties' positions, the relief sought by them is not available in this Court.

As I stated at the December 5, 2017 hearing, I consider only the issue of whether the Joplin Parties may file their proofs of claims after the deadline established in these

---

[1] These Motions and other pleadings were filed by the Joplin Parties as individuals, and in some instances, as next-of-kin or on behalf of or by another individual.  Many of the Joplin Parties also filed proofs of claims.

[2] Pursuant to the bankruptcy plan, all the assets of the Gold Fields Debtors were transferred to the Gold Fields Liquidating Trust and the Gold Fields Debtors were dissolved.  Gold Fields Mining, LLC was one of the Gold Fields Debtors.

bankruptcy cases. Because I hold that the Joplin Parties may not file their proofs of claims late, I will not conduct further proceedings concerning the merits alleged in the proofs of claim or other filings.

Throughout these proceedings, Shanen Givone has acted as the leader of the Joplin Parties. Many of the individuals have copied Ms. Givone's pleadings and many elected at the hearing on the Motions held before me on December 5, 2017 to adopt Ms. Givone's position as their own.

## BACKGROUND

On April 13, 2016, Peabody Energy Corporation (PEC) and certain of its subsidiaries (Debtors) filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

Relevant facts concerning the relationships between PEC, Gold Fields Mining, LLC (Gold Fields) (a Debtor in the bankruptcy proceedings) and Blue Tee Corporation (Blue Tee) (not a Debtor in the bankruptcy proceedings) were provided by the Reorganized Debtors in their objection to the Motions and have not been disputed by the Joplin Parties. I set forth those facts:

> Long before PEC acquired [Gold Fields] in 1998 (as a result of a transaction in which Gold Fields' former parent transferred Gold Fields to PEC despite the fact Gold Fields had no ongoing operations at the time of that transfer and PEC had no prior involvement in the past operations of Gold Fields), Gold Fields was one of the many entities that had engaged in some mining (not coal) within the Tri-State Mining District. As a result, Gold Fields (and not PEC nor the other Reorganized Debtors) is a potentially responsible party for remediation of its mining sites. In addition, Golds Fields agreed in 1998 to assume certain indemnification obligations that its parent owed to a former affiliate, [Blue Tee]. *See generally Global Energy Fin. LLC v. Peabody Energy Corp.,* 2010 Del. Super. LEXIS 430 (Del. Super. Ct. Oct. 14, 2010). Those obligations included, among other things, Blue Tee's obligation to remediate certain sites within the Tri-State Mining District where Blue Tee had engaged in historic mining and other activities. As part of a global settlement with Blue Tee and others in 2011, PEC and Gold Fields agreed to assume the indemnification obligations Gold Fields' former parent owed to Blue Tee. See *Stipulation and Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy rules 6004 and 9019 (i) Approving Settlement and Release Agreement Between and Among Gold Fields Mining LLC, Blue Tee Corp., and Certain Insurers, (ii) Authorizing Gold Fields Mining LLC to Enter into the Settlement and Release Agreement, (iii) Authorizing the*

-2-

> *Sale of Gold Fields Mining LLC's Rights in the Historic Gold Fields Policies Free and Clear of Liens, Claims, and Interests, (iv) Approving the Settlement Agreement and Release, and (v) Providing for Injunctive Relief Barring Claims Against the Insurers* [Docket No. 2739] at 1.

Each of the Joplin Parties now lives or had lived in the Tri-State Mining District. Although Blue Tee and Gold Fields conducted mining activity in the Tri-State Mining District in the past, the Reorganized Debtors never conducted mining operations in that area. None of the Reorganized Debtors are or have ever been affiliated with Blue Tee, which is a separate entity.

The Tri-State Mining District, an area encompassing more than 2,500 square miles in southwestern Missouri, southeastern Kansas and northeastern Oklahoma, was one of the foremost lead-zinc mining areas of the world and provided nearly continuous production from about 1850 until 1970. *See, e.g., In re: Newton Cnty. Mine Tailings Superfund Site*, 2007 EPA RJO LEXIS 579 ¶ 6 (Nov. 21, 2007). It is undisputed that several sites within the Tri-State Mining District are on the National Priorities List due to environmental issues related to historic lead and zinc mining and related activities.

**<u>Bankruptcy proceedings</u>**

On June 16, 2016, I entered an *Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* (Deadline Order). The Deadline Order established August 19, 2016 (Deadline) as the deadline for entities to assert against the Debtors claims that arose prior to the April 2016 petition date. I approved the Debtors' notice of the Deadline to unknown creditors by publication.

The Debtors published notice of the Deadline in the national editions of *The Wall Street Journal* and *USA Today* and in the *St. Louis Post Dispatch* (Deadline Notice). The caption of the published Deadline Notice sets forth the name and case number of Peabody Energy Corporation, the debtor in the lead case in these jointly administered bankruptcy cases. Included in the text of the Deadline Notice is a statement that the bankruptcy court entered the Deadline Order on June 16, 2016 and that the Deadline Order "establish[ed] certain deadlines for the filing of proofs of claim in the chapter 11 cases of Peabody Energy Corporation and certain of its direct and indirect subsidiaries (collectively, the "Debtors")." The Deadline Order then states in bold:

-3-

> **A schedule identifying the Debtors and their respective case numbers can be obtained, free of charge, from the website maintained by the Debtors' claims, noticing and balloting agent, Kurtzman Carlson Consultants LLC . . . , at http://www.kccllc.net/peabody . . . .**

The Kurtzman Carlson Consultants LLC (KCC) website includes a list of each of the Peabody Debtors, including Gold Fields Mining, LLC.

The Debtors also provided by publication notice (which was approved by me in previous orders) in the national editions of *The Wall Street Journal* and *USA Today* and in the *St. Louis Post Dispatch* notice of: (1) the hearing on and deadline to object to approval of the Debtors' disclosure statement; (2) the hearing on and deadline to object to confirmation of the Debtors' plan, as well as the plan's voting deadline; and (3) the notice of entry of the plan confirmation order, the effective date of the plan and the deadline for filing certain claims such as post-petition administrative expense claims.

The first time that Shanen Givone appeared in the Peabody bankruptcy cases was August 22, 2017 when I received her August 19, 2017 letter. The next day, the United States filed a motion for approval of an environmental settlement agreement, which I later granted. Although Ms. Givone had provided comments to the United States during its 30-day public notice period concerning the environmental settlement agreement (a fact which was set forth in the motion filed by the United States), she did not file an objection to the settlement motion or appear at the hearing regarding it.

On September 11, 2017, Ms. Givone filed a motion for additional time to file a proof of claim, which I denied because Ms. Givone stated no reason for her request. She also filed a motion to postpone the "Peabody" case, which was premised on a request for discovery and an environmental investigation, and which I also denied.

On October 26, 2017, the first of the many Motions that I consider in this *Memorandum Opinion* seeking to file claims after the Deadline was filed. That motion was signed by Ms. Givone, but it also seeks to allow the Givone Research Group to file proofs of claims after the Deadline on behalf of other individuals who are identified as members of the Givone Research Group. Since the filing of the initial motion, other Joplin Parties filed similar Motions. Ms. Givone then filed a motion (referred to as an addendum) seeking to file on behalf of others as next-of-kin. In addition, an individual who had not filed other papers, Patricia Sullivan, filed a motion asking to "file with [the] Givone Research Group." The Joplin Parties then filed documents titled as *Motions to File Pro Se.* Based on the

Case 16-42529   Doc 3641   Filed 12/20/17   Entered 12/20/17 12:12:37   Main Document
                                            Pg 5 of 15

substance of those documents, I treat them as motions to allow proofs of claims. The Joplin Parties also filed separate proofs of claims, which were docketed on the claims register. In addition, Ms. Givone filed documents with this Court on December 11, 2017 and December 14, 2017, stating her position.

The Joplin Parties now seek to file proofs of claim over a year after the Deadline based on health issues that they allege were caused by environmental contamination caused by the historic activities of Gold Fields and Blue Tee in the Tri-State Mining District.

## DISCUSSION

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), 157(b)(2)(B), and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. The parties have not contested my authority to enter a final order in this dispute.

"[O]ne of the principal purposes of bankruptcy law [is] to secure within a limited period the prompt and effectual administration and settlement of the debtor's estate." *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (citing *Katchen v. Landy*, 382 U.S. 323, 328 (1966)); *see Vancouver Women's Health Collective Soc. v. A.H. Robins Co. (In re A.H. Robins Co.)*, 820 F.2d 1359, 1364 (4th Cir. 1987) ("The Court must balance the needs of notification of potential claimants with the interests of existing creditors and claimants."). Federal Rule of Bankruptcy Procedure 3003(c)(3) empowers the bankruptcy court to establish a deadline for creditors to file proofs of claims. FED. R. BANKR. P. 3003(c)(3). If a creditor does not file a proof of claim by the established deadline, he must establish a sufficient basis for filing the claim after the deadline. *Chemetron*, 72 F.3d at 346.

**<u>Notice in Bankruptcy Proceedings</u>**

Creditors in a bankruptcy proceeding are entitled to adequate notice of a claims deadline. "The operation of the Bankruptcy Code, including its discharge provisions, is subject to due process constraints." *Sanchez v. Nw. Airlines, Inc.,* 659 F.3d 671, 675 (8th Cir. 2011). A creditor who does not receive proper notice of the claims deadline is not bound by it. *See City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953). The notice provided must be "reasonably calculated, under the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity

to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) (cited in *United States v. Hairopoulos (In re Hairopoulos*), 118 F.3d 1240, 1244-45 (8th Cir. 1997)). In addition, "[t]he notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance." *Id.*

Creditors in a bankruptcy proceeding are divided into "known" creditors and "unknown" creditors. *Chemetron Corp.*, 72 F.3d at 346. While a debtor must provide known creditors "with actual written notice of a debtor's bankruptcy filing and bar claims date," publication notice is sufficient for unknown creditors. *Id.*; *In re President Casinos, Inc.*, 418 B.R. 332, 335 (Bankr. E.D. Mo. 2009) (citing *Mullane*, 339 U.S. at 313) ("Notice by publication is generally used to give notice to unknown creditors or known creditors who cannot otherwise be located.").

**<u>The Joplin Parties Were Unknown Creditors</u>**

The Joplin Parties contend that they should be allowed to file their proofs of claims after the Deadline because they were known creditors who did not receive actual notice of the Deadline. I disagree.

"[A] 'known' creditor [is] one whose identity is either known or 'reasonably ascertainable by the debtor.' " *Chemetron Corp.*, 72 F.3d at 346 (quoting *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988)). "An 'unknown' creditor is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].' " *Id.* (quoting *Mullane*, 339 U.S. at 317).

"A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts.' " *Id.* at 346 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 2711 n. 4, 77 L.Ed.2d 180 (1983)). To be reasonably diligent, a debtor's efforts do not need to include "impracticable and extended searches . . . in the name of due process." *Id.* (quoting *Mullane*, 339 U.S. at 317). A debtor is not required to conduct a "vast, open-ended investigation." *Id.* at 346. Rather, a creditor is generally known if it could not be identified through a search of the debtor's books and records. *Id.* at 347; *Pacificorp. and Van Cott Bagley Cornwall & McCarthy v. W.R. Grace,* No. 05-764, 2006 WL 2375371, at *4 (D.Del. Aug. 16, 2006). The specific facts of each

case must be analyzed. *Id.* at 347, n.2; *Zurich Am. Ins. Co. v. Tessler*, 492 F.3d 242, 250 (4th Cir. 2007).

The Third Circuit's *Chemetron Corp.* decision is relevant here. 72 F.3d 341. The *Chemetron Corp.* court held that creditors who lived near or visited land near the debtor's nuclear waste dump were unknown creditors. *Id.* at 348. Chemetron Corp. filed for bankruptcy several years after it engaged in a manufacturing process that used uranium at its plant and later demolished part of the plant and placed a portion of radioactive material in its landfill. *Id. at* 344. Four years after the deadline for filing claims, a group of individuals that included former residents and visitors of homes near the landfill sought leave to file late claims on the basis that they were known creditors who were entitled to actual notice. *Id.* at 345. Rejecting the lower court's standard that would include as known creditors those whose identity is reasonably foreseeable, the court adopted the reasonably ascertainable standard. *Id.* at 347-348. The debtor was not required to conduct a title search of the properties surrounding its nuclear waste dump even though it knew about the contamination. *Id.* Requiring debtors to provide actual notice to those they could only potentially have affected by their actions "would completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates." *Id.* at 348. *See also W.R. Grace,* No. 05-764, 2006 WL 2375371 (owners of sites contaminated by debtor's product were unknown creditors where debtor knew about the contamination and could have determined identity by a title search but the debtor would be required to search for a large number of current and prior owners at many sites).

The Fifth Circuit's decision in *Williams v. Placid Oil Co. (In re Placid Oil Co.*), 753 F.3d 151 (5th Cir. 2014), is also instructive. The *Placid Oil Co.* court held that a former employee and his children, who brought tort claims against the debtor in connection with the asbestos-related illness and death of the employee's wife and the children's mother, were not known creditors of the debtor. *Id.* The employee was exposed to asbestos while working at a natural gas plant owned by the debtor, and his wife was exposed to the asbestos dust and fibers while laundering his clothes. *Id.* at 152. Although the debtor generally knew the dangers of asbestos and that the employee had been exposed to it, prior to confirmation of the debtor's plan the debtor did not have specific knowledge of an injury to the former employee or his family. *Id.* at 157. The court stated that "to conclude that a creditor is known, a court must determine that, at a minimum, a debtor has 'specific information' related to an actual injury suffered by the creditor." *Id.* at 156. It also stated that "[i]nformation, however specific, that makes a claim only foreseeable or conjectural is

-7-

insufficient." *Id.* at 156-157.

The Joplin Parties were not known creditors. It is undisputed that the Debtors did not know the identification of each of the Joplin Parties or of any actual alleged injury to them until several months post-confirmation. The Joplin Parties did not claim that prior to Ms. Givone's contact with the court in August 2017, they contacted the Debtors, Reorganized Debtors or Gold Field Debtors stating that they believed they had a claim. The Debtors' books and records did not include a record of claims held by the Joplin Parties, and the Joplin Parties were not included on the Debtors' bankruptcy schedules.

The Debtors were not required to conduct a search of the Tri-State Mining District to see who lives or lived there and may have become ill. The Tri-State area covers over 2,500 square miles in which unrelated parties mined lead and zinc between 1850 and 1970. *See, e.g., In re: Newton Cnty. Mine Tailings Superfund Site*, 2007 EPA RJO LEXIS 579 ¶ 6 (Nov. 21, 2007); *United States' Motion for Approval of Environmental Settlement Agreement* (Docket No. 3342), Ex. A at p. 2 (comments from Ms. Govone to environmental settlement sidentifying 17 potentially responsible parties). The search suggested by the Joplin Parties would have required the Debtors to identify the current and former residents of the Tri-State Mining District. That alone would have been a daunting task. The Joplin Parties then believe the Debtors would also have to determine which of those parties claim to have become ill as a result of contamination of one of the Blue Tee or Gold Fields sites, as opposed to the sites of the other parties who mined there. Applied more generally, the Joplin Parties' suggested search criteria would also have required the Debtors to conduct similar searches for all sites the Debtors were responsible for remediating nationally. The effort suggested by the Joplin Parties would have been extraordinary at the costs of the estate and other creditors and would "fall on potentially attenuated and certainly ambiguous *causal nexi.*" *Chemetron Corp.*, 72 F.3d at 347.

### The Publication Notice to the Joplin Parties was Sufficient

The Joplin Parties next contend that notice given to them by publication was not proper.

"It is well established that, in providing notice to unknown creditors, constructive notice of the bar claims date by publication satisfies the requirements of due process." *Chemetron Corp.*, 72 F.3d at 348 (citing *New York*, 344 U.S. at 296) ("Notice by publication

-8-

is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best. . . . But when the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication.") (citations omitted). It has generally been deemed to be sufficient notice in Chapter 11 cases when debtors publish notice in national newspapers, especially when that notice is supplemented by notice in papers in general circulation where a debtor does business. *See Id.* 72 at 348-349 (citations omitted); *Placid Oil Co.,* 753 F.3d at 155 ("Publication in a national newspaper such as the *Wall Street Journal* is sufficient."). As stated above, the Debtors provided in the same publications where they published the Deadline Notice, notices concerning the disclosure statement, confirmation and effective date of the plan. I examine the constructive notice given in this case based on the particular circumstances presented and I find that the Debtors have shown that the notice provided to the Joplin Parties met the requirements of due process. *Wright v. Ownes Corning*, 679 F.3d 101, 108 (3d Cir. 2012) ("[W]hether adequate notice has been provided depends on the circumstances of a particular case.") (citation omitted).

The Joplin Parties contend that the Deadline Notice should have been published in their local newspaper. I disagree. The publications in *The Wall Street Journal* and *USA Today* were both in the national editions of those papers. Each of those papers has a broad circulation that targets a different demographic and should be accessible by most. By publishing in the two national papers, the Debtors adequately targeted their notice to reach their different types of creditors. *See Chemetron Corp.*, 72 F.3d at 348 ("It is impracticable . . . to expect a debtor to publish notice in every newspaper a possible unknown creditor may read.") (quoting *In re Best Prods., Co.*, 140 B.R. 353, 357 (Bankr. S.D. N.Y. 1992)). The Joplin Parties complain that the notice published in the *St. Louis Post Dispatch* did not reach them. It is irrelevant whether the supplemental notice in the St. Louis paper was helpful to the Joplin Parties in light of the notice provided to them in the national newspapers.

Requiring notices to be published in the local Joplin newspaper would have imposed an unreasonable burden on the Debtors and their estates. It would have required the Debtors to publish notices in all the local newspapers in the Tri-State Mining District, and also in the local newspapers where the Debtors conducted business or could otherwise be responsible for claims. Such an effort would create an unreasonable cost for the estate at the expense of known creditors.

According to the Joplin Parties, they did not know from the Deadline Notice how Peabody Energy Corporation or any of the Debtors was associated with the contamination of the Tri-State Mining District. In addition, they contend that the name "Peabody Energy Corporation" in the caption of the Deadline Notice would not have alerted them to the connection with Blue Tee or Gold Fields. The Deadline Notice clearly and unequivocally directed the reader to the website of the Debtors' claims, noticing and balloting agent, KCC, for a "schedule identifying the Debtors and their respective case numbers." Gold Fields is listed in the names of the Debtors on the KCC website. This method of setting forth the Debtors' names is reasonable in light of the fact that there were over 150 Debtor entities. The list of Debtors on the KCC website did not include Blue Tee as Blue Tee was not a debtor in the bankruptcy proceedings. It would be wholly impractical to require the Debtors to have included in their already lengthy Deadline Notice an explanation of their indemnification obligations, such as the contractual agreement with Blue Tee. And the Debtors were not required to set forth in the Deadline Notice information about the nature of potential claims such as the information the Joplin parties suggest would have informed them that they should file claims. *See Placid Oil Co.*, 753 F.3d at 158 (claims deadline notices need not contain information about specific potential claims). In fact, including such information would serve only to confuse creditors.

**The Joplin Parties Did Not Show Excusable Neglect**

Since they received constructive notice of the Deadline by publication, the Joplin Parties may only pursue their claims if they can demonstrate excusable neglect. *Hartford Casualty Ins. Co. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 214 B.R. 197, 200 (B.A.P. 8th Cir. 1997) (citation omitted) ("[I]t is first the movant's burden to demonstrate . . . that excusable neglect exists.").

Federal Rule of Bankruptcy Procedure 9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect.'" *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 382 (1993). Excusable neglect includes both faultless omissions and omissions caused by carelessness. *Id.* at 388. To determine whether neglect is excusable, a court must consider all relevant circumstances surrounding the party's omission. *Id.* at 388. "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission *Id.* at 388. The factors a court must consider include: (1) "the danger of prejudice to the debtor;" (2) "the length of the delay and

its potential impact on judicial proceedings;" (3) "the reason for the delay, including whether it was within the reasonable control of the movant;" and (4) "whether the movant acted in good faith." *Id.* at 388.

I do not doubt the good faith of the Joplin Parties. Nevertheless, I find that their neglect in filing their claims was not excusable because the balance of the factors weigh against such a finding.

Although a ruling allowing the Joplin Parties to file their claims late would not address the merits of the claims, the administrative burden on the Reorganized Debtors and the Gold Fields Liquidating Trust would be immense. Allowing the Joplin parties' claims to be filed late would also risk encouraging the filing of claims by other similarly situated parties, which would further significantly increase such burden.

The Joplin Parties first filed documents with this Court a year after the Deadline and five months after the March 17, 2017 confirmation of the Debtors' bankruptcy plan. As of the December 5, 2017 hearing, nine months had passed since plan confirmation. The plan was heavily negotiated by the Debtors and numerous creditors, and those parties did not include the potential claims of the Joplin Parties in their considerations when formulating the plan and establishing the Gold Fields Liquidating Trust. In fact, at the hearing on the Motions, counsel to the Reorganized Debtors represented that the parties relied on the absence of these claims.

As stated, the Joplin Parties contend that they should be permitted to file their claims late because of their lack of knowledge. At some points they state that they did not know about the Peabody bankruptcies until August 2017. At other times, they suggest that they may have known about the Peabody bankruptcies, but that they did not know about a connection between the Peabody Debtors and the contamination of the Tri-State Mining District. They contend that they did not know that Peabody Energy Corporation agreed to indemnify Blue Tee for certain liabilities concerning Blue Tee's past activities. The Joplin Parties also suggest that they did not know about the relationship between the Peabody Debtors and Gold Fields.

As a preliminary matter, the Joplin Parties are deemed to have know about the Peabody bankruptcy cases well before they filed documents in this Court. The Deadline Notice and all of the other notices published in the bankruptcy cases, of which they are

-11-

deemed to have knowledge of by virtue of the constructive notice given by publication, would have provided notice of the bankruptcy. In addition the Peabody bankruptcies were widely publicized nationally. The Joplin Parties would have had additional notice of the Peabody bankruptcies by January 9, 2017 (a date before confirmation of the Debtors' plan) when an article appeared in the *Joplin Globe* stating that "Six publicly listed U.S. coal companies, including the iconic Peabody Energy, have declared bankruptcy since April 2015." Steve Schwarze, Pete Bsumek, Jennifer Peeples, Jen Schneider, *Inside the coal industry's rhetorical playbook*, JOPLIN GLOBE, Jan. 9, 2017, http://www.joplinglobe. com/cnhi_network/inside-the-coal-industry-s-rhetorical-playbook/article_0c4af619-d811-5640-b4ba-e4942d25a345.html.

The Joplin Parties knew or certainly could have found out through investigation well before the Deadline that Blue Tee and Gold Fields were potentially responsible parties for certain of the contamination of the Tri-State Mining District. Ms. Givone has acted as a conduit for the Joplin Parties. In an August 19, 2017 letter to me (entered on the docket on August 22, 2017), Ms. Givone referred to an Environmental Protection Agency (EPA) hearing that she attended in 2013. In response to Ms. Givone's inquiry at that hearing concerning who was performing cleanup efforts, the EPA representative stated "Both. EPA is working on the site, spending what we call fund lead money, tax dollars . . . appropriations from Congress. And we have Blue Tee, Goldfields [*sic*] . . . Doe Run, also working on the site."[3]  *U.S. Environmental Protection Agency - Region 7, Oronogo-Duenweg Mining Belt Site, Operable Unit 1 - Mine and Mill Waste, Jasper County, MO, August 15, 2013 Public Hearing*, pp.60-61, https://semspub.epa.gov/work/07/30284928.pdf At that time, the Joplin Parties could have further pursued their claims by conducting additional investigations to see the relationship between Peabody Energy Corporation and Gold Fields, which is a matter of public record. And the Joplin Parties did not dispute counsel's representation at the hearing before me that under the indemnity agreement to Blue Tee, Blue Tee would have promptly tendered to Peabody Energy Corporation any claim that the Joplin Parties directed to Blue Tee.

The statements of the Joplin Parties in their filings and at the December 5, 2017 hearing show that they were aware of the contamination in the Tri-State Mining District and the dangers of it years ahead of the Deadline and the bankruptcy. *See Jones v.*

---

[3] This exchange is on pages 60 and 61 of the transcript (two of the same pages Ms. Givone identified in her August 22, 2017 filing).

*Chemetron Corp.*, 212 F.3d 199 (3d Cir. 2000) (claimants were obligated to investigate the cause of their illnesses and their claims, even though the debtors publicly alleged they had not contaminated the site, when danger from a debtor's site was publicized).

## CONCLUSION

Notwithstanding the gravity of the hardships alleged by the Joplin Parties and my sympathy for their injuries alleged, I do not allow them to file their proofs of claims late. Accordingly, I deny the following Motions:

- *Givone Research Group's, Motion to Enter After Bar Date Has Passed* (Docket No. 3518)

- *Kayla White's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3524)

- *Rose Ann McClary's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3525)

- *Matthew Raymond Derrick's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3527)

- *Ashley Stanley's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3528)

- *Debbie Dry's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3529)

- *Kathleen Lacey's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3534)

- *Kimberly Garcia's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3544)

- *Tyler Mills' Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3545)

- *Karen Riley's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3546)

- *Leisha R. Holden's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3549)

- *The Late Peggy Anne Rentfro's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3551)

- *Floyd Woolever's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3552)

- *Patsy Barbee's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3560)

- *Steven M. Barbee's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3561)

- *Max Humphrey's Motion to Enter After the Bankruptcy Bar Date Has Passed* (Docket No. 3562)

Because I deny the Motions set forth above, I also deny the following Motions (which Motions I treat as the equivalent of motions to allow proofs of claims):

- *Rose M. McClary's Motion to File Pro Se* (Docket No. 3570)
- *Matthew R. Derrick's Motion to File Pro Se* (Docket No. 3571)
- *Tiffany Givone-Akins + 2 Siblings Hydatidifarm Mole "Molan Pre Shancy" Shanen Givone Next-of-Kin's Motion to File Pro-Se* (Docket No. 3572)
- *Shanen Givone's Motion to File Pro Se* (Docket No. 3573)
- *Ashley Stanley (Mother) of Oakley Stanley (Son)'s Motion to File Pro Se* (Docket No. 3574)
- *Ashley Stanley's Motion to File Pro Se* (Docket No. 3575)
- *Kathleen Lacey's Motion to File Pro Se* (Docket No. 3576)
- *Kayla White's Motion to File Pro Se* (Docket No. 3577)
- *Max M. Humphrey's Motion to File Pro Se* (Docket No. 3578)
- *Patsy Barbee's Motion to File Pro Se* (Docket No. 3579)
- *Debbie Dry's Motion to File Pro Se* (Docket No. 3580)
- *Debbie Dry, Next -of-Kin for Glenda Sue Wilson's Motion to File Pro Se* (Docket No. 3581)
- *Kimberly Garcia, Mother of 2 Minors, Caleb and Gabriel, Motion to File Pro Se* (Docket No. 3582)
- *Kimberly Garcia's Motion to File Pro Se* (Docket No. 3583)
- *Steven Barbee's Motion to File Pro Se* (Docket No. 3584)
- *Karen Lea Riley's Motion to File Pro Se* (Docket No. 3601)
- *Tyler Mills's Motion to File Pro Se* (Docket No. 3602)

- *Leisha R. Holden's Motion to File Pro Se* (Docket No. 3609)
- *Motion to Allow Claim Filed by Tyler Mills* (Docket No. 3603)
- *Motion to Allow Claim Filed by Karen Lea Riley* (Docket No. 3604)

In addition, as I stated at the December 5, 2017 hearing, the *pro se* parties may represent only themselves in their court filings and appearances. As a result, any requests to appear before me on behalf of another individual or to allow someone else to represent an individual is denied, including but not limited to *Patricia Sullivan's Motion to File with Shanen Givone Research Group* (Document No. 3554) and *Shanen Givone's Motion to File on Behalf of Tiffany Givone-Akins and her Two Undeveloped Siblings as Next-of-Kin* (Document No. 3555).

I also deny the relief requested in any other Motion filed by the Joplin Parties to date because all of their filings concern the ruling stated herein.[4]

DATED: December 20, 2017

St. Louis, Missouri

*/s/ Barry S. Schermer*

Barry S. Schermer
United States Bankruptcy Judge

---

[4] Shanen Givone filed documents with this Court on December 11, 2017 and December 14, 2017. These filings by Ms. Givone are not independent motions.

-15-